1   DAVID C. GRANT, SBN 53635
    E-Mail: dcg@ggb-law.com
2   HARRY A. SAFARIAN, SBN 204106
    E-Mail: has@ggb-law.com
3   GRANT, GENOVESE & BARATTA, LLP
    2030 Main Street, Suite 1600
4   Irvine, California 92614
    Telephone: (949) 660-1600
5   Facsimile: (949)660-6060

6   Attorneys for Defendant, MARK OBENSTINE

7

8                 IN THE UNITED STATES DISTRICT COURT
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
9                         WESTERN DIVISION

10

11  JAMES ESTAKHRIAN, on behalf of          )  Case No.: CV11-3480 GAF (CWX)
    himself and all others similarly situated, )
12                                           )  **NOTICE OF MOTION AND**
                 Plaintiff,                  )  **SPECIAL MOTION TO STRIKE**
13                                           )  **PLAINTIFF'S FIRST AMENDED**
          v.                                 )  **COMPLAINT BY DEFENDANT**
14                                           )  **MARK OBENSTINE;**
                                             )  **MEMORANDUM OF POINTS**
15  MARK OBENSTINE, BENJAMIN F.              )  **AND AUTHORITIES; REQUEST**
    EASTERLIN IV, TERRY A. COFFING,          )  **FOR ATTORNEYS' FEES**
16  KING & SPALDING, LLP, and                )
    MARQUIS & AURBACH, P.C.,                 )  **[FILED CONCURRENTLY WITH**
17                                           )  **DECLARATION OF HARRY A.**
                 Defendants.                 )  **SAFARIAN]**
18                                           )
                                             )
19                                           )  Date:   October 3, 2011
                                             )  Time:   9:30 a.m.
20                                           )  Place:  Courtroom 740
                                             )  Judge:  Hon. Gary A. Feess
21                                           )

22

23  TO THE HONORABLE COURT, TO ALL PARTIES AND TO THEIR

24  ATTORNEYS OF RECORD:

25          PLEASE TAKE NOTICE that on October 3, 2011, at 9:30 a.m., or as soon

26  thereafter as the matter may be heard, in Courtroom 740 of the United States

27  District Court, Central District of California, located at the Edwin R. Roybal

28  Federal Building, 255 E. Temple Street, Los Angeles, California 90006, Defendant

                                             1

1  MARK OBENSTINE will, and hereby does, move for an Order pursuant to

2  California <u>Code of Civil Procedure</u>, section 425.16 (the "Anti-SLAPP" statute),

3  striking Plaintiffs' Complaint.

4       This Motion will be made on the grounds the First Amended Complaint

5  ("FAC") seeks to interfere with Obenstine's actions in furtherance of his right to

6  petition for redress and right to free speech under the United States and California

7  Constitutions and that such rights will be impermissibly chilled if the FAC is

8  allowed to proceed.

9       This Motion is made pursuant to California <u>Code of Civil Procedure</u>,

10  section 425.16 (the Anti-SLAPP statute).  This Motion is also made pursuant to

11  *Batzel v. Smith*, 333 F3d 1018, 1025-1026 (9th Cir. 2003), *citing generally*, *Erie*

12  *R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) and *United States ex rel. Newsham v.*

13  *Lockheed Missile & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999), which hold

14  an anti-SLAPP Motion can be brought in federal court; the federal court recognizes

15  the protection of the California anti-SLAPP statute as a substantive immunity from

16  suit and the application of the California anti-SLAPP statute in federal court does

17  not directly interfere with federal procedure, statutes, or rules.

18       PLEASE TAKE FURTHER NOTICE that Obenstine additionally requests

19  he recover from Plaintiff his attorney's fees and costs incurred in defending this

20  action, pursuant to California <u>Code of Civil Procedure</u>, section 425.16(c). The exact

21  amount of fees requested will be demonstrated to the Court by noticed motion after

22  the Court's ruling on this Motion.

23       The Motion will be based on this Notice of Motion, the concurrently filed

24  Declaration of Harry A. Safarian, the attached Memorandum of Points and

25  Authorities served and filed herewith, the records and file herein, and on such

26  evidence as may be presented at the hearing of the Motion.

27       This Motion was made following Obenstine's attorneys' initiation on August

28  16, 2011 of a telephone meet-and-confer with Plaintiff's counsel in compliance

1   with <u>Local Rule</u> 7-3.  Obenstine's counsel further met and conferred in writing on

2   August 22, 2011.

3

4                                            GRANT, GENOVESE & BARATTA, LLP

5

6   Date:     August 29, 2011          By:  /s/ Harry A. Safarian

7                                            DAVID C. GRANT
                                             HARRY A. SAFARIAN
8                                            Attorneys for Defendant, MARK OBENSTINE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION…………………………………………………………….1

II.  THE ANTI-SLAPP STATUTE IS DESIGNED TO DISMISS MERITLESS
     CLAIMS AT THE OUTSET OF LITIGATION……………………………... 4

     A.  Defendant Easily Meets His Burden Under the First Prong of the Anti-
         SLAPP Analysis …………………………………………………………5

         1.  The Web Postings, E-Mails, and Settlement Communications Are
             Constitutionally Protected, Implicating the Anti-SLAPP Statute…5

         2.  Mixed Causes of Action Are Subject To Anti-SLAPP……………8

     B.  Since Plaintiff's Claims are Premised Purely on Incongruous, Speculative
         Theories Unsupported by Facts, Plaintiff Cannot Establish A Probability
         Of Prevailing On The Merits …………………………………………13

         1.  The Litigation Privilege Precludes Plaintiffs' Claims……………14

         2.  The Anti-SLAPP Statute Bars Plaintiff's Claims, as Plaintiff
             Cannot Provide the Required "Uncontroverted and Conclusive
             Evidence" the Communications Were Unlawful…………………18

