1   David C. Grant (SBN 53635)
2   dcg@ggb-law.com
    Harry A. Safarian (SBN 204106)
3   has@ggb-law.com
    GRANT, GENOVESE & BARATTA, LLP
4   2030 Main Street, Suite 1600
    Irvine, CA  92614
5   Phone: (949) 660-1600
    Fax: (949) 660-6060
6
    Attorneys for Defendant, MARK OBENSTINE
7

8              **UNITED STATES DISTRICT COURT**
9
10            **CENTRAL DISTRICT OF CALIFORNIA**

11  | JAMES ESTAKHRIAN, on behalf of | Case No.: CV11-3480 GAF (CWX) |
12  | himself and all others similarly situated, | |
    | | Assigned to Hon. Gary A. Feess |
13  | Plaintiff, | |
    | | **DEFENDANT MARK OBENSTINE'S** |
14  | v. | **MOTION FOR TERMINATING** |
    | | **SANCTIONS, DISQUALIFICATION OF** |
15  | | **COUNSEL, ISSUE AND/OR MONETARY** |
    | MARK OBENSTINE, BENJAMIN F. | **SANCTIONS; MEMORANDUM OF** |
16  | EASTERLIN IV, TERRY A. COFFING, | **POINTS AND AUTHORITIES** |
17  | KING & SPALDING, LLP, and | |
    | MARQUIS & AURBACH, P.C., | [Filed concurrently with (1) Declaration of |
18  | | Harry A. Safarian; (2) Declaration of Mark |
19  | Defendants. | Obenstine and (3) [Proposed] Order] |
20  | | |
21  | | Date:   November 19, 2012 |
    | | Time:   9:30 a.m. |
22  | | Place:  Courtroom 740 |
    | | Judge:  Hon. Gary A. Feess |
23
24
25
26
27
28

                              1

TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:

PLEASE TAKE NOTICE that on November 19, 2012, at 9:30 a.m., or as soon thereafter as the matter may be heard by Hon. Gary A. Feess, in Courtroom 740 of the United States District Court, Central District of California, located at the Edwin R. Roybal Federal Building, 255 E. Temple Street, Los Angeles, California 90006, Defendant MARK OBENSTINE will, and hereby does, move the Court for an order dismissing this action, and additional relief requested below.

This relief is sought on the following grounds: Plaintiff's attorneys deliberately and surreptitiously appropriated voluminous legally protected electronic transmissions to and from attorney Obenstine's password protected, private e-mail account with the assistance of a third-party, Crestridge Partners;[1] Such transmissions were known to Plaintiff's attorneys to include, and did include, hundreds of privileged attorney-client communications and attorney work product exchanges between Obenstine and his co-counsel, and information protected by privacy rights; Plaintiff's attorneys admittedly reviewed all of the protected electronic communications; any reasonable attorney would have known the materials were protected and non-discoverable; Plaintiff's attorneys actions were timed to prevent Obenstine from seeking relief from the Court, which is evidenced by the fact Plaintiff's attorneys admittedly received and reviewed at least 1,053 pages, at the latest, within four business days of issuing a December 8, 2011 subpoena to Crestridge under the guise of "jurisdictional discovery," but nine days before the December 23, 2011 production date called for in the subpoena; the timing of

---

[1] Obenstine co-founded Crestridge. He left the partnership to start a litigation practice, but paid to continue using Crestridge's e-mail server, sending and receiving protected communications including, but not limited to, tens of thousands of attorney-client and word product exchanges.

MOTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL, ISSUE AND/OR MONETARY SANCTIONS

Plaintiff's attorney's orchestrated receipt and review of the Crestridge materials did deprive Obesntine, his clients, and co-counsel the absolute right to seek Court intervention and prevent the irreparable harm Plaintiff's attorneys caused; Magistrate Judge Carla Woehrle has determined the materials reviewed contained protected attorney-client and work product exchanges, as well as other non-discoverable exchanges, but has stated issues of terminating or disqualification sanctions are to be determined by this Court.

As an alternative to dismissal, Obenstine will, and hereby requests an order that Plaintiff's attorneys be disqualified from representing any parties against Obenstine and any matters related to the Cosmopolitan Resort in Las Vegas, and that an evidentiary hearing be set after the hearing on this motion for the determination of appropriate monetary sanctions against Plaintiff and his attorneys and in favor of Obenstine.

