IRVINE LAW GROUP LLP
S. Ron Alikani (SBN 206939)
ralikani@irvinelawgroup.com
780 Roosevelt
Irvine, California 92620
Telephone:   (949) 653-6153
Facsimile:    (949) 653-1277

MEHRI & SKALET PLLC
Steven A. Skalet, Esq. (*Admitted Pro Hac Vice*)
sskalet@findjustice.com
1250 Connecticut Avenue, NW Suite 300
Washington, DC 20036
Telephone:   (202) 822-5100
Facsimile:    (202) 822-4997

FAY LAW GROUP PLLC
Raymond C. Fay (*Admitted Pro Hac Vice*)
rfay@faylawdc.com
1250 Connecticut Ave, NW Suite 200
Washington, DC 20036
Telephone:   (202) 263-4604
Facsimile:    (202) 261-3508

CHAVEZ & GERTLER LLP
Mark A. Chavez (SBN 090858)
mark@chavezgertler.com
Dan Gildor (SBN 223027)
dan@chavezgertler.com
42 Miller Avenue
Mill Valley, California 94941
Telephone:   (415) 381-5599
Facsimile:    (415) 381-5572

Attorneys for Plaintiff James Estakhrian
and the Proposed Class

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ESTAKHRIAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARK OBENSTINE, BENJAMIN F. EASTERLIN IV, TERRY A. COFFING, KING & SPALDING, LLP and MARQUIS & AURBACH, P.C.,<br><br>Defendants. | **Case No. CV11-3480-FMO (CWx)**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     July 2, 2015<br>Time:    10:00 a.m.<br>Judge:   Hon. Fernando M. Olguin<br>Crtrm.:  22 – 5th Floor |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................2

II.   FACTUAL AND PROCEDURAL BACKGROUND ....................................3

III.  THE TERMS OF THE PROPOSED SETTLEMENT ...............................5

    A.    CERTIFICATION OF THE SETTLEMENT CLASS ........................5

    B.    THE BENEFIT CONFERRED ON THE CLASS ...........................6

    C.    VALUE OF THE SETTLEMENT TO CLASS MEMBERS ...............6

    D.    SETTLEMENT ADMINISTRATION ....................................7

    E.    CLASS NOTICE .........................................................8

    F.    RIGHT TO OBJECT OR OPT OUT ......................................8

    G.    RELEASE OF CLAIMS .................................................8

    H.    ATTORNEYS' FEES AND COSTS AND SERVICE AWARD ........9

    I.    NO EFFECT ON OTHER PENDING CASES ..........................10

IV.   ARGUMENT ...................................................................10

    A.    THE STANDARD FOR REVIEW OF A CLASS ACTION
       SETTLEMENT ...........................................................10

    B.    THE COURT SHOULD PRELIMINARILY APPROVE THE
       PROPOSED CLASS SETTLEMENT ...................................12

       1.    Conditional Certification of the Proposed Class Is
          Appropriate ...........................................................12

            a)    The Class Is Numerous and Ascertainable ....................12

            b)    Questions of Law and Fact Are Common to the
               Class ...........................................................12

            c)    Plaintiff's Claims Are Typical .............................13

            d)    Plaintiff Is Adequate .......................................14

            e)    Common Issues Predominate ...............................14

            f)    A Class Action Is Superior to Individual Litigation ......15

       2.    The Settlement Is the Product of Arm's-Length, Informed
          Negotiations ...........................................................16

       3.    There Are No Indicia of Fraud or Collusion ...................18

       4.    The Proposed Notice and Notice Plan Are Sufficient ..........18

-i-

1
2

5.      The Settlement Is Fair and Reasonable Considering the Benefits Conferred, the Case Value against the K&S Defendants, and Significant Litigation Risks ...........................20

3

6.      The Proposed Class Representative Award Is Reasonable ......22

4

V.      PROPOSED SCHEDULE FOR REMAINING PROCEDURES.................23

5

VI.     CONCLUSION ..............................................................................24

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Austin v. Pennsylvania Dept. of Corr.*
  876 F. Supp. 1437 (E.D. Pa. 1995) .................................................................. 17

*Barbosa v. Cargill Meat Solutions Corp.*
  297 F.R.D. 431 (E.D. Cal. 2013) ............................................................. 13, 14

*Barcia v. Contain-A-Way, Inc.*, No. 07CV938-IEG-JMA
  2009 WL 587844 (S.D. Cal., March 6, 2009)................................................ 23

*Behrens v. Wometco Enterprises, Inc.*
  118 F.R.D. 534 (S.D. Fla. 1988) ..................................................................... 22

*Boyd v. Bank of Am. Corp.*
  300 F.R.D. 431 (C.D. Cal. 2014) .................................................................... 13

*Brown v. NFL Players Ass'n*
  281 F.R.D. 437 (C.D. Cal. 2012) .................................................................... 14

*Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP
  OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010) ...................................... 17

*Charron v. Pinnacle Grp. N.Y. LLC*
  874 F. Supp. 2d 179 (S.D.N.Y. 2012)............................................................. 20

Churchill Village, L.L.C. v. Gen. Elec.
  361 F.3d 566 (9th Cir. 2004)............................................................................ 19

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992).......................................................................... 10

*Create-A-Card, Inc. v. Intuit, Inc.*
  2009 WL 3073920 (N.D. Cal. Sept. 22, 2009) ............................................... 18

*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974) ......................................................................................... 19

*Ellis v. Costco Wholesale Corp.*
  657 F.3d 970 (9th Cir. 2011)...................................................................... 13, 14

*Fulford v. Logitech Inc.*
  2010 WL 807448 n.1 (N.D. Cal. 2010) ........................................................... 23

*Gen. Tel. Co. of Sw. v. Falcon*
  457 U.S. 147 (1982) ......................................................................................... 13

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998)..................................................................*passim*

*Hopson v. Hanesbrands, Inc.*, No. CV-08-0844
  2088 WL 3385452 (N.D. Cal. Aug. 8, 2008) ................................................. 11

*In re Bluetooth Headset Products Liab. Litig.*
654 F.3d 935 (9th Cir. 2011)..................................................................18

*In re Bridgestone/Firestone Inc. Tires Products Liability Litigation*
205 F.R.D. 503 (S.D. Ind. 2001)...........................................................14

*In re Nat'l Football League Players' Concussion Injury Litig.*
301 F.R.D. 191 (E.D. Pa.)......................................................................20

