**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JAMES ESTAKHRIAN and ABDI NAZIRI, )
on behalf of themselves and all others )
similarly situated, )
                             )
                   Plaintiffs, )
                             )
         v. )
                             )
MARK OBENSTINE, et al. )
                             )
                   Defendants. )
_____ )

Case No. CV 11-3480 FMO (CWx)

**ORDER CERTIFYING CLASS ACTION, PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND CLASS NOTICE, AND SETTING FINAL FAIRNESS HEARING**

Having reviewed and considered all the briefing filed with respect to plaintiffs' Second Renewed Motion for Preliminary Approval of Class Action Settlement (Dkt. 389, "Motion"), and the oral argument presented to the court on July 9, 2015 (see Dkt. 330, Minutes of July 9, 2015 Hearing), October 29, 2015 (see Dkt. 378, Minutes of Oct. 29, 2015 Hearing), and January 21, 2016 (see Dkt. 398, Minutes of Jan. 21, 2016 Hearing), the court concludes as follows.

**BACKGROUND**

The instant matter arises out of the settlement of a class action litigated in Nevada state court, Daniel Watt et al. v. Nevada Property 1, LLC, et al., Case No. A582541 ("Nevada litigation"). (See Dkt. 373, Second Amended Class Action Complaint ("SAC") at ¶ 20). In the Nevada litigation, plaintiffs filed a class action complaint for breach of contract regarding the purchase of condominium units in what became the Cosmopolitan Hotel, located in Las Vegas, Nevada. (See

id.).  The class members sought to "rescind their purchase contracts and to obtain a refund of their escrow deposits" after learning that the originally-contemplated condominiums were going to be converted to a hotel.  (Id. at ¶¶ 14-16 & 20).

The Nevada litigation was eventually settled.  (See Dkt. 373, SAC at ¶ 32).  Thereafter, James Estakhrian ("Estakhrian") commenced this action alleging the following causes of action against the attorneys in the Nevada litigation:  (1) professional malpractice; (2) breach of fiduciary duty; (3) breach of contract; (4) violation of California Business & Professions Code §§ 17200, et seq.; (5) violation of the California Consumers Legal Remedies Act, California Civil Code §§ 1750, et seq., and (6) fraud.  (See id. at ¶¶ 2, 51-77).  The SAC alleges all six causes of action against Mark Obenstine ("Obenstine"), Benjamin F. Easterlin ("Easterlin") and his law firm King & Spalding, LLP ("King & Spalding," and with Easterlin, the "King & Spalding defendants"), Terry A. Coffing ("Coffing") and his law firm Marquis & Aurbach P.C. (now called Marquis Aurbach Coffing, P.C.) ("MAC" and with Coffing, the "MAC defendants").  The court previously dismissed the MAC defendants for lack of personal jurisdiction.  (See Dkt. 329, Court's Order of July 9, 2015).  Should the court grant final approval of the settlement between plaintiffs and the King & Spalding defendants, Obenstine will be the sole remaining defendant in this action.

In this action, plaintiffs seek the balance of the lost escrow deposits not paid in the settlement of the Nevada litigation as well as disgorgement of defendants' attorney's fees in the Nevada litigation.  (See Dkt. 373, SAC at p. 23).  Plaintiffs allege that Easterlin, who is a partner at King & Spalding, "had a massive and direct conflict of interest because of [the firm's] representation of Deutsche Bank, whose wholly-owned subsidiary had become the owner of Cosmopolitan."  (Id. at ¶ 2).  Also, plaintiffs allege that the King & Spalding defendants and Obenstine began soliciting, primarily through cappers and runners, purchasers of condominiums in the East and West Cosmopolitan towers to participate in the Nevada litigation.  (See id. at ¶ 18; see also id. at ¶ 31) (the actions of the purported runners and cappers were "under the direction of, with the approval of, and with the participation of defendants, particularly defendants Obenstine and Easterlin").  Plaintiffs allege that not only was the conflict of interest not disclosed to the class, but that the conflict caused defendants in this action – again, allegedly through cappers and

1  runners – "to urge plaintiff and class members to settle for far less than the fair settlement value"

2  of the Nevada litigation.  (Id. at ¶ 3).

3      Estakhrian and the King & Spalding defendants reached a settlement on May 27, 2015,

4  after completing mediation before a private mediator.  (See Dkt. 305, Declaration of Mark Chavez

5  in Support of Motion for Preliminary Approval of Class Action Settlement ("Chavez's First Decl.")

6  at Exhibit ("Exh.") 1 (prior settlement agreement)).  Subsequently, Estakhrian and the King &

7  Spalding defendants added an additional class representative and amended their settlement

8  agreement to address concerns raised by the court.  (See Dkts. 330, 378 & 398, Minutes of July

9  9, 2015, Oct. 29, 2015, and Jan. 21, 2016 Hearings).

10     In their Motion, plaintiffs seek an order: (1) preliminarily approving the proposed class action

11  settlement; (2) conditionally certifying a class; (3) appointing the Irvine Law Group LLP ("Irvine Law

12  Group"), Mehri & Skalet PLLC ("Mehri & Skalet"), Fay Law Group PLLC ("Fay Law Group"), and

13  Chavez & Gertler LLP ("Chavez & Gertler") as class counsel; (4) appointing Estakhrian and Abdi

14  Naziri ("Naziri") as class representatives; (5) appointing A.B. Data, Ltd. ("A.B. Data") as the

15  settlement administrator; (6) approving the proposed class notice and the procedures for providing

16  such notice; (7) setting a briefing schedule for plaintiffs' motions for attorney's fees and costs and

17  class representative payments and for final approval; (8) scheduling a final fairness hearing; and

18  (9) otherwise staying this action with respect to the King & Spalding defendants except for

19  settlement proceedings.  (See Dkt. 389, Motion at 4).

20                                    **LEGAL STANDARD**

21     "[I]n the context of a case in which the parties reach a settlement agreement prior to class

22  certification, courts must peruse the proposed compromise to ratify both the propriety of the

23  certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir.

24  2003).

25  I.    CLASS CERTIFICATION.

26     At the preliminary approval stage, the court "may make either a preliminary determination

27  that the proposed class action satisfies the criteria set out in Rule 23 or render a final decision as

28

to the appropriateness of class certification."[1]  Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149,

*3 (S.D. Fla. 2010) (internal citation omitted); see also Sandoval v. Roadlink USA Pac., Inc., 2011

WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117

S.Ct. 2231, 2248 (1997)) ("Parties seeking class certification for settlement purposes must satisfy

the requirements of Federal Rule of Civil Procedure 23[.]").  "A court considering such a request

should give the Rule 23 certification factors 'undiluted, even heightened, attention in the settlement

context.'"  Sandoval, 2011 WL 5443777, at *2 (quoting Amchem, 521 U.S. at 620, 117 S.Ct. at

2248).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack

the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings

as they unfold."  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

A party seeking class certification must first demonstrate that: "(1) the class is so numerous

that joinder of all members is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

of the class; and (4) the representative parties will fairly and adequately protect the interests of the

class."  Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in

Rule 23(b)."  Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2548 (2011).  Rule 23(b) is satisfied

if:

> (1) prosecuting separate actions by or against individual class members
> would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual
> > class members that would establish incompatible standards of
> > conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a
> > practical matter, would be dispositive of the interests of the other
> > members not parties to the individual adjudications or would

---

[1]  All "Rule" references are to the Federal Rules of Civil Procedure.

