**FILED**

CLERK, U.S. DISTRICT COURT

SEPT  26  2016

CENTRAL DISTRICT OF CALIFORNIA

BY: _____vdr_____ DEPUTY

Hon. Rosalyn M. Chapman (Ret.)
JAMS
555 West 5th Street 32nd Floor
Los Angeles, CA 90013
Tel:  213-253-9740
Fax:  213-620-0100
SPECIAL MASTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ESTAKHRIAN and ABDI NAZIRI, on behalf of themselves and all others similarly situated, | ) Case No. CV11-3480-FMO (CWx)<br>)<br>) (JAMS REF No. 1220052101)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| MARK OBENSTINE, BENJAMIN F. EASTERLIN IV, TERRY A. COFFING, KING & SPALDING, LLP and MARQUIS & AURBACH, P.C., | ) SPECIAL MASTER'S ORDER GRANTING,<br>) IN PART, AND DENYING, IN PART,<br>) PLAINTIFFS' MOTION FOR SANCTIONS<br>) UNDER 28 U.S.C. § 1927; AND SETTING<br>) AMOUNT OF SANCTIONS |
| Defendants. | ) |
| _____ ) | |

On June 9, 2016, Plaintiffs filed a Motion for Sanctions Pursuant to 28 U.S.C. §1927 and the Court's Inherent Authority (Section 1927 Motion), a supporting memorandum of points and authorities, and the supporting declaration of their counsel, S. Ron Alikani; however, the attachments referred to in the declaration were not filed.  On the same date, Mr. Safarian  filed an Objection to the Section 1927 Motion on the ground it was untimely.  On June 10, 2016, Plaintiffs refiled Mr. Alikani's declaration and also filed the attachments to the declaration.

On June 10, 2016, the Special Master issued an Order to Show Cause Why Plaintiffs' Section 1927 Motion Should Not Be Taken Off Calendar Due to its Untimeliness (OSC) and set a briefing schedule on the OSC.  On June 17, 2016, Plaintiffs filed a Response to the OSC and the supporting declarations of Steven A. Skalet, S. Ron Alikani, and Jasmin Alford, a paralegal

in Mr. Skalet's law firm.  On June 27, 2016, Mr. Safarian filed a Reply to Plaintiffs' Response and his own declaration.  On June 28, 2016, Plaintiffs filed a Motion to Strike Portions of Mr. Safarian's Reply (Motion to Strike).

On July 8, 2016, the Special Master issued an Order:  (1) granting Plaintiffs' Motion to Strike, (2) finding Plaintiffs had shown excusable neglect for their tardy (by one day) filing of the Section 1927 Motion and vacating the OSC, and (3) setting a briefing schedule on the Section 1927 Motion.  On July 22, 2016, Mr. Safarian filed his Opposition to the Section 1927 Motion (Oppo.) and his own the declaration, with exhibits.  On July 29, 2016, Plaintiffs filed a Reply.  On September 6, 2016, JAMS  served the parties with the Special Master's tentative ruling on Plaintiffs' Section 1927 Motion.

Oral argument was held telephonically before the Special Master on September 23, 2016.  Steven A. Skalet, Pia Winston, Raymond Fay, Nance Becker and S. Ron Alikani appeared on behalf of Plaintiffs and Harry A. Safarian appeared on behalf of himself.

## I.
### Relevant Procedural History

On February 29, 2016, the Special Master issued an Order Granting Plaintiffs' Motion for Discovery Sanctions (Special Master Discovery Order), which ordered *inter alia* that Defendant Obenstine and Harry Safarian,  jointly and severally, shall pay Plaintiffs reasonable expenses and attorney fees in an amount to be determined. [Dkt. 422]

The Special Master found that grounds exist to award attorney fees against Defendant Obenstine, pursuant to Rule 37(c)(1)(A), for *inter alia* "willfully and in bad faith violat[ing] Rule 26(a) [Initial Disclosures] by not providing a 'description by category and location' of the documents he possessed on the laptop and in one or two bankers' boxes"; "willfully and in bad faith violat[ing]  Rule 26(e) by not supplementing his deficient Initial Disclosures"; "intentionally … not … disclos[ing] he possessed Cosmopolitan-related documents, including the emails from his Crestpar email account, in his Rule 26(a) Initial Disclosures"; and "demonstrat[ing] a willful intention to conceal his possession of relevant documents" by failing

to supplement his responses to Sets One and Two of Plaintiffs' Requests for Production of Documents after July 14, 2015, when the district court ruled that documents from Crestridge Partners, Inc. were not privileged. Id. 15:15-20, 28-16:6.

The Special Master also determined that grounds exist to award attorney fees against Mr. Safarian for violating Rule 26(g)(1), by certifying as complete and correct Defendant Obenstine's deficient Rule 26(a) Initial Disclosures, and by failing to show that "his violation of Rule 26(g)(1) was substantially justified…." Id. at 23:21-27. Accordingly, the Special Master ordered that Defendant Obenstine and Harry Safarian, jointly and severally, shall pay Plaintiffs reasonable expenses and attorney fees, in an amount to be determined. Id. at 25:4-6.

