**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES ESTAKHRIAN and ABDI NAZIRI, on behalf of themselves and all others similarly situated, <br><br>      Plaintiffs, <br><br>   v. <br><br>MARK OBENSTINE, et al. <br><br>      Defendants. | Case No. CV 11-3480 FMO (CWx) <br><br> **ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF ATTORNEY'S FEES, COSTS & SERVICE AWARDS** |

Having reviewed and considered plaintiffs' unopposed Motion for Final Approval of Class Action Settlement (Dkt. 470) and Motion for Attorneys' Fees, Costs and Expenses and Service Awards (Dkt. 388, "Fees Motion"), and the oral argument presented during the final fairness hearing held on June 14, 2016, the court concludes as follows.

**INTRODUCTION**

On February 16, 2016, the court granted preliminary approval of the settlement between plaintiffs and defendants Benjamin F. Easterlin ("Easterlin") and his law firm King & Spalding, LLC ("King & Spalding") (collectively, "defendants"),[1] appointed A.B. Data, Ltd. ("A.B. Data") as the

---

 [1] The court previously dismissed defendants Terry A. Coffing and his law firm Marquis & Aurbach P.C. (now called Marquis Aurbach Coffing, P.C.) for lack of personal jurisdiction. (See Dkt. 329, Court's Order of July 9, 2015). This Order leaves defendant Mark Obenstine

1  claims administrator, and directed A.B. Data to provide notice to the class members.  (See Dkt.

2  418, Court's Order of February 16, 2016, at 25-29).  Plaintiffs now seek: (1) final approval of the

3  settlement; (2) attorney's fees and costs; and (3) an incentive award for the class representatives.

4  (See Dkt. 471, Plaintiffs' Corrected Motion for Final Approval of Settlement as to Defendants

5  Easterlin and King & Spalding ("Approval Motion") at 14; Dkt. 388, Fees Motion at 14).

6                                         **BACKGROUND**

7         The instant matter arises out of the settlement of a class action litigated in Nevada state

8  court, Daniel Watt et al. v. Nevada Property 1, LLC, et al., Case No. A582541 ("Nevada litigation").

9  (See Dkt. 373, Second Amended Class Action Complaint ("SAC") at ¶ 20).  In the Nevada

10 litigation, plaintiffs filed a class action complaint for breach of contract regarding the purchase of

11 condominium units in what became the Cosmopolitan Hotel, located in Las Vegas, Nevada.  (See

12 id.).  The class members sought to "rescind their purchase contracts and to obtain a refund of their

13 escrow deposits" after learning that the originally contemplated condominiums were going to be

14 converted to a hotel.  (See id. at ¶¶ 14-16 & 20).  The Nevada litigation was settled in April 2010.

15 (See id. at ¶ 32).

16        On April 22, 2011, plaintiff James Estakhrian ("Estakhrian"), on behalf of himself and all

17 others similarly situated, filed the original Complaint in this action.  On October 27, 2015, the

18 operative SAC was filed to add Abdi Naziri ("Naziri") as an additional named plaintiff.  (See Dkt.

19 373, SAC).  In the SAC, plaintiffs seek the balance of the lost escrow deposits not paid in the

20 settlement of the Nevada litigation as well as disgorgement of defendants' attorney's fees in the

21 Nevada litigation.  (See id. at p. 23).  Plaintiffs allege that defendant Benjamin F. Easterlin, a

22 partner at King & Spalding, "had a massive and direct conflict of interest because of [his firm's]

23 representation of Deutsche Bank, whose wholly-owned subsidiary had become the owner of

24 Cosmopolitan." (Id. at ¶ 2).  Plaintiffs also allege that defendants and Obenstine began soliciting,

25 primarily through runners and cappers, purchasers of condominiums in the East and West

26 Cosmopolitan towers to participate in the Nevada litigation.  (See id. at ¶ 18; see also id. at ¶ 31)

27 _____

28 ("Obenstine") as the sole remaining defendant in this action.

                                            2

1  (the actions of the purported runners and cappers were "under the direction of, with the approval

2  of, and with the participation of defendants, particularly defendants Obenstine and Easterlin").

3  According to plaintiffs, not only was the conflict of interest not disclosed to the class, but the

4  conflict caused defendants in this action – again, allegedly through runners and cappers – "to urge

5  plaintiff and class members to settle for far less than the fair settlement value" of the Nevada

6  litigation.  (Id. at ¶ 3).

7        The SAC asserts the following causes of action: (1) professional malpractice; (2) breach

8  of fiduciary duty; (3) breach of contract; (4) violation of California Business & Professions Code

9  §§ 17200, et seq.; (5) violation of the California Consumers Legal Remedies Act, California Civil

10  Code §§ 1750, et seq.; and (6) fraud.  (See Dkt. 373, SAC at ¶¶ 2, 51-77).

11  I.      THE SETTLEMENT.

12       Estakhrian and defendants reached a settlement on May 27, 2015, after completing

13  mediation before a private mediator.  (See Dkt. 470-2, Exh. F, Declaration of Mark A. Chavez []

14  ("Chavez Decl.") at ¶ 22).  Subsequently, the parties amended their settlement agreement to

15  address concerns raised by the court.  (See Dkts. 330, 378 & 398, Minutes of July 9, 2015,

16  October 29, 2015, and January 21, 2016, Hearings; Dkt. 470-2. Declaration of Nance F. Becker

17  in Support of Plaintiffs' Motion for Final Approval of Settlement as to Defendants Easterlin and

18  King & Spalding ("Becker Decl.") at Exh. A ("Settlement Agreement")).

19       Under the terms of the settlement, defendants agreed to pay $4.625 million, less costs for

20  administration, which are not to exceed $75,000.  (See Dkt. 470-2, Exh. A, Settlement Agreement

21  at ¶¶ 6 & 7).  In consideration for the $4.625 million paid by defendants, plaintiffs agreed to release

22  defendants and their affiliates from all claims, known or unknown, "(a) arising out of or relating to

23  any conduct, events, or transactions alleged, or that could have been alleged in connection with

24  the claims made in the Action; (b) relating to any conduct, events, or transactions in, or otherwise

25  concerning or arising out of, the [Nevada litigation]; or (c) for [defendants'] acting in accordance

26

27

28

1   with Paragraph [13 of the Settlement Agreement]."[2]  (See id. at ¶ 10).

