CHAVEZ & GERTLER LLP
Mark A. Chavez (SBN 090858)
Nance F. Becker (SBN 099092)
42 Miller Avenue
Mill Valley, California 94941
Telephone: (415) 381-5599
Facsimile: (415) 381-5572
mark@chavezgertler.com
nance@chavezgertler.com

*Additional counsel for Plaintiffs listed on signature page*

Attorneys for Plaintiffs James Estakhrian, Abdi Naziri,
And the Certified Class

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ESTAKHRIAN and ABDI NAZIRI, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br>v.<br><br>MARK OBENSTINE, BENJAMIN F. EASTERLIN IV, TERRY A. COFFING, KING & SPALDING, LLP and MARQUIS & AURBACH, P.C.,<br><br>   Defendants. | Case No. 2:11-cv-3480-FMO-CW<br><br>CLASS ACTION<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT OBENSTINE'S POST-TRIAL MEMORANDUM RE: BENCH TRIAL**<br><br>Hon. Fernando M. Olguin |

## I. INTRODUCTION

Defendant Obenstine's post-trial Memorandum is noteworthy for the absence of any effort to refute Plaintiffs' arguments regarding their eligibility for restitution if the Court rules in Plaintiffs' favor on their breach of fiduciary duty and UCL claims, or Plaintiffs' entitlement to an order of injunction and an award of litigation costs and attorneys' fees.[1]

The arguments that Obenstine does raise are largely a rehashing of ill-conceived positions on which this Court has already ruled in Plaintiffs' favor. In particular, Obenstine misconstrues the legal and factual basis of Plaintiffs' breach of contract claim, and his argument that the claim lacks merit and should be dismissed is baseless. Plaintiffs address Obenstine's arguments below.

## II. OBENSTINE HAS FAILED TO RAISE ANY MATERIAL ISSUE OF FACT OR OTHER BASIS FOR THE COURT TO DENY PLAINTIFFS' REQUEST FOR PARTIAL SUMMARY JUDGMENT ON THE LEGAL ISSUE WHETHER OBENSTINE IS LIABLE TO THE SUBCLASS FOR BREACH OF CONTRACT

As detailed in Plaintiffs' opening post-trial Memorandum filed February 12, 2018 (Dkt. 606), Obenstine has stipulated to – and thus there is no basis for the Court to find any dispute as to – the key facts that entitle Plaintiffs to judgment as to Obenstine's *liability* to the members of the subclass for breaching his retainer contracts with them.

### A. Obenstine's Failure To Repay The Retainers Is Undisputed

Obenstine does not and cannot deny that the following facts establishing his failure to repay the retainers are undisputed:

- The subclass members entered into retainer contracts *with Obenstine* (not MAC) (Undisputed Fact 5.t);

---

[1] In preparing this responsive brief, Plaintiffs realized that their Post-Trial Memorandum inadvertently included an argument that the Court should award damages, as well as injunctive relief, under the CLRA. (Pltf. Memo., Dkt. 607, at 4:21-5:8.) Because the Court granted Obenstine's motion for summary judgment as to that issue, Plaintiffs withdraw any request for damages under the CLRA and apologize to the Court for their error.

1
PLAINTIFFS' RESPONSE TO DEFENDANT'S POST-TRIAL MEMO. RE: BENCH TRIAL

- The retainer agreements required the clients to pay retainers of $1,000, which was represented to be "an advance for the costs that will be incurred in connection with our representation" (Undisputed Fact 5.v; Pltf. Trial Exh. 141 at 11);

- The retainers were in the form of a check made out to "*Mark. R. Obenstine, Esq.*...." (Plaintiffs Trial Exh. 141 at 11 ¶ 5 [emphasis in original]) and were reportedly "placed into our [Obenstine's] Client Trust Account" (Pltf. Trial Exh. 141 at 17);

- Obenstine agreed that "all outstanding costs will be paid and ***all costs advanced by the Client and the Firm shall be refunded from any recovery*** before the Firm's attorneys' fees are computed and paid" (Undisputed Fact 6.w and Pltf. Trial Exh. 141 at 13 ¶ 3);

