1 THE SAFARIAN FIRM, APC
Harry A. Safarian (SBN 204106)
2 3150 Montrose Avenue
Glendale, California 91214
3 Telephone: (818) 334-8528
Facsimile: (919) 334-8107
4 hs@thesbfirm.com

5 Attorneys for Defendant Mark Obenstine

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES ESTAKHRIAN and ABDI NAZRIRI, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARK OBENSTINE, BENJAMIN F. EASTERLIN IV, TERRY A. COFFING, KING & SPALDING, LLP and MARQUIS & AURBACH, P.C.,<br><br>Defendants. | **Case No. 2:11-cv-3480-FMO-CW**<br><br>CLASS ACTION<br><br>**DEFENDANT'S REPLY TO PLAINTIFFS' POST-TRIAL MEMORANDUM RE: BENCH TRIAL**<br><br>Hon. Fernando M. Olguin |

## I. PLAINTIFFS CONCEDED THEY LACK ANY DAMAGES.

In their Memo Re: Bench Trial, Plaintiffs contend "Obenstine's actions caused direct financial harm to Plaintiffs and Class Members" and the fact M&A shared its fees harmed the class members by "dilut[ing] the compensation paid to the class." (Dkt. 607 at 4, 5.). Plaintiffs' willingness to proffer such a contention is exceedingly problematic. Plaintiffs freely conceded during the bench trial that Obenstine did not cause them to suffer any harm or damages.

Specifically, Plaintiff Estakhrian testified he did not suffer harm or damages, stating he was not aware of any "negative financial impact" caused by Obenstine. (Trial Tr., p. 67 lns. 5-8). Moreover, Plaintiffs abandoned their damages theory predicated on an alleged "compensation dilution," namely the damages theory the Nevada Court was unaware M&A would share its fees with Obenstine, and if it had been aware the court would have reduced the fees awarded. Indeed, Plaintiff's expert witness, Ellen Pansky, testified she had no opinion on whether the Nevada Court's knowledge of fee-sharing could have affected the fee award. Specifically, Obenstine's attorney asked Ms. Pansky, "[I]n terms of whether it was disclosed, you're not formulating an opinion as to whether the Court would have taken a different path as far as whether it would have approved or not approved the fees, correct?" (*Id.* at p. 141, lns. 15-21). In response, Ms. Pansky stated, "That would require me to speculate. So I can't do that." *Id.*

Even the Court acknowledged the speculative nature of this damages theory when Obenstine's attorney asked Ms. Pansky, "Is there any reason to think that if there even more lawyers working on the Cosmopolitan litigation for the class that the [Nevada] Court would have decided the fees should be lower rather than higher?" (*Id.* at 137 lns. 20-24). Before Ms. Pansky could respond, the Court stated, "There's -- there's no way – so move on. There's no way for her to know

that. You're asking her to speculate. Move on." (*Id.* at p. 137 lns 24-25, p. 138 lns 2-4).

Plaintiffs' attempt to deny such unequivocal testimony, two months after it was presented during trial, does not reflect good faith. In fact, such conduct is best understood as evidence of bad faith, as there is not a single legal authority that states or even intimates a plaintiff can testify he did not suffer harm during trial only to unapologetically contradict that testimony in a post-trial motion. Unsurprisingly, such conduct is legally unprecedented. Accordingly, by conceding they did not suffer any harm during trial, Plaintiffs cannot pretend in their post-trial motion that they did not concede the Court does not have subject matter jurisdiction over this class action. Stated otherwise, Plaintiffs not only failed during the bench trial to put forth any evidence that they suffered harm – they freely conceded they did not suffer any harm.[1] This concession precludes any ability to demonstrate Article III standing for their class claims as a matter of law. *See Goldberg v. Stephens Inst.*, No. C 16-02613 JSW, 2017 WL 3081680, at *2 (N.D. Cal. Mar. 29, 2017) (holding that the court lacks jurisdiction since the plaintiffs conceded they have not pled any injury-in-fact); *Herman v. Salomon Smith Barney,*