III. OBENSTINE IS ENTITLED TO RECOVER FEES AND COSTS……………20

IV.  CONCLUSION…………………………………………………………….21

i

# TABLE OF AUTHORITES

**Federal Cases**

*Makaeff v. Trump University, LLC*

   2010 WL 3341638 (S.D.Cal. 2010)........................................................................ 17

*Turner v. Cook*

   2002 WL 34420752 (N.D.Cal. 2002) .................................................................... 15


**State Cases**

*Action Apartment Ass'n, Inc. v. City of Santa Monica*

   41 Cal.4th 1232 (2007)............................................................................... 14

*Adams v. Superior Court*

   2 Cal.App.4th 521 (Cal.App.6th Dist. 1992)......................................................... 17

*A.F. Brown Electrical Contractor. Inc. v. Rhino Electric Supply. Inc.*

   137 Cal.App.4th 1118 (Cal.App.4th Dist. 2006)..................................................... 16

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*

   7 Cal.4th 503 (1994) ................................................................................ 12

*Benasra v. Mitchell Silberberg & Knupp LLP*

   123 Cal.App.4th 1179 (Cal.App.2d Dist. 2004) ............................................. ..........5

*Birkner v. Lam*

   156 Cal.App.4th 275 (Cal.App.1st Dist. 2007) ..................................................... 18

*Blanchard v. DirecTV, Inc.*

   123 Cal.App.4th 903 (Cal.App.2nd Dist. 2004)............................................. ..........6

*Briggs v. Eden Council for Hope & Opportunity*

   19 Cal.4th 1106 (1999).................................................................... ..........6

*Cabral v. Martins*

   177 Cal.App.4th 471 (Cal.App.1st.Dist. 2009) ............................................ . 16, 18

*Dove Audio, Inc. v. Rosenfield, Meyer, & Susman*

    47 Cal.App.4th 777 (1996)................................................................................7, 8

*Equilon Enterprises v. Consumer Cause, Inc.*

    29 Cal.4th 53 (2002)............................................................................. ..........5

*Feldman v. 1100 Park Lane Associates*

    160 Cal.App.4th 1467 (Cal.App.1st Dist. 2008) ............................ .... 6, 16

*Flatley v. Mauro*

    39 Cal.4th 299 (2006)........................................................................… ..18

*Fox Searchlight Pictures, Inc. v. Paladino*

    89 Cal.App.4th 294 (Cal.App.2d Dist. 2001)................................... .... 11, 13

*GeneThera, Inc. v. Troy & Gould Professional Corp.*

    171 Cal.App.4th 901 (Cal.App.2d Dist. 2009)............................. ..........8

*Governor Gray Davis Committee v. American Taxpayers Alliance*

    102 Cal.App.4th 458 (Cal.App.1st Dist. 2002)................................... 13

*G.R. v. Intelligator*

    185 Cal.App.4th 606 (Cal.App.4th Dist. 2010).................................... 18

*Hagberg v. California Federal Bank FSB*

    32 Cal.4th 350 (2004).......................................................................... 17

*Haight Ashbury Free Clinics v. Happening House Ventures*

    184 Cal.App.4th 1539 (Cal.App.1st Dist. 2010)...........................................passim

*Hailstone v. Martinez*

    169 Cal.App.4th 728 (Cal.App.5th Dist. 2008).................................... 14

*HMS Capital, Inc. v. Lawyers Title Co.*

    118 Cal.App.4th 204 (2004).................................................................. 13

*Kashian v. Harriman*

    98 Cal.App.4th 892 (Cal.App.5th Dist. 2002)........................... ….5, 6, 16

*Kolar v. Donahue, McIntosh & Hammerton*

    145 Cal.App.4th 1532 (Cal.App.4th Dist. 2006)........................…….7, 14, 16

iii

*Mann v. Quality Old Time Service, Inc.*
     120 Cal.App.4th 90 (Cal.App.4th Dist. 2004)................................................. ..........4

*Martinez v. Metabolife Internat., Inc.*
     113 Cal.App.4th 181 (Cal.App.4th Dist. 2003).................................................8, 14

*Matson v. Dvorak*
     40 Cal.App.4th 539 (Cal.App.3d Dist. 1995).......................................................... 13

*Neville v. Chudacoff*
     160 Cal.App.4th 1255 (Cal.App.2d Dist. 2008)……………………….......................6, 7

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*
     133 Cal.App.4th 658 (Cal.App.1st Dist. 2005). ....................................................passim

*Rubin v. Green*
     4 Cal.4th 1187 (1993)................................................................... 15, 16, 17

*Rusheen v. Cohen*
     37 Cal.4th 1048 (2006)................................................................... ........15

*Salma v. Capon*
     161 Cal. App. 4th 1275 (Cal.App.1st Dist. 2008) ................................................6, 9

*Saunders v. Superior Court*
     27 Cal.App.4th 832 (Cal.App.2d Dist. 1994)................................................. ....... 12

*Scott v. Metabolife Intern., Inc.*
     115 Cal.App.4th 404 (Cal.App.3d Dist. 2004). ................................................ ....... 13

*Shekhter v. Financial Indemnity Co.*
     89 Cal.App.4th 141 (Cal.App.2d Dist. 2001) ................................................ ..........4

*Taus v. Loftu*
     40 Cal.4th 683 (2007)...................................................................... ..........5

*Wallace v. McCubbin*
     196 Cal.App.4th 1169 (Cal.App. 1 Dist.,2011)............................................. 18, 19

*Wang v. Wal–Mart Real Estate Business Trust*
     153 Cal.App.4th 790 (Cal.App.4th Dist. 2007)................................................. ..........9

iv

*Wilcox v. Superior Court*
   27 Cal.App.4th 809 (Cal.App.2d Dist. 1994)................................................... ...........5

*Wilson v. Parker, Covert & Chidester*
   28 Cal.4th 811 (2002)................................................................................ .......14

*1-800-Contacts, Inc. v. Steinberg*
   107 Cal.App.4th 568 (Cal.App.2d Dist. 2003)..................................................... 13


**California State Statutes**

Cal. Civ. Code § 425.16.....................................................................................passim

Cal. Bus. Prof. Code § 6152..................................................................... .......18


**Nevada State Statutes**

Nevada statute § 7.045 .............................................................................. .......18

v

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

In this action, Plaintiff alleges that Defendant Mark Obenstine conspired with two major law firms to fraudulently induce Plaintiff to accept an unfair settlement offer.  (FAC, ¶¶ 2-3).  In early 2009, Obenstine and Terry Coffing of the Nevada firm of Marquis & Aurbach ("Defendants") represented Plaintiff and other Cosmopolitan unit purchasers in the Nevada state court class action entitled *Daniel Watt, et al. v. Nevada Property 1, LLC, et al.,* Nevada Dist. Ct., Clark County, Case No. A 582 541 ("Nevada Action").[1]  (FAC, ¶¶ 18-19.)  In prosecuting the Nevada Action, Defendants worked to recover the deposits the class members had placed into escrow to purchase condominium units at the Cosmopolitan Resort Casino ("Cosmopolitan") in Las Vegas, Nevada.  (FAC, ¶ 31.)  By the end of 2009, Terry Coffing and Marquis & Aurbach, who were the attorneys of record in the Nevada Action, had negotiated a settlement with Deutsche Bank, the Cosmopolitan defendant's parent company, which entitled class members to recover a significant portion of their escrow deposits.  *Id.*  The district court conducted a fairness hearing and approved the settlement, concluding that the settlement terms were "fair, reasonable and adequate."[2]

Plaintiff accepted the settlement offer but has since concluded that Deutsche Bank had no intention to build his condominium unit and that Defendants were fully aware that Deutsche Bank had no intention to build.  (FAC, ¶ 2.)  More specifically, Plaintiff alleges Defendants Benjamin Easterlin and King & Spalding

---

[1] The class action was certified for settlement purposes.