This Motion is made pursuant to Fed. R. Civ. P., Rule 45, Local Rule 83-7, pursuant to the Court's inherent authority, and upon the additional authorities set forth in the attached Memorandum of Points and Authorities. This motion is made following multiple meet and confer attempts by Obenstine's counsel beginning in late-2011. The most recent meet and confer occurred on September 4, 2012. (Safarian decl., Ex. "A".)

This Motion will be made upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, and the concurrently filed Declarations of Mark Obenstine and Harry A. Safarian with exhibits thereto, upon all documents/pleadings on file with the Court concerning this matter, and on such additional matters that may be presented at the hearing.

DATED:  October 22, 2012                    GRANT, GENOVESE & BARATTA, LLP


                              By:   Harry A. Safarian
                                    DAVID C. GRANT
                                    HARRY A. SAFARIAN
                              Attorneys for Defendant, MARK OBENSTINE

MOTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL,
ISSUE AND/OR MONETARY SANCTIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff and other investors in the Cosmopolitan Resort in Las Vegas retained attorney Mark Obenstine to sue for refunds of escrow deposits made towards condominium purchases. A class was formed and a settlement was reached. Obenstine's clients recovered approximately two-thirds of their deposits—more than any other Cosmopolitan investors. The District Court of Clark County, Nevada, approved Plaintiff's settlement as "fair, reasonable and adequate."

Plaintiff brings this meritless action claiming Obenstine compromised his professional integrity and gave up millions of dollars in contingency legal fees by participating in a global conspiracy to drive the settlement amount down in favor of the defendant—a foreign bank Plaintiff concedes Obenstine had no connection with.

Obenstine filed a motion to dismiss for grounds including lack of personal jurisdiction. The Court found Obenstine's California contacts insufficient for general jurisdiction, or for specific limited jurisdiction.

On October 24, 2011, this Court granted Plaintiff limited jurisdictional discovery. (Docket No. 46.) Plaintiff's attorneys abused the privilege. They deliberately and secretly accessed and analyzed 1,053 pages of password-protected e-mails between attorney Obenstine and his clients, co-counsel, and others. With full knowledge the e-mails contained voluminous communications protected by the attorney-client communication privilege and the attorney work product doctrine, and materials otherwise protected by privacy rights, Plaintiff's lawyers analyzed every page.

Obenstine was forced to file a motion for a protective order and sanctions against Plaintiff's attorneys. (Docket No. 48.) Magistrate Judge Woehrle heard the motion and, on August 8, 2012, issued an order concluding the e-mails did, indeed, include materials protected by the attorney-client privilege, work product doctrine, privacy

1

rights, and materials completely unrelated to this action. (Docket No. 83.) At the hearing on the motion, Judge Woehrle stated she would defer to this Court on the issue of disqualification of Plaintiff's counsel and/or terminating sanctions. (Safarian decl., ¶ 3.) Judge Woehrle stressed her role would be limited to setting forth parameters concerning which of the documents comprising the production were discoverable. *Id.* Consistent with her initial comments, Judge Woehrle's order set forth specific parameters for the production and withholding of documents. (Docket No. 83.)

Judge Woehrle's order confirmed the Crestridge production included non-discoverable materials largely consisting of attorney-client communications, attorney work product exchanges, and materials comprising "personal matter" or unrelated altogether to the Cosmopolitan matter. (Docket No. 83.) Judge Woehrle ordered:

> Counsel for [Obenstine] shall promptly review the Initial Crestridge Production and identify any documents or portions of documents falling within the non-discoverable categories discussed above. Where only a portion of an email chain is protected from disclosure, counsel for defendants shall make limited redactions in accordance with the above rulings.

> Counsel for defendants shall create a privilege log stating as specifically as possible the basis for any redaction or withholding and identifying the category of document into which the item falls. *Id.*

Obenstine's counsel, in compliance with Judge Woehrle's instructions, served a privilege log and a redacted production of the documents on all counsel. (Safarian decl., ¶ 4, Ex. "B".) The review revealed 287 pages containing non-discoverable communications, of which 234 pages were entirely non-discoverable, and 53 required

2

M OTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL, AND/OR ISSUE SANCTIONS

redactions. *Id.* The bulk of the materials were withheld or redacted based on attorney-client or work product protections. *Id.* To date, Plaintiff has not disputed any of the items on the privilege log. *Id*. Thus, it is clear Plaintiff's attorneys improperly analyzed *at least* 287 pages of exchanges in violation of the rights of Obenstine, his litigation clients, co-counsel, and others.

The harm caused cannot be reversed. The proverbial bell has rung. The case must be dismissed. At a minimum, Plaintiff's attorneys must be disqualified.