*In re Rubber Chems. Antitrust Litig.*
232 F.R.D. 346 (N.D. Cal. 2005)...........................................................14

*In re Tableware Antitrust Litig.*
484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................11

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions
Act (FACTA) Litig.*
295 F.R.D. 438 (C.D. Cal. 2014) ...........................................................18

*In re: Mego Fin. Corp. Sec. Litig.*
213 F.3d 454 (9th Cir. 2000)..................................................................22

*IUE-CWA v. Gen. Motors Corp.*
238 F.R.D. 583 (E.D. Mich. 2006) ........................................................17

*Jordan v. L.A. County*
669 F.2d 1311 (9th Cir.), *vacated on other grounds*, 459 U.S. 810
(1982) .....................................................................................................12

*Linney v. Cellular Alaska P'ship*
151 F.3d 1234 (9th Cir. 1998)................................................................21

*Mann & Co. v. C-Tech Indus., Inc.*, No. 08-11312-RGS,
2010 WL 457572 (D. Mass. Feb. 5, 2010) ............................................23

*Munoz v. PHH Corp.*
2013 WL 2146925 (E.D. Cal. May 15, 2013) ........................................15

*Murillo v. Pacific Gas & Elec. Co.*
266 F.R.D. 468 (E.D. Cal. 2010) ...........................................................11

*Murillo v. Texas A&M Univ. Sys.*
921 F. Supp. 443 (S.D. Tex. 1996) .........................................................11

*Myrick v. Mastagni*
185 Cal. App. 4th 1082 (Cal. App. 2d Dist. 2010) ..................................4

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004)............................................................11

*Officers for Justice v. Civil Service Comm. of San Francisco*
688 F.2d 615 (9th Cir. 1982)..................................................................10

*Ontiveros v. Zamora*
303 F.R.D. 356 (E.D. Cal. 2014) ...........................................................19

-iv-

*Ortega v. Natural Balance, Inc.*
  300 F.R.D. 42 (C.D. Cal. 2014) ................................................ 16

*Rodriguez v. W. Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) ................................................... 19

*Slaven v. BP America, Inc.*
  190 F.R.D. 649 (C.D. Cal. 2000) ............................................ 12

*Smilow v. Southwestern Bell Mobile Sys., Inc.*
  323 F.3d 32 (1st Cir. 2003) ..................................................... 15

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ................................................... 22

*Van Bronkhorst v. Safeco Corp.*
  529 F.2d 943 (9th Cir. 1976) ................................................... 10

*Van Vranken v. Atlantic Richfield Co.*
  901 F. Supp. 294 (N.D. Cal. 1994) ......................................... 22

*Walco Investments, Inc. v. Thenen*
  168 F.R.D. 315 (S.D. Fla. 1996) ............................................. 16

*Wal-Mart Stores, Inc. v. Dukes*
  131 S.Ct. 2541 180 L.Ed.2d 374 (2011) ................................. 13

*Weeks v. Kellogg Co.*
  2013 WL 6531177, n.128 (C.D. Cal. Nov. 23, 2013) ............... 18

*White v. Experian Information Solutions, Inc.*
  803 F. Supp. 2d 1086 (C.D. Cal. 2011) .................................. 22

*Williams v. Vukovich*
  720 F.2d 909 (6th Cir. 1983) ................................................... 17

*Wolin v. Jaguar Land Rover N. Am., LLC*
  617 F.3d 1168 (9th Cir. 2010) ................................................. 15

**STATUTES**

Fed. R. Civ. P. 23 ......................................................... *passim*

Federal Practice & Procedure: Civil §1778 ............................ 14

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 876 ........................................ 4

Federal Judicial Center
  *Manual for Complex Litigation* (4th ed. 2004) .............. 10, 11, 12

H. Newberg & A. Conte
  4 *Newberg on Class Actions* (4th ed. 2002) .................. *passim*

1

**NOTICE AND MOTION**

2 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that on July 2, 2015 at 10:00 a.m., or as soon

4 thereafter as the matter may be heard in Courtroom 22 in the United States District

5 Court for the Central District of California, located at 312 North Spring Street, Los

6 Angeles, CA 90012, Plaintiff James Estakhrian ("Plaintiff") will move, and hereby

7 does move, the Court for an order that: 1) preliminarily approves the class action

8 settlement with Defendants King & Spalding LLP ("King & Spalding") and

9 Benjamin F. Easterlin, IV ("Easterlin") (together, the "K&S Defendants");

10 2) conditionally certifies a class consisting of all of those who did not opt out in the

11 settlements of *Daniel Watt, et al. v. Nevada Property 1, LLC, et al.,* Nevada District

12 Court, Case No. A582541 (the "*Watt* Litigation"); 3) appoints the Irvine Law

13 Group, LLP, Mehri & Skalet PLLC, Fay Law Group PLLC, and Chavez & Gertler

14 LLP as class counsel; 4) appoints Plaintiff James Estakhrian as the class

15 representative; 5) appoints A.B. Data, Ltd. as the settlement administrator;

16 6) approves the notice of the settlement and the procedures for providing such

17 notice; 7) sets a briefing schedule for Plaintiff's motions for attorneys' fees, costs,

18 and award of a class representative payment and for final approval; 8) schedules a

19 final fairness hearing; and 9) otherwise stays this action with respect to the K&S

20 Defendants except for proceedings to effectuate the proposed settlement.

21        Such an order is appropriate because the proposed settlement meets the legal

22 standard for preliminary approval and is in the best interests of the class.  The

23 proposed notice explains the settlement terms in straightforward language; the

24 proposed notice procedures provide the best practicable notice to the class; and

25 class members will have an opportunity to object to or opt out of the settlement.

26        This motion is based on this notice of motion, the following points and

27 authorities, the declarations of Mark Chavez, Ron Alikani, Steven Skalet, and

28 Raymond Fay and exhibits thereto, including the settlement agreement and

proposed class notice; all pleadings and papers filed in this case; and on such other further written and oral argument and authorities as may be presented at or before the hearing on this matter.  This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 27, 2015.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.     INTRODUCTION

Plaintiff James Estakhrian hereby moves the Court for an order preliminarily approving a non-reversionary class action settlement to resolve claims on behalf of approximately 1,479 individuals who purchased condominium units in the East and West Towers of the Cosmopolitan Resort and Casino Las Vegas ("Cosmopolitan") and who participated in (*i.e.*, did not opt out of) the West Tower and/or East Tower settlement of the *Watt* litigation that sought to recover their earnest money deposits after development of the condominiums was substantially delayed and the plans substantially altered to eliminate many of the condominiums units sold.