1      substantially impair or impede their ability to protect their interests;

2      (2) the party opposing the class has acted or refused to act on grounds that

3      apply generally to the class, so that final injunctive relief or corresponding

4      declaratory relief is appropriate respecting the class as a whole; or

5      (3) the court finds that the questions of law or fact common to class members

6      predominate over any questions affecting only individual members, and that

7      a class action is superior to other available methods for fairly and efficiently

8      adjudicating the controversy. The matters pertinent to these findings include:

9           (A) the class members' interests in individually controlling the

10          prosecution or defense of separate actions;

11          (B) the extent and nature of any litigation concerning the controversy

12          already begun by or against class members;

13          (C) the desirability or undesirability of concentrating the litigation of the

14          claims in the particular forum; and

15          (D) the likely difficulties in managing a class action.

16  Fed. R. Civ. P. 23(b)(1)-(3).

17          The party seeking class certification bears the burden of demonstrating that the class meets

18  the requirements of Rule 23.  See Dukes, 131 S.Ct. at 2551 ("Rule 23 does not set forth a mere

19  pleading standard.   A party seeking class certification must affirmatively demonstrate his

20  compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently

21  numerous parties, common questions of law or fact, etc.").  However, courts need not consider

22  the Rule 23(b)(3) considerations regarding manageability of the class action, as settlement

23  obviates the need for a manageable trial.  See, e.g., Rosenburg v. I.B.M., 2007 WL 128232, *3

24  (N.D. Cal. 2007) (discussing "the elimination of the need, on account of the [s]ettlement, for the

25  Court to consider any potential trial manageability issues that might otherwise bear on the

26  propriety of class certification."); Morey v. Louis Vuitton N. Am., Inc., 2014 WL 109194, *12 (S.D.

27  Cal. 2014) ("because this certification of the Class is in connection with the Settlement rather than

28  litigation, the Court need not address any issues of manageability that may be presented by

1  certification of the class proposed in the Settlement Agreement.").

2  II.  FAIRNESS OF CLASS ACTION SETTLEMENT.

3  Rule 23 provides that "the claims, issues, or defenses of a certified class may be settled

4  . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)]

5  is the protection of th[e] class members, including the named plaintiffs, whose rights may not have

6  been given due regard by the negotiating parties."  Officers for Justice v. Civil Service Comm'n

7  of the City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982), cert. denied 459 U.S.

8  1217 (1983).  Accordingly, a district court must determine whether a proposed class action

9  settlement is "fundamentally fair, adequate, and reasonable."  Staton, 327 F.3d at 959; see Fed.

10  R. Civ. Proc. 23(e).  Whether to approve a class action settlement is "committed to the sound

11  discretion of the trial judge."  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.), cert.

12  denied, Hoffer v. City of Seattle, 506 U.S. 953 (1992) (internal quotation marks and citation

13  omitted).

14  "If the [settlement] proposal would bind class members, the court may approve it only after

15  a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

16  "[S]ettlement approval that takes place prior to formal class certification requires a higher standard

17  of fairness [given t]he dangers of collusion between class counsel and the defendant, as well as

18  the need for additional protections when the settlement is not negotiated by a court designated

19  class representative[.]"  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  As the

20  Ninth Circuit has observed, "[p]rior to formal class certification, there is an even greater potential

21  for a breach of fiduciary duty owed the class during settlement.  Accordingly, such agreements

22  must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of

23  interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."

24  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

25  Approval of a class action settlement requires a two-step process – a preliminary approval

26  followed by a later final approval.  See West v. Circle K Stores, Inc., 2006 WL 1652598, *2 (E.D.

27  Cal. 2006) ("[A]pproval of a class action settlement takes place in two stages."); Tijero v. Aaron

28  Bros., Inc., 2013 WL 60464, *6 (N.D. Cal. 2013) ("The decision of whether to approve a proposed

1   class action settlement entails a two-step process.").  At the preliminary approval stage, the court

2   "evaluate[s] the terms of the settlement to determine whether they are within a range of possible

3   judicial approval."  Wright v. Linkus Enters., Inc., 259 F.R.D. 468, 472 (E.D. Cal. 2009).  Although

4   "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011

5   WL 1627973, *7 (N.D. Cal. 2011), the showing at the preliminary approval stage – "given the

6   amount of time, money, and resources involved in, for example, sending out new class notices –

7   should be good enough for final approval."  Spann v. J.C. Penney Corp., 2016 WL 297399, *4

8   (C.D. Cal. 2016).  At this stage, the court may grant preliminary approval of a settlement and direct

9   notice to the class if the settlement: "(1) appears to be the product of serious, informed,

10   non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant

11   preferential treatment to class representatives or segments of the class; and (4) falls within the

12   range of possible approval."  Id. at *7; Alvarado v. Nederend, 2011 WL 90228, *5 (E.D. Cal. 2011)

13   (same); Cordy v. USS-Posco Indus., 2013 WL 4028627, *3 (N.D. Cal. 2013) ("Preliminary approval

14   of a settlement and notice to the proposed class is appropriate if the proposed settlement appears

15   to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies,

16   does not improperly grant preferential treatment to class representatives or segments of the class,

17   and falls within the range of possible approval.") (internal quotation marks omitted).

18               **DISCUSSION**

19   I.     CLASS CERTIFICATION.

20        A.   Rule 23(a) Requirements.

21            1.   **Numerosity**.

22       The first prerequisite of class certification requires that the class be "so numerous that

23   joinder of all members is impractical[.]"  Fed. R. Civ. P. 23(a)(1).  Although impracticability does

24   not hinge only on the number of members in the putative class, joinder is usually impracticable if

25   a class is "large in numbers."  See Jordan v. Cnty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.),

26   vacated on other grounds, 459 U.S. 810 (1982) (class sizes of 39, 64, and 71 are sufficient to

27   satisfy the numerosity requirement).  "As a general matter, courts have found that numerosity is

28   satisfied when class size exceeds 40 members, but not satisfied when membership dips below

1   21." Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home

2   Appliances Corp., 289 F.R.D. 466, 473 (C.D. Cal. 2012) ("A proposed class of at least forty

3   members presumptively satisfies the numerosity requirement").

4       Here, the members of the settlement class are so numerous that joinder of all members is

5   impracticable.  The settlement class comprises approximately 1,479 individuals who did not opt

6   out of the Nevada litigation.  (See Dkt. 389, Motion at 2; Dkt. 389-1, Declaration of Mark A. Chavez

7   in Support of Plaintiffs' Second Renewed Motion for Preliminary Approval of Class Action

8   Settlement ("Chavez's 2d Decl."), Exh. 1 ("Settlement Agreement") at § 1).  The class therefore

9   meets the numerosity requirement.

10              2.   **Commonality**.