On March 14, 2016, Plaintiffs filed an Objection to the Special Master Discovery Order [Dkt. 432] and Defendant Obenstine filed his Objections to the Special Master Discovery Order. [Dkt. 431]. On May 17, 2016, after considering the parties' objections, District Judge Fernando M. Olguin adopted the findings, conclusions and recommendations set forth in the Special Master Discovery Order and afforded Plaintiffs 14 days to file their motion for attorney fees and costs. [Dkt. 467]. In adopting the Special Master Discovery Order, Judge Olguin specifically found:

> [W]hile Obenstine's counsel acknowledges that plaintiffs "raised questions" as to the source of the 2009 Jafary emails, the fact remains that *Obenstine's counsel did not make transparent to plaintiffs' counsel the existence of the undisclosed documents*. A party is not required to divine an opposing counsel's murky statement; rather *Obenstine and his counsel had an obligation to give plaintiffs notice of the undisclosed documents in his initial disclosures and produce the subject documents either in response to plaintiffs' document requests or as supplemental responses to the document requests*.

Id. at 6 (emphasis added).

On May 18, 2016, Judge Olguin denied without prejudice Plaintiffs' Ex Parte Supplemental Application for Sanctions (Under Rule 16) Against Defendant Obenstine [Dkt.

450] and referred it to the Special Master for a decision or recommendation.    [Dkt. 468].

Additionally, Judge Olguin advised Plaintiffs that they "may, no later than 21 days from the filing date of the Order," file a motion with the Special Master as to whether Defendant Obenstine's attorney, Harry Safarian, has "unreasonably and vexatiously" multiplied the proceedings under 28 U.S.C. § 1927. Id. ¶¶ 3-4.  On May 31, 2016, the Special Master issued an Order Denying Plaintiffs' Ex Parte Supplemental Application for Sanctions (Rule 16 Sanctions Order) against Defendant Obenstine.  [Dkt. 473].  Plaintiffs did not file any Objections to the Rule 16 Sanctions Order.

## II.

### Plaintiffs' Section 1927 Motion

Plaintiffs' Section 1927 Motion seeks sanctions against Mr. Safarian "pursuant to 28 U.S.C. § 1927 and the Court's inherent authority to police the conduct of attorneys before it and to ensure the orderly process of justice.…"  Motion at 2:7-10.  Plaintiffs claim "[t]here is ample evidence to show that attorney Harry Safarian, willfully and blatantly, has misled or attempted to mislead the Court and the Plaintiffs, unreasonably and vexatiously multiplied the proceedings, and conspired with his client to deprive the Plaintiffs of crucial documents in this case."  Id. at 2:1-5.

Mr. Safarian objects that Plaintiffs' Section 1927 Motion cannot properly raise a claim for sanctions based on the district court's inherent authority, arguing that Judge Olguin's Order of May 18, 2016, limited Plaintiffs to seeking sanctions under Section 1927.  Oppo. at 5:19-26.  Mr. Safarian is correct.  Accordingly, the Special Master will not consider whether grounds exist to sanction Mr. Safarian under the district court's inherent authority.

The Special Master notes that Plaintiffs' Section 1927 Motion does not identify the specific acts or omissions Plaintiffs claim constitute grounds to sanction Mr. Safarian.  Rather, Plaintiffs rely on their memorandum of points and authorities and the supporting declaration of Mr. Alikani, particularly the attachments, to flesh out the grounds for their Section 1927 Motion.  Unfortunately, the nature of their claims is not always clear.

**III.**
**Discussion**

The Legal Standard

To generally prevent Rambo-style litigation tactics in the federal courts, Rule 11 requires counsel to sign pleadings, motions or other documents and to certify "to the best of [the attorney's] knowledge, information and belief, formed after an inquiry reasonable under the circumstance[,]" that the document *inter alia* is not being presented for any improper purpose. Fed.R.Civ.Pro. 11(a)-(b).  Similarly, to assure counsel comply with their discovery obligations, Rule 26(g) requires counsel to sign all discovery requests and responses and to certify "to the best of [the attorney's] knowledge, information and belief, formed after reasonable inquiry[,]" that the document *inter alia* is "complete and correct" and any request or objection is not interposed for any improper purpose, such as to harass.  *See, e.g., McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1486 (5th Cir. 1990) ("Counsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests.").

The Special Master Discovery Order addresses Mr. Safarian's failure to comply with Rule 26(g) regarding Defendant Obenstine's Initial Disclosures and sanctions him for his violations.  Plaintiffs now seek to sanction Mr. Safarian again, this time pursuant to Section 1927 of Title 28 of the United States Code, which provides:

> Any attorney … admitted to conduct cases in any court of the United States … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

According to the Ninth Circuit, Section 1927 provides:

the mechanism for sanctioning conduct that occurs after commencing a case.  It provides sanctions for unreasonably and vexatiously multiplying proceedings and requires a finding of bad faith.… We assess an attorney's bad faith under a subjective standard. Knowing or reckless conduct meets this standard.

*MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991) (citations omitted); *see also Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.,* 210 F.3d 1112, 1118 (9th Cir. 2000) ("The imposition of sanctions under § 1927 requires a finding of bad faith."); *but see Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216, 1218 (9th Cir. 2010) ("Recklessness suffices for § 1927 sanctions, but sanctions imposed under the district court's inherent authority require a bad faith finding."  (citations omitted)); *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) ("[R]ecklessness suffices for § 1927, but bad faith is required for sanctions under the court's inherent authority.").

Generally, Section 1927 is designed to address instances of abusive litigation tactics by counsel that may not necessarily be related to the signing of any particular document or discovery request or response.  Nevertheless, discovery-related abuses may properly be sanctioned under Section 1927. *See, e.g., Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 396 (N.D. Cal. 2012).