2   II.   NOTICE TO CLASS.

3         A.B. Data, the court-approved claims administrator, was engaged to, among other things:

4   prepare and mail the notice of the proposed class action settlement ("Class Notice") and opt-out

5   form ("Opt-Out Form") (collectively, "Notice Packet"); receive and process the class data list;

6   receive and process undeliverable Class Notices; track and process objections and requests for

7   exclusion; supplement direct mail notice with targeted media notice, a case-specific website, and

8   a toll-free number; calculate settlement payments; and distribute funds to class members.  (See

9   Dkt. 389-1, Declaration of Anya Verkhovskaya Regarding Proposed Settlement Administration

10  ("Verkhovskaya Decl.") at ¶ 12).  Defendants provided A.B. Data with the names and last-known

11  addresses of 1,765 class members.  (See Dkt. 465, Declaration of Eric Miller Regarding (a)

12  Mailing of Notice; (b) Publication of Summary Notice; and (c) Report on Opt-Outs Received to

13  Date ("Miller Decl.") at ¶ 3).  A.B. Data sent the Notice Packet to those class members via first-

14  class mail.  (See id. at ¶ 4).  Of the 1,765 Notice Packets, 121 were returned as undeliverable.

15  (See id. at ¶ 5).  Of the 121 undeliverable Notice Packets, 92 forwarding addresses were located,

16  (see id.), and new Notice Packets were sent to those addresses.  (See id.).

17        Defendants later provided A.B. Data updated files identifying 266 individuals that had opted

18  out of the Nevada litigation, and therefore did not meet the definition of settlement class members

19  in this action.[3]  (See Dkt. 465, Miller Decl. at ¶ 6).  A.B. Data then sent letters notifying these

20  individuals that they received the Notice Packet in error and should disregard it.  (See id.).

21        A.B. Data also caused notice to be published in the Las Vegas Review Journal, Los

22  Angeles Daily Journal, and the San Francisco Daily Journal.  (See Dkt. 465, Miller Decl. at ¶ 7 &

23

24        [2]  Under ¶ 13 of the Settlement Agreement, defendants had the right to terminate the
    Settlement Agreement if the dollar amount of the opt-outs' unfunded deposits exceeded a

25  certain threshold.  (See Dkt. 470-2, Exh. A, Settlement Agreement at ¶ 13; Dkt. 466, Joint
    Stipulation Regarding [Defendants'] Right to Terminate Proposed Class Action Settlement).  The

26  dollar amount of the opt-outs did not exceed that threshold.  (See Dkt. 466, Joint Stipulation
    Regarding [Defendants'] Right to Terminate Proposed Class Action Settlement).

27

28        [3]  The settlement class is defined as "all class members (i.e., that did not opt out) in the
    [Nevada litigation]."  (Dkt. 418, Court's Order of February 16, 2016, at 26).

1  Exhs. B-D).  A.B. Data also maintained a website at www.cosmo2016settlement.com and toll-free

2  telephone help line regarding the proposed settlement.  (See id. at ¶¶ 8 & 9).

3      As of May 10, 2016, A.B. Data received two timely requests for exclusion, three untimely

4  requests for exclusion, and two invalid requests sent by non-class members.  (See Dkt. 465, Miller

5  Decl. at ¶ 10 & Exh. E.).  As of May 10, 2016, A.B. Data has not received any objections to the

6  proposed settlement.  (See id. at ¶ 11).  The court also did not receive any objections to the

7  proposed settlement.  (See, generally, Dkt.).

8                                          **LEGAL STANDARD**

9      Federal Rule of Civil Procedure 23 provides that "the claims, issues, or defenses of a

10  certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The

11  primary concern of [Rule[4] 23(e)] is the protection of th[e] class members, including the named

12  plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers

13  for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982), cert.

14  denied, 459 U.S. 1217 (1983).  Whether to approve a class action settlement is "committed to the

15  sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th

16  Cir.), cert. denied, 506 U.S. 953 (1992), who must examine the settlement for "overall fairness."

17  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Neither district courts nor

18  appellate courts "have the ability to delete, modify or substitute certain provisions.  The settlement

19  must stand or fall in its entirety."  Id. (internal quotation marks and citation omitted).

20      In order to approve a settlement in a class action, the court must conduct a three-step

21  inquiry.  First, it must assess whether defendants have met the notice requirements under the

22  Class Action Fairness Act ("CAFA").  See 28 U.S.C. § 1715(d).  Second, it must determine

23  whether the notice requirements of Rule 23(c)(2)(B) have been satisfied.  Finally, it must conduct

24  a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate."  See

25  Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the

26  Rule 23(e)(2) standard); Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d 964, 972 (E.D. Cal.

27  _____

28      [4] All "Rule" references are to the Federal Rules of Civil Procedure.

2012) (conducting three-step inquiry).