- The *Watt* Settlement Agreements provided that the amount claimed and awarded by the *Watt* court represented "combined payment for all past and future services and expenses of the Settlement Class Counsel **and any referring counsel or associated counsel**" and was the "aggregate total of all fees, expenses and court costs which Settlement Class Counsel and **any referring counsel or associated counsel may be awarded** with respect to the Settlement...." (Deft. Prop. Findings of Fact and Concl. Of Law [Dkt. 610] at 7:7-16, 8:23-9:11 [Prop. Findings 31, 40, citing Pltf. Exh. 3 [emph. in original]); and

- Following the settlements in *Watt,* Obenstine repaid some but not all of the retainers (Undisputed Facts 8.nn, 8.oo).

It is, likewise, undisputed that Plaintiff Estakhrian was one of the subclass members whose retainer was not refunded in full. (Pltf. Prop. Findings 38 and 104, citing Undisputed Fact 5.t, Pltf. Trial Exh. 141, and Estakhrian Trial Tr. 38:20-25, 39:1-9.)

### B. There Is No Evidence To Support Obenstine's Claim That The Existence Of His Joint Venture With MAC and K&S Is Or Was Disputed

In his post-trial Memorandum, Obenstine argues that MAC is a necessary party to the breach of contract claim, alleging that the existence of a joint venture between them is disputed. However, the Court has already found that "Obenstine concedes that he entered into a joint venture with the MAC defendants to pursue the Nevada litigation." (Dkt. 500, Order re Class Cert., at 17, referencing a prior Obenstine Declaration [Dkt. 426-4].) It has also ruled that:

> under plaintiffs' joint venture theory, the transfer of the retainer funds to the MAC defendants does not limit Obenstine's liability. *See Victory Valley Transit Auth. v. Workers' Comp. Appeals Bd.*, 83 Cal.App.4th 1068, 1076 (2000) (explaining that joint venture partners "are free to allocate responsibility among themselves as they see fit," but "are jointly and severally liable to third parties for the obligations of the joint venture or partnership.")

(Dkt. 498, Order Re: MSJ, at 22.)  And the existence of a joint venture is clearly supported by the undisputed facts. Indeed, Obenstine himself in his Proposed Findings has asked the Court to find – and he previously stipulated – that he, King & Spalding, and MAC "agreed to work together to prosecute claims against the developers of the Cosmopolitan Resort" and "worked together to settle" the West Tower and East Tower claims. (Deft. Prop. Findings at 4:6-10, 6:6-7, 8:7-8 [Prop. Findings 11, 24, 36], citing Undisputed Facts 5.l, 5.cc, 5.ii.)  He also admits and asks the Court to find that "[b]efore filing the Nevada Action, the K&S, the MAC [sic], and Obenstine had an agreement to share any attorneys' fees awarded in connection with the Watt litigation." (*Id*. at 6:3-5 [Prop. Finding 23], citing Undisputed Fact 5.bb.) The Court has also already rejected Obenstine's assertion that the MAC defendants are an indispensable party. (See Dkt. 500 at 14, Dkt. 498 at 13-14.) There is no basis for the Court to change its prior rulings and instead conclude that material factual disputes preclude the Court from summarily

adjudicating Obenstine's liability for breaching his contracts with the members of the subclass.

### C. Jurisdiction Lies In This Court, Not In Nevada

The Court has, likewise, repeatedly rejected Obenstine's argument that the parties' dispute must be resolved by the Nevada court that oversaw the *Watt* litigation. (Dkt. 498 at 12-13.)[2] Whether, as Plaintiffs contend, the above facts entitled Plaintiff Estakhrian and the subclass members to receive a full refund or credit of the "costs advanced" as part of the initial retainer paid to Obenstine is a simple question of law that can and should be resolved on the basis of the terms of the *retainer agreement* and Obenstine's undisputed actions. Nothing about that inquiry requires the Court to "interpret" or enforce the terms of the *Watt* settlement agreements, which Obenstine argues is the province of the Nevada court that approved the settlements.