---

[1] In their Memo Re: Bench Trial, Plaintiffs imply that the Court held they are entitled to seek disgorgement of Obenstine's attorneys' fees without a showing of damages by stating "this Court expressly concluded that 'plaintiffs may seek disgorgement of Obenstine's attorney's fees as a remedy to the common law tort[] of ... breach of fiduciary duty.'" (Dkt. 607, p. 4).  However, they failed to state the Court expressly held that Plaintiffs could not seek disgorgement of Obenstine's attorneys' fees if they could not prove fiduciary damages.  *See Estakhrian v. Obenstine*, 233 F. Supp. 3d 824, 843 (C.D. Cal. 2017) ("While '[d]isgorgement of fees may be an appropriate remedy for an attorney's breach of fiduciary duty" or malpractice, *Slovensky*, 142 Cal.App.4th at 1535, 49 Cal.Rptr.3d 60, disgorgement is not available if plaintiffs "cannot prove malpractice [or fiduciary] damages.'" *Id.* at 1533, 49 Cal.Rptr.3d 60.).

*Inc.*, 266 F. Supp. 2d 1208, 1210 (S.D. Cal. 2003) ("Here, it is undisputed that Plaintiff has suffered no injury in fact. Indeed, both parties agree that Plaintiff has suffered no injury. Accordingly, Plaintiff does not retain Article III standing, and cannot pursue his claims in federal court."); *Envtl. World Watch, Inc. v. Am. Airlines*, *Inc.*, No. C05-1799 TEH, 2005 WL 1867728, at *3 (N.D. Cal. Aug. 3, 2005) ("Since Plaintiff admittedly has suffered no 'injury in fact,' this Court has no authority to hear the claim because it does not fall within in the scope of authority granted to it by Article III of the Constitution.").

      Even assuming *arguendo* Plaintiffs could pretend they did not concede a lack of damages or harm during the bench trial, they cannot overcome the legal import of their testimony regarding the speculative nature of their "compensation dilution" damages theory. *See Penpower Tech. Ltd. v. S.P.C. Tech.,* 627 F. Supp. 2d 1083, 1092 (N.D. Cal. 2008) ("Besides the fact that none of the theories presents a particularly compelling method for determining damages, the fact that Plaintiffs themselves are unable to determine their damages is proof that the damages are too speculative."). The Plaintiffs (and the Court) expressly disavowed the validity of the "compensation dilution" damages theory by proffering unequivocal testimony that the damages theory is speculative. Thus, Plaintiffs concede they cannot rely on that theory – which constitutes their only theory of damages – to establish standing under Article III, the UCL and/or CLRA.[2] *See Xu v. Yamanaka*, No. 13-CV-3240 YGR, 2014 WL 342271, at *4 (N.D. Cal. Jan. 30,

---

[2] Plaintiffs' class claims are wholly predicated on the "compensation dilution" damages theory since they abandoned the "fraudulent conspiracy" damages theory delineated in their complaint by not raising that theory in opposition to Obenstine's motion for summary judgment. *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (holding that a plaintiff "'abandoned ... claims by not raising them in opposition to [defendant's] motion for summary judgment'" quoting *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005) (alteration original)).

2014), *aff'd sub nom. Mebo Int'l, Inc. v. Yamanaka*, 607 F. App'x 768 (9th Cir. 2015) ("Plaintiffs have still not demonstrated a likelihood that they could establish an injury in fact that is more than speculation.") (citation omitted); *Nuezca v. Capital One Fin. Corp.*, No. 3:13-CV-04081-JSC, 2014 WL 573882, at *4 (N.D. Cal. Feb. 12, 2014) (holding that Plaintiffs' UCL claim fails for lack of standing because their alleged injury is entirely speculative).