[2] Defendant respectfully requests the Court take judicial notice of the order, a true and correct copy of which is attached as Ex. B.

1  discovered that Deutsche Bank had no intention to build his condominium unit and

2  persuaded Obenstine, Terry Coffing and Marquis & Aurbach to conceal that

3  Deutsche Bank had no intent to build so class members would be willing to accept

4  a settlement offer that only entitled them to a portion of their escrow deposits.[3]

5  (FAC, ¶ 2.)

6        Not surprisingly, Plaintiff fails to allege any facts or provide any documents

7  supportive of his wholly implausible narrative of conspiracy and fraud involving a

8  German bank, two major law firms, and an attorney in good standing with the State

9  Bar.  Indeed, Plaintiff <u>could not identify a single statement made by Obenstine</u> and

10  <u>could not provide a single document authored by Obenstine</u> that suggests he

11  conspired with Ben Easterlin, King & Spalding, Terry Coffing, Marquis & Aurbach

12  and/or Deutsche Bank to defraud Plaintiff.  Unable to link Obenstine to any alleged

13  fraudulent conduct involving an alleged Deutsche Bank secret, Plaintiff desperately

14  tries to cast doubt on Obenstine's ethics and integrity by claiming he masterminded

15  a collection of disconnected blog entries randomly posted by purchasers of

16  Cosmopolitan condominium units.  Plaintiff suggests the blog entries "prove"

17  Obenstine was working with the other Defendants to fraudulently induce purchasers

18  into accepting an unfair settlement.

19  ─────────────

20     [3] As evidenced by the terms of the engagement letter executed by Plaintiff,

21  Obenstine was operating pursuant to a contingency arrangement in the Nevada

22  Action.  Accordingly, Plaintiff's speculation that Obenstine somehow became

23  aware of Deutsche Bank's "no intention to build" secret and concealed that

24  information to benefit Deutsche Bank, an entity the FAC concedes Obenstine had

25  no connection with, is incongruous and nonsensical.  Obenstine would have

26  received millions of dollars over the attorney's fees he earned in connection with

27  the Nevada Action if the Cosmopolitan purchasers had been able to recover 100%

28  of their deposits.

1    As an initial matter, Plaintiff's presumption that Obenstine masterminded the

2    blog entries is facially absurd since none of the individuals responsible for the

3    postings claimed they were affiliated with or speaking on behalf of Obenstine.

4    Even assuming *arguendo* Obenstine did direct purchasers to post the blog entries,

5    the blog entries are notable for being wholly innocuous and non-actionable

6    expressions of opinion.  For example, Plaintiff relies on blog entries that: (1)

7    praised Cosmopolitan purchaser Sanjay Varma's "skills on the internet," and

8    encouraged others to get involved and "make our numbers greater"; (2) observed

9    the class size was "growing"; (3) complimented Defendants as "smart, aggressive

10   and hav[ing] the resources to go all the way," and noted that the addition of

11   Marquis & Aurbach as counsel, a firm with "an excellent reputation," made the

12   purchasers' legal team "even stronger"; and (4) suggested class members be weary

13   of outside attorneys seeking to "break up" the class for their own economic gain,

14   implying fragmenting the class into smaller groups would eliminate the advantage

15   of strength in numbers and compromise the class action.  (FAC, ¶¶ 29(a)-(i), 30.)

16   More importantly, these innocuous postings, along with the communications

17   allegedly made in connection with obtaining the court's approval of the settlement,

18   plainly constitute protected activity pursuant to <u>California Code of Civil Procedure</u>

19   section 425.16 ("anti-SLAPP statute").  These communications directly concerned

20   and related to the Nevada Action and constituted an unmistakable effort to advance

21   client interests and organize support among potential class members in connection

22   with the prosecution and settlement of the Nevada Action.  (The protected e-mails,

23   postings and efforts to obtain court-approval of the settlement described in the FAC

24   at ¶¶ 23-30 will be collectively referred to as the " Privileged Communications".)

25   All of Plaintiff's claims against Obenstine are subject to a Special Motion to Strike

26   pursuant to the anti-SLAPP statute since <u>Plaintiff predicates every one of his</u>

27   <u>claims,</u> at least in part, on these Communications.

28   Accordingly, Plaintiff's claims must be dismissed unless he can now carry

SPECIAL MOTION TO STRIKE ("ANTI-SLAPP")

1  *his burden at the pleading stage* that he will probably prevail if allowed to proceed.

2   As evidenced by the FAC, Plaintiff can offer no facts, witnesses or documents to

3  support his logically untenable and nonsensical hunch that Obenstine fraudulently

4  concealed Deutsche Bank's "no intention to build" secret even though such

5  concealment would place his professional reputation and law license in jeopardy

6  and cost him millions of dollars of attorney's fees.  Stated otherwise, <u>Plaintiff</u>

7  <u>cannot prove probable success</u> and therefore all of his claims must be dismissed

8  pursuant to the anti-SLAPP statute.

9

10                                  **II.**

11  **THE ANTI-SLAPP STATUTE IS DESIGNED TO DISMISS MERITLESS**

12                  **CLAIMS AT THE OUTSET OF LITIGATION.**

13

14        Section 425.16 provides for the early dismissal of unmeritorious claims by

15  means of a special motion to strike. *See Mann v. Quality Old Time Service, Inc.*,

16  120 Cal.App.4th 90, 102 (Cal.App.4th Dist. 2004) (purpose of the anti-SLAPP

17  statute is to encourage participation in matters of public significance by allowing

18  prompt dismissal of unmeritorious claims concerning a defendant's constitutionally

19  protected speech or petitioning activity).   In this regard, a defendant opposing a

20  SLAPP claim may bring a special motion to strike any cause of action "arising from

21  any act of that person in furtherance of the person's right of petition or free speech

22  under the United States Constitution or California Constitution in connection with a

23  public issue." Cᴀʟ. Cɪᴠ. Pʀᴏᴄ. Cᴏᴅᴇ § 425.16(b)(1).  A special motion to strike

24  may be addressed to individual causes of action and need not be directed to the

25  complaint as a whole. *Shekhter v. Financial Indemnity Co.*, 89 Cal.App.4th 141,

26  150 (Cal.App.2d Dist. 2001).