As the California Supreme Court recently held in *Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807 (2007), a lawyer who *innocently* comes across notes from his opposing counsel will be disqualified for knowingly reviewing or using the document. Here, Plaintiff's attorneys' actions were far more egregious than the offending lawyer's in *Rico* and, at an absolute minimum, compel disqualification.

# II.
## STATEMENT OF FACTS

Mark Obenstine and four others co-founded Crestridge Partners, a commercial real estate finance and advisement company. Obenstine decl., ¶ 2. Obenstine invested, among other assets, money in forming the partnership and setting up its e-mail system. *Id.* With the decline of the Southern California real estate market, he took an extended sabbatical from the partnership to pursue a litigation practice. Obenstine decl., ¶ 4. He continued using his Crestridge e-mail account for sending and receiving private, password-protected e-mails. *Id*. A clear demarcation was established between Obenstine and Crestridge: Obenstine's e-mail account would be used strictly for his litigation practice. *Id.* The account would be password-protected and strictly confidential. *Id.*

In 2010, Obenstine stopped using the e-mail account. Obenstine decl., ¶ 4. Before doing so, he obtained a commitment from Crestridge's president, Reza Jafary, that the e-mails would all be purged from the server to protect their sanctity. *Id.* This was never

M OTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL, AND/OR ISSUE SANCTIONS

1  done. Plaintiff's attorneys, through Crestridge, secretly infiltrated the password

2  protected, private e-mail account. In violation of the attorney-client privilege, the work

3  product doctrine, privacy rights, and state and federal criminal statutes, Plaintiffs

4  pilfered the e-mails.

5       Plaintiff's attorneys abused the Court's processes by serving a subpoena under

6  the guise of "jurisdictional discovery" the Court authorized. Obenstine decl., ¶¶ 5 - 8.

7       The December 8, 2011 subpoena was clearly calculated to include absolutely

8  privileged, private communications. It sought every e-mail attorney Obenstine sent or

9  received regard the Cosmopolitan litigation:

10          All e-mails to or from Mark Obenstine at the e-mail address

11          mark@crestpar.com concerning, referring or relating to the

12          legal dispute regarding earnest money deposits for the

13          purchase of condominium units in a development known as

14          the   Cosmopolitan   Resort   and   Casino   Law   Vegas

15          ("Cosmopolitan"), in Las Vegas, Nevada.

16  Safarian decl., ¶ 5, Exhibit "C."

17       On its face, the subpoena demanded *all* e-mails concerning the Cosmopolitan,

18  regardless of their privileged and confidential nature. Thus, ***within hours*** of receiving

19  the subpoena, and in order to determine whether a protective order might be necessary,

20  Obenstine's counsel left a voicemail message for Jafary, inquiring whether the e-mails

21  still existed. Jafary did not return the call. Safarian decl., ¶ 5.

22       On December 9, 2011—one day after service of the subpoena— Obenstine's

23  counsel reached Jafary on his cell phone and advised the subpoena sought privileged

24  materials, and that a motion for protective order would be filed before the subpoena's

25  December 23, 2011 production date if the communications had not already been

26  purged. Jafary refused to discuss the e-mails or subpoena, and stated his attorney would

27  address the matter with Obenstine's counsel. Safarian decl., ¶ 6.

28

---

4

M OTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL,
AND/OR ISSUE SANCTIONS

On December 14, Crestridge's lawyer, Brad Mokri (a law school classmate of plaintiff's counsel, Mr. Alikani), advised that Crestridge *already* transferred the protected e-mails to Plaintiff's lawyers. Safarian decl., ¶ 7 and Exhibits "D" - "F." Mokri confirmed the transfer was "voluminous." *Id*. Obenstine's counsel demanded Crestridge provide copies of the produced e-mails. *Id.* He also demanded the electronic transmissions between Plaintiff's attorneys and Crestridge in order to identify when the transfer(s) took place (and further verify the subpoena was issued to launder e-mails Plaintiff already had). *Id*. Crestridge declined. *Id.*

Also on December 14, Obenstine's counsel sent the first of multiple meet and confer letters to Plaintiff's attorneys, requesting "any documents received from Crestridge be turned over to us immediately, and that we have an opportunity to seek a protective order. . ." Safarian decl., ¶ 9 – 12, and Exhibits "G" to "J". Plaintiff's counsel refused to return or destroy the voluminous attorney-client, work product and private e-mails, and conceded having reviewed all the e-mails which, on their face, evidence their privileged nature: "**[B]ased on our preliminary <u>review</u> of the documents produced so far, the <u>vast majority</u> of documents are clearly relevant and discoverable under the terms of the Court's October 24 order**." Safarian decl., ¶ 10, and Exhibit "H" (emphasis added).