The claims being settled in the present case include claims for malpractice and unlawful conduct on the part of the K&S Defendants, who allegedly acted as joint venturers with the other defendants in prosecuting the *Watt* litigation, and who allegedly engaged in unlawful and fraudulent conduct, including failing to disclose a conflict of interest that arose from the K&S Defendants simultaneously representing both the plaintiffs and class in the *Watt* litigation and DeutscheBank, whose subsidiary was the defendant in the *Watt* litigation, Nevada Property 1.[1]

The proposed settlement provides $4,625,000 to be disbursed as cash payments to class members, as compensation for the damage caused by the K&S

---

[1] As part of the settlement, the K&S Defendants have certified that they did not ultimately receive any of the attorneys' fees awarded in the *Watt* litigation and are therefore not exposed to Plaintiff's claim for disgorgement of those fees.  Any right to such fees is assigned to the Class.  The K&S Defendants also deny that they represented plaintiffs, or that they committed any wrongdoing.

1  Defendants' involvement in the alleged unlawful and improper conduct, less

2  settlement administration costs (up to $75,000 but estimated at about $28,000), as

3  well as any service award to Plaintiff and attorneys' fees and costs that the Court

4  approves.

5        As demonstrated below, the settlement is well within the "range of

6  reasonableness" for preliminary approval.  Class counsel believe that the settlement

7  is the best that could be achieved given substantial risks inherent in this litigation,

8  including overcoming the K&S Defendants' contention that neither Benjamin

9  Easterlin nor any other King & Spalding attorneys acted as counsel during the *Watt*

10  litigation and received no portion of the *Watt* attorneys' fees.  (Chavez Decl. ¶ 21.)

11        Accordingly, Plaintiff requests that the Court enter an order 1) preliminarily

12  approving the proposed settlement; 2) conditionally certifying a class as defined

13  herein; 3) appointing the Irvine Law Group LLP, Mehri & Skalet PLLC, Fay Law

14  Group PLLC, and Chavez & Gertler LLP class counsel; 4) appointing Plaintiff the

15  class representative; 5) appointing A.B. Data, Ltd. as the settlement administrator;

16  6) approving the forms of notice of the settlement and the procedures for providing

17  such notice; 7) setting a briefing schedule for Plaintiff's motions for attorneys' fees

18  and costs and class representative payment and for final approval; 8) scheduling a

19  final fairness hearing; and 9) otherwise staying this action with respect to the K&S

20  Defendants except for proceedings for purposes of effectuating the settlement.

21  **II.   FACTUAL AND PROCEDURAL BACKGROUND**

22        As alleged in the operative complaint in this case, Defendant Easterlin, a

23  partner at co-defendant King & Spalding, learned of an opportunity in August 2008

24  to sue the developer of the Cosmopolitan for breach of contract on behalf of a class

25  of individuals who had placed earnest money deposits on condominium units in the

26  Cosmopolitan.  (Chavez Decl. ¶ 16.)  Plaintiff believes that these units were no

27  longer going to be built after the developer defaulted on its construction loan.

28  (*Ibid*.)  According to Plaintiff, what followed was an alleged concerted effort by the

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

K&S Defendants—along with the other defendants Mark Obenstine, Terry Coffing and Marquis & Aurbach P.C.—to recruit and represent clients in a class action lawsuit, *i.e.*, the *Watt* litigation, against Nevada Property I, which obtained the Cosmopolitan from the original developer and which is a wholly-owned subsidiary of DeutscheBank, a K&S client. (*Ibid.*)

As set forth in the complaint, neither the K&S Defendants nor the other defendants ever disclosed K&S' alleged conflict of interest to either Plaintiff, class members or the Court in the *Watt* litigation. (Chavez Decl. ¶ 17.) In fact, Plaintiff believes that the K&S Defendants and other defendants actively concealed the conflict while also engaging in other unlawful and unethical conduct. (*Ibid.*) For instance, the complaint alleges that Defendants employed a runner/capper who misrepresented herself as a class member in order to recruit clients and later aggressively promoted a settlement that only provided *Watt* class members between 60% and 70% of the their deposits notwithstanding alleged knowledge on the part of Defendants that DeutscheBank/Nevada Property I had planned to convert the condominiums to hotel rooms as early as March 2009—a fact that would have likely entitled the *Watt* class members to full refunds or at least provide a basis for a greater recovery. (*Ibid.*) Plaintiff contends that in exchange for the rushed and discounted settlement without the benefit of full disclosure of material information, Defendants rewarded themselves with $20 million in attorneys' fees.[2] (*Ibid.*)

On April 22, 2011, Plaintiff James Estakhrian filed a class action complaint in this Court alleging that Defendants, including the K&S Defendants, breached their fiduciary duties to him and other class members and otherwise engaged in

---

[2] Though the K&S Defendants may not have actively engaged in all of the unlawful and unethical conduct, as joint venturers, Plaintiff believes that they are nonetheless jointly and severally liable. *Myrick v. Mastagni*, 185 Cal. App. 4th 1082, 1091 (Cal. App. 2d Dist. 2010); *see also* Restatement (Second) of Torts § 876.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1    unlawful and unethical conduct in prosecuting the *Watt* litigation.[3]  (Chavez Decl.

2    ¶ 18.)  The complaint seeks compensatory damages—namely, the balance of the

3    earnest money deposits retained by Nevada Property 1 as a result of the settlements

4    in the *Watt* litigation, plus interest—and disgorgement of the attorneys' fees that

5    Defendants received pursuant to those settlements.  (*Ibid.*)  Plaintiff seeks this

6    recovery on behalf of a class of individuals who did not opt out of the settlements in

7    the *Watt* litigation.  (*Ibid.*)

8         Following extensive, protracted and on-going litigation over discovery

9    matters and this Court's jurisdiction, Plaintiff mediated the case with the K&S

10   Defendants on February 17, 2015.  (Chavez Decl. ¶ 22.)  Over the course of the

11   following months, the parties finalized the settlement that is attached as Exhibit 1 to

12   the Chavez Declaration filed herewith and which Plaintiff now presents to the Court

13   for preliminary approval.  (*Ibid.*)

14   **III.    THE TERMS OF THE PROPOSED SETTLEMENT**

15        Pursuant to the settlement, the K&S Defendants will pay the class $4,625,000

16   less any costs advanced by the K&S Defendants for notice.  Additional settlement

17   administration costs, the class representative payment to Plaintiff, and any

18   attorneys' fees that the Court approves will be paid out of that amount.  (Chavez

19   Decl., Ex. 1 ("S.A.") ¶¶ 6-7, 9.)  None of the $4,625,000 that the K&S Defendants

20   have committed under the settlement will revert to K&S Defendants.  (S.A. ¶ 7.)