11      The commonality requirement is satisfied if "there are common questions of law or fact

12  common to the class[.]" Fed. R. Civ. P. 23(a)(2).  Commonality requires plaintiffs to demonstrate

13  that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an

14  issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S.Ct. at

15  2551; see also Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (The

16  commonality requirement demands that "class members' situations share a common issue of law

17  or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for

18  relief.") (internal quotation marks omitted).  "The plaintiff must demonstrate the capacity of

19  classwide proceedings to generate common answers to common questions of law or fact that are

20  apt to drive the resolution of the litigation." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588

21  (9th Cir. 2012) (internal quotation marks omitted).  "This does not, however, mean that every

22  question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single

23  significant question of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th

24  Cir. 2013), cert. denied, 135 S.Ct. 53 (2014) (emphasis and internal quotation marks omitted); see

25  Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only

26  requires a single significant question of law or fact").  Proof of commonality under Rule 23(a) is

27  "less rigorous" than the related preponderance standard under Rule 23(b)(3).  See Mazza, 666

28  F.3d at 589.  "The existence of shared legal issues with divergent factual predicates is sufficient,

8

1    as is a common core of salient facts coupled with disparate legal remedies within the class."

2    Hanlon, 150 F.3d at 1019.

3         Here, the litigation involves common class-wide issues that, absent the settlement, would

4    drive the resolution of plaintiffs' claims.  Plaintiffs challenge the King & Spalding defendants'

5    conduct as class counsel in the Nevada litigation.  (See Dkt. 373, SAC at ¶¶ 2-3, 18 & 31).  As

6    such, the commonality requirement is easily satisfied here.  Each of the King & Spalding

7    defendants' alleged acts of misconduct uniformly affected all plaintiffs – whether the King &

8    Spalding defendants had a conflict of interest when representing plaintiffs in the Nevada litigation

9    (see id. at ¶ 2); whether they intentionally concealed the alleged conflict of interest (see id.);

10   whether they knew of the alleged actions of Kay Jackson and Sanjay Varma (see id. at ¶ 30); and

11   whether they approved of or directed such actions (see id. at ¶ 31) are some of the common

12   questions whose truth or falsity will resolve issues central to plaintiffs' claims in one stroke. (See

13   id. at ¶ 18).

14             3.    **Typicality**.

15        To demonstrate typicality, a plaintiff "must show that the named parties' claims are typical

16   of the class."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (citing Fed. R.

17   Civ. P. 23(a)(3)).  "The test of typicality is whether other members have the same or similar injury,

18   whether the action is based on conduct which is not unique to the named plaintiffs, and whether

19   other class members have been injured by the same course of conduct."  Id. (internal quotation

20   marks and citation omitted).  "Typicality refers to the nature of the claim or defense of the class

21   representative, and not to the specific facts from which it arose or the relief sought."  Id. (internal

22   quotation marks and citation omitted).  The typicality requirement demands that a named plaintiff's

23   claims be "reasonably co-extensive with those of absent class members," although "they need not

24   be substantially identical."  Hanlon, 150 F.3d at 1020.

25        Here, each of the representative plaintiffs was a class member in the Nevada litigation.

26   (See Dkt. 389-1, Chavez's 2d Decl., Exh. 5 (Declaration of James Estakhrian in Support of

27   Plaintiffs' Second Renewed Motion for Preliminary Approval of Class Action Settlement

28   ("Estakhrian Decl.") at ¶ 3); id., Exh. 6 (Declaration of Abdi Naziri in Support of Plaintiffs' Second

Renewed Motion for Preliminary Approval of Class Action Settlement ("Naziri Decl.") at ¶¶ 3-4; Dkt 373, SAC at ¶ 43 (Naziri "did not opt out of the settlement and received a payment of approximately $89,000" in the Nevada litigation). And each allege that the King & Spalding defendants committed malpractice in their representation of the class members of the Nevada litigation. (See Dkt. 373, SAC at ¶¶ 2-3, 18 & 31). Under the circumstances, the court finds that the claims of the representative plaintiffs are typical of the claims of the Settlement Class.

4.    **Adequacy of Representation**.

"The named Plaintiffs must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. (internal quotation marks and citation omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." Id.

The proposed class representatives do not appear to have any conflicts of interest with the absent class members, especially given that they have no individual claims separate from the class claims. As Estakhrian states, "[a]t all times in this litigation, I have acted not only on my behalf but also on behalf of everyone else that participated in the settlement of the [Nevada] litigation." (Dkt. 389-1, Estakhrian Decl. at ¶ 5). "I am not aware of any conflict of interest that I might have with other class members." (Id. at ¶ 6). "We all invested in the same development (the Cosmopolitan resort); we were all purportedly represented by the [King & Spalding d]efendants in an effort to recover our purchase deposits; we all suffered the same injury at [the King & Spalding d]efendants' hands; and we all did not get all of our money back as I think we should have." (Id.).

Similarly, Naziri states, that his "sole motivation [for being a class representative] is to help achieve a measure of justice for the Cosmopolitan investors and hold those responsible accountable for those losses." (Dkt. 389-1, Naziri Decl. at ¶ 8). Like the other class members,

1  Naziri purchased a unit in the Cosmopolitan Hotel and Casino and received only a partial return

2  of his deposit.  (See id. at ¶¶ 3 & 4; Dkt. 373, SAC at ¶ 43).

3      In short, "[t]he adequacy-of-representation requirement is met here because Plaintiffs have

4  the same interests as the absent Class Members[.]   Further, there is no apparent conflict of

5  interest between the named Plaintiffs' claims and those of the other Class Members' – particularly

6  because the named Plaintiffs have no separate and individual claims apart from the Class."

7  Barbosa v. Cargill Meat Solutions Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013).

8      Finally, plaintiffs' counsel request, and the Settlement Agreement provides, that the court

9  appoint as class counsel lawyers from the firms Chavez and Gertler, Fay Law Group, Irvine Law

10  Group, and Mehri and Skalet.  (See Dkt. 389, Motion at 4 & 19; Dkt. 389-1, Settlement Agreement

11  at § 3(d)).  The attorneys from these firms – Mark Chavez, Raymond C. Fay, S. Ron Alikani, and

12  Steven Skalet – have many years of experience in class action litigation.  (See Dkt. 389-1,

13  Chavez's 2d Decl. at ¶¶ 3-15; id. at Exh. 7 (Declaration of Steven A. Skalet in Support of Plaintiffs'

14  Motion for Preliminary Approval of Class Action Settlement ("Skalet Decl.") at ¶¶ 3-8);  Exh. 8

15  (Declaration of Raymond C. Fay in Support of Motion for Preliminary Approval of Class Action

16  Settlement ("Fay Decl.") at ¶¶ 2-7) & Exh. 9 (Declaration of S. Ron Alikani in Support of Motion

17  for Preliminary Approval of Class Action Settlement ("Alikani Decl.") at ¶¶ 3-5).  Based on such

18  representations, and having observed counsel's diligence in litigating this case, the court finds that

19  plaintiffs' counsel are competent, and that the adequacy of representation requirement is satisfied.

20  See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel,

21  and the Court finds that Plaintiffs are represented by experienced and competent counsel who

22  have litigated numerous class action cases."); Avilez v. Pinkerton Gov't Servs., Inc., 286 F.R.D.

23  450, 457 (C.D. Cal. 2012) vacated and remanded on other grounds, 595 Fed. Appx. 579 (9th Cir.

24  2015) ("Defendants do not dispute and the evidence confirms that, as detailed in their

25  declarations, Plaintiff's counsel are experienced class action litigators who have litigated many .