It is fair to say that the Ninth Circuit's opinions on Section 1927 – and whether sanctions under the statute require a showing of bad faith  – are murky, as the Ninth Circuit acknowledges:

To be sure, our [Section 1927] cases have been less than a model of clarity regarding whether a finding of mere recklessness alone may suffice to impose sanctions for attorneys' fees.  For example, … we held that § 1927 sanctions require a finding of recklessness or bad faith.… [¶]   However, we have also held that "section 1927 sanctions must be supported by a finding of bad faith," which "is present when an attorney knowingly or recklessly raises a *frivolous* argument, or argues a meritorious claim for the purpose of harassing an opponent."  Thus, "[f]or sanctions to apply, if a

filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. …[R]eckless nonfrivolous filings, without more, may not be sanctioned." …

*B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002) (citations omitted).  "[W]e conclude that the district court's finding of recklessness plus knowledge was sufficient to justify the imposition of § 1927 sanctions."  *Id.* (footnote omitted). It is clear, however, that negligence is not sufficient to justify the imposition of sanctions under Section 1927.  *MGIC Indem. Corp.*, 952 F.2d at 1122.

Cases in which the Ninth Circuit has affirmed the district courts' awards of sanctions under Section 1927 are helpful for understanding the legal standard:  In *B.K.B.*, 276 F.3d at 1107, counsel were sanctioned for admitting evidence at trial,  knowing  the evidence was not allowed under the rules of evidence and might cause a mistrial, which was tantamount to bad faith; in *Pacific Harbor Capital, Inc.,* 210 F.3d at 1118-1119, counsel were sanctioned for advising the client that a TRO was not immediately effective, despite the district court's statements to the contrary;  in *Salstrom v. CitiCorp Credit Servs., Inc*., 74 F.3d 183, 185 (9th Cir. 1996),  counsel were sanctioned based on the number and length of the pleadings filed, the timing of many of the filings, and the substance of the claims asserted; and in *Wages v. Internal Revenue Serv.*, 915 F.2d 1230, 1235 (9th Cir. 1990), counsel were sanctioned for filing as an amended complaint the same complaint the district court found deficient.

<u>The Evidence Produced</u>

The  Special  Master  will  now  consider  whether  Plaintiffs  have  shown  by  a preponderance of the evidence that grounds exist to sanction Mr. Safarian under Section 1927, based on the acts and omissions alleged by Plaintiffs.

**1.  Withholding Evidence:**

**a.  *Spangler* Case.**

Plaintiffs claim that Defendant Obenstine's "initial disclosures and discovery responses are devoid of any reference to the documents listed in the *Spangler* Complaint and the responses

were never supplemented." Memorandum of Points and Authorities (Memo.) at 9:13-15. Thus, Plaintiffs argue, "it must be *presumed* that when Mr. Safarian filed the *Spangler* case, he in fact had knowledge of documents and information that supported the claims he asserted"; otherwise, he would have violated his ethical responsibilities and the Federal Rules of Civil Procedure by filing a federal lawsuit without any documentary basis. Id. at 22-26, 10:16-19 (emphasis added). Additionally, Plaintiffs claim that Mr. Safarian undoubtedly falsely represented to the Special Master on February 6, 2016, that he did not have documents in the *Spangler* case. Declaration of S. Ron Alikani (Alikani Declaration (Decl.)) ¶ 6.

On the other hand, Mr. Safarian states:

 I filed the [*Spangler*] case based upon information I received orally from my client, who had interviewed Daniel Park.… I was informed that Mr. Park conducted an investigation and had knowledge of facts in support of allegations supporting the *Spangler* action. This *verbal* evidence, combined with circumstantial evidence concerning the timing of construction concerning the development of the Cosmopolitan, justified the filing.

Declaration of Harry A. Safarian (Safarian Declaration (Decl.)) ¶ 3 (italics in original).

On August 26, 2013, Mr. Safarian signed and filed a federal court complaint in *Spangler v. Nevada Property, et.al*, which raised claims related to the Cosmopolitan development, Alikani Decl., ¶ 4, Exh. 2, and on January 6, 2014, he signed the Opposition to Defendant Tutor Perini Building Corporation's motion to dismiss the *Spangler* complaint. Id., ¶ 7, Exh. 4. Apart from signing these documents, Plaintiffs have not produced a shred of evidence showing that Mr. Safarian knew or reasonably should have known that Defendant Obenstine possessed or had custody of  any documents in the *Spangler* matter. Plaintiffs have not met their burden of proof; their claims are based on pure speculation.  Thus, Plaintiffs have not shown that this claim is a ground to sanction Mr. Safarian under Section 1927.

### b. Two Computers and Documents.

Plaintiffs claim that "[r]egardless of when Mr. Safarian had actual or constructive knowledge of the belatedly disclosed two computers and printed documents, … [h]e didn't *turn over* the computer so the alleged problem could be fixed or the data extracted."  Memo. at 10:22-11:2 (emphasis added).

Initially, Plaintiffs have not shown that there was an outstanding request for production of documents or tangible things or request to inspect the laptop – or any other discovery request -- that required Defendant Obenstine to produce either the computers or the documents. Plaintiffs do not explain why Mr. Safarian, as Defendant Obenstine's attorney, had an obligation separate and apart from Defendant Obenstine's to *produce* evidence to them.  Thus, Plaintiffs have not met their burden of proof and have not shown that this claim is a ground to sanction Mr. Safarian under Section 1927.