In determining whether a settlement agreement is fair, adequate, and reasonable, the court must weigh some or all of the following factors:  "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."  In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).

However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . . factors alone is not enough to survive appellate review." Bluetooth, 654 F.3d at 946 (emphasis in original).  This is because, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement."  Id.  District courts, therefore, also must determine "that the settlement is not the product of collusion among the negotiating parties."  Id. at 947 (internal quotation and alteration marks omitted).  In making that determination, courts should look for signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a `clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds[;]" and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]"  Id. at 947 (internal quotation marks and citations omitted).

## **DISCUSSION**

I.    FINAL APPROVAL OF CLASS SETTLEMENT.

A.    Class Action Fairness Act.

CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class

1  member resides and the appropriate Federal official[.]" 28 U.S.C. § 1715(b).  The statute provides

2  detailed requirements for the contents of such a notice, which must include, among other things,

3  "any proposed or final notification to class members[,]" and "any proposed or final class action

4  settlement[.]"  28 U.S.C. §§ 1715(b)(3) & (4).  The court may not grant final approval of a class

5  action settlement until the CAFA notice requirement is met.  See id. at § 1715(d) ("An order giving

6  final approval of a proposed settlement may not be issued earlier than 90 days after the later of

7  the dates on which the appropriate Federal official and the appropriate State official are served

8  with the notice required under [28 U.S.C. § 1715(b)]").

9           On June 12, 2015, defendants served the required information to the U.S. Attorney General

10 and states attorney generals in accordance with 28 U.S.C. § 1715.  (See Dkt. 421, Certificate of

11 Service of CAFA Notices of Proposed Settlement at ¶ 1 & Exh. 1).  Defendants served updated

12 and supplemental information on September 21, 2015, October 22, 2015, and December 10,

13 2015, in light of the amendments to the settlement and class notices the parties made to address

14 concerns raised by the court.  (See id. at ¶¶ 2-3 & Exhs. 2-3; Dkts. 330, 378 & 398, Minutes of July

15 9, 2015, October 29, 2015, and January 21, 2016, Hearings).  The court finds that defendant has

16 substantially complied with CAFA's notice requirements.  See Steinfeld v. Discovery Fin. Servs.,

17 2014 WL 1309352, *5-6 (N.D. Cal. 2014) (granting final approval of class action settlement despite

18 defendant's failure to provide timely notice of amendment to settlement agreement).

19           B.    Class Certification.

20           In its order granting preliminary approval, the court certified the class pursuant to Rule

21 23(b)(3).   (See Dkt. 418, Court's Order of February 16, 2016, at 7-15 & 26).   Because

22 circumstances have not changed, and for the reasons set forth in its Order of February 16, 2016,

23 the court reconfirms its order certifying the class for settlement purposes under Rule 23(e).  See

24 In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously

25 certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its

26 order certifying a class.").

27           C.    Rule 23(c) Notice Requirements.

28           Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule

7

23(c)(2), and upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

After undertaking the required examination, the court approved the form of the proposed class notice. (See Dkt. 418, Court's Order of February 16, 2016, at 23-26). As discussed above, A.B. Data sent, via first-class mail, the Class Notice and the Opt-Out Form to all potential class members. (See Dkt. 465, Miller Decl. at ¶¶ 3-5 & Exh. A). Accordingly, based on its prior findings and the record before it, the court finds that the Class Notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, their right to exclude themselves from the action, and their right to object to the proposed settlement. (See Dkt. 418, Court's Order of February 16, 2016, at 23-26).

      D.    Whether the Class Settlement is Fair, Adequate and Reasonable.

          1.    **The Strength of Plaintiffs' Case, and the Risk, Expense, Complexity, and Duration of Further Litigation**.

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." Adoma, 913 F.Supp.2d at 975. "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." Id. at 976.

Given that this case has already consumed five years of litigation, the court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecommc'ns. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004). Further, as Estakhrian explains, as a result of reviewing the discovery produced in this action, he realized that pursuing the claims to trial against defendants raised significant problems of proof, because

1    defendants maintained that they did not act as counsel in the Nevada litigation and did not receive

2    any payment as a result of that litigation.  (See Dkt. 470-2, Exh. F, Chavez Decl. at ¶ 21).  In light

3    of these risks, Estakhrian agreed to mediate the claims and reached a settlement with defendants.

4    Based on the record before the court, the court is persuaded that the parties diligently investigated

5    and considered their own and the opposing parties' positions, and had a sound basis for

6    measuring the terms of the settlement against the risks of continued litigation.  In short, the court

7    finds that this factor supports a finding that the settlement is fair, adequate, and reasonable.

8                        2.    **The Risk of Maintaining Class Action Status Through Trial**.

9            Because the parties reached settlement prior to the filing of a motion for class certification,

10   plaintiffs faced a risk that the class would not be certified.  Accordingly, this factor weighs in favor

11   of approving the settlement.  See Gardner v. GC Servs., LP, 2012 WL 1119534, *4 (S.D. Cal.

12   2012) ("[B]ecause settlement was reached prior to a hearing on Plaintiff's motion for class

13   certification, settlement was reached at a time when there was still a risk that the class would not

14   be certified by the Court.").

15                       3.    **The Amount Offered in Settlement**.

16           "[T]he very essence of a settlement is compromise, a yielding of absolutes and an

17   abandoning of highest hopes."  Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir.