### D. Obenstine's New Claim That The Subclass Members Are Not Entitled To Recover Because They "Failed To Perform Their Part Of The Bargain" Is Absurd

For the first time in these proceedings, Obenstine argues that the members of the subclass should be barred from recovery because they failed to perform their alleged obligation "to pay Obenstine 33.3% of the settlement recovery, as dictated by the express terms of the retainer agreement." (Deft. Memo. at 11:16-18.) This argument is contrary to the facts and the law.

First, any right to recover any amount of attorneys' fees that Obenstine might have necessarily derives from his work on, and the settlement of, the *Watt* class action and the *Watt* court's orders approving the settlement terms. As set forth above, the settlement expressly limits the amount of fees to which class counsel and "associated or referring counsel" may be paid. Obenstine's argument –

---

[2] Indeed, Obenstine neglects to explain what basis the Nevada court would have to assert jurisdiction over him, given that he hid behind the scenes, did not appear in *Watt*, and now resides in Oregon. (See Dkt 500 at p.25, n.18.)

4
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES RE: BENCH TRIAL

1 that the members of the *Watt* class had an independent obligation to pay him
2 additional exorbitant legal fees not authorized by the court – contravenes the
3 approved settlement terms, and is but a further example of Obenstine's
4 indifference to the rights of his clients and his obligations to the courts.

5 Second, Obenstine's bizarre contention that he was "damaged" by his
6 clients' failure to pay him unauthorized fees, and that he has a right to "offset"
7 such "damages," is belied by the fact that Obenstine has lost any ability he might
8 otherwise have had to ask the Court for a "setoff" as the result of his egregious
9 pretrial conduct. The sanctions against Obenstine included the striking of all of
10 Obenstine's affirmative defenses, which included "comparative fault and
11 contributory negligence" and "offset." (Dkt. 467 at 14-15. 20-21.)

12 Third, Obenstine's assertion that the "express terms of the retainer
13 agreement" "dictate" that he be paid "33.3% of the settlement recovery" is flat-out
14 wrong. Obenstine knows and has conceded this: in his Proposed Finding 18 (Deft.
15 Prop. Findings at 5:7-9), Obenstine asks the Court to find that most or all of his
16 retained clients agreed to "'assign to [Obenstine] a contingency fee' ranging from
17 12.6% to 28.0% of any recovery," echoing Undisputed Fact 5.v. Under no version
18 of reality did Obenstine ever have the right to demand, or did any of his clients
19 have an obligation to pay him, 33.3% of the *Watt* settlement recovery. Obenstine
20 has, not surprisingly, presented no evidence that he ever demanded payment of
21 additional fees from any of his clients, and any such demand would be barred by
22 the statute of limitations. The Court should not credit any of Obenstine's
23 arguments on this issue.

24 **III.   THE COURT SHOULD POSTPONE CONSIDERATION OF RULE
        54(b) CERTIFICATION UNTIL AFTER PARTIAL SUMMARY
25      JUDGMENT IS DECIDED**

26 Plaintiffs continue to believe that the circumstances of these proceedings –
27 including Obenstine's precarious financial condition – warrant certification of the
28

bench trial claims pursuant to Rule 54(b) so that judgment thereon can be entered and Plaintiffs can begin collection efforts as expeditiously as possible. However, in order to fully evaluate the issue, Plaintiffs believe the decision whether separate judgments should be certified is best made after the Court rules on their pending request for partial summary judgment, and determines how it intends to proceed on the breach of contract claim. Accordingly, Plaintiffs request that the Court defer deciding whether to certify the bench trial claims pursuant to Rule 54(b) until that time, and then permit further briefing of that issue.

### IV. THE COURT HAS ALREADY CORRECTLY REJECTED OBENSTINE'S ARGUMENT THAT PLAINTIFFS LACK STANDING, AND THERE IS NO BASIS FOR A DIFFERENT CONCLUSION NOW

Obenstine's arguments about Plaintiffs' alleged lack of standing are confusing and incorrect, and the Court has previously – and correctly – rejected them. (Dkt. 498 at 13-14; Dkt. 500 at 11-14.)