## II. PLAINTIFFS LACK STANDING UNDER THE UCL AND CLRA BECAUSE THEY SUFFERED NO DAMAGES.

Similarly, Plaintiffs' concession they did not suffer dmaages or harm precludes any ability to demonstrate statutory standing under the UCL and CLRA. Standing under the UCL and CLRA requires an economic injury. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 903 F.Supp.2d 942, 965 (S.D.Cal. 2012). To have standing under the UCL, a plaintiff must allege he "has suffered injury in fact and has lost money or property as a result of the unfair competition." *See* Cal. Bus. & Prof. Code §§ 17204, 17203. To have standing under the CLRA, a plaintiff must allege a "tangible increased cost or burden to the consumer." *Meyer v. Sprint Spectrum L.P.,* 45 Cal.4th 634, 88 Cal.Rptr.3d 859, 200 P.3d 295 (2009).

Even assuming *arguendo* they could ignore their "suffered no harm" testimony and "speculative theory" testimony, Plaintiffs still cannot establish standing under the UCL as a matter of law. Courts have consistently held that a plaintiff must demonstrate that she actually relied upon the allegedly fraudulent misrepresentation to establish standing under the UCL's fraud prong. *See In re Tobacco II Cases,* 46 Cal.4th 298, 326 (2009). Courts extended this actual reliance requirement to claims under the UCL's unlawful prong to the extent "the predicate unlawful conduct is based on misrepresentations." *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1355 (2010). Moreover, in *Kwikset Corp. v. Superior Court,* the

California Supreme Court concluded that the actual reliance requirement applies whenever the underlying misconduct in a UCL action is fraudulent conduct. *See* 51 Cal.4th 310, 326 (2011). Thus, the actual reliance requirement also applies to claims under the UCL's unfair prong to the extent such claims are based on fraudulent conduct. *See In re Actimmune Mktg. Litig.,* No. 08–2376, 2010 WL 3463491, at *8 (N.D.Cal. Sept. 1, 2010) *aff'd,* 464 Fed.Appx. 651 (9th Cir.2011) (holding "that a plaintiff must plead 'actual reliance,' even if their [*sic*] claim arises under the unlawful or unfair prongs, so long as the pleadings assert a cause of action grounded in misrepresentation or deception.").[4]

In this class action, Plaintiffs must demonstrate actual reliance because the gravamen of Plaintiffs' claims under the UCL is that Obenstine perpetrated a fraud upon the Nevada Court by concealing the fact he would receive fees from M&A.[5] Yet, Plaintiff Estakhrian testified he was fully aware Obenstine would receive fees and not surprised when Obenstine did in fact receive fees from M&A. (Trial Tr., p. 68 lns 10-18). Plaintiffs have not alleged (let alone demonstrated) actual reliance for any of their UCL claims, failing to allege they engaged in any conduct that

---

[4] "For fraud-based claims under all three consumer statutes [UCL, FAL, and CLRA] the named Class members must allege actual reliance to have standing." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 (S.D. Cal. 2012). Importantly, in the class action context, the CLRA requires actual reliance of all class members. *See Massachusetts Mutual Life Insurance Co. v. Super. Ct.,* 46 Cal.4th 298, 328 (2009).

[5] Strikingly, Plaintiffs did not even attempt to proffer any evidence to support many of their contentions, including that Obenstine (1) lied to his clients about his role in the litigation, (2) violated the prohibition against practicing law without a license, (3) illegally paid his assistant and one of the class representatives and (4) purposely concealed his involvement in the litigation from the Nevada Court overseeing the settlement of the Cosmopolitan litigation.

harmed them as a result of Obenstine's alleged misconduct. To the extent Plaintiffs allege harm as a result of the Nevada Court's alleged reliance on Obenstine's alleged misconduct, such an allegation is insufficient as a matter of law. The showing of *actual* reliance under the UCL requires a plaintiff to allege "defendant's misrepresentation or nondisclosure was an *immediate* cause of the plaintiff's injury-producing conduct." *In re Tobacco II Cases,* 46 Cal.4th 298, 326 (2009) (emphasis added).