27        An anti-SLAPP motion involves a two-step process.  First, the defendant

28  must make a threshold showing the challenged causes of action arise from protected

activity.  *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002).

Then, the burden shifts to the plaintiff to demonstrate a probability of prevailing on

the claims. *Taus v. Loftus*, 40 Cal.4th 683, 712 (2007). The defendant need not

prove the challenged conduct is protected by the First Amendment as a matter of

law; the defendant is only required to make a prima facie showing. *Wilcox v.*

*Superior Court*, 27 Cal.App.4th 809, 820 (Cal.App.2d Dist. 1994) (disapproved on

other grounds by *Equilon Enterprises,* at p. 68, fn. 5.).

Courts have taken a fairly expansive view of what constitutes litigation-

related activity for purposes of section 425.16. *See Kashian v. Harriman*, 98

Cal.App.4th 892 (Cal.App.5th Dist. 2002).  The anti-SLAPP statutes protect not

only the litigants, but also their attorneys' litigation-related statements. *Benasra v.*

*Mitchell Silberberg & Knupp LLP*, 123 Cal.App.4th 1179, 1185 (Cal.App.2d Dist.

2004) ("'[A]n attorney who has been made a defendant in a lawsuit based upon a

written or oral statement he or she made on behalf of clients in a judicial proceeding

or in connection with an issue under review by a court, may have standing to bring

a SLAPP motion' [Citation.]").  Stated succinctly, statements made during the

prosecution of litigation, or in connection with litigation, are protected by section

425.16(e).

**A.** **Defendant Easily Meets His Burden Under the First Prong of the**
**Anti-SLAPP Analysis.**

**1.** ***The Blog Postings, E-Mails, and Settlement Communications***
***Are Constitutionally Protected, Implicating the Anti-SLAPP***
***Statute.***

Plaintiffs' FAC clearly implicates the anti-SLAPP statute because it is

predicated exclusively on alleged conduct and communications that constitute

5

1   constitutionally-protected activities as defined by that statute.  Specifically, Plaintiff

2   alleges Obenstine caused the <u>publication of internet postings before and during the</u>

3   <u>disposition</u> of the Cosmopolitan litigation (a) to promote himself and other

4   attorneys, (b) encourage a unified class to maintain strength in numbers, (c) avoid

5   permitting "outsiders" motivated by their own financial interests to fragment the

6   class, and (d) provide encouragement to purchasers to pursue litigation.  Plaintiff

7   also alleges that Obenstine made false representations to the court in connection

8   with the fairness hearing conducted by the court.

9        It is inconsequential that some of the alleged communications occurred

10  before the Nevada Action was filed because communications "preparatory to or

11  anticipation of litigation" fall squarely within the ambit of section 425.16(e)(1)-(2)

12  so long as they are "reasonably relevant" to litigation that is "contemplated in good

13  faith and under serious consideration."  *Neville v. Chudacoff*, 160 Cal.App.4th 1255,

14  1266-67 (Cal.App.2d Dist. 2008); *see also Feldman v. 1100 Park Lane Associates*,

15  160 Cal.App.4th 1467, 1480 (Cal.App.1st Dist. 2008) (communications are in

16  anticipation of litigation so long as the communications are "connected with or have

17  some logical relation to the action"); *Blanchard v. DirectV, Inc.*, 123 Cal.App.4th

18  903, 918-19 (Cal.App.2nd Dist. 2004) (pre-litigation demand letters accusing that

19  plaintiffs had engaged in illegal activity and threatening litigation were protected);

20  *Kashian v. Harriman*, 98 Cal.App.4th 892 (Cal.App.5th Dist. 2002) (plaintiff's

21  unfair competition claims barred because defendant's letter threatening a lawsuit

22  was protected); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106,

23  1115 (1999) (communications preparatory to or in anticipation of the bringing of an

24  action or other official proceeding are entitled to the benefits of section 425.16 and

25  notice of rescission, notice of termination of tenancy and notice of eviction were all

26  protected as predicates to a lawsuit); *Salma v. Capon*, 161 Cal. App. 4th 1275, 1287

27  (Cal.App.1st Dist. 2001) (claim for interference with prospective economic

28

1   advantage subject to section 425.16 since it was based on protected activity of

2   taking preparatory steps for litigation).

3          *Dove Audio, Inc. v. Rosenfield, Meyer, & Susman*, 47 Cal.App.4th 777, 780,

4   offers important guidance.  In *Dove Audio*, Audrey Hepburn's son realized that Ms.

5   Hepburn's charity was not receiving the promised royalties from a compilation in

6   which she and 13 other celebrities participated.  Her son retained a law firm, who in

7   turn sent a letter to the other 13 celebrities asking for their support in the law firm's

8   efforts to recover the money owed to the charities from the recording studio.  *Id.*

9   Ultimately they sought support for a complaint to be filed with the State Attorney

10  General's office about the defendant recording studio's alleged underpayment of

11  royalties to designated charities. *Id.*  The recording studio sued the law firm and

12  others for libel and interference with economic relationship because the letter was

13  defamatory. *Id.*  The court held the letter was entitled to the protection of section

14  425.16 because the law firm's solicitation of support from other potential plaintiffs

15  was an "act in furtherance of [the law firm's] constitutional right of petition." *Id.* at

16  784. The law firm's SLAPP motion was granted, and the Court of Appeal affirmed.

17         As illustrated by *Dove Audio*, the protection of section 425.16 "applies not

18  only to the filing of lawsuits, but extends to conduct that relates to... litigation,

19  including statements made in connection with or in preparation of litigation." *Kolar*

20  *v. Donahue, McIntosh & Hammerton*, 145 Cal.App.4th 1532, 1537 (Cal.App.4th

21  Dist. 2006).  "This position reflects that 'courts have adopted "a fairly expansive

22  view of what constitutes litigation-related activities within the scope of section

23  425.16." [Citation.]'  Accordingly, although litigation may not have commenced, if

24  a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of

25  litigation "contemplated in good faith and under serious consideration,'" [citations]

26  then the statement may be petitioning activity protected by section 425.16." *Neville*

27  *v. Chudacoff*, 160 Cal.App.4th 1255, 1268 (Cal.App.2d Dist. 2008).