Obenstine's attorneys continued to meet and confer in an effort to resolve the matter informally, exchanging numerous letters and e-mails with Plaintiff's attorneys. Safarian decl., ¶ 9 – 12, Exhibits "G" to "J".

The timeline of events leading up to Plaintiff's review and analysis of the 1,053 pages compromising what Plaintiff's represent is the "initial" Crestridge production evidence Plaintiff's attorneys knowingly obtained and analyzed manifestly protected communications:

1. On December 8, 2011—within hours of issuance of the subpoena, Obenstine's counsel left a voice message for Crestridge's president, Reza Jafary, inquiring whether the e-mails still existed.

2. On December 9, 2011—less than 24 hours after service of the Crestridge subpoena, Obenstine's counsel informed Jafary the voluminous of e-mail communications were privileged and confidential, and an order from the Court protecting them would be obtained.

3. Although the subpoena called for production on December 23, 2011, on December 14, 2011, Crestridge's lawyer advised Obenstine's counsel the e-mails had already been downloaded from Crestridge's server and transmitted to Plaintiff's counsel.

4. On December 15, 20110—eight days before the subpoena's production date—Plaintiff's attorney confirmed having reviewed the e-mails, and concluded the "***vast majority***" were "***clearly relevant and discoverable***."

   Since Crestridge was on notice one day after the subpoena was issued that a protective order would be filed, it is clear Plaintiff's attorneys and Crestridge colluded to effectuate a transfer of documents certain to include protected materials before the Court could intervene.

   Obenstine does not take lightly his charge that Plaintiff's attorneys deliberately obtained sought and obtained voluminous e-mails between a lawyer and his co-counsel and clients long before the subpoena's production date, and before Obenstine could

M OTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL, AND/OR ISSUE SANCTIONS

seek the Court's protection. There is no room for dispute: Plaintiff's attorneys coordinated with Crestridge to infiltrate attorney Obenstine's private, password protected e-mail account. In the process, they obtained a massive volume of attorney-client and work product communications, which Crestridge promised to purge in 2009. Plaintiff's attorneys then, in an attempt to gain a tactical advantage, reviewed the communications with full knowledge they were privileged. This was done at least eight days before the production date called for in the subpoena.

Thus, Obenstine was denied his statutory right to timely seek the Court's protections against the disclosure of the legally protected e-mails. The harm caused by Plaintiff's attorneys is serious and irreversible.

Terminating sanctions are clearly necessary and warranted. Our courts have issued terminating sanctions or disqualified counsel in far less grievous cases involving the improper review of attorney-client and work product communications.

In the event the Court is not inclined to dismiss the action with prejudice now, it should, at a minimum, order the disqualification of Plaintiff's lawyers.

### III.

### PLAINTIFFS' ATTORNEYS' DELIBERATE AND SURREPTITIOUS ACQUISITION AND ANALYSIS OF VOLUMINOUS CONFIDENTIAL AND PRIVILEGED ELECTRONIC COMMUNICATIONS CAUSED OBENSTINE, HIS CO-COUNSEL AND CLIENTS IRREVERSIBLE HARM

"The attorney-client privilege, albeit a statutory one, is the oldest of the confidential communications privileges." *People v. Godlewski*, 17 Cal. App.4th 940, 945 (Cal. App. 2d Dist., 1993), citing *Sullivan v. Superior Court*, 2 Cal.App.3d 64 (Cal. App. 2d Dist., 1972). It has been part of California statutory law in one form or another since 1851. *Southern Cal. Gas. Co. v. Public Utilities Com.*, 50 Cal.3d 31, 37 (1990). Indeed, the inviolable privilege has a pedigree tracing back 400 years. *Id.* It seeks to

M OTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL, AND/OR ISSUE SANCTIONS

insure the right of every person to freely and fully confer and confide in one having knowledge of the law and skilled in its practice in order that the former may have adequate advice. *Swidler & Berlin v. United States*, 524 U. S. 399, 403l (1998); *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir., 2002); *Southern Cal. Gas. Co.*, 50 Cal.3d at 37. "It is no mere peripheral evidentiary rule but is held vital to the effective administration of justice." *Roberts v. City of Palmdale*, 5 Cal.4th 363, 380 (1993); *Solin v. O'Melveny  Meyers, LLP*, 89 Cal.App.th 451 (Cal. App. 2d Dist. 2001). Thus, the privilege is fundamental and vital to the proper functioning of our judicial system and thought to promote broader public interests in the observance of law and administration of justice. *People v. Superior Court*, 25 Cal.4th 703, 715 (2001); *Wells Fargo Bank v. Superior Court*, 22 Cal.4th 201, 213 (2000).