21   These and the other pertinent terms of the proposed settlement are summarized

22   below.

23        **A.     CERTIFICATION OF THE SETTLEMENT CLASS**

24        The settlement provides for conditional certification of a class defined as

25   "[a]ll class members (i.e., that did not opt out) in the litigation *Daniel Watt, et al. v.*

26

27   [3] Plaintiff filed an amended complaint on May 23, 2011.  The amended complaint
     did not effect either the substance of the allegations or the alleged causes of action.

28   (Chavez Decl. ¶ 18.)

*Nevada Property 1, LLC, et al.,* Nevada District Court, Case No. A582541." (S.A. ¶ 1.)  There are approximately 1,479 class members.  (Chavez Decl. ¶ 20.)

### B.   THE BENEFIT CONFERRED ON THE CLASS

The settlement obligates the K&S Defendants to deposit $4,625,000 (less any costs advanced by K&S Defendants) with the court-appointed settlement administrator within 14 days of the "Effective Date."[4]  (S.A. ¶ 6.)  The deposit will be placed into a qualified settlement fund to be maintained by the settlement administrator.  (S.A. ¶ 7.)  This fund—less the amount of administration costs (capped at $75,000 but estimated at about $28,000), a class representative payment, and the amount of attorneys' fees and costs approved by the Court—will be used to pay the individual settlement shares to class members without a claim form.  (*Ibid.*)  Class members who do not opt out (and who are successfully located) will receive their settlement share automatically.  (*Ibid.*)  Any residual will be distributed as *cy pres* to the National Consumer Law Center subject to the Court's approval.  (*Ibid.*)  None of the amount committed will revert to the K&S Defendants.  (*Ibid.*)

### C.   VALUE OF THE SETTLEMENT TO CLASS MEMBERS

As discussed more fully below, the total settlement fund is appropriate given the risks associated with Plaintiff's claims.  In class counsel's judgment, the value of the settlement to the Class is substantial and well within the range of reasonableness.  (Chavez Decl. ¶ 25.)  Plaintiff proposes to allocate the "net" settlement fund—the amount remaining after all court-approved deductions are taken—in proportion to each class member's damages, *i.e.*, the amount of their deposit that was not refunded in the *Watt* settlements.  (Chavez Decl. ¶ 24.)

---

[4] The "Effective Date" is defined as the sooner of the expiration of the time for appeal from the Court's final approval of the proposed settlement or, in the event of an appeal, the date the final approval order is affirmed or some other final order is entered that includes the material substantive provisions of Paragraph 4 of the Settlement Agreement, which is no longer subject to appeal or review, by certiorari or otherwise.  (S.A. ¶ 5.d.)

1    Plaintiff estimates that, pursuant to this allocation, the average settlement award

2    will be $2,056.01.  (Chavez Decl. ¶ 24.)  However, there will be significant

3    variation among class members, with many (251) receiving more than $2,500 and a

4    few (34) receiving more than $5,000.  (*Ibid*.)

5            Allocating the fund this way will provide a fair and reasonable way to

6    compensate class members based on information obtained in the course of this

7    litigation.  Moreover, the claims remain intact against the remaining defendants and

8    the value of the disgorgement claims are not reduced as a result of this settlement

9    with the K&S defendants.  Finally, certain terms of the settlement may assist in the

10   prosecution of the remaining claims against the remaining defendants.

11           **D.    SETTLEMENT ADMINISTRATION**

12           The parties have agreed that A.B. Data, Ltd. should administer the settlement

13   subject to the Court's approval.[5]  (S.A. ¶ 19.d.)  The cost of administering class

14   notice is capped at $75,000.  (Verkhovskaya Decl. ¶ 10 [attached as Exhibit 2 to the

15   Chavez Decl.].)  This cost includes the expense of providing notice by first class

16   mail to the last known address for each class member and limited publication.

17   (S.A. ¶ 13.)  The settlement specifies that the settlement administrator will take all

18   reasonable steps to locate class members, including running the addresses through

19   the National Change of Address database and/or LexisNexis prior to mailing the

20   notice.[6]  (*Ibid*.)  The administrator will also post the notice on a website established

21   and maintained by the administrator through the effective date and make the notice

22   available upon request at no charge through a toll-free number to be established and

23

24   _____

25   [5] A.B. Data is a well-known class action administrator founded in 1980.  It is
     headquartered in Milwaukee, Wisconsin and has emerged as one of the most
26   respected and fully integrated class action administrator in the industry, with a
     focused attention to detail and cost savings.  (Chavez Decl. ¶ 26.)

27   [6] The Settlement Agreement authorizes more advanced searches including skip
     tracing to locate class members in the event that individual class members cannot
28   otherwise be located.  (S.A. ¶ 13.d.)

manned by the administrator through at least the opt out date.  (*Ibid.*)  Finally, there will be targeted notice by publication.

### E.    CLASS NOTICE

The proposed notice, which is attached to the Settlement Agreement, is based on exemplars established by the Federal Judicial Center and notices previously approved by this Court.  (Chavez Decl. ¶ 27.)  The notice sets out information about the case and explains the settlement in plain terms while still providing a full and comprehensive description of the case, the settlement terms, and the class member's rights and options.  (*Ibid.*)  The notice also explains the procedures that must be followed to object to or to opt out of the settlement and includes an opt-out form for class members to return if they elect to exclude themselves from the settlement.  Overall, the proposed notice gives class members a fair opportunity to participate in, opt out of, or object to the settlement such that it constitutes the best practicable notice to the class.  (*Ibid.*)

### F.    RIGHT TO OBJECT OR OPT OUT

Class members will be given an opportunity to object to or opt out of the settlement.  (S.A. ¶¶ 13.f, 14.)  Plaintiff requests that the Court set the final approval hearing such that class members have at least 60 days to object or opt out.  The Settlement Agreement provides that objections shall be filed with the Court.  (S.A. ¶ 13.f.)