26  . . class actions and have been certified as class counsel in numerous other class actions[.]").

27

28

1        B.      Rule 23(b) Requirements.

2        "Where, as here, a plaintiff moves for class certification under Rule 23(b)(3), the plaintiff

3  must prove[] the questions of law or fact common to the members of the class predominate over

4  any questions affecting only individual members, and that a class action is superior to other

5  available methods for the fair and efficient adjudication of the controversy." Sandoval, 2011 WL

6  5443777, at *2; see Fed. R. Civ. P. 23(b)(3).

7        1.   **Predominance**.

8        "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

9  cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623, 117 S.Ct. at 2249.

10  "Rule 23(b)(3) focuses on the relationship between the common and individual issues.  When

11  common questions present a significant aspect of the case and they can be resolved for all

12  members of the class in a single adjudication, there is clear justification for handling the dispute

13  on a representative rather than on an individual basis." Hanlon, 150 F.3d at 1022 (internal

14  quotation marks and citations omitted); see In re Wells Fargo Home Mortg. Overtime Pay Litig.,

15  571 F.3d 953, 959 (9th Cir. 2009) ("[T]he main concern in the predominance inquiry . . . [is] the

16  balance between individual and common issues.").  Additionally, the class damages must be

17  sufficiently traceable to plaintiffs' liability case. See Comcast Corp. v. Behrend, 133 S.Ct. 1426,

18  1433 (2013).

19        The court is persuaded that "[a] common nucleus of facts and potential legal remedies

20  dominates this litigation." Hanlon, 150 F.3d at 1022.  As discussed above, see supra at § I.A.2.,

21  the common questions regarding the King & Spalding defendants' conduct towards the class

22  members of the Nevada litigation are central to this litigation.  (See also Dkt. 373, SAC at ¶¶ 47

23  & 50).  The answers to these questions, which would drive the resolution of the litigation, do not

24  depend on the individual facts or circumstances of an individual class member's purchase of a unit

25  in the Cosmopolitan Hotel or the extent of his or her involvement in the Nevada litigation.  Rather,

26  the predominant question is whether the King & Spalding defendants concealed an alleged conflict

27  of interest while they were involved in pursuing a settlement on behalf of all class members in the

28  Nevada litigation.  The conduct of the King & Spalding defendants was either unethical as to all

class members or to none.   Moreover, class members' individual damages are "capable of determination on a class-wide basis, and those damages [are] traceable to . . . plaintiff[s'] liability case."  Munoz v. PHH Corp., 2013 WL 2146925, at *24 (E.D. Cal. 2013).

### 2.  **Superiority**.

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case" and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023.  Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority.  See Fed. R. Civ. P. 23(b)(3)(A)-(D).

The first factor considers "the class members' interests in individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  "This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation."  Barbosa, 297 F.R.D. at 444.  Here, plaintiffs do not assert claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member.  (See, generally, Dkt. 373, SAC).  Rather, plaintiffs seek the amount of their deposit that was not refunded in the Nevada litigation and disgorgement of attorney's fees.  (See id. at p. 23; Dkt. 389-1, Chavez's 2d Decl. at Exh. 3 (Plan of Allocation)).  The average settlement payment will be $2,056.01.  (See Dkt. 389-1, Chavez's 2d Decl. at ¶ 24).  Although there will be some variance as to the amount individual class members will receive,[2] the variance does not undermine the superiority of utilizing the class action procedure in this case.  The alternative method of resolution, i.e., individual claims for a relatively small amount of damages, would likely never be brought, as "litigation costs would dwarf potential recovery."  Hanlon, 150 F.3d at 1023;

---

[2] For example, (1) 251 of 1,479 class members are expected to receive more than $ 2,500 and (2) 34 of 1,479 class members will receive more than $5,000.  (See Dkt. 389-1, Chavez's 2d Decl. at ¶ 24).  The court is satisfied by plaintiffs' explanation for this variance, which is that "class members who put less money down and received higher refunds will receive relatively smaller sums," while "those class members who [] put more money down and received lower refunds will receive appropriately larger settlement shares."  (Id.).

1   see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of

2   the putative class members' potential individual monetary recovery, class certification may be the

3   only feasible means for them to adjudicate their claims.  Thus, class certification is also the

4   superior method of adjudication"); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D.

5   Cal. 2011), reconsideration denied, 280 F.R.D. 540 (2012) ("Given the small size of each class

6   member's claim, class treatment is not merely the superior, but the only manner in which to ensure

7   fair and efficient adjudication of the present action.").   In short, "there is no evidence that Class

8   members have any interest in controlling prosecution of their claims separately nor would they

9   likely have the resources to do so."  Munoz, 2013 WL 2146925, at *26.

10          The second factor to consider is "the extent and nature of any litigation concerning the

11   controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).   In

12   Obenstine v. Jefary, et al., Case No. CV 13-1291 FMO-CW (C.D. Cal.) ("Related Action"), the

13   parties reached a global settlement on December 17, 2015 (see Related Action) (Dkt. 110, Notice

14   of Settlement), and the Related Action was dismissed with prejudice on January 6, 2016.  (See

15   id.) (Dkt. 113, Order Dismissing Entire Action with Prejudice).  Because the Related Action has

16   settled, it will have no bearing on this case.  Moreover, Obenstine withdrew any "claims,

17   arguments, or defenses . . . that are based on the facts or claims asserted in the [Related Action]"

18   in this case.  (Dkt. 392, Notice of Withdrawal of Affirmative Defenses and Agreement not to Assert

19   Certain Claims, Arguments, and Defenses ("Notice of Withdrawal") at 2).  In short, there is no

20   indication that any class member is involved in any other litigation concerning the claims in this

21   case.  (See Dkt. 389-1, Chavez's 2d Decl. at ¶ 32 ("I am not aware of any other similar litigation")).

22          The third factor is "the desirability or undesirability of concentrating the litigation of the

23   claims in the particular forum," and the fourth factor is "the likely difficulties in managing a class

24   action."  Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the

25   third and fourth factors are rendered moot and are irrelevant."  Barbosa, 2013 WL 3340939, at

26   *11;  Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only

27   class certification, a district court need not inquire whether the case, if tried, would present

28   intractable management problems, for the proposal is that there be no trial.") (citation omitted).

1   The only factor in play here weighs in favor of class treatment.  Further, the filing of

2   separate suits by several thousand class members "would create an unnecessary burden on

3   judicial resources." Barbosa, 297 F.R.D. at 445.  Under the circumstances, the court finds that

4   the superiority requirement is satisfied.

5   II.   FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED

6        SETTLEMENT.

7        The court's preliminary evaluation of the Settlement Agreement "does not disclose grounds

8   to doubt its fairness[,] . . . such as unduly preferential treatment of class representatives or of

9   segments of the class, or excessive compensation for attorneys, and appears to fall within the

10  range of possible approval[.]" In re Vitamins Antitrust Litig., 2001 WL 856292,*4 (D.D.C. 2001)

11  (internal quotation marks omitted).