### 2. Committing Fraud on the Court:
### a. Deletion of Emails.

Plaintiffs claim that Mr. Safarian misrepresented, in Defendant Obenstine's Opposition to Plaintiffs' Motion for Discovery Sanctions, that all pertinent emails on the Crestridge server had been deleted, whereas he was well-aware that was not true.  Memo. at 12:1-20.  Plaintiffs further assert that this "misrepresentation is significant because it shows [Mr. Safarian's] attempt to mask the untrue statements in Defendant's previous pleadings."  Id. at 12:22-24.

To support these claims, Plaintiffs rely on the declaration of  Mr. Alikani, who states that in his "review of Crestridge III   product[ion] I have found  the same emails that Mr. Obenstine and Safarian claimed to have been missing from Crestridge III production….  The Crestridge III production was forwarded to Plaintiffs and King & Spaulding Defendants by Mr. Safarian. … *I am certain* that review of the file sen[t] to King & Spaulding Defendants will show the same emails in Crestridge III production."  Alikani Decl. ¶ 8 (emphasis added).  On the other hand, Mr. Safarian states that these claims were part of Plaintiffs' Motion for Discovery Sanctions previously addressed by the Special Master.

Assuming *arguendo* that this claim is true, it would not provide a ground to sanction Mr. Safarian under Section 1927, as Plaintiffs have not shown how the misrepresentation, made during the course of the Motion for Discovery Sanctions, unreasonably and vexatiously multiplied the proceedings.  Thus, Plaintiffs have not met their burden and have not shown that this claim is a ground to sanction Mr. Safarian under Section 1927.

### b.  Laptop and Documents.

Plaintiffs claim that Mr. Safarian misled the Court by falsely representing that he notified Plaintiffs of the existence of Defendant Obenstine's laptop and the information it contained.  Memo. at 13:13-14.  On the other hand, Mr. Safarian claims that, as Judge Olguin adopted the Special Master Discovery Order, he has already ruled on the issue of whether Mr. Safarian  could be sanctioned for failing to disclose the laptop and boxes of documents, and Plaintiffs seek to "double dip" to get additional sanctions for the same conduct on which Mr. Safarian has already been sanctioned.  Oppo. at 7:10-15.

Mr. Safarian is correct.  Both the Special Master and the District Court made extensive findings regarding these factual matters, and with the District Court's order adopting the Special Master Discovery Order, those findings are final or res judicata.  [Dkt. 467] Thus, the Special Master declines to consider this claim again.

Nevertheless, the Special Master cannot ignore Mr. Safarian's relentless repetition of two-related arguments which have been previously rejected by the District Court: (i) he fully disclosed the existence of the laptop and documents, and (ii)  he fully disclosed the source of the 2009 Jafary emails.  *See, e.g.*, Oppo. at 1:-24-2:10, 3:19-25, 7:17-19, 7:24-8:6, 10:11-11:10,15:18-16:7; Safarian Decl. ¶ 4. When an attorney continues to make arguments the district court has previously rejected,  as Mr. Safarian does, he is acting in bad faith and can be sanctioned under Section 1927. *See, e.g., Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 246 (1st Cir. 2010) (Repeating arguments that have been ruled on and lost before the court constitutes "unreasonably and vexatiously" multiplying the proceedings and is sanctionable under Section 1927.)  It is indisputable that the District Court in adopting the Special Master Discovery Order rejected the arguments Mr. Safarian continues to repeat.

Although Plaintiffs do not raise Mr. Safarian's repetition of arguments that have been rejected previously by the District Court as a ground to sanction him (there is more than one example), the Special Master takes this opportunity to remind Mr. Safarian that it would be a ground for sanctions against him under Section 1927.  As notice has not been given to Mr. Safarian that sanctions might be imposed against him on this ground, *see, e.g., Boston Safe Deposit and Trust Co. v. Operadora Dulcinea*, 73 F.3d 368, *2 (9th Cir. 1995) (unpublished opinion) (citing *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357-58 (3d Cir. 1990)  for the proposition that "[p]rior to sanctioning an attorney, a court must provide the party to be sanctioned with notice of an some opportunity to respond to the charges"), the Special Master refrains from awarding monetary sanctions at this time for such conduct, but places Mr. Safarian on notice for the future.

### 3.  Vexatious Multiplication of Proceedings and Dilatory Tactics:

### a.  Response to Interrogatory No. 7, Special Interrogatories Set 1.

In November 2011, Plaintiffs propounded Interrogatory No. 7 to Defendant Obenstine, asking:

For each year during the time period January 1, 2007 to the present please state and Identify:

a.  Where you voted in any state, federal or local elections, including the dates of such elections.

b.  Where you were licensed a motor vehicle driver and if you changed locations, the date of the change(s) and new location(s).

c.  Where any motor vehicles you owned or rented were registered, and if you changed locations, the date of the change(s) and new location(s).

d.  Where you actually lived and maintained a residence, including the number of days spent in each US state and foreign country during each calendar year.

e.  Each office where you practiced law and the number of days during each year you practiced law in each identified office.

11

f.  Any properties that you owned or rented in California, and the dates of such ownership or rental.

g.  Any corporations, partnerships, or businesses of any type of which you were an officer, manager or partner and that were incorporated ow owned property in California, including the dates of your affiliation with such corporations, partnerships or other businesses.

Alikani Decl. ¶ 12, Exh. 8.