18   1998) (internal quotation marks omitted).  In granting preliminary approval of the Settlement

19   Agreement, the court concluded that the settlement amount of $4.625 million was "fair,

20   reasonable, and adequate" in light of the litigation risks in this case.  (See Dkt. 418, Court's Order

21   of February 16, 2016, at 17).  Accordingly, this factor also weighs in favor of granting final

22   approval, particularly since defendants maintain that they did not act as counsel or receive any

23   remuneration as a result of the Nevada litigation.  (See Dkt. 470-2, Exh. F, Chavez Decl. at ¶ 21).

24                       4.    **The Extent of Discovery Completed and the Stage of Proceedings**.

25           "A settlement following sufficient discovery and genuine arms-length negotiation is

26   presumed fair."  Nat'l Rural Telecommc'ns. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D.

27   Cal. 2004).  "A court is more likely to approve a settlement if most of the discovery is completed

28   because it suggests that the parties arrived at a compromise based on a full understanding of the

1  legal and factual issues surrounding the case." Id. at 527.

2       As the court previously noted, the parties engaged in extensive discovery, including the:

3  "(1) outreach and investigation of claims with unnamed class members; (2) taking several

4  depositions and participating in depositions noticed by defendants; (3) consulting with experts; (4)

5  propounding and responding to written discovery; and (5) engaging in substantial motion practice

6  regarding personal jurisdiction." (Dkt. 418, Court's Order of February 16, 2016, at 16). The court

7  is persuaded that the parties entered the settlement discussions with a substantial understanding

8  of the factual and legal issues from which they could advocate for their respective positions. See

9  Nat'l Rural Telecommc'ns, 221 F.R.D. at 527-28 (noting that parties' examination of the factual

10  and legal bases of the disputed claims through completion of discovery "strongly militates in favor

11  of the Court's approval of the settlement"); Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D.

12  431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or

13  investigation completed to enable counsel and the court to act intelligently.") (internal quotation

14  marks omitted). This factor also supports approval of the settlement.

15            5.   **The Experience and Views of Counsel**.

16       "Great weight is accorded to the recommendation of counsel, who are most closely

17  acquainted with the facts of the underlying litigation. This is because parties represented by

18  competent counsel are better positioned than courts to produce a settlement that fairly reflects

19  each party's expected outcome in the litigation." Nat'l Rural Telecommc'ns, 221 F.R.D. at 528

20  (internal quotation marks and citation omitted). The court has previously noted the diligence,

21  experience, and competency of class counsel. (See Dkt. 418, Court's Order of February 16, 2016,

22  at 11). According to class counsel, the "settlement provides substantial benefits and fair value to

23  the class." (Dkt. 470-2, Chavez Decl. at ¶ 24). Thus, this factor also supports approval of the

24  settlement.

25            6.   **The Presence of a Governmental Participant**.

26       There is no government participant in this matter. Accordingly, this factor is inapplicable.

27  See Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *10, supplemented by 2011 WL

28  1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this

1 | factor inapplicable to the analysis).

2 |        **7.**    **The Reaction of Notified Class Members to the Proposed Settlement**.

3 |      "It is established that the absence of a large number of objections to a proposed class

4 | action settlement raises a strong presumption that the terms of a proposed class settlement action

5 | are favorable to the class members." Nat'l Rural Telecommc'ns, 221 F.R.D. at 529.  Here, only

6 | five class members requested exclusion (two on a timely basis), and significantly, there were no

7 | objections to the settlement.  (See Dkt. 465, Miller Decl. at ¶¶ 10 & 11; see, generally, Dkt.).  The

8 | lack of objections and limited exclusions support approval of the settlement.  See, e.g., Franco v.

9 | Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in

10 | favor of approval when only two out of 2,055 class members – less than one percent – opted out,

11 | and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16

12 | (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted

13 | out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D.

14 | Cal. 2009) (finding this factor weighed in favor of approval of settlement when out of the 2,385

15 | class members, there were no objections and only 56 class members opted out).

16 |      **E.**    Whether the Settlement is the Product of Collusion.

17 |      Because the parties negotiated and reached a settlement prior to formal certification of the

18 | class, the court must ensure that the settlement was not the product of collusion.  See Bluetooth,

19 | 654 F.3d at 947-48.  No class member raised any concerns with respect to the proposed

20 | settlement.  (See Dkt. 465, Miller Decl. at ¶ 11 (A.B. Data has not received any objections to the

21 | proposed settlement); see also, generally, Dkt. (the court has not received any objections to the

22 | proposed settlement)).  While the court was initially concerned that Estakhrian and three of the

23 | four proposed class counsel were named as defendants in Obenstine v. Jefary, et al., Case No.

24 | CV 13-1291 FMO-CW (C.D. Cal.) ("Related Action"), which was filed by a defendant in this case,

25 | Mark Obenstine, it received assurances from Estakhrian and class counsel that they did not put

26 | their interests in the Related Action ahead of the interests of the putative class members in this

27 | action.  In the court's order granting preliminary approval, the court noted that the Related Action

28 | had settled and, as part of that settlement, Obenstine agreed to withdraw any claims, arguments,

1    or defenses that are based on the facts or claims asserted in the [Related Action].  (Dkt. 418,

2    Court's Order of February 16, 2016, at 16).  The court also noted that, rather than try to "settle

3    around" Obenstine, plaintiffs' counsel expressly invited Obenstine to participate in the mediation

4    in this case, but he declined to do so.  (See id.).  The court was persuaded by plaintiffs' argument

5    that Estakhrian and class counsel had little incentive to settle around Obenstine given that

6    Obenstine's resources are relatively scarce compared to the King & Spalding defendants.  (See

7    id.).  Finally, Estakhrian added another class representative, Naziri, who was never named as a

8    defendant in the Related Action.  (See id.).