Fundamentally, whether a plaintiff has standing to assert a claim is based on the well-pled allegations of the complaint, not on whether the plaintiff is subsequently able to prove his claims. (See *Visendi v. Bank of America, N.A.*, 733 F.3d 863, 868 (9th Cir. 2013) [quoted by the Court at Dkt 498, p. 12, and stating that, "post-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing."]; *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982) [before a federal court can dismiss for lack of the requisite amount in controversy, "it must appear to a legal certainty from the complaint that the plaintiff cannot recover sufficient damages to invoke federal jurisdiction. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Moore v. Betit*, 511 F.2d 1004 (2d Cir. 1975).") The fact that the defendant disputes his liability, denies that the plaintiff has been injured, and/or disputes the measure of damages cannot defeat standing, otherwise

no plaintiff would ever have standing in any contested matter. ("[T]he existence of a valid defense does not deprive a federal court of jurisdiction." *Zacharia,* 684 F.2d at 202.) Yet that is precisely what Obenstine argues; he claims that because Plaintiffs (in his incorrect view) did not put on sufficient evidence of damages, they lacked standing to sue. That circular reasoning should be rejected out of hand. (Indeed, in its Order re Class Certification, this Court commented that Obenstine's argument "often conflat[es] standing and remedies." Dkt. 500 at 26.)

Obenstine's arguments regarding CAFA are equally flawed. With respect to the amount at issue, CAFA specifies that "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §1332(d)(6). Because every member of the subclass in this case is also, by definition, a member of the primary class, their claims, in the aggregate, exceed $5,000,000. Even before CAFA, it was well established that a plaintiff with multiple claims against a defendant may aggregate those claims to meet the jurisdictional amount in controversy requirement. (See, e.g., *Snyder v. Harris*, 394 U.S. 332, 335, 89 S. Ct. 1053, 1056, 22 L. Ed. 2d 319 (1969).) As well-summarized in *Long John Silver's, Inc. v. DIWA III, Inc.*, 650 F. Supp. 2d 612, 617 (E.D. Ky. 2009):

> [Defendant] appears to argue that the amount in controversy on each claim against him must exceed $75,000 in order for the Court to exercise jurisdiction over any claim. This is incorrect. In an action such as this, where there are multiple claims against a defendant by a single plaintiff, the amount in controversy on each claim against the defendant can be aggregated for purposes of determining whether the Court has subject matter jurisdiction over the controversy between the parties.

Obenstine's similar argument that the subclass members' breach of contract claim does not meet the CAFA amount in controversy should, likewise, be rejected.

//

7
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES RE: BENCH TRIAL

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully renew their request that the Court rule in their favor on the bench trial claims; also rule on Plaintiffs' pending sanctions motion; issue a partial summary judgment finding that Obenstine is liable to Plaintiff Estakhrian and the subclass for breach of contract; and then direct a claims-based process for determination of each subclass member's damages resulting from the breach of contract.

Respectfully submitted,

Dated: February 26, 2018

IRVINE LAW GROUP, LLP
MEHRI & SKALET PLLC
FAY LAW GROUP PLLC
CHAVEZ & GERTLER LLP

By:  */s/ Mark A. Chavez*
Mark Chavez
Attorney for Plaintiffs

*Additional counsel for plaintiffs*
MEHRI & SKALET PLLC
Steven A. Skalet, Esq. (Pro Hac Vice)
1250 Connecticut Avenue, NW Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
sskalet@findjustice.com

FAY LAW GROUP PLLC
Raymond C. Fay (Pro Hac Vice)
1250 Connecticut Avenue NW, Suite 200
Washington, DC 20036
Telephone: 202-263-4604
Facsimile: 202-722-1393
rfay@faylawdc.com

IRVINE LAW GROUP, LLP
S. Ron Alikani (SBN 206939)
7700 Irvine Center Drive, Suite 800

1  Irvine, California 92618
   Telephone:  (949) 653-6153
2  Facsimile:   (949) 653-1277
3  ralikani@irvinelawgroup.com

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES RE: BENCH TRIAL