### III. THE COURT SHOULD NOT ENTER A RULE 54 JUDGMENT.

As set forth in Obenstine's Memo Re: Bench Trial, it is well-established that "all issues decided by the district court should be resolved in a single appeal of a final judgment." *iLOR, LLC v. Google, Inc.,* 550 F.3d 1067, 1072 (Fed.Cir.2008). If the Court were to grant Plaintiffs' request for Rule 54 certification *and* issue a final judgment in favor of Plaintiffs with respect to their class claims, the resolution of this class action (class claims and subclass claim) would not be resolved in a single appeal.[7] The class claims (UCL, CLRA and breach of fiduciary duty) and the subclass claim (breach of contract) are inextricably linked because Plaintiffs' ability to maintain this entire class action is dependent upon their ability to establish federal subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), which gives federal courts jurisdiction over certain class actions, defined in 28 U.S.C. §§ 1332(d)(2).

---

[7] The Court has not yet entered a final judgment pursuant to the bench trial conducted on December 12, 2017. Once that final judgment is entered, it would be subject to review under Federal Rule of Civil Procedure 60(b). A judgment or order is void under Rule 60(b)(4) "if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of the law." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir.1995) (citations omitted); *see also Wages v. I.R.S.,* 915 F.2d 1230, 1234 (9th Cir.1990) ("Pursuant to Rule 60(b)(4), a litigant may attack a judgment as void due to lack of subject matter jurisdiction").

To establish federal subject matter jurisdiction under CAFA, a plaintiff proponent must allege facts showing that the amount-in-controversy exceeds $5 million, exclusive of interest and costs. *See Petkevicius v. NBTY, Inc.*, No. 314CV02616CABRBB, 2017 WL 1113295, at *5 (S.D. Cal. Mar. 24, 2017); *Abrego Abrego v. Dow Chem. Co.,* 443 F.3d 676, 685-86 (9th Cir.2006). In satisfying CAFA's amount-in-controversy requirement, a plaintiff cannot rely on claims for which she lacks Article III standing. *See Harris v. CVS Pharmacy, Inc.*, No. ED CV 13-2329-AB (AGRx), 2015 WL 4694047 *5 (C.D. Cal. Aug. 6, 2015) ("Absent any standing to invoke Rhode Island law, the Court lacks jurisdiction to entertain Plaintiff's claims under the RIDTPA, and Plaintiff cannot rely on the RIDTPA's statutory damages provision to satisfy CAFA's $5,000,000 amount-in-controversy requirement."); *Selby v. Ocwen Loan Servicing, LLC*, No. 3:17-CV-973-CAB-BLM, 2017 WL 5495095, at *4 (S.D. Cal. Nov. 16, 2017) (concluding that "Plaintiff's lack of standing for her TCPA claims means that she cannot rely on the damages available under the TCPA to satisfy the amount-in-controversy requirement.").

In this class action, Plaintiffs cannot satisfy CAFA's amount-in-controversy requirement because they indisputably lack Article III standing with respect to all their class claims. Indeed, Plaintiffs' trial testimony regarding a lack of damages confirms they could only arguably rely on the damages alleged in connection with their breach of contract claim to satisfy CAFA's amount-in-controversy requirement, and they have not alleged those damages exceed $500,000, let alone $5 million. Without CAFA jurisdiction, the Court does not have subject matter jurisdiction over this entire class action (class claims and subclass claims). As a result, the same legal issue – whether Plaintiffs' established federal subject matter jurisdiction under CAFA – permeates both the class claims and subclass claims.