28         In this action, it is undeniable that the alleged blog postings and email

7

1   communications were directly connected to and exclusively concerned the Nevada

2   Action, which was filed as a class action, certified and settled.  Indeed, those

3   communications stated an intention to file the Nevada Action, discussed the

4   competence of proposed class counsel and sought to create a united front among

5   class members and thus are substantively identical to the protected communication

6   in *Dove Audio*.  Moreover, it is undeniable that alleged the settlement-related

7   communications also constitute "protected activities" as they were made in

8   pleadings and hearings and addressed directly to the court for the purpose of

9   obtaining the court's approval of the proposed class-action settlement. *GeneThera,*

10  *Inc. v. Troy & Gould Professional Corp.*, 171 Cal.App.4th 901, 905 (Cal.App.2d

11  Dist. 2009) (attorney's communications directed toward settlement are protected

12  activity subject to the absolute litigation privilege and the SLAPP statute.)  These

13  alleged communications were made directly to the court when the viability of the

14  settlement was "under consideration or review by…a judicial body", and are on

15  their face subject to the SLAPP statute.  (CAL. CODE CIV. PROC. § 425.16 (e)(1),

16  (e)(2).)  Accordingly, both categories of communications are protected speech

17  subject to the SLAPP statute.

18

19              **2.    *Mixed Causes of Action Are Subject To Anti-SLAPP.***

20

21         In the event a court determines that a lawsuit involves both protected and

22  unprotected activity, the court looks to the gravamen of the claims to determine if

23  the case is a SLAPP.  *Peregrine Funding, Inc. v. Sheppard Mullin Richter &*

24  *Hampton LLP*, 133 Cal.App.4th 658, 672 (Cal.App.1st Dist. 2005).  Determining

25  the gravamen of the claims requires examination of the specific acts of alleged

26  wrongdoing and not just the form of the plaintiff's causes of action. Id at 671-73.

27  Protected conduct which is merely *incidental* to the claims does not fall within the

28  ambit of section 425.16. *Martinez v. Metabolife Internat., Inc.*, 113 Cal.App.4th

181, 188 (Cal.App.4th Dist. 2003); *Peregrine, supra,* at p. 672. Where the defendant's protected activity will only be used as evidence in the plaintiff's case, and none of the claims are based on it, the protected activity is only incidental to the claims. *Wang v. Wal–Mart Real Estate Business Trust*, 153 Cal.App.4th 790, 809–810 (Cal.App.4th Dist. 2007).  A lawsuit is subject to an anti-SLAPP motion if "at least one of the underlying acts is protected conduct."  *Salma*, *supra*, 161 Cal.App.4th at 1287.  Stated otherwise, "[w]here the defendant shows that the gravamen of a cause of action is based on nonincidental protected activity as well as nonprotected activity, it has satisfied the first prong of the SLAPP analysis." *Haight Ashbury Free Clinics v. Happening House Ventures,* 184 Cal.App.4th 1539, 1551 (Cal.App.1st Dist. 2010) (citation omitted).

In *Peregrine Funding, LLC v. Sheppard Mullin Richter & Hampton LLC*, *supra*, 133 Cal.App.4th at 666-667, plaintiffs alleged a law firm (Sheppard Mullin) provided erroneous legal advice to assist the co-defendants in carrying out a Ponzi scheme. Litigation with the SEC later ensued, in which the law firm engaged in delaying tactics that favored the interests of some of the law firm's clients to the detriment of the law firm's other clients. Plaintiffs filed a lawsuit against Sheppard Mullin for legal malpractice and breach of fiduciary duty.  *Id.* at 667.  The trial court denied Sheppard Mullin's anti-SLAPP motion, ruling that the claim did not fall within the scope of the statute. *Id.* at 668.  The Court of Appeal disagreed, holding that the first prong of the anti-SLAPP statute is satisfied where at least part of the claim was based on petition activity.  *Id.* at 674-675.

Notably, the Court of Appeal agreed with the trial court that the essence, or gravamen, of plaintiffs' claims is that Sheppard breached duties of care and loyalty owed to them.  *Id.* at 671.  But the Court of Appeal ruled that "this conclusion does not obviate the *need to examine the specific acts of wrongdoing* plaintiffs allege regarding Sheppard's conduct in the SEC proceeding."  *Id*.  In addressing plaintiffs'

contention that some of the alleged wrongful conduct did not constitute speech or petitioning activity, the Court of Appeal stated:

> Plaintiffs complain of some conduct that is not in the nature of speech or petitioning activity. For example, plaintiffs submitted a declaration from law professor Stephen McG. Bundy opining that Sheppard violated ethical rules by failing to disclose potential conflicts of interest or obtain informed consent from all clients to its joint representation of Hillman, Peregrine and the Funding Entities. Likewise, the entity-plaintiffs' complaint [sic] that Sheppard abandoned them by withdrawing from the representation, and then improperly failed to turn over all client documents when they were requested by the bankruptcy trustee, does not appear to target speech or petitioning activity. But plaintiffs also challenge some of Sheppard's actions in connection with the SEC suit that fall squarely in the category of petitioning activity. For example, plaintiffs complain Sheppard opposed the SEC's efforts to obtain restraining orders and to appoint a receiver. These actions necessarily involved "written or oral statement[s] ... made before a ... judicial proceeding" … While these acts may not have been communicative per se, they appear to constitute "conduct in furtherance of the exercise of the constitutional right of petition" ...in that they were litigation tactics the firm employed to benefit its client Hillman's position in an ongoing lawsuit. *Id.*

In the end, California courts have expressly held that a mixed cause of action, one that is based on both protected and non-protected activity, is subject to anti-SLAPP motion if the "gravamen" of the cause of action targets protected activity. *Haight Ashbury, supra,* 184 Cal.App.4th at pp. 1550–1553.  This rule is

10

1   based on the principle that "a plaintiff cannot frustrate the purposes of the [anti-]

2   SLAPP statute through a pleading tactic of combining allegations of protected and

3   nonprotected activity under the label of one 'cause of action.'" *Fox Searchlight*

4   *Pictures, Inc. v. Paladino*, 89 Cal.App.4th 294, 308, fn. omitted (Cal.App.2d Dist.