The purpose of the attorney-client privilege is to promote full and open discussion between clients and their attorneys. *Reilly v. Greenwald  Hoffman, LLP*, 196 Cal.App.4th 891, 900 (Cal. App. 4th Dist. 2011). The privilege belongs to the client, who is privileged to refuse to disclose—and to prevent another from disclosing—a confidential communication between lawyer and client. Cal. Evid. Code § 954; *see also*, *Wells Fargo Bank*, *supra*, at 213. The protection of confidences and secrets involved in the attorney-client relationship is not merely a rule of professional conduct. It involves public policies of paramount importance reflected in numerous statutes. *In re Jordan*, 12 Cal.3d 575, 580 (1972).

If the right to the privilege against disclosure is established, the privilege should be rigidly enforced. *McKnew v. Superior Court of City and County of San Francisco*, 23 Cal.2d 58, 67 (1943); *Gordon v. Superior Court*, 55 Cal.App.4th 1546, 1557 (Cal. App. 2d Dist. 1997). Where a communication is a confidential one between lawyer and client, the privilege is absolute and disclosure may not be ordered without regard to relevance, necessity, or any particular circumstances peculiar to the case. *Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 732-733 (2009). If the lawyer-

M OTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL, AND/OR ISSUE SANCTIONS

client relationship is established, the basic policy behind the privilege supports a liberal construction in favor of the exercise of the privilege. *People v. Velasquez*, 192 Cal.App.3d 319, 327 fn. 4 (Cal. App. 5th Dist., 1987). The privilege is strictly construed since it suppresses relevant facts that may be necessary for a just decision. *People v. Gionis*, 9 Cal.4th 1196, 1207-1208 (1995); *Southern Cal. Gas Co. v. Public Utilities Commission*, 50 Cal.3d 31, 37 (1990); *General Dynamics v. Superior Court*, 7 Cal.4th 1164, 1169-1170 (1994).

Like the attorney-client communication privilege, any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances. *In re Murphy*, 560 F.2d 326, 336 (9th Cir., 1977); Cal. Civ. Proc. Code § 2018(d). Documents protecting an attorney's impressions, conclusions or legal theories are absolutely privileged. *County of Los Angeles v. Superior Court*, 82 Cal.App.4th 819, 833 (Cal. App. 4th Dist., 1996). The absolute privilege gives attorneys the privacy required to allow comprehensive investigation and preparation concerning both the favorable and unfavorable aspects of their cases, and to prevent attorneys from taking advantage of their adversary's efforts. Cal. Civ. Proc. Code § 2018(a).

"At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Hobbs v. Municipal Court* 223 Cal.App.3d 670, 692 (Cal. App. 4th Dist., 1991), disapproved on another point in *People v. Tillis*, 18 Cal.4th 284, 295 (1998). "Where an attorney's own thoughts, impressions, research, or theories are set down in a *writing,* the writing is 'core' work product" and its discovery is absolutely barred. *2,022 Ranch, L.L.C. v. Superior Court*, 113 Cal. App. 4th 1377, 139, quoting *Izazaga v. Superior Court*, 54 Cal.3d 356, 382 and fn. 19 (1991). Other materials prepared by or on behalf of an attorney in representing a client are "'general' work product" subject to protection. *United States v. Nobles*, 422 U. S. 225, 239 (1975); *2,022 Ranch*, *supra*, at

M OTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL, AND/OR ISSUE SANCTIONS

1390.

Judge Woehrle has concluded the Crestridge production includes information protected by the attorney-client communication privilege, the attorney work product doctrine, privacy rights, and matters having no relevance/connection to this action. Judge Woehrle remained expressly neutral on the issue of sanctions, stating she would defer to this Court on the matter, and denying them *without* prejudice. Plaintiff has not disputed the fact the production includes at least 287 pages containing non-discoverable communications, of which 234 pages were entirely non-discoverable, and 53 required redactions. *Id.*

Sanctions are not only appropriate, they are essential to mitigate the harm caused to Obenstine, his co-counsel and clients. Plaintiff's attorneys' conduct violated California Penal Code section 502, which states, in part, "any person who commits any of the following acts is guilty of a public offense:" [2]

> (1) Knowingly accesses and without permission . . . uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

> (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer

---

[2] Obenstine references state and federal criminal statutes to underscore the gravity of the actions leading to the filing of this motion, but by no means intends to suggest criminal penalties.

M OTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL, AND/OR ISSUE SANCTIONS

network.

The materials were also criminal under the Electronic Communications Privacy Act. 28 USCA §§ 2810 et seq.

Moreover, Plaintiff's attorneys initially refused to comply with Federal Rules compelling return, destruction, or sequestration of the materials. In an effort to mitigate the harm caused by Plaintiff's attorneys' calculated receipt and compilation of the protected communications, Obenstine requested Plaintiff's attorneys immediately destroy or return the materials. Plaintiff's attorneys refused, demonstrating further contempt for the law, which requires:

> If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

Fed. R. Civ. P., Rule 45(d)(2)(B).

Finally, on December 19, 2011, after admittedly studying *all* of the privileged, confidential, private communications, Plaintiff's attorneys agreed to sequester the documents. Unfortunately, the harm cannot be reversed.

There was never any mystery to Plaintiff's attorneys that the e-mails were

11

M OTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL, AND/OR ISSUE SANCTIONS

privileged and confidential, as they were to and from a lawyer's private e-mail account involving ongoing class action lawsuits with thousands of represented clients. Indeed, many of the e-mails Obenstine generated to his clients, lawyers and co-counsel were clearly labeled "privileged" and "confidential." The production included substantial e-mails between Obenstine and his clients and co-counsel, including defendants herein, Terry A. Coffing and Marquis Aurbach Coffing. These exchanges involved discussions of legal strategy and reflected the thoughts and impressions of Obenstine and his co-counsel. The communications also included confidential settlement communications, which are protected to facilitate candid discussion and promote public policy favoring dispute resolution. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003); Cal. Evid. Code §§ 1152 and 1154; *C & K Engineering Contractors v. Ambert Steel Co.*, 23 Cal.3d 1, 13 (1978); *Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 480 n.3 (Cal. App. 1st Dist., 1989).

Plaintiff's attorneys, having obtained and reviewed voluminous e-mails before the "due date" identified on Crestridge's subpoena, cannot credibly claim they did not deliberately seek out and analyze materials they knew were protected. They also cannot dispute they calculated the receipt of the materials such that Obenstine, his clients and co-counsel would be unable to seek the Court's protections before the e-mails were studied. There is no dispute Plaintiff's attorneys targeted confidential attorney-client, work product, and private electronic communications, which include at least 1,053 pages. They reviewed each page knowing they were certain to include, and did include, hundreds of protected communications. Plaintiff's counsel acted in secret. They did not acknowledge having the e-mails until Crestridge was forced to disclose it transmitted them.

Plaintiff's attorneys acted full knowledge their conduct was improper. They admittedly studied the communications thoroughly enough to conclude, in their own words, "most" are relevant to jurisdiction. Then, in defiance of the Federal Rules, they

12

M OTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL, AND/OR ISSUE SANCTIONS

failed to immediately destroy, return or sequester the documents in compliance with the Federal Rule of Civil Procedure, Rule 45(d)(2)(B).

The damage has been done, and cannot be fully undone. Appropriate sanctions to at least mitigate the harm caused.

## IV.
## PLAINTIFF'S ATTORNEYS' ACTIONS MUST BE MET WITH APPROPRIATE SANCTIONS

### A.   Plaintiff's Attorneys' "Abusive Litigation Practices" Merit Dismissal, but Cannot Reverse the Harm Caused.

Courts have inherent equitable power to impose terminating sanctions (dismissal or default) for "failure to prosecute, contempt of court, or *abusive litigation practices.*" *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir., 1987) (emphasis added); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307-1308 (11th Cir., 2009) (interception of privileged e-mail between plaintiffs and their counsel constituted "egregious misconduct that disrupted the litigation," meriting terminating sanctions.

Where, as here, *"willfulness, fault, or bad faith"* is apparent and extreme, dismissal is proper. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Among the factors requiring dismissal under the Court's inherent power are the inefficacy of lesser sanctions, the fact the misconduct was pre-mediated and relates to the matter in controversy, the fact the prejudice to Obenstine, his clients, co-counsel, and opposing counsel with whom he had confidential settlement discussions is considerable, and the "extraordinary circumstances" surrounding the misdeeds of Plaintiff's lawyers. *United States v. Hughes Aircraft Co.*, 67 F.3d 242, 247 (9th Cir. 1995).