### G.    RELEASE OF CLAIMS

The settlement provides that upon occurrence of the Effective Date, Plaintiff and all participating class members will release the K&S Defendants—and the K&S Defendants alone—from all claims, known or unknown (a) arising out of or relating to any conduct, events, or transactions alleged, or which could have been alleged, in the action, (b) relating to any conduct, events, or transactions in, or otherwise concerning or arising out of, the *Watt* (and related) litigation or the alleged representation of any plaintiff or class member in that litigation.  The

1  settlement further includes a limited waiver on behalf of Plaintiff and each class
2  member of California Civil Code section 1542 solely with respect to claims within
3  the subject matter otherwise released.  (S.A. ¶ 11.)

4         The proposed class notice contains an explicit reference to the release
5  provisions, and class members will be fully informed as to the claims they will
6  releasing if they do not opt out of the settlement.  (Chavez Decl. ¶ 27.)

7  **H.    ATTORNEYS' FEES AND COSTS AND SERVICE AWARD**

8         Plaintiff intends to seek attorneys' fees in an amount approved by the Court
9  of up to one third of the total settlement fund, the reimbursement of reasonable
10 costs and expenses incurred in the prosecution of this action in an amount approved
11 by the Court, and a service award to the Plaintiff in an amount to be approved by
12 the Court.  (*See* S.A. ¶ 9.)  The settlement provides that Plaintiff shall file a motion
13 for approval of these amounts no fewer than 21 days before the deadline for class
14 members to opt out of or object to the settlement.  (*Ibid*.)  The settlement provides
15 that these awards shall be paid solely out of the settlement fund.  (*Ibid*.)

16        Although the efforts undertaken by class counsel and Plaintiff will be fully
17 explored in the motion to award attorneys' fees and costs and a service award to
18 Plaintiff, it suffices for the time being to say that class counsel's and Plaintiff's
19 efforts in litigating this matter have been significant.  Class counsel took six
20 depositions and participated in eight depositions noticed by the K&S Defendants,
21 including Plaintiff's deposition.  (Chavez Decl. ¶ 19.)  Plaintiff also propounded
22 twenty-six requests for production and forty-seven interrogatories to King &
23 Spalding and responded to nine requests for production, twenty-seven
24 interrogatories, and six requests for admission propounded by the K&S Defendants.
25 (*Ibid*.)  Plaintiff also conducted substantial outreach to class members to gather and
26 verify facts regarding the conduct of the *Watt* litigation.  (*Ibid*.)

27        As for the proposed service award, Plaintiff intends to seek $7,500.  Plaintiff
28 has responded to discovery and submitted to deposition.  (Estakhrian Decl. ¶ 3

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1    [attached as Exhibit 3 to the Chavez Decl.])  Plaintiff has also taken on the risk

2    associated with leading the litigation.  (*Id*. at ¶ 4.)  Finally, the proposed service

3    award is not a condition for approval of the settlement.  (*Id*. at ¶ 5.)

## I.    NO EFFECT ON OTHER PENDING CASES

4

5         The parties are not aware of any impact the settlement would have on any

6    pending cases beyond the present case.  (Chavez Decl. ¶ 31.)

## IV.   ARGUMENT

7

## A.    THE STANDARD FOR REVIEW OF A CLASS ACTION SETTLEMENT

8

9         The law favors settlement, particularly in class actions where substantial

10   resources can be conserved by avoiding the time, cost, and rigors of formal

11   litigation.  *See* H. Newberg & A. Conte, 4 *Newberg on Class Actions* (4th ed.

12   2002), § 11.41 (hereafter "Newberg"); *Class Plaintiffs v. City of Seattle*, 955 F.2d

13   1268, 1276 (9th Cir. 1992); *see also Officers for Justice v. Civil Service Comm. of*

14   *San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).  As the Ninth Circuit noted in

15   *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976), "it hardly seems

16   necessary to point out that there is an overriding public interest in settling and

17   quieting litigation."  *Van Bronkhorst*, at 950.  "This is particularly true in class

18   action suits."  *Ibid*.  Nevertheless, to make certain that the rights of absent parties

19   are not unjustly compromised, the settlement of a class action requires court

20   approval.  Fed. R. Civ. P. 23(e).  This process safeguards the procedural due

21   process rights of class members and enables the court to fulfill its role as the

22   guardian of the class' interests.  *See Newberg*, §11:41 (and cases cited therein);

23   Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004) (hereafter

24   "*Manual*"), § 21.63.  Approving a proposed class action settlement "involves a two-

25   step process in which the Court first determines whether a proposed class action

26   settlement deserves preliminary approval and then, after notice is given to class

27

28

1  members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v.*

2  *DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also Manual* § 21.632.

3      At the preliminary approval stage, the court need only "'determine whether

4  the proposed settlement is within the range of possible approval.'" *Murillo v.*

5  *Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (quoting *Gautreaux*

6  *v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)); *see Newberg*, § 11.41.  In this

7  context, "[t]here is an initial presumption of fairness when a proposed class

8  settlement was negotiated at arm's length by counsel for the class." *Murillo v.*

9  *Texas A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996); *see also Hanlon v.*

10  *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (courts must give "proper

11  deference to the private consensual decision of the parties").

12      Because settlement is the preferred means of dispute resolution in complex

13  class litigation, "the court's intrusion upon what is otherwise a private consensual

14  agreement negotiated between the parties to a lawsuit must be limited to the extent

15  necessary to reach a reasoned judgment that the agreement is not the product of

16  fraud or overreaching by, or collusion between, the negotiating parties, and that the

17  settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

18  *Hanlon*, 150 F.3d at 1027.  Accordingly, "[i]n reviewing [a] proposed settlement,

19  the Court need not address whether the settlement is ideal or the best outcome, but

20  only whether the settlement is fair, adequate, free from collusion and consistent

21  with Plaintiff's fiduciary obligations to the class." *Hopson v. Hanesbrands, Inc.*,

22  2008 WL 3385452, at *2 (N.D. Cal. Aug. 8, 2008).  "[I]f the proposed settlement

23  appears to be the product of serious, informed, non-collusive negotiations, has no

24  obvious deficiencies, does not improperly grant preferential treatment to class

25  representatives or segments of the class, and falls within the range of possible

26  approval, then the court should direct that the notice be given to the class members

27  of a formal fairness hearing." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d

28  1078, 1079-80 (N.D. Cal. 2007).