12       A.   The Settlement is the Product of Arm's-Length Negotiations.

13       "This circuit has long deferred to the private consensual decision of the parties." Rodriguez

14  v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).  The Ninth Circuit has "emphasized" that:

15            the court's intrusion upon what is otherwise a private consensual agreement

16            negotiated between the parties to a lawsuit must be limited to the extent

17            necessary to reach a reasoned judgment that the agreement is not the

18            product of fraud or overreaching by, or collusion between, the negotiating

19            parties, and that the settlement, taken as a whole, is fair, reasonable and

20            adequate to all concerned.

21  Id. (internal quotation marks omitted).  The Ninth Circuit does not follow the approach of other

22  circuits that requires district courts to "specifically weigh[] the merits of the class's case against

23  the settlement amount and quantif[y] the expected value of fully litigating the matter." Id. Rather,

24  the Ninth Circuit examines whether the settlement is "the product of an arms-length, non-collusive,

25  negotiated resolution[.]" Id.   When it is, courts afford the parties the presumption that the

26  settlement is fair and reasonable. See, e.g., In re Heritage Bond Litig., 2005 WL 1594403, *9 ("A

27  presumption of correctness is said to 'attach to a class settlement reached in arm's-length

28  negotiations between experienced capable counsel after meaningful discovery.'") (internal

quotation marks omitted).

At the July 9, 2015 hearing, the court acknowledged that although the monetary amount of the proposed settlement appeared to be significant, it was nevertheless concerned that the sole proposed class representative and three of the four proposed class counsel were named as defendants in the <u>Related Action</u>. Thus, the court wanted assurances that the class representative and proposed class counsel did not put their interests in obtaining an advantage in the <u>Related Action</u> ahead of the interests of the putative class members. Plaintiffs' counsel has since provided the assurances sought by the court.

As an initial matter, the <u>Related Action</u> has settled and, as part of that settlement, Obenstine agreed to withdraw any "claims, arguments, or defenses . . . that are based on the facts or claims asserted in the [Related Action]."[3]  (Dkt. 392, Notice of Withdrawal at 2).  In addition, rather than try to "settle around" Obenstine, plaintiffs' counsel expressly invited Obenstine to participate in the mediation in this case, but he declined to do so. (<u>See</u> Dkt. 356, Plaintiff's Notice of and Renewed Motion for Preliminary Approval of Settlement as to Defendants Benjamin F. Easterlin IV and King & Spalding LLP at 5).  The court also finds merit in plaintiffs' argument that Estakhrian and class counsel had little incentive to settle around Obenstine given that Obenstine's resources are relatively scarce compared to the King & Spalding defendants. (<u>See id.</u>).  Finally, Estakhrian added an additional class representative, Naziri, who was never named as a defendant in the <u>Related Action</u>.  (<u>See</u> Dkt. 373, SAC at ¶ 5) (naming Naziri a class representative).

Putting aside the impact of the <u>Related Action</u>, there were significant risks for plaintiffs in going forward with this case. Plaintiffs diligently pursued their claims and have engaged in activities including:  (1) outreach and investigation of claims with unnamed class members; (2) taking several depositions and participating in depositions noticed by the King & Spalding defendants; (3) consulting with experts; (4) propounding and responding to written discovery; and (5) engaging in substantial motion practice regarding personal jurisdiction. (<u>See</u> Dkt. 389-1,

_____

[3]  In addition, while S. Ron Alikani and his firm, Irvine Law Group; Raymond C. Fay; and Steven M. Skalet and his firm, Mehri & Skalet were all named as defendants in the <u>Related Action</u>, the attorneys from Chavez and Gertler were never named as defendants in the <u>Related Action</u>.

Chavez's 2d Decl. at ¶ 19; Dkt. 389-1, Settlement Agreement at p. 3). Estakhrian explains that as a result of this investigation (and confirmed by ongoing investigation), he realized that pursuing the claims to trial against the King & Spalding defendants posed significant problems of proof, particularly because the King & Spalding defendants maintained that they did not act as counsel in the Nevada litigation and did not receive any remuneration in that litigation. (See Dkt. 389-1, Chavez's 2d Decl. at ¶ 21). In light of these risks, Estakhrian agreed to mediate the claims and reached a settlement agreement with the King & Spalding defendants (and additional months of negotiations amending the terms of that settlement to address the concerns raised by the court). (See id. at ¶ 22).

Based on the record before the court, the court is persuaded that the parties thoroughly investigated and considered their own and the opposing parties' positions. The parties clearly had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement is "the product of fraud or overreaching by, or collusion between, the negotiating parties[.]" Rodriguez, 563 F.3d at 965 (quoting Officers for Justice, 688 F.2d at 625).

### 1.   **Recovery for Class Members.**

The settlement is fair, reasonable, and adequate, particularly when viewed in light of the litigation risks in this case. The settlement establishes that the King & Spalding defendants pay $4,625,000.00 into a non-reversionary fund, which will be distributed to class members, less the costs of administering the settlement, attorney's fees and costs, and class representative incentive payments. (See Dkt. 389-1, Settlement Agreement at §§ 3(g), 6 & 7; Dkt. 389-1, Chavez's 2d Decl. at ¶ 23). As described above, the average monetary payout (i.e., refund of the deposit the class member paid for a unit) for each class member will be about $2,056.01 (see Dkt. 389-1, Chavez's 2d Decl. at ¶ 24), although some class members will receive payments as high as $5,000. (See id.). The payout in this case is in addition to the 60% to 70% of their deposits class members received as a result of the settlement in the Nevada litigation received between. (Dkt. 389-1, Chavez's 2d Decl. at ¶ 17).

The Settlement is even more compelling given the substantial litigation risks in this case,

1   which, as noted above, includes the fact that the King & Spalding defendants maintain that they

2   did not act as counsel in the Nevada litigation and did not receive any remuneration in that

3   litigation.[4]   (See Dkt. 389-1, Chavez's 2d Decl. at ¶ 21).   As plaintiffs' counsel stated,

4   "[n]otwithstanding our calculations, we recognized that the value of the case had to be

5   substantially discounted" given plaintiffs' problems of proof against the King & Spalding

6   defendants.  (see Dkt. 389-1, Chavez's 2d Decl. at ¶ 20).  In short, the risks of continued litigation

7   are formidable, and the court takes these real risks into account.  Weighed against those risks,

8   and coupled with the delays associated with continued litigation, the settlement's benefits to the

9   class falls within the range of reasonableness.  See, e.g. In re Mego Fin. Corp. Sec. Litig., 213

10  F.3d 454, 459 (9th Cir. 2000) (ruling that "the [s]ettlement amount of almost $2 million was roughly

11  one-sixth of the potential recovery, which, given the difficulties in proving the case, [was] fair and

12  adequate."); Rodriguez, 563 F.3d at 964 (affirming settlement approval where the settlement

13  represented 30% of the damages estimated by the class expert); Linney Cellular Alaska P'ship,

14  151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a

15  fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is

16  grossly inadequate and should be disapproved.") (internal quotation marks and citation omitted).

17          2.    **Release of Claims**.