On December 19, 2011, Mr. Safarian signed Defendant Obenstine's Response to Interrogatory No. 7, stating:

Objection.  This request goes beyond the jurisdictional discovery authorized by the Court, which allowed plaintiff to conduct discovery only as to whether specific limited jurisdiction – and not general jurisdiction exists.  The request is overly broad, vague, ambiguous, and not calculated to lead to discovery of admissible evidence.  Also, the request contains compound conjunctives and disjunctives in violation of FRCP.  Plaintiff's definition of "YOU" includes non-parties and entities not related to Responding Party.

Id.; Safarian Decl. ¶ 8.

Plaintiffs claim that Defendant Obenstine's objections to the interrogatory were frivolous and constitute grounds to sanction Mr. Safarian.  They also claim that Defendant Obenstine's "refusal to disclose his address forced the Plaintiffs to retain a private detective and spend a considerable amount of time and expense to determine [his] historical residency, including searching real estate and travel records."  Memo. at 18:12-15.  On the other hand, Mr. Safarian argues that Defendant Obenstine's response was in conformity with District Judge Gary A. Feess's order dated October 24, 2011. [Dkt. 46].  Safarian Decl. ¶¶ 7-8, Exh. D. Mr. Safarian also argues that the Interrogatory No. 7 was objectionable as it improperly contained seven separate subparts in violation of Rule 33(a).  Oppo. at 17:16-25.

12

On October 24, 2011, Judge Feess denied without prejudice Defendant Obenstine's and other defendants' motions to dismiss on jurisdictional grounds and authorized the parties to conduct jurisdictional discovery. [Dkt. 46]   In issuing the order, Judge Feess found that "Plaintiff fails to establish that this Court can exercise general jurisdiction over [Defendant Obenstine]"; however, "Plaintiff's showing is sufficient to entitle him to limited jurisdictional discovery." [Dkt. 46 at 5-8].

Mr. Safarian's contention that Judge Feess's order did not authorize the questions Plaintiff asks in Interrogatory No. 7 is specious.   The purpose behind Judge Feess's order authorizing jurisdictional discovery was to afford Plaintiff the opportunity to discover evidence to support a defense against any renewed motion to dismiss based on lack of jurisdiction.   Mr. Safarian should reasonably have understood the purpose of Judge Feess's order; it was clear. Thus, Mr. Safarian's imposition of an objection that the interrogatory exceeded the scope of Judge Feess's order was not only frivolous, it was knowingly made in bad faith.

Rule 33(a) sets a presumptive limitation of 25 interrogatories and precludes separate discrete subparts as a means of avoiding that presumption.   *See* Advisory Committee Notes to the 1993 Amendments to Rule 33(a) ("Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or a stipulation from the opposing party) to serve a larger number.   Parties cannot avoid this presumptive limitation through the devise of joining as 'subparts' questions that seek information about discrete separate subject.").   The fact that an interrogatory contains discrete subparts is not objectionable unless the subparts increase the number of interrogatories beyond the limitation of 25.   The fact that Mr. Safarian did not object to Interrogatory No. 7 on the ground it exceeded 25 interrogatories – but solely on the ground it contained subparts – demonstrates that this ground for his objection also was frivolous.

Having determined that the objections imposed by Mr. Safarian to Interrogatory No. 7 were frivolous, and the objection that the interrogatory went beyond the scope of Judge Feess's order was made in bad faith, the Special Master further finds that Mr. Safarian's clear purpose

13

or intent behind objecting to Interrogatory No. 7 was to harass Plaintiff and to multiply the proceedings by forcing Plaintiff to file a motion to compel or to use other means to ferret out the information the interrogatory was designed to obtain.[1] Thus, Plaintiffs have shown that grounds exist to sanction Mr. Safarian under Section 1927.

### b. Renewed Motion to Dismiss for Lack of Personal Jurisdiction.

Plaintiffs claim that Defendant Obenstine filed a frivolous renewed motion to dismiss for lack of personal jurisdiction [Dkt. 138], which "resulted in extensive briefing on the part of Plaintiffs" before it was dismissed without prejudice. Memo. at 16-19. They argue that the frivolous nature of the motion to dismiss is demonstrated by Defendant Obenstine quickly withdrawing his challenge to personal jurisdiction [Dkt. 201] after the District Court dismissed the renewed motion to dismiss without prejudice [Dkt. 199]. Memo. at 19:11-13.

On the other hand, Mr. Safarian argues that the motion to dismiss was not filed in bad faith in light of a declaration signed by Defendant Obenstine on August 24, 2011, stating that he moved to Nevada in 2009 and continued to reside in Nevada in 2011. Oppo. at 19:8-26. He further argues that the District Court's denial without prejudice, rather than with prejudice, shows the motion was not frivolous. Oppo. at 18:25-19:3. Lastly, Mr. Safarian explains that Defendant Obenstine chose "to withdraw the challenge [to jurisdiction] and deal with the case on its merits after it became clear its purpose (to save time and money litigating in a distant and inconvenient forum) was defeated by the exhaustive costs of litigating the simple issue of jurisdiction." Safarian Decl. ¶ 2; Memo. at 20:4-12.

Judge Feess's Order of October 24, 2011, allowed Defendant Obenstine and other defendants, after the completion of jurisdictional discovery, "to … re-notice[] for hearing if necessary" their motions to dismiss on jurisdictional grounds. [Dkt. 46] About two years later, on September 19, 2013, Defendant Obenstine refiled his motion to dismiss on jurisdictional

---

[1]  In determining that Mr. Safarian's intent was to multiply the proceedings, the Special Master has not considered Plaintiffs' allegations that they were forced to hire a detective and to search public records to obtain the answers sought by Interrogatory No. 7, as Plaintiffs have presented no supporting evidence; they have presented only argument.

grounds [Dkt. 138], and Judge Olguin denied the motion without prejudice on December 13, 2013. [Dkt. 199].