9        In granting preliminary approval of the settlement, the court concluded that "[t]he parties

10   clearly had a sound basis for measuring the terms of the settlement against the risks of continued

11   litigation, and there is no evidence that the settlement is 'the product of fraud or overreaching by,

12   or collusion between, the negotiating parties[.]'" (Dkt. 418, Court's Order of February 16, 2016, at

13   17).  The circumstances have not changed, as the court has not seen any signs of collusion in the

14   negotiation of the settlement or other conflicts of interest to undermine the court's approval of the

15   settlement.  Under the circumstances here, the court finds that the settlement is fair, reasonable,

16   and adequate, and not the product of collusion among the parties.

17        F.    Cy Pres Designee.

18        The settlement provides that the residue of any un-cashed checks issued to class members

19   pursuant to the terms of the Settlement Agreement will be distributed, subject to the court's

20   approval, to the National Consumer Law Center ("NCLC"), as a cy pres recipient.  (See Dkt. 470-2,

21   Exh. A, Settlement Agreement at ¶ 7).

22        Courts may approve cy pres distributions if there is "a driving nexus between the plaintiff

23   class and the cy pres beneficiaries." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012)

24   (internal quotation marks and citation omitted).  A cy pres award must be "guided by (1) the

25   objectives of the underlying statute(s) and (2) the interests of the silent class members,  and must

26   not benefit a group too remote from the plaintiff class[.]" Id. (internal quotation marks and citations

27   omitted).

28        Here, plaintiffs state that the NCLC is "a nonprofit that works for consumer justice and

1  economic security for low-income and other disadvantaged people, including older adults in the

2  United States."[5]  (Dkt. 470-2, Exh. F, Chavez Decl. at ¶ 23 n. 2).  NCLC "is a frequent recipient

3  of cy pres awards," (id.), because its work "promot[es] justice at both the national and state levels

4  regarding consumer protection, unfair and deceptive acts and practices[.]"  (Id.).  Indeed, courts

5  have repeatedly found the NCLC to have the requisite nexus with consumer classes for

6  qualification as a cy pres recipient.  See, e.g., Johnson v. Gen. Mills, Inc., 2013 WL 3213832, *3

7  (C.D. Cal. 2013) (approving NCLC as cy pres designee); Tadepalli v. Uber Techs., Inc., 2015 WL

8  9196054, *10 (N.D. Cal. 2015) (same); Durham v. Cont'l Cent. Credit, Inc., 2011 WL 2173769, *2

9  (S.D. Cal. 2011) (same); Kelen v. World Fin. Network Nat'l Bank, 302 F.R.D. 56, 68 (S.D.N.Y.

10  2014) (same).  The court finds that NCLC's work with respect to consumer protection and unfair

11  and deceptive acts and practices provides the requisite nexus to the interests of the class

12  members, the nature of their claims, and the purpose of the underlying statutes, and thus qualifies

13  as the next best distribution to the class.

14  II.    AWARD OF ATTORNEY'S FEES AND COSTS AND SERVICE AWARDS.

15        A.    Attorney's Fee Award.

16        The Settlement Agreement provides that class counsel will apply to the court for an

17  attorney's fee award not to exceed 25% of the settlement amount.  (See Dkt. 470-2, Exh. A,

18  Settlement Agreement at ¶ 9).  Class counsel seek $1,156,250 in attorney's fees (25% of

19  $4,625,000) and $136,206 in costs.  (See Dkt. 388, Fees Motion at 1).

20        Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable

21  attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

22  Fed. R. Civ. P. 23(h).  In diversity actions such as this one, the Ninth Circuit applies state law to

23  determine the right to fees and the method for calculating fees.  See Mangold v. Cal. Public Util.

24  Commc'n, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state

25  law in determining not only the right to fees, but also in the method of calculating the fees.");

26

27  _____

28       [5] Class counsel Mark Chavez previously served on NCLC's Board of Directors and is currently a member of its Partners Council.  (See Dkt. 470-2, Exh. F, Chavez Decl. at ¶ 23 n. 2).

1   Rodriguez v. Disner, 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If . . . we were exercising our

2   diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method

3   of calculating such fees.").

4          The California Supreme Court recently held that courts have discretion to choose among

5   two different methods for calculating a reasonable attorney's fee award.  See Laffitte v. Robert

6   Half Int'l Inc., 1 Cal.5th 480, 504 (2016) ("The choice of a fee calculation method is generally one

7   within the discretion of the trial court, the goal under either the percentage or lodestar approach

8   being the award of a reasonable fee to compensate counsel for their efforts."); see also Bluetooth,

9   654 F.3d at 942 ("courts have discretion to employ either the lodestar method or the percentage-

10  of-recovery method").  "The lodestar method, or more accurately the lodestar-multiplier method,

11  calculates the fee by multiplying the number of hours reasonably expended by counsel by a

12  reasonable hourly rate."  Laffitte, 1 Cal.5th at 489 (internal quotation marks omitted).  "The

13  percentage method calculates the fee as a percentage share of a recovered common fund or the

14  monetary value of plaintiffs' recovery."  Id.  "Though courts have discretion to choose which

15  calculation method they use, their discretion must be exercised so as to achieve a reasonable

16  result."  Bluetooth, 654 F.3d at 942; see Laffitte, 1 Cal.5th at 489; Glass v. UBS Fin. Servs., Inc.,

17  2007 WL 221862, *14 (N.D. Cal. 2007), aff'd, 331 F.App'x 452 (9th Cir. 2009) ("As always, when

18  determining attorneys' fees, the district court [is] guided by the fundamental principle that fee

19  awards out of common funds be reasonable under the circumstances.") (internal quotation marks

20  and emphasis omitted).