Absent a compelling need for immediate appeal, Rule 54(b) certification should not be granted in a case where the adjudicated claims and the remaining claims involve overlapping issues. *See Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981). Indeed, similar legal and factual issues between the parties' claims "will weigh heavily against entry of judgment under the rule, and in such cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result, documented by further and specific findings." *Gregorian v. Izvestia,* 871 F.2d 1515, 1519 (9th Cir.1989) (quotation omitted). When weighing the equities, some factors that courts consider are "whether review of the adjudicated claims would be mooted by future development in the case," and issues of relative injury caused by denying Rule 54(b) certification like, "whether delay in payment of the judgment... would inflict severe financial harm." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005) (citation omitted). Moreover, the Ninth Circuit has held that "[j]udgments under Rule 54(b) must be reserved for the *unusual* case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by *pressing needs* of the litigants for an early and separate judgment as to some claims or parties." *Morrison–Knudsen,* 655 F.2d at 965 (emphasis added). Simply stated, under Rule 54(b), a request for partial judgment should only be granted where there exists some danger of hardship or unjust result which would be alleviated by immediate appeal. *See id*.

Plaintiffs do not have a "pressing need" to obtain an immediate final judgment and would not suffer "a harsh or unjust result" if they were compelled to wait until the final disposition of the entire case. Given their concession that Obenstine did not cause them any financial harm, Plaintiffs would not suffer any financial hardship (let alone severe financial harm) if compelled to wait for a couple of months to collect a monetary judgment, assuming they did in fact receive

1  a favorable judgment.  Indeed, Plaintiffs are claiming a right to disgorgement
2  absent a showing of damages, meaning any final judgment requiring Obenstine to
3  disgorge his attorneys' fees would constitute an impermissible windfall.  *See*
4  *Pepper v. J.J. Welcome Constr. Co.,* 73 Wash.App. 523, 543-44, 871 P.2d 601
5  (1994) ("The goal of awarding damages is to fully compensate the plaintiff for loss
6  or injury. One should not recover any windfall in the award of damages, but should
7  receive an award which does no more than put the plaintiff in his or her rightful
8  position.").  Moreover, Plaintiffs' stated concern that Obenstine is likely to seek to
9  dissipate his assets is unjustified and disingenuous.  (Dkt. 607, p. 11).  The Court
10 issued a stringent preliminary injunction to protect against dissipation of
11 Obenstine's only remaining meaningful asset – his home in West Linn, Oregon.
12 Since that preliminary injunction remains (and will continue to remain) in effect,
13 there is nothing to suggest a delay of a couple of months would engender a greater
14 risk of dissipation of assets by Obenstine.
15     On the other side of the ledger, the equities cut dramatically in favor of
16 Obenstine. This class action has effectively destroyed Obenstine's career and life
17 over the last seven years.  Obenstine has been compelled to expend considerable
18 time, resources, and energy to defend against this class action even though the
19 class action was legally invalid from its inception. A final judgment that compels
20 him to file or defend against multiple appeals will further needlessly eviscerate his
21 time, resources, and energy.  In contrast, the class members will only need to wait
22 a couple additional months to receive a windfall payment if they receive a
23 favorable judgment or will be required to simply do nothing if they receive an
24 adverse judgment.
25     In the end, Obenstine respectfully submits that any favorable judgment for
26 the Plaintiffs with respect to their class claims would be unjust and premature.  As
27 set forth above, Plaintiffs proffered testimony they did not suffer any "injury-in-
28

fact" in connection with their class claims and proffered testimony that their damages theory is wholly speculative and thus constitutionally deficient. Given Plaintiffs' testimony, Obenstine will file a motion to dismiss for lack of subject matter jurisdiction on or about February 28, 2018. Thus, to ensure judicial efficiency and justice, Obenstine respectfully requests that the Court stay all proceedings until it decides whether it has subject matter jurisdiction over this action to protect against the possibility of a void judgment. Customarily, a "federal court must first resolve doubts about its jurisdiction over the subject matter." *Ruhrgas Ag v. Marathon Oil Co.,* 526 U.S. 574, 578 (1999); *see also Woodbeck v. United States*, No. 07-1235-PHX-RCB, 2008 WL 312104, at *1 (D. Ariz. Jan. 31, 2008) ("The court will first address the United States' jurisdiction argument because if the court lacks subject matter jurisdiction, it must dismiss the complaint in its entirety.") (citation omitted).