5   2001). As interpreted in *Haight Ashbury,* this means that if a defendant shows the

6   plaintiff's cause of action could be based solely on "nonincidental protected

7   activity," the defendant satisfies the first prong of the anti-SLAPP statute, even if

8   the cause of action includes additional allegations of non-protected activity and

9   could also be based solely on any of its allegations of non-protected activity. *Id.* at

10   p. 1551 & fn. 7.

11         In *Haight Ashbury*, a non-profit corporation sued its founder for breach of

12   fiduciary duty, alleging that he committed sixteen wrongful acts, each of which

13   harmed the non-profit. The court determined that the first prong of the SLAPP

14   statute was satisfied even though only two of 16 subparagraphs of the breach of

15   fiduciary duty cause of action alleged protected activities. *Id.* at 1541, 1153-1154.

16   The court explained that the two factual bases targeting protected activity "could

17   each be the sole and adequate basis for liability under the cause of action," and for

18   this reason were not "merely incidental" to the numerous additional allegations

19   targeting nonprotected activity. *Id.* at p. 1551. When the court makes the

20   determination as to whether protected activity is "merely incidental" to a cause of

21   action, the inquiry does not involve counting the allegations and seeing which ones

22   predominate. Even a single allegation in a multi-paragraph cause of action may

23   suffice to bring the claim within the anti-SLAPP statute. *Id.* at 1550-1554. The court

24   further explained that if the two factual bases targeting protected activities had been

25   the only bases for the cause of action, the cause of action would have been subject

26   to the anti-SLAPP statute, and the pleading of the other unprotected theories of

27   liability did not eliminate or reduce the chilling effect on the defendants' exercise

28   of their rights of free speech and petition. *Ibid.* Defendants still faced the burden

1   of litigation and potential liability for acts deemed protected by the anti-SLAPP

2   statute.

3       In this action, it is clear the FAC is subject to the anti-SLAPP statute since

4   <u>Plaintiff predicates every one of his claims on protected activity</u>, at least in part.

5   Indeed, Plaintiff predicates every claim on Defendant's alleged "actions and

6   omissions" and those "actions and omissions" include activity that is undeniably

7   "protected activity" – the Defendant's alleged solicitation communications and

8   fraudulent misrepresentations to the court in the Cosmopolitan action.  Importantly,

9   it would be wholly disingenuous for Plaintiff to argue that Defendants' alleged

10  fraudulent conduct is not protected because it part of fraudulent conspiracy defined

11  by Defendants' alleged fraudulent misrepresentations and concealment.  As

12  previously discussed, Plaintiff alleges Obenstine fraudulently conspired with a

13  German bank and two major law firms to fraudulently induce Cosmopolitan

14  purchasers to accept an unfair settlement offer.  The remaining allegations against

15  Obenstine are speculative and ultimately boil down to undeniably protected

16  communications.  Plaintiff attempts to link Obenstine to the alleged illegalities

17  committed by others via allegations of conspiracy are unavailing since "conspiracy"

18  does not and cannot form the gravamen of the FAC as it pertains to Obenstine.  In

19  other words, Plaintiff cannot tie Obenstine to alleged wrongful acts committed by

20  "co-conspirators" in an attempt to conceal the "gravamen" of the FAC as it pertains

21  to Obenstine—his Privileged Communications.  "A conspiracy cannot be alleged as a

22  tort separate from the underlying wrong it is organized to achieve." *Applied*

23  *Equipment Corp. v. Litton Saudi Arabia Ltd.* 7 Cal.4th 503, 513 (1994).  "Conspiracy

24  to commit a tort is not a separate cause of action from the tort itself…." *Saunders v.*

25  *Superior Court*, 27 Cal.App.4th 832, 845 (Cal.App.2d Dist. 1994).

26      Plaintiff's conspiracy theories by their nature are incidental and cannot form

27  the gravamen of the FAC. Where both constitutionally protected and unprotected

28  conduct is implicated by a cause of action, a plaintiff may not "immunize" a cause of

1  action challenging protected free speech or petitioning activity from an anti-SLAPP

2  motion by the artifice of including extraneous allegations concerning nonprotected

3  activity.  *Scott v. Metabolife Intern., Inc.*, 115 Cal.App.4th 404, 414 (Cal.App.3d

4  Dist. 2004), *citing Fox Searchlight Pictures, Inc.*, supra, 89 Cal.App.4th at 308.

5

6  **B.    Since Plaintiff's Claims are Premised Purely on Incongruous,**

7  **Speculative Theories Unsupported by Facts, Plaintiff Cannot**

8  **Establish A Probability Of Prevailing On The Merits.**

9

10  Because Obenstine has met his burden to show the challenged causes of

11  action arise from protected activities, the burden shifts to Plaintiff to show a

12  probability of prevailing on the causes of action in the FAC.  *Governor Gray Davis*

13  *Committee v. American Taxpayers Alliance*, 102 Cal.App.4th 458, 459 (Cal.App.1st

14  Dist. 2002).  The "probability of prevailing" standard is tested by the same standard

15  governing a motion for summary judgment.  To establish a probability of prevailing

16  on a cause of action, a plaintiff "must demonstrate that the complaint is both legally

17  sufficient and supported by a sufficient prima facie showing of facts to sustain a

18  favorable judgment if the evidence submitted by the plaintiff is credited."  *Matson*

19  *v. Dvorak*, 40 Cal.App.4th 539, 548 (Cal.App.3d Dist. 1995).

20  A court not only evaluates a plaintiff's case, but also a defendant's opposing

21  evidence to determine whether it defeats the plaintiff's claims as a matter of law.  *1-*

22  *800-Contacts, Inc. v. Steinberg*, 107 Cal.App.4th 568, 585 (Cal.App.2d Dist. 2003).

23  Importantly, in opposing an anti-SLAPP motion, the plaintiff cannot rely on the

24  allegations of the complaint, but <u>must produce evidence that would be admissible at</u>

25  <u>trial</u>.  Thus, declarations may not be based upon "information and belief," and

26  documents submitted without the proper foundation are not to be considered.  *HMS*

27  *Capital, Inc. v. Lawyers Title Co*., 118 Cal.App.4th 204, 212 (Cal.App.2d Dist.