In *Televideo Systems, Inc.*, *supra*, at 916, the Ninth Circuit found the district

---

13

1  court did not abuse its discretion in striking Heidenthal's answer and entering default

2  judgment in excess of $11 million against him after he perjured himself at deposition

3  and filed false pleadings. The Ninth Circuit found the sanctions justified

4  notwithstanding Heidenthal's pre-trial recantation of his testimony, which the Court

5  found was orchestrated to "reap tactical advantage." *Id.* at 917. The court observed:

> Courts have inherent equitable powers to dismiss actions or
> enter default judgments for failure to prosecute, contempt of
> court, or abusive litigation practices. *See Roadway Express,*
> *Inc. v. Piper,* 447 U. S. 752, 764, 100 S. Ct. 2455, 2463, 65 L.
> Ed.2d 488 (1980); *Link v. Wabash R.R.*, 370 U. S. 626, 632, 82
> S. Ct. 1386, 632, 8 L. Ed. 2d 734 (1962); *United States v.*
> *Moss-American, Inc.*, 78 F.R.D. 214, 216 (E.D. Wis. 1978).
> Although the inherent powers have been criticized as
> "nebulous" . . . they are necessary to enable the judiciary to
> function. *See Michaelson v. United States*, 266 U. S. 42, 65, 45
> S. Ct. 18, 19, 69 L. Ed. 162 (1924) (recognizing the inherent
> power of the courts to punish for contempts as essential to the
> administration of justice).

19  In the instant case, lesser sanctions will never undo the harm to Obenstine, his co-

20  and prior opposing lawyers, or the countless clients who unwittingly had their

21  confidential attorney-client communications infiltrated and reviewed in blithe disregard

22  of the rules of evidence, privacy rights, ethical standards and state and federal criminal

23  statutes. The ethical and legal violations in the instant case are numerous, and at least as

24  pervasive and grave as those in *Televideo*. Here, Plaintiff's attorneys secretly

25  orchestrated the receipt of an extraordinary collection of privileged electronic

26  communications. The actions were deliberate and calculated. Plaintiff's attorneys knew

27  they were seeking out an attorney's e-mails, and that they were certain to uncover

28

14

M OTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL,
AND/OR ISSUE SANCTIONS

countless privileged, confidential, legally protected communications between a lawyer and his clients, his co-counsel, and his personal counsel. Indeed, these actions were in clear violation of state and federal criminal statutes discussed herein.

Plaintiff's lawyers then obtained the voluminous communications and admittedly analyzed them, knowing full well they were protected. They breached their ethical obligations to disclose they had the materials, admitting receipt of the materials only after Crestridge's lawyer confessed to the production.

Each of the hundreds of protected e-mails reviewed represents an independent legal and ethical violation. Thus, it can be said Plaintiff's lawyers committed *hundreds* of separate violations. It is difficult to conceive of a more compelling case for dismissal.

Indeed, the violations in the instant case are far more egregious than those in *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 796 (7th Cir. 2009). In *Salmeron*, an attorney violated an "Attorneys' Eyes Only" agreement with opposing counsel by leaking sensitive documents obtained through discovery to unauthorized third parties. The Court found dismissal of the client's lawsuit justified as a sanction for the attorney's conduct.

Additionally, the ethical violations here demonstrate a lack of merit to Plaintiff's claims justifying dismissal. In *Hammond Packing Co. v. Arkansas*, 212 U. S. 322, 349-54, the Supreme Court upheld a default judgment for the defendant's failure to comply with an order to produce documents. The Court reasoned it could presume, from the failure to produce evidence relating directly to the merits of the matter, that the case was lacking in merit.

In the instant case, the fact Plaintiff's attorneys improperly infiltrated attorney Obenstine's private, password protected e-mail account and analyzed 1,053 pages containing hundreds of sacrosanct e-mails evidences a lack of merit to Plaintiff's case. That Plaintiff's attorneys would go to such measures under the guise of "jurisdictional discovery" evidences the frivolous nature of Plaintiff's highly implausible theory

MOTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL, AND/OR ISSUE SANCTIONS

Obenstine sacrificed millions of dollars in contingency fees by deliberately driving down a settlement in favor of a defendant with home he had absolutely no connection. Clearly, this case presents a more compelling basis for dismissal than *Hammond*.