## B.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED CLASS SETTLEMENT

The proposed settlement warrants preliminary approval under the liberal standards summarized above.  The settlement is not only a fair, reasonable and adequate resolution of the claims asserted, it is a favorable result for class members, who otherwise have lost tens of thousands of dollars through no fault of their own.

### 1.   <u>Conditional Certification of the Proposed Class Is Appropriate</u>

The purpose of conditional class certification in the settlement context is to facilitate the provision of notice of the terms of the proposed settlement and the date and time of the final approval hearing to all settlement class members.  *See Manual* § 30.41.  Neither formal notice nor a hearing is required for the Court to grant conditional class certification.  Instead, the Court may grant such relief upon an informal application and may conduct any necessary hearing in court or in chambers, at the Court's discretion.  *Ibid.*; *see also Newberg*, § 11.22.

In the present context, conditional certification is entirely appropriate given that the requirements for class certification set out in the Federal Rules of Civil Procedure are readily satisfied.  *See* Fed. R. Civ. P. 23; *Hanlon*, 150 F.3d at 1019.

#### a)   The Class Is Numerous and Ascertainable

Discovery in this case has identified at least 1,479 individuals who participated in—*i.e.*, did not opt out of—the *Watt* litigation.  The class thus easily satisfies Rule 23's requirement that joinder of all members be "impracticable" and that the class be ascertainable.  *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, 459 U.S. 810 (1982) (class sizes of 39, 64, and 74 are sufficient to satisfy the numerosity requirement); *accord Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).

#### b)   Questions of Law and Fact Are Common to the Class

"Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in

1   divergent legal theories." *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D.

2   431, 441 (E.D. Cal. 2013) (citing *Hanlon*, 150 F.3d at 1019). "As clarified in

3   [Dukes], a plaintiff must demonstrate that the class members 'have suffered the

4   same injury' and that their claims 'depend upon a common contention . . . of such a

5   nature that [it] is capable of classwide resolution – which means that determination

6   of its truth or falsity will resolve an issue that is central to the validity of each one

7   of the claims in one stroke.'" *Id.*

8         In the present case, whether the K&S Defendants engaged in malpractice and

9   other improper or unlawful conduct is a common legal question whose answer will

10  resolve the class claims in one stroke.  Defendant's conduct either violated the law

11  as to everyone or did not violate the law as to everyone. The commonality

12  requirement, therefore, is readily satisfied given that this requirement has been

13  construed permissively and given that there is no requirement that *all* questions of

14  fact and law be common in order to satisfy the rule.  *Ellis v. Costco Wholesale*

15  *Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).   Indeed, "for purposes of Rule 23(a)(2)

16  even a single [common] question will do." *Wal-Mart Stores, Inc. v. Dukes,* 131

17  S.Ct. 2541, 2556, 180 L.Ed.2d 374 (2011); *accord Boyd v. Bank of Am. Corp.*, 300

18  F.R.D. 431, 437 (C.D. Cal. 2014).

19                   c)      **Plaintiff's Claims Are Typical**

20        Typicality is satisfied if the named plaintiff is a part of the class and has

21  suffered the same injury as other class members.  *Gen. Tel. Co. of Sw. v. Falcon*,

22  457 U.S. 147, 156 (1982); *Ellis*, 657 F.3d 970 at 984.

23        In the present case, this requirement is readily satisfied given that Plaintiff is

24  part of the class he seeks to represent.  Plaintiff has also suffered the same type of

25  injuries as other class members.  Moreover, the claims in this case all arise from the

26  same alleged course of conduct engaged in by Defendants, including the K&S

27  Defendants.  The claims, therefore, are typical, even if each class member's

28  damages might differ.  *See Brown v. NFL Players Ass'n*, 281 F.R.D. 437, 442 (C.D.

Cal. 2012) ("claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory").

### d)    Plaintiff Is Adequate

Adequate representation depends on "an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985.  In the present case, there is no conflict between Plaintiff and members of the class given that he is a member of the class and has directly suffered the same injuries as the other class members.  (*See* Estakhrian Decl. ¶ 5.)  Moreover, he does not have any separate or individual claim apart from the class, and he has prosecuted this case vigorously on behalf of the class as evidenced by his retention of attorneys who are qualified and competent to prosecute this class action through trial, if necessary.[7]  (*Ibid.*)  Finally, this case does not involve subclasses or classes with diverging interests with respect to allocation of the settlement funds.  Accordingly, Plaintiff is adequate.  *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005); *Barbosa*, 297 F.R.D. at 442 (no conflict where plaintiff has "no separate and individual claims apart from the Class").

### e)    Common Issues Predominate

Rule 23(b)(3) requires that common issues predominate.  Common issues predominate whenever they "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil* §1778; *see also In re Bridgestone/Firestone Inc. Tires Products Liability Litigation*, 205 F.R.D. 503, 520 (S.D. Ind. 2001).  Common questions also predominate, even

---

[7] *See* Chavez Decl. ¶¶ 3-15; Skalet Decl. ¶¶ 3-8; Alikani Decl. ¶¶ 3-5; Fay Decl. ¶¶ 2-7.)

where substantial individualized factual determinations may be necessary, if those determinations are nonetheless susceptible to generalized proof  like employment and payroll records.  *Newberg on Class Actions* § 4:50 (5th ed.) (common issues predominate when "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim"); *see also Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003).

In the present case, the K&S Defendants acted uniformly with respect to each member of the proposed settlement class.  After all, the K&S Defendants allegedly concealed their conflict of interest from all class members while they were involved in pursuing a settlement on behalf of all of them.  The ethics of doing so cannot vary across individual class members; to the extent misconduct occurred, it is either unethical with regard to all of the settlement class members or to none.  Moreover, class members' individual damages are "capable of determination on a class-wide basis, and those damages [are] traceable to . . . plaintiff[s'] 'liability case.'"  *Munoz v. PHH Corp.*, 2013 WL 2146925, at *24 (E.D. Cal. May 15, 2013).  Common issues therefore predominate even though individual damages may vary based on individual circumstances, particularly here given that individual damages can be determined based on common records maintained by Defendants and produced in the scope of this case.

### f)  A Class Action Is Superior to Individual Litigation

The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution."  *Hanlon*, 150 F.3d at 1023.  A class action is superior where pursuing claims on an individual basis "would prove uneconomic for a potential plaintiff" because "litigation costs would dwarf potential recovery."  *Ibid*.; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (class certification proper where "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis").