18  Beyond the value of the settlement, potential recovery at trial, and inherent risks in

19  continued litigation, courts also consider whether a class action settlement contains an overly

20  broad release of liability.  See Newberg on Class Actions § 13:15, at 326 (5th ed. 2014) ("Beyond

21  the value of the settlement, courts have rejected preliminary approval when the proposed

22  settlement contains obvious substantive defects such as . . . overly broad releases of liability.");

23  see also Fraser v. Asus Computer Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying

24  preliminary approval of proposed settlement that provided defendant a "nationwide blanket

25

26          [4] The King & Spalding defendants provided two declarations stating that they did not "either
27  directly or indirectly, receive[] any fee or other consideration in any way related, either directly or
    indirectly, to the [Nevada litigation]."  (Dkt. 389-1, Settlement Agreement, Exh. A (Declaration of
28  Peter G. Nolan) at ¶ 2 & Exh. B (Declaration of Benjamin F. Easterlin) at ¶ 2).

release" in exchange for payment "only on a claims-made basis," without the establishment of a settlement fund or any other benefit to the class).

Here, plaintiffs and settlement class members who do not exclude themselves from the settlement agree to release:  (a) all claims arising out of or relating to any conduct, events, or transactions alleged, or that could have been alleged in connection with the claims made in this case; (b) all claims relating to any conduct, events, or transactions in, or otherwise concerning or arising out of the Nevada litigation, or the alleged representation of any plaintiff or class member in the Nevada litigation, and (c) claims against the King & Spalding defendants for acting in accordance with paragraph 14 of the Settlement Agreement, which concerns the King & Spalding defendants' waiver of the attorney-work product protection for certain documents.  (See Dkt. 389-1, Settlement Agreement at §§ 10 & 14; Dkt. 408, Stipulation and Order re: Amendment of Settlement Agreement).

The portion of the release relating to claims concerning or arising out of the Nevada litigation is appropriate because it is "based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1287 (9th Cir.) (emphasis omitted), cert. denied, Hoffer v. City of Seattle, 506 U.S. 953, 113 S.Ct. 408 (1992); see Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir.) (same), cert. denied, Sprint Spectrum, L.P. v. Hesse, 562 U.S. 1003, 131 S.Ct. 506 (2010). The SAC alleges that the King & Spalding defendants served as counsel in the Nevada litigation and engaged in attorney malpractice and fraud in that litigation.  (See, e.g., Dkt. 373, SAC at ¶¶ 21-22, 52, 54 & 77).  The third portion of the release relating to attorney work-product is appropriate because the King & Spalding defendants have, in exchange for the release, agreed to waive the attorney work-product protection for certain documents and to cooperate with the litigation against non-settling defendants.  Under the circumstances, the court is persuaded that the release adequately balances fairness to absent class members and recovery for plaintiffs with defendants' business interest in ending this litigation with finality. See, e.g., Fraser, 2012 WL 6680142, *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge"

1   as well as the need to prioritize "[f]airness to absent class member[s]").

2            C.     The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the

3                    Class Representatives.

4       "Although [the Ninth Circuit] ha[s] approved incentive awards for class representatives in

5   some cases, [it has instructed] district courts to scrutinize carefully the awards so that they do not

6   undermine the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions Inc.,

7   715 F.3d 1157, 1163 (9th Cir. 2013) (reversing the district court's class action settlement

8   approval).  In Radcliffe, the court cast doubt, but did not rule on, "whether class representatives

9   could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement

10   value when they would receive $5,000 incentive awards." Id. at 1165.

11       In Staton, the Ninth Circuit reversed the district court's approval of a class-action settlement

12   where the incentive payments of up to $50,000 were disproportionately large as compared to class

13   members' payments averaging $16,500 for one subclass, and $1,000 for another.  See 327 F.3d

14   at 948-49 & 977.  The court stated that class representatives receiving special incentive awards

15   "may be more concerned with maximizing those incentives than with judging the adequacy of the

16   settlement as it applies to class members at large."  Id. at 977.  In such cases, "the class

17   representatives [may not] adequately represent the class."  Radcliffe, 715 F.3d at 1164.  The

18   Staton court, however, approvingly cited to Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998),

19   in which the Seventh Circuit allowed an incentive payment of $25,000 "in the context of a recovery

20   of more than $14 million[,]" where the plaintiff "spent hundreds of hours with his attorneys and

21   provided them with 'an abundance of information[.]'"  327 F.3d at 976 (quoting Cook, 142 F.3d at

22   1016).  Staton also cited favorably to In re SmithKline Beckman Corp. Sec. Litig., 751 F.Supp.525,

23   535 (E.D. Pa. 1990), which approved "$5,000 awards for one named representative of each of

24   nine plaintiff classes involving more than 22,000 claimants in a settlement of $22 million[.]"  327

25   F.3d at 977.

26       With this guidance in mind, the court must examine whether there is a "significant disparity

27   between the incentive awards and the payments to the rest of the class members" such that it

28   creates a conflict of interest.  See Radcliffe, 715 F.3d at 1165.  Further, "[i]n deciding whether [an

incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." <u>Cook</u>, 142 F.3d at 1016.

The Settlement Agreement indicates that the King & Spalding defendants will not oppose class counsel's application for a $ 7,500 enhancement payment for Estakhrian and $2,500 payment for Naziri.  (<u>See</u> Dkt. 389-1, Settlement Agreement at § 4(c)).  However, the Settlement Agreement leaves the actual amount awarded by the court, if any, within the court's discretion. (<u>Id.</u>).  Estakhrian and Naziri state that they will be satisfied if the settlement is approved and they receive no enhancement payment.  (<u>See</u> Dkt. 389-1, Estakhrian Decl. at ¶ 9 ("I will be satisfied if I receive only the same compensation as the other investors"); Naziri Decl. at ¶ 8 ("I believe the settlement is fair and should be approved regardless of whether the Court awards me and/or Mr. Estakhrian any amount for our individual contributions").  Under the circumstances, the court is persuaded that the requested incentive awards are reasonable.

As an initial matter, because the parties agree that the settlement agreement shall remain in force regardless of any incentive awards, the awards are unlikely to create a conflict of interest between the named plaintiffs and absent class members.  Also, it is clear that plaintiffs have taken on substantial responsibility in litigating this case, and the class has benefitted from the time and effort they spent doing so.  (<u>See</u>, <u>e.g.</u>, Dkt. 389-1, Estakhrian Decl. at ¶¶ 4 & 8 (stating that he spent approximately 50 hours reviewing and discussing with counsel the pleadings and key documents in the action, and negotiating the proposed settlement agreement); Dkt. 389-1, Naziri Decl. at ¶ 7 (describing his review and discussion with counsel the pleadings and proposed settlement).  While a disparity may exist between the award plaintiffs receive and the potential monetary awards to absent class members, the court does not believe, under the circumstances here, that such disparity rises to the level of unduly preferential treatment.  On the contrary, the additional payment – with Estakhrian's request only amounting to .16% of the $4.625 million

1   settlement, and Naziri's[5] request amounting to even less, $2,500 or .05% of the settlement – is

2   warranted based on their role in protecting the interests of the class. See In re Online DVD-

3   Rental, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving incentive awards that were roughly 417

4   times larger than $12 individual awards because the awards were reasonable, the number of

5   representatives was relatively small, and the total amount of incentive awards "ma[d]e up a mere

6   .17% of the total settlement fund").