Plaintiffs have not shown that Defendant Obenstine's renewed jurisdictional motion to dismiss was unreasonably and vexatiously filed to multiply the proceedings or that it was frivolous. Initially, the refiling was authorized by Judge Feess when he ordered jurisdictional discovery on October 24, 2011. Second, Judge Olguin denied the renewed jurisdictional motion without prejudice; thus, he did not view the renewed motion as frivolous. It is as reasonable to conclude that Defendant Obenstine's subsequent withdrawal of his objection to jurisdiction supports a finding that he no longer wanted to waste resources litigating jurisdictional matters as it is to conclude that by withdrawing the objection he implicitly admitted that the jurisdictional motion to dismiss was frivolous. Finally, as the Court ruled on the renewed motion to dismiss within three months of its filing, it cannot be said that its filing delayed the proceedings. For all these reasons, Plaintiffs have not shown that this claim constitutes a ground to sanction Mr. Safarian under Section 1927.

### c. Motion to Quash Subpoenas to Third Parties.

On April 15, 2014, Defendant Obenstine filed a motion to quash third-party subpoenas and/or for protection re Defendant Obenstine's deposition in *Stringfellow et al v. Obenstine*, a fee dispute in Nevada arising from the *Watt* settlement. [Dkt. 242] Plaintiffs assert that Mr. Safarian raised a frivolous argument contesting the relevancy of the deposition transcript in the motion to quash, and that he made this argument without having read the deposition transcript. Memo. at 20:1-21:10. They also complain that after Judge Woehrle denied the motion to quash [Dkt. 253], Mr. Safarian continued to delay production of the deposition by claiming the transcript needed to be redacted to protect financial information, although he still had not read the transcript. Id.; Alikani Decl. ¶ 15, Exh. 11.

On the other hand, Mr. Safarian asserts that the motion to quash was "made to ensure compliance" with a confidentiality provision in the settlement agreement resolving the *Stringfellow* litigation between Mr. Obenstine and Messrs. Stringfellow and Carcolice. Oppo. at 20:21:23. He also asserts that his delay in producing the deposition was an attempt to comply

with Judge Woehrle's ruling that financial information in Crestridge documents be redacted to protect private information.  Safarian Decl. ¶ 9.  Further, Mr. Safarian submits that within three hours of receiving the deposition transcript, he withdrew any objection that it needed to be redacted.  Oppo. at at 22:1-9.

Mr. Safarian's relevancy objection to the subpoena was made without Mr. Safarian having any reasonable basis for making the relevancy objection.  In order to comply with Rule 11, as discussed above, Mr. Safarian had a duty to make an "inquiry reasonable under the circumstance" before making the relevancy objection.  This duty could have been met by reading the transcript or it could have been met by other means, such as discussing the nature of the deposition transcript with Mr. Obenstine.  Mr. Safarian does not claim that he met his obligations.  Thus, the relevancy objection was frivolous.

Without addressing the frivolous nature of the relevancy objection, Mr. Safarian argues that he reasonably filed the motion to quash in order to enforce the confidentiality provision in the *Stringfellow* settlement agreement.  The Special Master does not agree.  Although an argument for privacy of the deposition transcript could be made, it was not a meritorious argument, as Judge Woehrle found:

> The court finds that the subject matter of the litigation in the deposition at issue was taken is substantially relevant to the claims in this case and that the privacy and confidentiality interests asserted by Defendant are adequately addressed by the protective order in place.

Dkt. 253.

The Special Master concludes that Mr. Safarian recklessly filed the motion to quash in light of his knowledge that the relevancy objection was frivolous.  Apart from this conclusion, the Special Master separately finds that Mr. Safarian's clear purpose or intent behind filing the motion to quash was to harass Plaintiff and to multiply the proceedings by forcing Plaintiff to oppose the motion to quash or to use other means to ferret out the information in the deposition

transcript.  Thus, Plaintiffs have shown that this claim is a ground to sanction Mr. Safarian under Section 1927.

Assuming *arguendo* that Mr. Safarian's three hour delay in producing the transcript was without reasonable basis, as it appears to be, Plaintiffs have not shown how this brief delay multiplied the proceedings – despite Plaintiffs' counsel having to send several emails to Mr. Safarian.  Thus, Plaintiffs have not shown that this is a separate ground to sanction Mr. Safarian under Section 1927.

### d.  The Anti-SLAPP Motion.

On September 19, 2013, when he refiled Defendant Obenstine's motion to dismiss on jurisdictional grounds [Dkt. 138],  Mr. Safarian requested that the district court rule on an anti-SLAPP motion that had been pending and stayed for several years [Dkt. 29].  At the time he made this request, there were several discovery motions pending against Defendant Obenstine.  Based on the newly reinstated anti-SLAPP motion, Mr. Safarian moved to stay discovery.  [Dkt. 142].  On October 30, 2013, Judge Woehrle denied the motion to stay discovery, but ordered counsel to meet and confer on limitations to the discovery.  [Dkt. 183]  On December 19, 2013, Judge Olguin denied without prejudice the anti-SLAPP motion.  [Dkt. 199]

Plaintiffs claim that the six-week period during which the anti-SLAPP motion was pending "was used to delay the scheduled deposition of Sunjay Varma and his production of documents."  Memo. at 21:11-20; Alikani Decl. ¶ 16, Exh. 12.  On the other hand, Mr. Safarian argues that the literal language of California Civil Code section 425.16 (the anti-SLAPP statute) requires that discovery be stayed while an anti-SLAPP motion is pending.  Oppo. at 23:2-12; Safarian Decl.¶ 10.