21         "Because the benefit to the class is easily quantified in common-fund settlements," the court

22  will exercise its discretion "to award attorneys a percentage of the common fund in lieu of the often

23  more time-consuming task of calculating the lodestar."  Bluetooth, 654 F.3d at 942.  "Under the

24  percentage method, California has recognized that most fee awards based on either a lodestar

25  or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent."

26  Smith v. CRST Van Expedited, Inc., 2013 WL 163293, *5 (S.D. Cal. 2013); see Chavez v. Netflix,

27  Inc., 162 Cal.App.4th 43, 66 n. 11 (2008) ("Empirical studies show that, regardless whether the

28  percentage method or the lodestar method is used, fee awards in class actions average around

1    one-third of the recovery."); <u>In re Consumer Privacy Cases</u>, 175 Cal.App.4th 545, 557 n. 13 (2009)

2    ("A fee award of 25 percent is the benchmark award that should be given in common fund cases.")

3    (internal quotation and alteration marks omitted).

4         The 25 percent benchmark is the starting place and the court must determine the

5    appropriate percentage by "tak[ing] into account all of the circumstances of the case."  <u>Vizcaino</u>

6    <u>v. Microsoft Corp.</u>, 290 F.3d 1043, 1048 (9th Cir. 2002).  In general, the court evaluates the

7    following factors in determining the benchmark percentage to be applied: (1) the results achieved

8    for the class; (2) the complexity of the case; (3) the skill, experience and performance of counsel;

9    (4) the risk of nonpayment; and (5) the reaction of the class.  <u>See id.</u> at 1048-49; <u>Bluetooth</u>, 654

10   F.3d at 941-42 & n. 7; <u>Laffitte</u>, 1 Cal.5th at 504 (determining reasonableness of percentage fee

11   "by obtaining additional information from class counsel on the risks and potential value of the

12   litigation;" the "contingency, novelty and difficulty" of the case; and "the skill shown by counsel").

13         1.   **The Result Achieved for the Class**.

14         "The result achieved is a significant factor to be considered in making a fee award."  <u>In re</u>

15   <u>Heritage Bond Litig.</u>, 2005 WL 1594403, *19 (C.D. Cal. 2005); <u>see</u> <u>Hensley v. Eckerhart</u>, 461 U.S.

16   424, 436, 103 S.Ct. 1933, 1941 (1983) ("the most critical factor is the degree of success

17   obtained"); <u>Bluetooth</u>, 654 F.3d at 942 ("Foremost among these considerations, however, is the

18   benefit obtained for the class.").  As the court previously found, the "[s]ettlement [of $4.625 million]

19   is even more compelling given the substantial litigation risks in this case, . . . includ[ing] the fact

20   that [] defendants maintain that they did not act as counsel in the Nevada litigation and did not

21   receive any remuneration in that litigation."  (<u>See</u> Dkt. 418, Court's Order of February 16, 2016,

22   at 17-18).  Moreover, the settlement results in an average settlement amount of approximately

23   $2,056.01, with the highest payment being $5,000.  (<u>See id.</u> at 17).  Under the circumstances, the

24   court concludes that the results obtained for the class support the 25 percent benchmark, if not

25   a modest increase in the benchmark.

26         2.   **Complexity of the Case**.

27         "Courts have recognized that the novelty, difficulty and complexity of the issues involved

28   are significant factors in determining a fee award."  <u>In re Heritage Bond Litig.</u>, 2005 WL 1594403

at *20.  Legal malpractice and breach of fiduciary duty claims are typically fact intensive inquiries.  See Hecht, Solberg, Robinson, Goldberg & Bagley v. Super. Ct., 137 Cal.App.4th 579, 591 (2006) (legal malpractice claim is a fact-intensive inquiry); In re Cent. Valley Processing, Inc., 2007 WL 840500, *2 (Bankr. E.D. Cal. 2007) (breach of fiduciary duty is a fact-intensive inquiry).  Here, the issue of whether defendants caused plaintiffs to suffer damages was particularly complex.  See Hall v. Kalfayan, 190 Cal.App.4th 927, 933 (2010) (elements of a claim for legal malpractice are: (1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and  the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence); Tribeca Cos., LLC v. First Am. Title Ins. Co., 239 Cal.App.4th 1088, 1114 (2015) (elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach).  Although plaintiffs contend that defendants failed to disclose their conflict of interest with Deutsche Bank, (see Dkt. 373, SAC at ¶ 3), plaintiffs had significant challenges to explain how that lack of disclosure caused plaintiffs to suffer any damages, especially since defendants did not receive any payment as a result of the Nevada litigation.  (See Dkt. 470-2, Exh. F, Chavez Decl. at ¶ 21).  In short, this factor weighs in favor of granting the requested fee.

### 3.   **Class Counsel's Skill, Experience, and Performance**.

The "prosecution and management of a complex . . . class action requires unique legal skills and abilities."  In re Omnivision Techs., Inc., 559 F.Supp.2d 1036, 1047 (N.D. Cal. 2008).  Class counsel have extensive experience in class action litigation and they have been very diligent in prosecuting this action for the benefit of the class over the course of several years.  (See Dkt. 418, Court's Order of February 16, 2016, at 11).  Under the circumstances, the court is persuaded that class counsel litigated this case with skill and performed quality work, as reflected in the results obtained. This factor also supports class counsel's requested fee.