## IV. BREACH OF CONTRACT CLAIM.

In their Memo Re: Bench Trial, Plaintiffs contend "[e]xecuted retainer agreements, such as the ones at issue here, are enforceable contracts and may serve as the basis for a breach of contract action." (Dkt. 607, p. 12). Yet, Plaintiffs failed to pay Obenstine 33.3% of the settlement recovery, as dictated by the express terms of the retainer agreement. Because Plaintiffs' completely disavowed the retainer agreement and its attendant obligations, the retainer agreement is not a valid, enforceable contract that can support Plaintiffs' breach of contract claim. Where a contract is superseded by a subsequent contract, a complaint asserting a breach of contract cause of action under the original contract fails to state a claim upon which relief can be granted. *See Business Integration Technology v. MuleSoft, Inc.*, 2011 WL 5914012, *10 (N.D. Cal. Nov. 28, 2011). To the extent they contend the retainer agreement was not superseded by the Settlement Agreement, Plaintiffs cannot tenably contend they are entitled to summary

judgment with respect to their breach of contract claim. *See Frank Morrow ex rel. Gen. Unsecured Creditors' Liquidating Tr. of At Home Corp. v. Cablevision Sys. Corp.*, No. C-03-2970 SC, 2004 WL 2397589, at *2 (N.D. Cal. Oct. 26, 2004) (holding that summary judgment is improper as to a contract claim because "the parties' subsequent behavior and its effect on the scope of the 1997 agreement are in dispute").

Even assuming *arguendo* the retainer agreement had not been superseded by the Settlement Agreement, Plaintiffs cannot seek to enforce provisions of the retainer agreement because they did not perform under the agreement. Under California law, to prevail under a breach of contract claim, a plaintiff must show: "(1) the existence of a valid contract between the parties; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's unjustified or unexcused failure to perform; and (4) damages to plaintiff caused by the breach." *Garza v. Bank of Am., NA*, No. 1:12CV0140 LJO DLB, 2012 WL 469842, at *5 (E.D. Cal. Feb. 13, 2012) (*citing Isee Lortz v. Connell*, 273 Cal.App.2d 286 (1989)). Here, Plaintiffs breached the retainer agreement by failing to pay Obenstine 33.3% of their settlement recovery, and thus he was excused from any obligation to perform further under the retainer agreement. Whether a material breach excuses a party from performance is a question of fact for the jury. *See Plotnik v. Meihaus*, 208 Cal.App.4th 1590, 1602-03 (2012), review denied (Dec. 12, 2012) ("Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact."). Even if the Court were to determine that the Plaintiffs could proceed with their breach of contract claim because Obenstine was not excused from rendering further performance, Plaintiffs would still not be entitled to recover any damages pursuant to a breach of contract claim. Although a non-breaching party's performance may be excused (supporting a breach of contract claim), to seek the

full benefit of performance as a damage, the non-breaching party must still perform. *See Jay Bharat Developers, Inc. v. Minidis*, 167 Cal. App. 4th 437, 443 (2d.Dist.2008). Here, Plaintiffs cannot refuse to perform *and* claim entitlement to the full benefits of the retainer agreements. *See Schmidt v. Mesmer* 116 C. 267, 270-271 (1897).