28  2004) (citations omitted).  Furthermore, "a plaintiff cannot simply rely on his or her

1   pleadings, even if verified.  Rather, the plaintiff must adduce competent, admissible

2   evidence." *Hailstone v. Martinez*, 169 Cal.App.4th 728, 735 (Cal.App.5th Dist.

3   2008). As outlined below, Plaintiff cannot satisfy his burden.[4]

4

5         **1.**     ***The Litigation Privilege Precludes Plaintiff's Claims.***

6

7         Pursuant to California's litigation privilege, as codified in Civil Code section

8   47(b), a publication or broadcast made as part of a judicial proceeding is privileged.

9   *See Action Apartment Ass'n, Inc. v. City of Santa Monica,* 41 Cal.4th 1232, 1241

10   (2007).  This "privilege is absolute in nature, applying to all publications,

11   irrespective of their maliciousness. The usual formulation is that the privilege

12   applies to any communication (1) made in judicial or quasi-judicial proceedings; (2)

13   by litigants or other participants authorized by law; (3) to achieve the objects of the

14   litigation; and (4) that [has] some connection or logical relation to the action. The

15   privilege is not limited to statements made during a trial or other proceedings, but

16   may extend to steps taken prior thereto, or afterwards." *Id.* (citations and internal

17   quotation marks omitted, modification in original).  The privilege is interpreted

18   very broadly,[5] applying to "any communication, whether or not it amounts to a

19   _____

20       [4] Unlike the Rule 9(b) standard, which requires Plaintiff to <u>plead</u> specific

21   "averments of fraud," regardless of whether "fraud" is an element of the claim, the

22   SLAPP statute requires Plaintiff to <u>prove</u> with <u>actual evidence</u> that he can prevail on

23   his claims.  Here, Plaintiff must not only state legally sufficient claims, he must

24   substantiate them. *Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811,

25   821(2002).

26       [5] In *Kolar*, *supra*, 145 Cal.App.4th at 1540, the court noted the litigation

27   privilege did not apply to "garden variety attorney malpractice" claims.  In this

28   action, Plaintiff's malpractice claim is predicated solely on speculative allegations

publication ..., and <u>all torts except malicious prosecution</u>.'"  *Rusheen v. Cohen,* 37 Cal.4th 1048, 1057 (2006), *quoting Silberg v. Anderson,* 50 Cal.3d 205, 212, (1990) (emphasis added).  Indeed, "[f]or well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b)." *Rubin v. Green* 4 Cal.4th 1187, 1193 (1993).

The court in *Turner v. Cook* 2002 WL 34420752, 5 (N.D.Cal. 2002), offered compelling insights regarding the scope and breadth of the litigation privilege, stating:

> In *Silberg,* the court . . . specifically noted that attorney liability for fraudulent communications, perjured testimony, and abuse of process were all precluded by the litigation privilege. Each of these torts requires allegations of unethical or criminal conduct, yet the court found that such allegations were not a bar to satisfaction of the four part test noted above. Therefore, the litigation privilege applies equally to malicious or fraudulent conduct and statements. Plaintiffs' argument that the litigation privilege does not apply where unethical conduct is alleged is therefore contrary to controlling authority from the California Supreme Court and must be rejected.  (citations omitted)

that Obenstine directed the Privileged Communications to advance a fraudulent conspiracy, and not a failure to perform in accordance with the appropriate standard of care.  Thus, the apparent limitation in *Kolar* is inapplicable and does not support any argument that the litigation privilege does not apply to preclude Plaintiff's malpractice claim.

Even though the litigation privilege has been applied primarily to provide absolute immunity from tort liability, "courts have applied the litigation privilege to breach of contract cases." *Feldman v. 1100 Park Lane Associates*, 160 Cal.App.4th 1467, 1486, 1494 (Cal.App.1st Dist. 2008) (nothing that the privilege may be applied to contract claims when "its application furthers the policies underlying the privilege."). It is difficult to overstate the scope and breadth of the litigation privilege as California courts have held the privilege applies to communications regardless of:

- Whether they were "made with malice or the intent to harm," and "does not depend on the publisher's motives, morals, ethics or intent." *Kashian v. Harriman*, 98 Cal.App.4th 892, 913 (Cal.App.5th Dist. 2002).

- Whether they are false. *Cabral v. Martins*, 177 Cal.App.4th 471, 485 (Cal.App.1st.Dist. 2009) ("It applies even if the communication involved forgery or falsification of documents, such as the presentation for probate of a forged will.").

- Whether they are unethical or motivated by an attorney's self-interest. *A.F. Brown Electrical Contractor. Inc. v. Rhino Electric Supply. Inc.*, 137 Cal.App.4th 1118, 1126 (Cal.App.4th Dist. 2006).

- Whether they constitute a "wrongful solicitation" by an attorney for clients. *Rubin*, 4 Cal.4th at 1196 (complaint founded on allegations defendant law firm made misrepresentations to mobile home park residents in the course of soliciting residents to retain the firm to sue was barred by the absolute litigation privilege).[6]

---

[6] The application of the litigation privilege to an attorney's solicitation does not mean that alleged attorney solicitation is unregulated. *See Rubin*, 4 Cal.4th at 1198 (noting how attorney solicitation is regulated by the criminal laws and the

- Whether they occurred before suit was filed. *Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350, 361 (2004) (the privilege encompasses statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit).

- Whether made "during settlement negotiations." *Makaeff v. Trump University, LLC*, 2010 WL 3341638, 8 (S.D.Cal. 2010) ("courts have found the 'connection or logical relation' test satisfied where the communication was directed towards settlement of an anticipated lawsuit.").

"Any doubt as to whether the privilege applies is resolved in favor of applying it." *Adams v. Superior Court,* 2 Cal.App.4th 521, 529 (Cal.App.6th Dist. 1992) (emphasis added).

In this action, all of Plaintiff's claims are predicated on alleged tortious conduct that falls squarely under the absolute protection of the litigation privilege. The FAC alleges three categories of tortious conduct – (1) fraudulent concealment of an alleged King & Spalding conflict of interest, (2) fraudulent misrepresentations regarding the value of the proposed settlement and the value of Defendants' services in relation to other attorneys, and (3) unethical use of "runners" and "cappers" to recruit clients. Plaintiff exclusively predicates all of his claims, including his claims for attorney malpractice and breach of contract, on this alleged tortious conduct. Accordingly, all of Plaintiff's claims are necessarily barred by the litigation privilege.