**B.  At a Minimum, Plaintiff's Attorneys' Should be Disqualified.**

In *Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807 (2007), the California Supreme Court disqualified a plaintiff's attorney for conduct similar to, but far less grievous than, the conduct by Plaintiff's attorneys in this case. The plaintiff's attorney in *Rico inadvertently* came across notes of a discussion between opposing counsel and their expert witness. *Id.* at 811-812. Although the document was not labeled as attorney work product, it was "absolutely privileged" by the attorney work product doctrine, as would be apparent at first glance. *Id.* at 813. The plaintiff's attorney failed to notify defense counsel, but gave copies of the document to co-counsel and the plaintiffs' expert witnesses, and used the document in deposing the defendant's expert. *Id.* at 812. The Supreme Court found plaintiffs' attorney acted unethically by failing to notify defendants and, instead, "surreptitiously using it to gain maximum adversarial value from it." *Id.* at 813.

Unlike the initially innocent lawyer in *Rico*, Plaintiff's attorneys in this case embarked on an intricate, pre-mediated plan with Crestridge to obtain what they *knew* at the outset were countless e-mails protected by the attorney-client privilege, the attorney work product doctrine, numerous state and federal statutes, and privacy rights. The voluminous e-mails were secretly transmitted electronically by Crestridge to Plaintiff's lawyers. Plaintiff's attorneys, with full knowledge they were in possession of privileged communications, deliberately continued analyzing the protected communications. They hid this fact until Crestridge, through its counsel, confessed the materials were transferred.

16

Plaintiff's attorneys' actions are far more pervasive and serious than those of the initially innocent attorney in *Rico*. Under the guise of "jurisdictional discovery" this Court authorized, Plaintiff's attorneys orchestrated receipt of, and knowingly analyzed, a huge volume of protected communications. They did not disclose receiving the materials. They analyzed them long before production was required under a subpoena, failing to even hint at their having obtained attorney Obenstine's private e-mails. They intentionally worked with Crestridge to deny Obenstine, his clients and co-counsel the absolute right to seek the Court's protection. These actions compel dismissal or, at a minimum, disqualification.

### C. Plaintiff's Attorneys Should be Ordered to Reimburse Obenstine for the Costs of This Motion.

Where, as here, Plaintiff's attorneys' "conduct rises to the level of bad faith and/or willful disobedience of a court order," the Court may order sanctions "appropriate under the circumstances." (Local Rule 83-7; *Zambrando v. City of Tustin*, 885 F.2d 1473, 1481 (9th Cir., 1989).

The Court ordered jurisdictional discovery only. Plaintiff's attorneys abused the order by issuing a subpoena certain to result in the production of voluminous privileged, confidential, private electronic communications. Plaintiff's attorneys concede coordinating with a third-party to access voluminous e-mails between attorney Obenstine and his clients, co-counsel, and personal counsel long before Obenstine could file a motion for protective order, and long before the subpoena's production date. The actions were calculated with full knowledge of their impropriety. Plaintiff's attorneys' conduct was a clear violation of the law, and an abuse of the Court's permission of limited jurisdictional discovery. These actions caused Obenstine and countless third-parties irreparable harm, including violations of privacy. The harm cannot be undone.

17

1    Obenstine should not have been forced to incur legal fees in connection with this

2 motion. Monetary sanctions payable to Obenstine are absolutely warranted.

3

4                                       **V.**

5                                 **CONCLUSION**

6    The many layers of discovery abuses by Plaintiff's lawyers require dismissal. The

7 harm caused by Plaintiff's attorneys cannot be reversed.

8    At a minimum, in only partial mitigation of the serious harm to Obenstine and his

9 unwitting clients who had their rights violated, Plaintiff's lawyers should be

10 disqualified. Plaintiff and his attorneys should be ordered to pay Obenstine appropriate

11 monetary sanctions, reimbursing him for the significant costs associated with this

12 motion. Alternatively, the Court should issue a finding Obenstine is not subject to

13 jurisdiction in California in connection with this litigation.

14 DATED:  October 22, 2012            GRANT, GENOVESE & BARATTA, LLP

15

16                                   By:   Harry A. Safarian
                                         DAVID C. GRANT
17                                       HARRY A. SAFARIAN
                                     Attorneys for Defendant, MARK OBENSTINE
18

19

20

21

22

23

24

25

26

27

28

M OTION FOR TERMINATING SANCTIONS, DISQUALIFICATION OF COUNSEL,
AND/OR ISSUE SANCTIONS