In the present case, class resolution is superior to other available methods for the fair and efficient adjudication of the present controversy because, here, as in *Hanlon*, the only available alternative method of resolution would be for an individual plaintiff to bring his or her individual claim in court.  In doing so, each plaintiff would have to litigate the K&S Defendants' liability even though that liability could be established by uniform evidence and using an objective standard.  Moreover, multiple adjudications would needlessly burden the court system.  In this connection, there is no evidence that class members have an interest in individually controlling this litigation.  Indeed, the parties are not aware of any other similar litigation.  (Chavez Decl. ¶ 31.)  Moreover, though the damages may be substantial, there is no indication that the amount of damages is so substantial that the damages would not be dwarfed by litigation costs.  *See Hanlon*, 150 F.3d at 1023 ("In most cases, litigation costs would dwarf potential recovery.").

In sum, a class action is the superior mechanism for resolving the dispute between class members and the K&S Defendants.  *Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422, 430 (C.D. Cal. 2014); *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 337 (S.D. Fla. 1996) ("lack of interest . . . evidenced by the fact that no other actions have been filed by any of the individual class members" supports superiority).  The Court, therefore, should conditionally certify the class as defined in the proposed order lodged herewith.

### 2. The Settlement Is the Product of Arm's-Length, Informed Negotiations

The proposed settlement was reached following a series of discussions and emails between counsel, a preliminary meeting of counsel, the exchange of positions and documents, and negotiations presided over by a well-known mediator—Randall W. Wulff—that stretched into a several months-long process to finalize the settlement.  (Chavez Decl. ¶ 22.)  The settlement, therefore, is the

product of arm's-length negotiations.  *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at \*7 (C.D. Cal. May 11, 2010).

The negotiations were also well informed.  Both parties were represented by experienced counsel.  Plaintiff's counsel collectively have many years of experience and are experts in class action litigation  (*See* Chavez Decl. ¶¶ 3-15; Skalet Decl. ¶¶ 3-8; Alikani Decl. ¶¶ 3-5; Fay Decl. ¶¶ 2-7.)  The same is true of defense counsel.  Prior to the mediation, Plaintiff obtained thousands of pages of documents produced by the parties.  This production included emails and other communications evincing the K&S Defendants' conduct in the *Watt* litigation, as well as the K&S Defendants' defenses.  Plaintiff's review, along with the K&S Defendants' substantive responses to special interrogatories and requests for production, provided Plaintiff with a solid background to assess the strengths and weaknesses of the claims and the benefits of the proposed settlement under the circumstances of this case.  (Chavez Decl. ¶¶ 19-20.)

In sum, all counsel were sufficiently informed to evaluate the costs and benefits of proceeding with, as opposed to settling, this case.  The decision to settle the case, and the judgment that the settlement is in the best interests of the class, therefore, warrant deference.  *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *accord IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'"); *Austin v. Pennsylvania Dept. of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995).

### 3.    <u>There Are No Indicia of Fraud or Collusion</u>

Though courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified,"[8] there are no indicia in the present case of any fraud or collusion. Notably, the settlement does not set a fee that Plaintiff may seek without objection by the K&S Defendants. Rather the fee award is strictly "tethered" to the benefit provided class members. This guards against collusion. *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920, at *4 (N.D. Cal. Sept. 22, 2009) ("Tethering fees (in part) to benefit will help guard against collusion in the general run of cases."); *see also Weeks v. Kellogg Co.*, 2013 WL 6531177, at *24, n.128 (C.D. Cal. Nov. 23, 2013) (no indication of collusion where settlement did not set ceiling on fees counsel could seek without objection by defendants). Moreover, any fees that are not awarded by the Court do not revert to the K&S Defendants but become available for distribution to the class. This also reduces the likelihood that the parties colluded to confer benefits on each other at the class members' expense. *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) (absence of a "kicker provision" reduces likelihood of collusion).

In sum, there is no evidence of fraud or collusion such as to give the Court pause in considering whether to approve the settlement as fair and reasonable.

### 4.    <u>The Proposed Notice and Notice Plan Are Sufficient</u>

Pursuant to Rule 23(e), the court must "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." Fed. R. Civ. P. 23(e)(1)(B). The notice provided members of a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances" and must "concisely and clearly state in plain, easily understood language" the nature of the

---

[8] *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

action, the class definition, a general statement of the class claims and issues, that a class member may enter an appearance through counsel if desired, the right and manner of exclusion or objection, and the binding effect of class judgment.  Fed. R. Civ. P. 23(c)(2)(B).  A notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir.2004)); *Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. 2014) (notice sufficient where it identified "the options available to putative class members—do nothing, object, or opt out—and comprehensively explained the nature and mechanics of the settlement in a separate document").

The notices attached to the Settlement Agreement satisfy this standard.  The proposed notice is written in simple, direct, and comprehensive terms, and provides: (1) a description of the claims in the case; (2) a detailed description of the terms of the settlement; (3) disclosure of the amount that will be requested for a service award to the named Plaintiff and for attorneys' fees and costs; (4) a detailed description of how settlement shares will be calculated; (5) instructions on how to object to or opt out of the settlement; (6) a summary of the release provisions in the settlement, including a direct quote from the settlement regarding the "Released Claims"; and (7) instructions as to how to obtain additional information regarding the settlement.  This is more than adequate, particularly given that the settlement requires that the notice be sent to class members via first class mail after running addresses through the National Change of Address and/or Lexis/Nexis databases to provide up-to-date addresses for class members.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) (notice mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice).  Moreover, there will be targeted notice by publication to supplement the notice by mail. Plaintiff proposes that class members have 60 days to opt out or object.  Again, this

is more than adequate.  *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 203 (E.D. Pa.) *petition dismissed sub nom. In re Nat. Football League Players Concussion Injury Litig.*, 775 F.3d 570 (3d Cir. 2014) ("It is well-settled that between 30 and 60 days is sufficient to allow class members to make their decisions to accept the settlement, object, or exclude themselves."); *accord Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 193 (S.D.N.Y. 2012) *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ("Courts have held that opt out periods of less than 45 days satisfy due process, even where unsophisticated class members must make decisions regarding complex issues of law or fact.").

In sum, the notice plan provides the best notice practicable under the circumstances and will provide class members a full and fair opportunity to consider the proposed settlement and to make a fully informed decision on whether to participate, to object, or to opt out.