7         D.   The Opt-Out Threshold.

8         The Settlement Agreement provides that, "[i]n the event that the dollar amount of the

9   Opt-Outs' un-refunded security deposits, including interest thereon (as calculated in the

10   Confidential Supplemental Agreement), in condominium units within the Cosmopolitan Las Vegas

11   ("Unrefunded Deposits") exceeds the amount specified in the confidential supplemental written

12   agreement of the parties (the "Confidential Supplemental Agreement"), the K&S Defendants shall

13   have the right, but not the obligation, in their sole and absolute discretion, to terminate this

14   Settlement by providing written notice of termination to Class Counsel and the Court no later than

15   14 days after receiving the Settlement Administrator Opt-Out Notice." (Dkt. 389-1, Settlement

16   Agreement at § 13). Pursuant to the Court's Order of January 21, 2016, the parties provided

17   supplemental briefing and lodged under seal the Confidential Supplemental Agreement. (See Dkt.

18   401, Joint Supplemental Memorandum in Support of Second Renewed Motion for Preliminary

19   Approval of Settlement). Having reviewed the Confidential Supplemental Agreement, the court

20   finds that the opt-out dollar threshold is reasonable and, given the circumstances of this case and

21   the parties involved, they need not disclose it to the class. See, e.g., In re Online DVD Rental, 779

22   F.3d at 948 (holding that withholding exact opt-out percentage from class members does not

23   render settlement agreement "unfair"); In re Skelaxin (Metaxalone) Antitrust Litig., 2015 WL

24   1486709, *2 (E.D. Tenn. 2015) (granting motion to seal opt out threshold); In re Remeron End-

25   Payor Antitrust Litig., 2005 WL 2230314, *18 (D. N.J. 2005) (sealing of the opt-out threshold

26

27   _____

28      [5] Naziri has only recently become a class representative and his fee award is based on his relatively shorter time working with class counsel on this matter.

1 agreed to by court, attorneys general, and class counsel); In re HealthSouth Corp. Securities Litig.,

2 334 Fed. Appx. 248, 250 n. 4 (11th Cir. 2009) (holding that the opt-out threshold "is typically not

3 disclosed and is  kept confidential to encourage settlement and discourage third parties from

4 soliciting class members to opt out"); In re Warfarin Sodium Antitrust Litig., 2012 F.R.D. 231, 253

5 (D. Del. 2002) (holding that the opt-out threshold was "irrelevant to members' opt-out decision").

6       As the court recognized in In re Skelaxin, "at worst, [publicizing the threshold] could result

7 in the failure of the Settlement to become effective. At best, it could result in settlement proceeds

8 being unfairly channeled away from the proposed Settlement Class members to parties and

9 attorneys who do not deserve them."   2015 WL 1486709, at *2.   As the court and parties

10 recognize, the size of the settlement and the fact King & Spalding is a well-known law firm likely

11 means that this settlement will generate (and has generated) attention and interest from the public,

12 putative purchasers of the Cosmopolitan, and attorneys.   Moreover, the parties seek to withhold

13 only the exact dollar amount of the opt-out threshold; the remainder of the Settlement Agreement

14 has been disclosed.   See, e.g., In re Online DVD Rental, 779 F.3d at 948 (in rejecting objector's

15 argument that withholding opt-out percentage "unfair," Ninth Circuit held that "[o]nly the exact

16 threshold, for practical reasons, was kept confidential.").   In short, the court is persuaded that the

17 opt-out provision is fair and proper in that it supports the parties in their efforts to ensure that

18 settlement proceeds are directed to class members and not diverted to other parties or attorneys

19 to the detriment of the class.

20       E.    Proposed Class Notice and Notification Procedures.

21       Upon a settlement of a certified class, "[t]he court must direct notice in a reasonable

22 manner to all class members who would be bound by the proposal."   Fed. R. Civ. P. 23(e)(1).

23 Federal Rule of Civil Procedure 23(c)(2) prescribes the "best notice that is practicable under the

24 circumstances, including individual notice" of particular information.   See Fed. R. Civ. P.

25 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

26       A class action settlement notice "is satisfactory if it generally describes the terms of the

27 settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

28 forward and be heard."   Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.), cert.

denied, 543 U.S. 818 (2004) (internal quotation marks omitted). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir.), cert. denied, 544 U.S. 1044 (2005). Settlement notices must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." Weinberger v. Kendrick, 698 F.2d 61, 70 (2d Cir. 1982), cert. denied, 464 U.S. 818 (1983) (internal quotation marks and brackets omitted); see Trotsky v. Los Angeles Fed. Sav. & Loan Ass'n., 48 Cal.App.3d 134, 151-52 (1975) (same); Wershba v. Apple Computer, Inc., 91 Cal.App.4th 224, 252 (2001) ("As a general rule, class notice must strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members."). The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to its terms. See Wershba, 91 Cal.App.4th at 251-52. "[N]otice is adequate if it may be understood by the average class member." 4 Newberg on Class Actions § 11:53, at 167 (4th ed. 2013).

Here, the Settlement Agreement proposes that the costs of notice and administration, in an amount not to exceed $75,000,[6] will be deducted from the $4.625 million settlement fund. (See Dkt. 389-1, Settlement Agreement at § 7). The parties have selected A.B. Data (see id. at § 18(d)), a firm described as "one of the most respected and fully integrated class action administrators in the industry, with a focused attention to detail and cost savings." (Dkt. 389-1, Chavez's 2d Decl. at ¶ 26; see id. at Exh. 4 (Declaration of Anya Verkhovskaya Regarding Proposed Settlement Administration ("Verkhovskaya Decl.")). The notice program A.B. Data developed for this matter includes: (1) direct mailing by first-class mail; (2) targeted media publication in the Las Vegas and Southern California area; and (3) a case-specific website and toll-free number to supplement direct notice. (See id. at ¶¶ 13-21; Dkt. 389-1, Settlement

---

[6] A.B. Data, Ltd. anticipates, however, that its costs will be approximately $28,000. (See Dkt. 389-1, Verkhovskaya Decl. at 10). Unused amounts will revert back to the settlement fund. (See Dkt. 389-1, Settlement Agreement at §§ 3(g) & 6).

Agreement at § 12).  Additionally, in the event a notice is returned as undeliverable, it will be re-mailed to an address indicated by the USPS in the case of an expired automatic forwarding order or will be re-mailed after utilizing up to three industry-leading third-party data providers.  (See Dkt. 389-1, Verkhovskaya Decl. at ¶ 16).

A.B. Data states that through these efforts, it anticipates that "it will identify updated addresses for all or nearly all individuals on the Class List." (Dkt. 389-1, Verkhovskaya Decl. at ¶ 16).  The court tends to agree, since the class members in this action were also class members in the Nevada litigation.  (See Dkt. 389-1, Settlement Agreement at § 1) (defining class members in this action as class members that did not opt out of the Nevada litigation).  Based on the foregoing, the court finds that there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members.

The court has also reviewed the notices – both the longer FAQ-style mail notice and the one-page notice for media publication – that class members would receive.  (See Dkt. 389-1, Settlement Agreement at Exhs. D & E).  The notices explain the claims set forth in the SAC in plain terms.  (See id.).  The direct mail notice clearly explains the terms of the settlement, including the scope of the release (see id., Exh. D at § 23), the fact that the King & Spalding defendants may terminate the agreement if the monetary amount of class member opt-outs reach a certain threshold (see id. at § 11), and that the King & Spalding defendants, in seeking final approval of the settlement, will ask the court to bar remaining defendants from seeking contribution or indemnity from them.  (See id. at § 23).  It also sets out the procedures that must be followed to object or opt-out of the settlement.  (See id. at §§ 11, 12 & 24).  Under the circumstances, the court finds that the content of the class notice constitutes the best practicable notice to class members.