The Special Master finds that Plaintiffs have not met their burden to show that either Mr. Safarian's request for a ruling on the long-standing  anti-SLAPP motion  or his  request to stay discovery while the anti-SLAPP motion was being considered unreasonably or vexatiously multiplied the proceedings.  As discussed above, the anti-SLAPP motion was denied without prejudice, rather than with prejudice, demonstrating that Judge Olguin did not view it as

frivolous.  Moreover, Plaintiffs have not shown that a six-week delay in taking Mr. Varma's deposition resulted in the loss of any evidence or could be considered an undue delay.  Thus, Plaintiffs have not met their burden to show that this claim is a ground to sanction Mr. Safarian under Section 1927.

### e.  Objection to Interrogatory No. 8, Set Two.

Plaintiffs propounded Interrogatory No. 8, Set 2, on Defendant Obenstine, asking:

> Identify each and every case in which you have appeared, or applied to appear *pro hac vice* in any court in the state of Nevada between January 1, 2005 and the present.

Alikani Decl.  ¶ 17, Exh. 13.  On September 15, 2013, Mr. Safarian signed Defendant Obenstine's Response to Interrogatory No. 8, stating:

> Objection.  The request is overly broad, unduly burdensome, and is not calculated to lead to discovery of admissible evidence.  Furthermore, the request contains compound conjunctive and disjunctives in violation of the Federal Rules of Civil Procedure.

Id.

Plaintiffs claim that the relevancy objection Mr. Safarian imposed was frivolous and the unduly burdensome objection he made was false as Defendant Obenstine had never appeared *pro hac vice* in Nevada.  Memo. at 21:21-22:8.  On the other hand, Mr. Safarian argues that the relevancy objection was properly made and although "Mr. Obenstine could have answered the question without much difficulty, … [he] exercised his right not to do so…."  Oppo. at 23:16-24.

As an initial matter, Plaintiffs have not provided any evidence to support their representation that Defendant Obenstine never appeared *pro hac vice* in Nevada; they present merely argument.  Nevertheless, Mr. Safarian appears to accept the representation and also acknowledges that it would not have been a burden for Defendant Obenstine to respond to

Interrogatory No 8.   Rather, he argues, Defendant Obenstine had a "right" to object to the interrogatory. Oppo. at 23:16-24.

Not so.   As discussed above, a party is supposed to respond to reasonable discovery requests; there is no "right" not to do so.  *McLeod*, 894 F.2d at 1486.  And a lawyer advising a party of his discovery obligations should reasonably know that a party must respond to reasonable discovery requests.  Interrogatory No. 8 is relevant to the litigation and it would not have been a burden for Defendant Obenstine to respond to it.  As such, it is clear that the objections Mr. Safarian imposed were frivolous, unreasonable and vexatious, and Mr. Safarian knowingly imposed such frivolous objections to Interrogatory No. 8 despite his discovery obligations.  Further, the Special Master also finds that the clear purpose or intent of Mr. Safarian in imposing frivolous objections to Interrogatory No. 8 was to harass or annoy Plaintiff and to multiply the proceedings by forcing Plaintiff to file a motion to compel or to use other means to ferret out the information the interrogatory was designed to obtain.  Thus, Plaintiffs have shown that this claim constitutes a ground to sanction Mr. Safarian under Section 1927.

### d.  Opposition to Plaintiffs' Motion to Amend First Amended Complaint.

On July 16, 2015, Judge Olguin issued an order authorizing Plaintiff to file a stipulation or motion to amend or add or change the class representative, provided it was filed no later than August 31, 2015.  [Dkt. 355].  Defendant Obenstine refused to stipulate to adding a new plaintiff, and on August 31, 2015, Plaintiff filed a motion to amend the First Amended Complaint to add an additional plaintiff.  [Dkt. 347]  On September 3, 2015, Defendant Obenstine filed an opposition to the motion, arguing in part that Plaintiff "inexcusably delayed" seeking to amend the complaint. [Dkt. 360]

Judge Olguin granted Plaintiff's motion to file an amended complaint, noting Defendant Obenstine's contention of inexcusable delay (or laches, as Mr. Safarian now characterizes it) was frivolous and that the proposed Second Amended Complaint is identical to the First Amended Complaint, except for two paragraphs containing allegations regarding the new plaintiff; thus, Defendant Obenstine would not be prejudiced by the filing of the Second Amended Complaint.  [Dkt. 372]

Plaintiffs claim Defendant Obenstine's frivolous opposition to the motion to amend constitutes grounds to sanction Mr. Safarian under Section 1927.  Memo. at 22:10-17. On the other hand, Mr. Safarian argues that the untimeliness objection he raised addressed the fact that Plaintiff knew, as early as 2013, that Mr. Estakhrian had a potential conflict of interest, but delayed in adding a new plaintiff; not that the motion was untimely under Judge Olguin's order dated July 16, 2015. Oppo. at 24:6-20.  Additionally, Mr. Safarian claims that Plaintiffs have not shown how the objection he raised, even if it were frivolous, delayed the proceedings.