### 4.   **The Risk of Nonpayment**.

"Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award."  In re Heritage Bond Litig.,

1   2005 WL 1594403, at *21.  Here, class counsel took the risk that they would never be paid for their

2   time or reimbursed for costs.  (See Dkt. 388, Fees Motion at 5) (plaintiffs' counsel performed work

3   "on a fully-contingent basis from the beginning, without any guarantee of compensation, and

4   without receiving any reimbursement for their out-of-pocket litigation expenses.").  The contingent

5   nature of the work performed by class counsel, and the risk they took in advancing costs, also

6   weigh in favor of granting plaintiff's fee request.  See Barbosa, 297 F.R.D. at 449 ("Like this case,

7   where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has

8   been found to be appropriate."); see also Graham v. Daimler Chrysler Corp., 34 Cal.4th 553, 580

9   (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are

10  performed.  The contingent fee compensates the lawyer not only for the legal services he renders

11  but for the loan of those services.") (internal quotation marks omitted).

12          5.    **Reaction of the Class**.

13          The reaction of the class to the settlement has been positive.  As previously noted, only five

14  class members requested exclusion, and there were no objections to the settlement.  (See Dkt.

15  465, Miller Decl. at ¶¶ 10 & 11; see, generally, Dkt.).  The positive reaction of the class members

16  supports the fee application.  See, e.g., In re Am. Apparel, Inc. S'holder Litig., 2014 WL 10212865,

17  *21 (C.D. Cal. 2014) (holding 25% fee as reasonable when "[n]o member of the class has filed an

18  objection to the fee request and only one class member has requested exclusion from the class").

19          6.    **Lodestar Cross-Check**.

20          "One way that a court may demonstrate that its use of a particular method or the amount

21  awarded is reasonable is by conducting a cross-check using the other method."  In re Online DVD-

22  Rental Antitrust Litig., 779 F.3d at 949; see Laffitte, 1 Cal.5th at 504 (holding that the court has

23  discretion to "double check the reasonableness of the percentage fee through a lodestar

24  calculation").  "For example, a cross[-]check using the lodestar method can confirm that a

25  percentage of recovery amount does not award counsel an exorbitant hourly rate."  In re Online

26  DVD-Rental Antitrust Litig., 779 F.3d at 949 (internal quotation marks omitted); see Laffitte, 1

27  Cal.5th at 504 ("If a comparison between the percentage and lodestar calculations produces an

28  imputed multiplier far outside the normal range, indicating that the percentage fee will reward

1   counsel for their services at an extraordinary rate even accounting for the factors customarily used

2   to enhance a lodestar fee, the trial court will have reason to reexamine its choice of a

3   percentage.").   Thus, although not required, a lodestar cross-check may assist the court in

4   evaluating the reasonableness of the instant attorney's fees request.

5   In conducting the cross-check, the court need not "closely scrutinize each claimed attorney-

6   hour, but [may] instead use[] information on attorney time spent to focus on the general question

7   of whether the fee award appropriately reflects the degree of time and effort expended by the

8   attorneys." Laffitte, 1 Cal.5th at 505 (internal quotation marks omitted); see Barbosa, 297 F.R.D.

9   at 451 ("Where the lodestar method is used as a cross-check to the percentage method, it can be

10  performed with a less exhaustive cataloguing and review of counsel's hours.").   Here, the

11  collective lodestar for the work performed is approximately four times greater than the requested

12  fee award.  (See Dkt. 388-2, Declaration of Steven A. Skalet in Support of Plaintiffs' Motion for

13  Attorneys' Fees and Costs at Exh. A; Dkt. 388-3, Declaration of S. Ron Alikani in Support of

14  Plaintiffs' Motion for Attorneys' Fees and Costs at ¶ 10; Dkt. 388-4, Declaration of Raymond C.

15  Fay in Support of Plaintiffs' Renewed Motion for Preliminary Approval at Exh. A; Dkt. 388-1,

16  Declaration of Mark A. Chavez in Support of Plaintiffs' Motion for Attorneys' Fees and Costs at ¶

17  21).  Thus, the lodestar cross-check further supports the attorney's fees request.  See Laffitte, 1

18  Cal.5th at 496 ("If the implied multiplier is reasonable, then the cross-check confirms the

19  reasonableness of the percentage-based fee[.]").

20          7.   **Conclusion**

21  Consideration of the foregoing factors supports the request for attorney's fees.  The

22  requested fee award out of the common fund is fair and reasonable.

23  B.   Costs.

24  The Settlement Agreement provides that class counsel may seek reimbursement of

25  reasonable costs and expenses. (See Dkt. 470-2, Exh. A, Settlement Agreement at ¶ 9).  Class

26

27

28

counsel have collectively incurred $136,206[6] in costs, and accordingly seek an award in that amount to be paid out of the $4.625 million fund.  (See Dkt. 388, Fees Motion at 1).  Chavez & Gertler LLP declares that the law firm incurred reasonably necessary costs in the amount of $12,890.22.  (See Dkt. 443, Supplemental Declaration of Mark A. Chavez in Support of Plaintiffs' Motion for Attorneys' Fees and Costs at ¶ 3; id. at Exh. 1 at 2-3 (itemizing costs)).  Mehri & Skalet, PLLC declares that it incurred reasonably necessary costs in the amount of $110,616.88, including $21,082.20 in expert fees.  (See Dkt. 447, Supplemental Declaration of Steven A. Skalet, Exh. at ECF 11707; id. at Exh. (itemizing costs)).  The Irvine Law Group, LLP declares that it incurred reasonably necessary costs in the amount of $12,695.34.  (See Dkt. 469, Supplemental Declaration of S. Ron Alikani, Exh. A at ECF 12111; id. (itemizing costs)).  The court finds that the costs incurred by class counsel over the course of this five-year-long lawsuit are reasonable, and therefore awards a total of $136,202.44 in costs to be paid out of the common fund.