In their Memo Re: Bench Trial, Plaintiffs contend Obenstine would be liable for actions taken by M&A with respect to the retainers under a joint venture theory. (Dkt. 607, p. 14-15). Yet, Plaintiffs have not alleged (let alone established) Obenstine and M&A were joint-venturers with respect to the administration and dissemination of the settlement proceeds recovered pursuant to the Cosmopolitan class action settlement. Specifically, Plaintiffs have not alleged Obenstine received a single dollar of the $250 administrative fee charged by M&A or that Obenstine was an intended beneficiary of the $250 administrative fee. Moreover, Plaintiffs have not alleged (let alone proffered any evidence) that Obenstine participated in or exercised any measure of control over the administration and dissemination of the settlement proceeds. Plaintiffs have not proffered any evidence that suggests (let alone proves) M&A was not entitled to charge an administrative fee to cover the expenses incurred in conjunction with the administration and dissemination of the settlement proceeds. Plaintiffs also failed to proffer any evidence that suggests (let alone proves) that M&A did not incur the separate expenses in conjunction with administration and dissemination of the settlement proceeds for which it could charge class members. Rather, the evidence (at a minimum) shows there is a disputed issue of fact as to whether Obenstine and M&A were joint-venturers with respect to the administration of the Cosmopolitan class action settlement. In California, the question of whether a joint venture or partnership exists is one of fact. *See Smalley v. Baker*, 262 Cal.App.2d 824, 837.

13
DEFENDANT'S REPLY TO PLAINTIFFS' POST-TRIAL MEMORANDUM RE: BENCH TRIAL

## V. REMEDIES SOUGHT BY PLAINTIFFS.

The express language of Code of Civil Procedure section 1021.5 prohibits the relief sought by Plaintiffs since they have not demonstrated they are a "successful party" under section 1021.5. A plaintiff is a "successful party" under section 1021.5 if "(1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense ... and, (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." *Tipton–Whittingham v. City of Los Angeles,* 34 Cal.4th 604, 608 (2004); *see also MacDonald v. Ford Motor Co.,* 142 F. Supp. 3d 884, 890–91 (N.D. Cal. 2015). Plaintiffs did not attempt to settle this action prior to filing the action. Moreover, Plaintiffs' concession they did not suffer any harm or damages precludes invocation of the CLRA. To have standing under the CLRA, a plaintiff must allege a "tangible increased cost or burden to the consumer." *Meyer v. Sprint Spectrum L.P.,* 45 Cal.4th 634, 88 Cal.Rptr.3d 859, 200 P.3d 295 (2009).

Plaintiffs are not entitled to seek injunctive relief, as they must allege facts sufficient to show a "real and immediate threat of repeated injury" in order to seek injunctive relief in federal court. *O'Shea v. Littleton,* 414 U.S. 488, 496 (1974); *see also Armstrong v. Davis,* 275 F.3d 849, 860–61 (9th Cir.2001) (concluding that a plaintiff must show she is "realistically threatened by a repetition of the violation"); *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir.2007). "[W]here, as here, [Plaintiffs] seek declaratory and injunctive relief, they must demonstrate that they are 'realistically threatened by a repetition of the violation.'" *Gest v. Bradbury,* 443 F.3d 1177, 1181 (9th Cir.2006) (quoting *Armstrong v. Davis,* 275 F.3d 849, 860–61 (9th Cir.2001). In *Hangarter v. Provident Life & Acc. Ins. Co.,* 373 F.3d 998, 1022 (9th Cir.2004), the Ninth Circuit held that "'a plaintiff whose cause of action [under § 17204] is perfectly viable in state court

under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury' to establish Article III standing," (*quoting Lee v. Am. Nat'l Ins. Co.,* 260 F.3d 997, 1001–02 (9th Cir.2001) and (*citing* Cal. Bus. & Prof. Code § 17204).) *See VonGrabe v. Sprint PCS,* 312 F.Supp.2d 1313, 1323 (S.D.Cal.2004) (same). In *Hangarter,* the court concluded that the plaintiff had no standing to seek injunctive relief under the UCL because he "currently has no contractual relationship with Defendants and therefore is not personally threatened by their conduct." 373 F.3d at 1022; *see also Krzyzanowsky v. Orkin Exterminating Co., Inc.,* C 07–05362 SBA, 2009 WL 481267, at *14 (N.D.Cal. Feb. 24, 2009) (holding that because the plaintiff "has no contract with Orkin, nor has produced any evidence he intends to obtain one in the future, he cannot show that he is realistically threatened by a repetition of Orkin's conduct"). Thus, under *Hangarter,* UCL plaintiffs must still satisfy federal constitutional standing requirements, including those pertinent to injunctive relief. Plaintiffs have not alleged that the named class representatives are "realistically threatened by a repetition of the violation." Nor could they tenably proffer such an allegation as it is apparent they will never retain Obenstine in the future.