---

State Bar). In *Rubin*, the Supreme Court specifically concluded that these remedies are sufficient to address alleged wrongful attorney solicitation. *Id.* at 1199.

**2.**     ***The Anti-SLAPP Statute Bars Plaintiff's Claims, as Plaintiff Cannot Provide the Required "Uncontroverted and Conclusive Evidence" the Communications Were Unlawful.***

In the FAC, Plaintiff boldly alleges, without supporting evidence or documents, that Defendant violated Business & Professions Code § 6152 and Nevada statute § 7.045, statutes which prohibit the use of "runners" and "cappers". As a result, Plaintiff is likely to argue that the Privileged Communications do not constitute protected activity since they were made illegally by "runners" and "cappers." Such an argument would be meritless. "[T]he fact that a defendant's conduct was alleged to be illegal, or that there was some evidence to support a finding of illegality, does not preclude protection under the anti-SLAPP law." *Wallace v. McCubbin*, 196 Cal.App.4th 1169, 1188 (Cal.App. 1 Dist.,2011); *see also Birkner v. Lam*, 156 Cal.App.4th 275, 278–279, 285 (Cal.App.1st Dist. 2007) (landlord's termination notice did not fall outside the scope of the anti-SLAPP statute merely because it allegedly violated the Rent Ordinance); *G.R. v. Intelligator*, 185 Cal.App.4th 606, 612–616 (Cal.App.4th Dist. 2010) (attorney's filing of a credit report in connection with a post-dissolution motion, in violation of California rules of court, was protected activity); *Cabral v. Martins*, 177 Cal.App.4th 471, 479–481 (Cal.App.1st Dist. 2009) (lodging a will, pursuing probate proceedings, and defending in litigation matters constituted protected activity, even though the acts violated child support evasion statutes.) An exception exists only where "the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence." *Flatley v. Mauro,* 39 Cal.4th 299, 316, 320 (2009) (defendant's conduct was criminal extortion as a matter of law). "If, however, a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of

18

1    prevailing on the merits." *Id*. at 316.

2        Since Obenstine absolutely *does not* concede use of "runners" and "cappers",

3    Plaintiff bears the burden of proffering "uncontroverted and conclusive evidence"

4    of unlawful conduct by Obenstine to avoid dismissal pursuant to the anti-SLAPP

5    statute. *See Wallace*, *supra*, 196 Cal.App.4th 1169, 1188 (holding that wrongful

6    eviction and retaliatory eviction causes of action arose out of protected activity

7    since defendants "do not admit any illegality; nor does the evidence *conclusively*

8    establish that *they* committed conduct that was illegal as a matter of law").

9        Even a cursory reading of the FAC conclusively demonstrates that Plaintiff

10   will not be able to satisfy his burden since it is reasonable to assume Plaintiff

11   cannot proffer any evidence beyond the four corners of the FAC.  Indeed, it is

12   reasonable to assume that Plaintiff would have proffered specific facts and evidence

13   of Obenstine's alleged unlawful conduct if he was aware of any facts or in

14   possession of any evidence even remotely supportive of his "runners" and

15   "cappers" allegation.  After all, Plaintiff's attorney would have had to carefully and

16   thoroughly investigate Plaintiff's speculative allegation that Obenstine used

17   "runners" and "cappers" before launching such a serious and potentially injurious

18   attack given his need to act in accordance with professional duties and ethical

19   standards.  Succinctly stated, Plaintiff simply alleges the web postings at issue were

20   directed by Obenstine and has not proffered any facts or evidence that suggest he

21   can now, in good faith, satisfy his burden by "*conclusively* establish[ing] that

22   [Obenstine] committed conduct that was illegal as a matter of law" *See Wallace*,

23   *supra*, 196 Cal.App.4th at 1188.

24       The four corners of the FAC reveal that Plaintiff is simply engaged in highly

25   questionable speculation.  He is unable to articulate what Obenstine's precise

26   relationship (other than as counsel) was with the purported "runners" and "cappers"

27   and unable to contend the "runners" and  "cappers" were given any consideration

28   for praising Obenstine as an attorney qualified to handle the Nevada Action.

1    Even assuming *arguendo* Plaintiff could rely on such pure speculation to

2   satisfy his burden, it is wholly unclear how the blog postings could be understood

3   as illegal communications.  The blog postings identified by Plaintiff in the FAC,

4   which ostensibly constitute the most "egregious" postings Plaintiff was able to

5   cherry-pick from over 400-pages of postings, are non-actionable expressions of

6   opinion.  For example, Kay Jackson, one of the purported "cappers", posted blog

7   entries that reflect she was nothing more than a concerned investor trying to create

8   strength in numbers and promote the attorneys she believed could achieve a

9   positive outcome for the class.  Kay Jackson's praise for Obenstine, criticism of

10  attorneys she viewed as less qualified and calls for group unity are precisely the

11  type of "protected activities" that fall squarely with the anti-SLAPP statute.

12  Plaintiff clearly cannot provide the necessary "uncontroverted and conclusive

13  evidence" to establish that Obenstine committed conduct that was illegal as a matter

14  of law.  Accordingly, the FAC must be dismissed.

15

16                                **III.**

17          **OBENSTINE IS ENTITLED TO RECOVER FEES AND COSTS**

18          Under section 425.16, a "prevailing defendant . . . shall be entitled "to

19  recover attorney's fees and costs in connection with a successful anti-SLAPP

20  motion."  As the FAC should be stricken, in whole or in part, pursuant to Section

21  425.16, Obenstine is entitled to recover the attorney's fees and costs incurred in

22  connection with this Special Motion to Strike.  Obenstine will provide the total

23  amount of attorney's fees and costs upon calculation (via a noticed motion for

24  attorney's fees and costs) after the completion of the hearing and issuance of a

25  ruling granting this Special Motion to Strike.

26

27

28

1

### IV.

### CONCLUSION

Based on the arguments and authorities set forth above, Defendant Mark Obenstine respectfully requests the Court strike Plaintiff's First Amended Complaint in its entirety pursuant to Code of Civil Procedure section 425.16. Moreover, Obenstine respectfully requests an award of the attorney's fees and costs incurred in connection with this Special Motion to Strike, pursuant to section 425.16.

GRANT, GENOVESE & BARATTA, LLP

Date:     August 29, 2011          By:  /s/ Harry A. Safarian
                                        DAVID C. GRANT
                                        HARRY A. SAFARIAN
                                        Attorneys for Defendant, MARK OBENSTINE