## 5.    The Settlement Is Fair and Reasonable Considering the Benefits Conferred, the Case Value against the K&S Defendants, and Significant Litigation Risks

The proposed settlement involves a substantial sum of money, that, when distributed, will confer meaningful monetary benefits on the class members.  As described above, each individual award will be based on an allocation that is consistent with the nature of the claims asserted that will fairly and equitably allocate the available funds in relation to the degree of damage each class member incurred.  (Chavez Decl. ¶ 24.)  While class members who put less money down or obtained greater refunds through the *Watt* litigation will receive relatively smaller sums, those class members who were made less whole in the *Watt* litigation will receive relatively larger settlement shares.  (*Ibid*.)

In preparing for mediation, Plaintiff estimated that the K&S Defendants' maximum exposure for non-disgorgement damages exclusive of attorneys' fees and costs was $61,218,488.23.  (Chavez Decl. ¶ 20.)  This estimate was based on the

records produced in this litigation showing the amount of the earnest money deposits and the awards received pursuant to the *Watt* litigation.

At the mediation, however, Plaintiff's counsel had to substantially discount the value of the claims due to the considerable risks of proceeding with litigation. For instance, the K&S Defendants have maintained that neither Benjamin Easterlin nor any other King & Spalding attorneys acted as counsel during the *Watt* litigation and received no portion of the *Watt* attorneys' fees. (Chavez Decl. ¶ 21.) Thus, in order to establish liability on behalf of the K&S Defendants, Plaintiff and the proposed class would have to establish that the K&S Defendants, despite failing to act as counsel of record in the *Watt* litigation, were nonetheless part of a joint venture with the other defendants here and could be held responsible for the fraudulent concealment and misrepresentations of fact made to clients in the *Watt* litigation that those clients relied upon to their detriment. (*Ibid*.) Proving the K&S Defendants' participation in such a joint venture, as well as a link between such joint venture and the damages suffered by the *Watt* clients, presented several challenges of causation and proof that led class counsel to conclude that settling with the K&S Defendants, even for a discounted sum, was in the best interests of the class. described above. (Chavez Decl. ¶ 21-22.) In Plaintiff's counsel's opinion, further litigation would not likely result in a substantially greater and more certain recovery from the K&S Defendants. (Chavez Decl. ¶ 22.)

Though the settlement amounts to roughly 5% of the maximum value of the judgment that Plaintiff might have obtained if he had taken the case against the K&S Defendants to trial and won on every issue, that is not a proper indicator of whether a settlement is fair and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."); *White v. Experian Information Solutions, Inc.*, 803 F. Supp. 2d 1086, 1098 (C.D. Cal.

2011) (rejecting contention that settlement is not fair and reasonable even though it was asserted that settlement amounted to a 99% discount over full value of claims); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").  This principle is especially apt in this case, where Plaintiff will continue to pursue full relief from the remaining defendants, including disgorgement of the attorneys' fees awarded to the other defendants.

### 6.   The Proposed Class Representative Award Is Reasonable

Courts award class representative payments to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class and also to compensate class representatives for their time, effort, and inconvenience.  *See*, *e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *In re: Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1994).  It has long been established that courts have discretion to approve such service or "incentive" awards to representative plaintiffs in class actions as compensation for their having expended time and effort for the benefit of others and for having undertaken the risks inherent in serving as a named plaintiff.  In evaluating the reasonableness of a requested award, the Court should consider factors such as "the actions plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, … [and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Staton*, 327 F.3d at 977.  The Court should also consider whether the requested award will result in disproportionate benefits to Plaintiff vis-à-vis the other class members.  *Ibid*.

In the present case, Plaintiff contributed substantially to the prosecution of this case.  (Chavez Decl. ¶ 28.)  He consulted with counsel on multiple occasions,

provided responses to discovery, and submitted to a deposition.  (Estakhrian Decl. ¶ 3.)  He also made the decision to act as an advocate on behalf of thousands of others who purchased a condominium in the Cosmopolitan, and spearheaded a $4.625 million settlement, all while taking on the risk of the litigation solely on himself.  (*Id*. at ¶ 4.)  Moreover, Plaintiff's support of the settlement is not conditioned on his receipt of any particular service award.  (*Id*. at ¶ 5.)  Under these circumstances, an award of $7,500 is well within the range of reasonableness, particularly given the average benefit conferred on each class member.  *See Mann & Co. v. C-Tech Indus., Inc.*, 2010 WL 457572, at *2 (D. Mass. Feb. 5, 2010) (approving $15,000 incentive award to named plaintiff); *Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, at *5 (S.D. Cal., March 6, 2009) (approving incentive awards of $12,000 to each of several class representatives); *see also Fulford v. Logitech Inc.*, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding incentive awards ranging from $5,000 to $40,000).

## V.  <u>PROPOSED SCHEDULE FOR REMAINING PROCEDURES</u>

In light of the requirements in the settlement and the parties' and the Court's commitments, Plaintiff proposes the following schedule for settlement approval:

| | |
|---|---|
| Preliminary Approval | 7/2/15 |
| Last day to provide contact information to Settlement Administrator (14 days after Preliminary Approval) | 7/16/15 |
| Last day to mail notice (14 days after provision of contact information to Settlement Administrator) | 8/12/15 |
| Last day for Plaintiff to file motion for award of attorneys' fees and costs (No later than 81 days prior to Final Approval Hearing) | 8/26/15 |
| Last day for submission of opt-out requests (No later than 60 days prior to Final Approval Hearing) | 9/18/15 |
| Last day for submission of objections (No later than 30 days prior to Final Approval Hearing) | 10/19/15 |

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

| Last day for final report from Settlement Administrator re: notice (No later than 14 days prior to Final Approval Hearing.) | 11/5/15 |
| Last day to file motion for final approval | 11/12/15 |
| Final Approval Hearing | 12/10/15 |

## VI. **CONCLUSION**

For all the foregoing reasons, the Court should grant preliminary approval of the proposed settlement, conditionally certify the proposed settlement class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, appoint the proposed settlement administrator, class representative, and class counsel, approve and order distribution of the proposed class notice, and schedule a final approval hearing.

Respectfully submitted,

Dated:  May 27, 2015

IRVINE LAW GROUP LLP
MEHRI & SKALET PLLC
FAY LAW GROUP PLLC
CHAVEZ & GERTLER LLP

By:  */s/ Mark A. Chavez*
        Mark A. Chavez

*Attorneys for Plaintiff James Estakhrian and the Proposed Settlement Class*