## CONCLUSION

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Second Renewed Motion for Preliminary Approval of Class Action Settlement

1    (**Document No. 389**) is **granted** upon the terms and conditions set forth in this Order.

2       2.  The court preliminarily certifies the class, as defined in § 1 of the Settlement Agreement

3 (Document No. 389-1): all class members (i.e., that did not opt out) in the litigation <u>Daniel Watt,</u>

4 <u>et al. v. Nevada 8 Property 1, LLC, et al.</u>, Nevada District Court, Case No. A582541.

5       3.  The court preliminary appoints plaintiffs James Estakhrian and Abdi Naziri as class

6 representatives for settlement purposes.

7       4.  The court preliminarily appoints Irvine Law Group LLP, Mehri & Skalet PLLC, Fay Law

8 Group PLLC, and Chavez & Gertler LLP as class counsel for settlement purposes.

9       5.  The court preliminarily finds that the terms of the settlement are fair, reasonable and

10 adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.  All funds paid into

11 the Settlement Fund (as defined in the Settlement Agreement) shall be in custody of the law of the

12 court and shall remain subject to the jurisdiction of the court, until such time as the funds are

13 disbursed pursuant to the Settlement Agreement and/or further order of the court.  The court

14 preliminary approves the following plan of allocation: the amount remaining after all court-

15 approved deductions are taken shall be allocated and paid in proportion to the amount of their

16 deposit that was not refunded in the Nevada litigation.

17       6.  No later than **March 8, 2016**, the King & Spalding defendants shall file with the court an

18 affidavit or declaration showing timely compliance with any applicable Class Action Fairness Act

19 of 2005, 28 U.S.C. § 1715 notice directive.

20       7.  The court approves the form, substance, and requirements of the notices (Dkt. 389-1,

21 Settlement Agreement at Exhs. D & E).

22       8.  The proposed manner of the notice of settlement set forth in the § 12 of the Settlement

23 Agreement (and further detailed in the Declaration of Anya Verkhovskaya Regarding Proposed

24 Settlement Administration at ¶¶ 13-21) constitutes the best notice practicable under the

25 circumstances and complies with the requirements of Due Process.  The parties, by agreement,

26 may revise the notices and other exhibits attached to the Settlement Agreement in ways that are

27 not material.

28       9.  A.B. Data, Ltd. is hereby appointed as the Claims Administrator.  Pursuant to § 12 of the

Settlement Agreement (and as described in the Declaration of Anya Verkhovskaya Regarding Proposed Settlement Administration at ¶¶ 13-21), the Settlement Administrator shall supervise and administer the notice procedure and process the settlement payments. The following actions shall be taken, without exclusion of other actions required by the Settlement Agreement in connection with the notice, claims administration, and claims payment process:

A.   No later than **February 22, 2016**, the parties shall provide to the Settlement Administrator available information concerning:  (1) the names, postal addresses, and any email addresses of settlement class members; and (2) available information concerning their Cosmopolitan units, deposits, and settlement payments in the Nevada litigation.  The MAC defendants are authorized and directed to promptly provide this information to counsel for the settling parties, as the MAC defendants were class counsel and administered the settlements in the Nevada litigation.

B.   No later than **February 29, 2016**, the Settlement Administrator shall send the Class Notice to the members of the Settlement Class via United States mail in a form substantially similar to Exhibit D to the Settlement Agreement and, in addition, shall cause to be published a notice in a form substantially similar to Exhibit E to the Settlement Agreement once in each of the following publications:  Las Vegas Review Journal, Los Angeles Daily Journal, and San Francisco Daily Journal.

C.   No later than **February 29, 2016**, copies of the Class Notice shall be posted and available for download on a Settlement Website established and maintained by the Settlement Administrator, and shall be mailed upon request at no charge to Settlement Class Members who call a toll-free number to be established by the Settlement Administrator (the "Toll-Free Number"). The Toll-Free Number shall be maintained by the Settlement Administrator through at least the Opt Out Date (defined below). The Settlement website shall be maintained by the Settlement Administrator until all claims have been resolved and (if found appropriate) paid.

10.  Class members shall submit requests for exclusion from the settlement or objections to the settlement and/or plaintiffs' motion for an award of class representative service payments

1    and attorney's fees and costs, no later than **April 15, 2016**.

2         11.  No later than **April 29, 2016**, the Settlement Administrator shall identify in writing to

3    counsel for the King & Spalding defendants, class counsel, and the court the total number of

4    opt-outs, together with the information required to be included with the opt-out request under the

5    provisions of § 3(b) ("Settlement Administrator Opt-Out Notice") of the Settlement Agreement. The

6    King & Spalding defendants shall be entitled to rely on the Settlement Administrator Opt-Out

7    Notice conclusively and without the need for any investigation or confirmation.  In the event that

8    the dollar amount of the Opt-Outs' un-refunded security deposits, and interest thereon, in

9    condominium units within the Cosmopolitan Las Vegas ("Unrefunded Deposits") exceed the

10    amount specified in the confidential supplemental written agreement of the parties (the

11    "Confidential Supplemental Agreement"), the King & Spalding defendants shall have the right, but

12    not the obligation, in their sole and absolute discretion, to terminate the Settlement by providing

13    written notice of termination to Class Counsel and to the Court no later than fourteen (14) days

14    after receiving the Settlement Administrator Opt-Out Notice, or **May 13, 2016**.

15         12.  The parties shall file a Motion for Final Approval of Settlement ("Motion") no later than

16    **May 20, 2016**, and notice it for hearing on the date set forth below.  In addition to addressing the

17    factors a court must consider in deciding whether to grant final approval, the Motion shall address

18    any objections and/or opposition to the settlement, including objections to plaintiffs' motion for an

19    award of class representative service payment and attorney's fees and costs.

20         13.  A Final Approval (Fairness) Hearing shall be held on **June 14, 2016**, at **10:00 a.m.** in

21    Courtroom 22 of the Spring Street Courthouse to consider the fairness, reasonableness, and

22    adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and

23    enhancement awards to the class representatives.

24         14.  The court may change the deadlines set forth above without further notice to class

25    members.  The court reserves the right, if it concludes that further notice to the class is

26    unnecessary, to extend any of the deadlines or hearings set forth in this Order and/or approve the

27    Settlement at or after the Final Approval Hearing with such modifications as may be consented

28    to by the parties.

15. With the exception of such proceedings as are necessary to implement, effectuate, and grant final approval to the terms of the Settlement Agreement, all proceedings against the King & Spalding defendants are stayed in this Action and all settlement class members are enjoined from commencing or continuing any action or proceeding in any court or tribunal asserting any claims released under the Settlement Agreement, unless the settlement class member timely files a valid request for exclusion as defined as the Settlement Agreement.  This stay shall not affect the prosecution of this action as to the non-settling defendants.

Dated this 16th day of February, 2016.

                                    /s/
                           Fernando M. Olguin
                           United States District Judge