Judge Olguin specifically found that Defendant Obenstine's argument of undue delay as the basis for his opposition to Plaintiff's motion to amend the First Amended Complaint was frivolous.  The Special Master now finds that Mr. Safarian knowingly or recklessly raised the frivolous argument in opposition to Plaintiff's motion to amend the First Amended Complaint. At all times, Mr. Safarian was aware that Rule 15(a) provides for liberal amendment of the pleadings; the First Amended Complaint and Second Amended Complaint are identical, except for the two paragraphs alleging the new plaintiff; the Second Amended Complaint did not add any new causes of action against Defendant Obenstine; and amending the First Amended Complaint would not prejudice Defendant Obenstine.

Separately, the Special Master concludes that Mr. Safarian's purpose or intent in filing the frivolous opposition to Plaintiff's motion to amend the First Amended Complaint was to harass or annoy Plaintiff and to multiply the proceedings.  Whether delay resulted is irrelevant in light of Mr. Safarian's ill-will. Thus, Plaintiffs have shown that his claim is a ground to sanction Mr. Safarian under Section 1927.

**e.  Objection to Special Master Hearing Motion for Sanctions.**

Plaintiffs claim that Defendant Obenstine's objection to the Special Master hearing the Motion for Discovery Sanctions is a ground to sanction Mr. Safarian.  Memo. at 2:18-26.  On the other hand, Mr. Safarian argues that the objection to the Special Master was not ill-founded and, in any event, did not multiply or delay the proceedings.  Oppo. at 25:4-14.

Assuming *arguendo* that the objection Mr. Safarian made to the Special Master was frivolous, as Judge Olguin essentially found, there is no evidence that the objection itself unreasonably and vexatiously multiplied the proceedings.  Thus, Plaintiffs have not shown  that this claim constitutes a ground to sanction Mr. Safarian under Section 1927.

For the reasons set forth above, the Special Master concludes that Plaintiffs have established by a preponderance of the evidence four separate instances in which Mr. Safarian "unreasonably and vexatiously multipl[ied] [the] proceedings" and demonstrated bad faith within the meaning of Section 1927; thus, monetary sanctions will be awarded against Mr. Safarian.

## IV.
## Relief

Section 1927 provides that an attorney who unreasonably and vexatiously multiples the proceedings "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such [sanctionable] conduct."  28 U.S.C. § 1927. "The use of the word 'may' – rather than 'shall' or 'must'  -- confers substantial leeway on the district court when imposing sanctions."  *Haynes v. City and Cnty. of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012).  Accordingly, "a district court may impose an award of less than the total excess costs, expenses and fees…."  *Id.*

 Requiring Plaintiffs to present evidence of "the excess costs, expenses, and attorneys' fees" attendant to each of the four separate instances of sanctionable conduct by Mr. Safarian would unduly complicate and multiply this proceeding.  Thus, the Special Master has determined that it is preferable to estimate the amount of excess attorney fees incurred by Plaintiffs because of Mr. Safarian's sanctionable conduct.  *Haynes*, 688 F.3d at 987.

For the two instances of sanctionable conduct arising in the discovery context, the Special Master sets the excess attorney fees for each instance at $7,500, which roughly approximates the median amount of attorney fees awarded when a motion to compel is granted.

Generally, in the experience of the Special Master, such awards range between $5,000 and $10,000. Accordingly, for these two discovery-related matters, the Special Master sets the total amount of excess attorney fees at $15,000.

It is more difficult to gauge the excess attorney fees Plaintiffs have incurred as a result of the other two other instances of sanctionable conduct by Mr. Safarian, i.e., his subjectively ill-motivated filings of the motion to quash the third-party subpoenas to produce Mr. Obenstine's deposition transcript in *Stringfellow* and the frivolous opposition to the motion to amend the First Amended Complaint, both of which forced Plaintiff to spent time and money preparing documents that were unnecessary and multiplied the proceedings. Accordingly, as to these two separate instances, the Special Master sets the amount of excess attorney fees at $10,000 per instance, for the total amount of $20,000. Adding the amounts together, the total award of sanctions against Mr. Safarian shall be in the amount of $35,000.

In the event the District Court is of the opinion that Section 1927 requires the taking of evidence to support the award of excess attorney fees resulting from Mr. Safarian's sanctionable conduct, the Special Master is available to take additional evidence and to set the amount of the excess attorney fees based on such evidence.

## V.
## Order

**IT IS HEREBY ORDERED** that Plaintiffs' Section 1927 Motion to personally sanction Mr. Safarian **IS GRANTED, IN PART, AND DENIED, IN PART.**

**IT IS FURTHER ORDERED** that Mr. Safarian shall personally pay Plaintiffs the total amount of $35,000, as sanctions against him pursuant to 28 U.S.C. § 1927. The payment shall be made to Plaintiffs' lead counsel, Mehri & Skalet, no later than 30 days from the date this Order is adopted or affirmed by the District Court or on a different date determined by the District Court.

**IT IS STILL FURTHER ORDERED** that Mr. Safarian shall report this Order personally sanctioning him under 28 U.S.C. § 1927 to the State Bar of California, pursuant to California Business & Professions Code section 6068(o)(3), no later than 30 days from the date this Order is adopted or affirmed by the District Court or on a different date determined by the District Court, and shall provide proof to the District Court of having made such report, no later than ten (10) days following the date the report is made.

**AND IT IS FINALLY ORDERED** that the Case Manager shall promptly file this Order in the District Court and also serve this Order on the parties.

September 26, 2016

1220052101.13

Hon. Rosalyn Chapman (Ret.), Special Master

23