C.     Class Representative Incentive Awards.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments."  Staton, 327 F.3d at 977.  Here, plaintiffs request that the court grant incentive payments, also known as service awards, to two class representatives: (1) Estakhrian in the amount of $7,500; and (2) Naziri in the amount of $2,500. (See Dkt. 388, Fees Motion at 11; Dkt. 470-2, Exh. A, Settlement Agreement at ¶ 4(c)); Wren v. RGIS Inventory Specialists, 2011 WL 1230826 at *31 ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards.").

In its Order of February 16, 2016, the court undertook a thorough examination of the fairness and adequacy of the incentive payments at issue, applying the careful scrutiny required in this Circuit.  (See Dkt. 418, Court's Order of February 16, 2016, at 15-23); see also Radcliff v.

---

[6]  The costs class counsel seek now are slightly lower than their original request, by about $5.00, which counsel determined should not be included.  (See Dkt. 443, Supplemental Declaration of Mark A. Chavez in Support of Plaintiffs' Motion for Attorneys' Fees and Costs at ¶ 3).

1    Experian Info. Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to

2    scrutinize carefully the awards so that they do not undermine the adequacy of the class

3    representatives."). Based on its review of the record, the court determined "that plaintiffs'

4    evidence establishes that the incentive awards are warranted based on [the class representatives']

5    efforts to protect the interests of the class, the degree to which the class has benefitted from those

6    actions, and the amount of time and effort the plaintiff[s] expended in pursuing the litigation." (Dkt.

7    418, Court's Order of February 16, 2016, at 21) (internal quotation marks omitted). The court,

8    therefore, concludes the requested service payments are fair and reasonable, and will be

9    approved.

10   III.    RULE 54(b) JUDGMENT.

11          "When an action presents more than one claim for relief . . . or when multiple parties are

12   involved, the court may direct entry of a final judgment as to one or more, but fewer than all,

13   claims or parties only if the court expressly determines that there is no just reason for delay." Fed.

14   R. Civ. P. 54(b); see Haley v. Michels, 265 F.App'x 577, 577 (9th Cir. 2008) (affirming district

15   court's dismissal of claims against certain defendants while claims against other defendants

16   remained pending); Milne v. Stephen Slesinger, Inc., 2004 WL 5644365, *3 (C.D. Cal. 2004)

17   (granting request for Rule 54(b) judgment where all claims against one party had been

18   adjudicated). The court finds entry of judgment pursuant to Rule 54(b) is proper because this

19   order fully and finally adjudicates the claims of plaintiffs against the settling defendants in this

20   action. See, e.g. Rieckborn v. Velti PLC, 2015 WL 468329, *20 (N.D. Cal. 2015) (entering Rule

21   54(b) judgment as to settling defendants in class action); Standard Iron Works v. Arcelormittal,

22   2014 WL 11350176, *5 (N.D. Ill. 2014) (same). Moreover, entering a Rule 54(b) judgment as to

23   the King & Spalding defendants "may make further litigation between [plaintiffs and Obenstine]

24   unnecessary[,]" or "facilitate settlement of the remaining claims." Alcan Aluminum Corp. v.

25   Carlsberg Fin. Corp., 689 F.2d 815, 817 (9th Cir. 1982).

26                                            **CONCLUSION**

27          **This Order is not intended for publication. Nor is it intended to be included in or**

28   **submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiffs' Motion for Final Approval of Class Action Settlement **(Document No. 470)** is **granted** as set forth herein.

2.   The court hereby **grants final approval** to the parties' Settlement Agreement ("Settlement Agreement") (Document No. 470-2, Exh. A).  The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's length and informed negotiations, and treats all members of the class fairly.  The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

3.  Plaintiffs' Motion for Attorneys' Fees, Costs and Expenses and Service Awards **(Document No. 388)** is **granted** as set forth herein.

4.  The settlement class is certified under Federal Rule of Civil Procedure 23(c):  All members of the class preliminarily approved on February 16, 2016, who did not properly and timely request exclusion pursuant to the procedures specified in the Settlement Agreement.

5.  The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6.  The court affirms the appointment of plaintiffs James Estakhrian and Abdi Naziri as class representatives.

7.  The court affirms the appointment of the law firms of Irvine Law Group LLP, Mehri & Skalet PLLC, Fay Law Group PLLC, and Chavez & Gertler LLP as class counsel.

8.  Plaintiff James Estakhrian shall be paid a service payment of $7,500 and plaintiff Abdi Naziri shall be paid a service payment of $2,500 in accordance with the terms of the Settlement Agreement.

9.  Class counsel shall be paid $1,156,250 in attorney's fees and $136,202.44 in costs in accordance with the terms of the Settlement Agreement.

10.  The Claims Administrator, A.B. Data, shall be paid  for its fees and expenses in connection with the administration of the Settlement Agreement, in accordance with the terms of the Settlement Agreement.

11.  The court approves the designation of National Consumer Law Center as the <u>cy pres</u>

beneficiary of any unclaimed settlement funds pursuant to the Settlement Agreement.

12.  All class members who did not validly and timely request exclusion from the settlement have released claims against defendants, as set forth in the Settlement Agreement.

13.  The court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the order, as well as the Settlement Agreement itself.

14.  Defendants Benjamin F. Easterlin and King & Spalding, LLC are hereby **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of this court.

15.  Judgment pursuant to Rule 54(b) shall be entered accordingly.

Dated this 24th day of October, 2016.


_____
/s/
Fernando M. Olguin
United States District Judge