      At the end of the day, Plaintiffs cannot identify any damages allegations (let alone evidence) conceivably supportive of Article III standing and federal subject matter jurisdiction. [9] Despite the unequivocal requirements of Article III, Plaintiffs

---

[9] In the event the Court determines the Plaintiffs have Article III standing and it has subject matter jurisdiction, any judgment rendered in favor of the Plaintiffs is subject to several setoffs, including the prior multimillion dollar settlement, the taxes paid on the attorneys' fees earned by Obenstine, and the costs incurred by Obenstine in connection with the Cosmopolitan class action. *See Laurenzi v. Vranizan*, 25 Cal.2d 806, 813 (1945) (holding that "payments by one tortfeasor on account of a harm for which he and another are each liable, diminish the amount of the claim against the other ... whether the payment was made before or *after* judgment.").

have: (1) predicated this class action on a "fraudulent conspiracy" damages theory for five years only to abandon that theory after Obenstine moved for summary judgment; (2) sought to replace the "fraudulent conspiracy" damages theory with an "compensation dilution" damages theory but violated Federal Rule of Civil Procedure Rule 8 by failing to amend their SAC to include that theory. (*See Pickern v. Pier 1 Imports, Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (affirming district court's ruling that complaint failed to comply with notice pleading requirements of Rule 8 because plaintiff raised issues in response to a motion for summary judgment that went beyond the allegations in the complaint)); (3) argued the new "compensation dilution" theory was not speculative for two years only to freely concede during trial that the theory was in fact speculative; and (4) argued their class representatives had suffered over $100 million in damages for nearly seven years only to freely concede during trial that their class representatives had not in fact suffered any injury-in-fact.

By conceding they did not suffer any "injury-in-fact" and their only damages theory is speculative, Plaintiffs concede they lack Article III standing and the Court never had subject matter jurisdiction over this action. *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d at 1208 (concluding that if a "plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed."); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court *must* dismiss the complaint in its entirety.") (emphasis added); *Goldberg v. Stephens Inst.*, No. C 16-02613 JSW, 2017 WL 3081680, at *2 (N.D. Cal. Mar. 29, 2017) (holding that the court lacks jurisdiction since the plaintiffs conceded that they have not pled any injury-in-fact); *Herman v. Salomon*

*Smith Barney, Inc.*, 266 F. Supp. 2d 1208, 1210 (S.D. Cal. 2003) ("Here, it is undisputed that Plaintiff has suffered no injury in fact. Indeed, both parties agree that Plaintiff has suffered no injury. Accordingly, Plaintiff does not retain Article III standing, and cannot pursue his claims in federal court."); *Envtl. World Watch, Inc. v. Am. Airlines*, <u>Inc.</u>, No. C05-1799 TEH, 2005 WL 1867728, at *3 (N.D. Cal. Aug. 3, 2005) ("Since Plaintiff admittedly has suffered no 'injury in fact,' this Court has no authority to hear the claim because it does not fall within in the scope of authority granted to it by Article III of the Constitution.").

Dated:  February 26, 2018.	THE SAFARIAN FIRM, APC

	By:  */s/ Harry A. Safarian*
	Harry A. Safarian
	Attorneys for Defendant Mark Obenstine

17
DEFENDANT'S REPLY TO PLAINTIFFS' POST-TRIAL MEMORANDUM RE: BENCH TRIAL