Harry A. Safarian (SBN 204106)
SAFARIAN & BAROIAN, LLP
1000 N. Central Avenue, Suite 210
Glendale, California 91202

Tel.: (818) 334-8528
Fax: (818) 334-8107

hs@safarianfirm.com

Attorneys for Defendant, MARK OBENSTINE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ESTAKHRIAN and ABDI NAZIRI, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>MARK OBENSTINE, BENJAMIN F. EASTERLIN IV, TERRY A COFFING, KING & SPALDING, LLP, and MARQUIS & AURBACH, P.C.,<br><br>        Defendants. | Case No.: CV11-3480 FMO<br><br>**DEFENDANT MARK OBENSTINE'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES; REQUEST FOR RECONSIDERATION OF SANCTIONS MOTION OR, IN THE ALTERNATIVE, FOR PERMISSION TO FILE MOTION FOR RECONSIDERATION WITH THE SPECIAL MASTER**<br><br>JAMS REF# 1220052101<br><br>Special Master:<br>Hon. Roselyn Chapman (Ret.) |

TO THE HONORABLE ROSELYN CHAPMAN (RET.) AND PLAINTIFFS AND THEIR ATTORNEYS:

        PLEASE TAKE NOTICE that Defendant Mark Obenstine respectfully submits his Opposition to Plaintiffs' Motion for Attorneys' Fees and permission for to file a Motion for Reconsideration of Plaintiffs' Motion for Sanctions as follows:

# **TABLE OF CONTENTS**

I.      Introduction…………………………………………………………………1

II.     Plaintiffs Should Be Precluded from Seeking Sanctions Because
        New Evidence Confirms the Sanctions was Based on False
        Representations……………………………………………………………..3

III.    At a Minimum, the Court Should Substantially Deny the Vast
        Majority of the Attorneys' Fees as the Fees Sought are Grossly
        Excessive, Unreasonable, and Unsubstantiated………………………………8

        A. 181.15 Hours is Grossly Excessive for a Sanctions Motion…....................8

        B. The Amount of Time that Should Have Been Expended
           is a Small Fraction of the 181.15 Hours Plaintiffs Seek to
           Have Awarded……………………………………………………………11

        C. There is Significant Duplication Relating to the Billing,
           Requiring any Award to be Reduced Substantially………………………12

        D. The Hourly Rates Sought Are Excessive and Plaintiffs
           Fail to Carry Their Burden with Respect to Same………………………13

IV.     Attorney Skalet's Declaration that his time is Accurate Because he
        Contemporaneously Entered it is Belied by His Prior Statements
        to the Special Master……………………………………………………...15

V.      In the Event the Special Master Recommends Awarding Fees, the Fees
        Awarded Should Further Be Reduced by the Fact the Motion
        for Sanctions Was Denied in Part………………………………………16

VI.     In the Event the Special Master is Prepared to Order Fees,
        It Is Asked that the Order Stayed Pending Reconsideration of
        the Sanctions Motion……………………………………………………...17

i

## <u>TABLE OF AUTHORITIES</u>

*A. Farber & Partners, Inc. v. Garber,*
    237 F.R.D. 250 (C.D. Cal., 2006)……………………………………………11

*Blum v. Stenson*,
    465 U.S. 886 (1984)………………………………………………………13

*Chalmers v. City of Los Angeles,*
    796 F.2d 1205 (9th Cir. 1986)………………………………………...1, 9

*Dolorian Capital, Inc. v. SOC, LLC,*
    2013 WL 1006071 (E.D. Cal., 2013)…………………………………...11

*Hensley v. Eckerhard,*
    461 U.S. 424 (2000)…………………………………………………...8, 9

*Jadwin v. County of Kern,*
    767 F.Supp.2d 1069 (E.D.Cal.2011)…………………………………...13

*Jordan v. Multnomah Cnty.,*
    815 F.2d 1258 (9th Cir. 1987)…………………………………………...9

*Kerr v. Screen Extras Guild,*
    526 F.2d 67 (9th Cir. 1975)……………………………………………...9

*Kinney v. Int'l Brotherhood of Electrical Workers,*
    939 F.2d 690 (9th Cir. 1991) …………………………………………...9

*Morales v. City of San Rafael,*
    96 F.3d 359 (9th Cir. 1996). …………………………………….....9

*People ex rel. Elliott v. Textron, Inc.,*
    192 F.R.D. 494…………………………………………...................16

*Sure Safe Industries, Inc. v. C & R Pier Mfg.,*
    152 F.R.D 625 (S.D. Cal. 1993)………………………………………...9

*Van Gerwen v. Guarantee Mut. Life Co.,*
   214 F.3d 1041 (9th Cir. 2000)………………………………………………...9

OPPOSITION TO MOTION FOR ATTORNEYS' FEES

# I.

## __INTRODUCTION.__

Before the Special Master is Plaintiffs' motion for attorneys' fees in connection with Plaintiffs' sanctions motion, which was granted in part. The Court should deny the request for sanctions in its entirety, or reduce the overwhelming majority fees sought, for the following independent reasons:

1.     New evidence has come to light since the Court granted the sanctions motion confirming the representations by Plaintiffs' counsel upon with the Court issued its order were materially false, and that the motion would not have been granted but for these misrepresentations. Namely, Plaintiffs' counsel represented that Obenstine did not disclosed prior to September 2015 that had a computer and "boxes" of materials concerning the underlying litigation. New evidence has come forward confirming these materials were disclosed in open court in the presence of Plaintiffs' counsel at least three years earlier. Plaintiffs' counsel represented otherwise in connection with their motion, and the Special Master relied upon these representations in issuing her recommendations, which the District Court adopted.

2.     Plaintiffs failed to carry their burden of proof in connection with their attorneys' fees motion. In calculating a reasonable number of hours, Plaintiffs' counsel must justify the claim by submitting detailed time records. The court may adjust these hours down if it believes the documentation to be inadequate, if the hours were duplicative, or if the hours were either excessive or unnecessary. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds,* 808 F.2d 1373 (9th Cir. 1987). Here, Plaintiffs have not provided the required "detailed listings of services and time expended," rendering it impossible for the Court or Obenstine to assess the reasonableness and necessity of time. As such, Plaintiffs have failed to carry their burden that any time was reasonable and necessary, and the Special Master should deny all fees requested.

3.      Plaintiffs' counsel contends 181.15 hours was expended by four separate law firms, seven lawyers and a paralegal. Obenstine, the Special Master, and the Court are left to guess as to how this time was spent, how much of it was reasonable and necessary, and why four law firms, seven lawyers and one paralegal were required to prepare a straight-forward motion a single attorney could have prepared in less than one day. No explanation is provided as to why a nationwide undertaking for the preparation of a relatively simply pleading.

4.      By Plaintiffs' attorneys' own admissions, the time records at issue are unreliable and should be disregarded. Plaintiffs' counsel's representation time records were kept on a daily basis is belied by counsel's own prior statements to the Special Master. Mr. Skalet contends he and his firm charged 54.50 hours and 129.7 hours, respectively, of the 181.15 hours billed in connection with the motion. He further contends, "My firm logs the billable time of its billing attorneys and paralegals in a detailed, **contemporaneous**, and task-specific manner, on a **daily** basis into 'TimeSlips' billing program." (Skalet decl., ¶ 4 [emphasis added].) In the "Stipulation to Extend Deadline for Filing Plaintiffs' Motion for Fees and Costs," however, Plaintiffs' counsel acknowledged the contrary was true, stating:

> WHEREAS Plaintiffs' counsel, Mr. Skalet, due to illness and travel schedule is unable to submit his firm's time and expense in support of Plaintiffs' Fee Motion before the due date,

*See* May 31, 2016 Stipulation Submitted to Special Master, p. 2, lines 1-3.

The Motion at issue was filed and ruled upon months ago. The foregoing paragraph from the stipulation appears to concede Mr. Skalet and the other lawyers at his firm recreated billing entries, rendering them unreliable, and clearly and dramatically overstating the time purportedly spent on the motion.

5.    Because the motion sought terminating sanctions, and was denied in part, if sanctions are awarded, they should be prorated and reduced significantly based upon the partial denial.

6.    If fees are awarded, the hourly rates should be reduced significantly because no information is provided for the majority of attorneys Plaintiffs seek to charge time for, and it is clear the rates sought are excessive. The party seeking fees carries the burden of establishing the fees sought are reasonable. Plaintiffs have put forth no declarations or other evidence concerning the qualifications of four of the eight people Plaintiffs seek to recovery fees for.  Moreover, no evidence has been put forth regarding the prevailing rates in the Central District for like-attorneys. Nor do Plaintiffs' attorneys suggest they have *ever* been paid the amounts sought by a client, or that the Central District has approved the rates Plaintiffs' counsel seek for similar work.

## II.

## PLAINTIFFS SHOULD BE PRECLUDED FROM SEEKING SANCTIONS BECAUSE NEW EVIDENCE CONFIRMS PLAINTIFFS' SANCTIONS MOTION WAS BASED ON FALSE REPRESENTATIONS.

Plaintiffs have filed a series of meritless sanctions motions.[1] The motion for which the fees at issue are sought was improperly filed, and the Motion was granted

---

[1] As the Special Master previously observed, the second motion was made after Plaintiffs' counsel "slammed the phone down" on Obenstine's counsel who was trying to meet and confer in preparation for trial. Strangely, the Motion was made on the false premise it was Mr. Obenstine's counsel that declined to cooperate. The Special Master found otherwise. The Motion was correctly denied. That filing (as well as a meritless third motion for sanctions under section 1927) confirm Plaintiffs' seek to have this case resolve on meritless sanctions motions and exorbitant fee awards instead of the merits. The Court should look upon Plaintiffs' unsubstantiated representations regarding hours expended with suspicion given their prior actions and misstatements identified herein.

based upon erroneous information Plaintiffs' counsel knowingly submitted to the Special Master and District Court. Specifically, the sanctions motion at issue was made on the false representation Obenstine failed to disclose the existence of "boxes" of file materials and a damaged computer. New evidence has come forward confirming Plaintiffs' counsel misrepresented to the Court, and the Special Master, that these materials were not previously disclosed. The new evidence, described below, compels reconsideration of that Motion and sanctions against Plaintiffs' and their counsel for egregious misconduct.

New evidence has now come to light confirming the first sanctions Motion hinged, and was decided upon, serious misrepresentations to the Special Master and the Court by Plaintiffs' counsel that Obenstine concealed the existence of "boxes" of materials and a computer until he was deposed in September 2015. Obenstine respectfully requests the Special Master reverse her prior recommendations to the District Judge, or recommend the District Judge authorize Obenstine to bring a Motion to have the Special Master and/or District Judge reconsider the determination made with respect to that Motion and deny the pending attorneys' fees motion in its entirety. It is manifest that the sanctions motion was based on serious and numerous misrepresentations by Plaintiffs' counsel (as was the more recently denied Motion premised on a false narrative Obenstine failed to work with Plaintiffs' counsel in preparing the matter for trial).

As indicated, the subject sanctions motion was based on Plaintiffs' contention Obenstine concealed that fact he had "boxes" of documents with evidence, and a computer, until his September 2015 deposition. In opposing the Motion, Obenstine took the position these materials were previously disclosed, and Plaintiffs' counsel insisted, *under oath*, that Obenstine never made such a disclosure. Ironically, Plaintiffs' section 1927 motion confirms Obenstine disclosed the existence of the "boxes" in 2013 (two years before he candidly disclosed the same at his deposition),

OPPOSITION TO MOTION FOR ATTORNEYS' FEES

1  as well as the computer that failed, but Plaintiffs waited until after the deadline to

2  file discovery motions to bring a Rule 37 Motion.

3       Mr. Alikani's declaration in support of the section 1927 motion, which is

4  pending before the Special Master, states, "Attached to this declaration as Exhibit 6

5  is a true and correct copy of is a true and correct copy of [sic] excerpts from the

6  transcript of the hearing on **January 31, 2013**, where Mr. Safarian presented to the

7  Court that Mr. Obenstine found a few emails after going through '**boxes**' of files

8  and made a representation about the Crestridge server." Alikani decl. in support of §

9  1927 Motion, ¶ 10 (Emphasis added). Thus, Plaintiffs' prior representation they did

10 not know about the "boxes" until the September 2015 Obenstine deposition was

11 clearly **false**.

12      Mr. Alikani's statement that the representations were about the Crestridge

13 server was also **false**. Rather, the "server" referred to was clearly the broken

14 computer Plaintiffs' have falsely claimed Mr. Obenstine concealed. This is

15 confirmed by the following statement to the Court, confirming it was not the

16 Crestridge server that had "issues," and Obenstine had been seeking access to the

17 Crestridge server only to have Plaintiffs' counsel coordinate with Crestridge's

18 President, Reza Jafary, to block access to the server:

```
 9         Mr. Obenstine affirms:  I never deleted a single e-
10  mail from that account; why is this not there?  And Mr. Ray --
11  Mr. Fay made the comment that we've been resisting producing
12  these things, we've been fighting him on it.  Well, we've been
13  asking all along:  Let us get to the Crestridge server; let's
14  get to the truth of what the jurisdictional documents are.  The
15  plaintiff has actually resisted our opportunities to do that.
16  We think that there is more material out there that will
17  resolve this jurisdictional question once and for all.  But
18  it's the plaintiff that has said:  No, you should not be
19  allowed to go and look at Crestridge's server.
```

5

1    Alikani decl. in support of § 1927 Motion, Ex. 6, 44:9-19.

2    Indeed, Mr. Obenstine's counsel confirmed in open Court more than three

3    years before the Court granted the first sanctions motion that Obenstine did have

4    access to a computer or "server" that was not functioning properly. Specifically, he

5    stated in open court, on **December 10, 2012**, "A lot of the documents, unfortunately,

6    it's my understanding were destroyed or *on a server that became an issue* in this

7    case." *See* Alikani decl. in support of § 1927 Motion, Ex. 5, 7:6-10. Thus, although

8    Plaintiffs knew for nearly three years prior to Obenstine's deposition that Obenstine

9    had a computer with "issues," they stated otherwise to the Special Master and

10   District Court in sworn declarations in order to set up a meritless sanctions motion,

11   making every effort to avoid having the case resolve on its merits and, instead,

12   trying incessantly to poison the Court against Obenstine based upon materially false

13   statements. Plaintiffs' counsel deliberately waited until after the close of discovery,

14   falsely representing they were never told there was a computer until Mr. Obenstine's

15   September 2015 deposition. It is clear Plaintiffs deliberately waited to create a false

16   narrative of "prejudice," fully aware the Crestridge server had all the documents at

17   issue in this case.

18   And, importantly, the Special Master's recommendations on the Motion for

19   Sanctions states, in footnote 6, that:

20   Plaintiffs note that they have evidence of at least one email

21   from Defendant Obenstine regarding the Cosmopolitan

22   matter which was not produced by Crestridge Partners, Inc.;

23   thus, Plaintiffs suspect there are other emails regarding the

24   Cosmopolitan matter from Defendant Obenstine, who used

25   email addresses in addition to the Crestpar email address,

26   which have not been produced to them by Crestridge

27   Partners, Inc., and others. Reply at 9:1-18.

28

6

The "one email" referred to was a "smoking gun email" that was conveniently omitted from the productions made by Crestridge, eviscerating Plaintiffs' theory Obenstine used his secretary as a "capper" to solicit Estakhrian as a client. See Safarian decl., Ex. "A." The fact this "smoking gun" document, which confirms Obenstine did not use a "runner" or "capper" to solicit Mr. Estakhrian, is compelling evidence Mr. Jafary of Crestridge, who coordinated the Crestridge production with Plaintiffs' attorneys, deliberately omitted key evidence from the production. As the Special Master is also aware, Mr. Obenstine previously offered Plaintiffs' counsel the laptop in question prior to the filing of the first sanctions Motion and invited Plaintiffs to compare the Crestridge documents with the entirety of his emails to confirm that, aside from the one "smoking gun" email, Plaintiffs were deprived of no materials. Plaintiffs declined the offer. Their reasoning for declining the offer is transparent: there was nothing to be gained from the laptop because they already had all relevant materials from the Crestridge production, and accepting the offer would thwart their ability to seek to have the case dismissed on a meritless sanctions motion.

As indicated, the Special Master's decision to recommend sanctions against Mr. Obenstine based upon the purported non-disclosure was based upon the parties' conflicting positions as to whether Mr. Obenstine actually disclosed the boxes of documents and computer. The Special Master's "Order Granting Plaintiffs' Motion for Sanctions" (Dkt. No. 422) states:

> One of the purposes of requiring written disclosures, written responses to discovery requests, and written supplementation of prior disclosures and responses is to prevent discovery motions from being based on "he said; she said." Further, it appears to the Special Master that the practice of counsel during the course of this litigation has been to routinely memorialize in writing all conversations

and occurrences.[3] Without documentary evidence to support the claim that his attorney verbally disclosed the laptop and bankers' boxes documents, the Special Master finds no merit to this defense by Defendant Obenstine.

*Id.* at 14:7-13.

It is now clear and documented in the transcripts of the December 10, 2012 and January 31, 2013 proceedings, and Mr. Alikani's declaration submitted in connection with the section 1927 Motion, that Obenstine's counsel ***did*** disclose the boxes and computer. There is no longer a "he said – she said" debate. Plaintiffs had actual knowledge of the boxes and computer for years. Amazingly, contrary to Plaintiffs' position with respect to the initial sanctions motion, Mr. Alikani brazenly **admits** that Obenstine's counsel disclosed at the January 31, 2013 hearing that Obenstine had "boxes" of files. See Alikani decl. in support of § 1927 Motion, ¶ 10.

Thus, because the sanctions motion was based on materially false representations to the Special Master and the Court, all requested fees should be denied, and Obenstine requests the Special Master recommend the District Court reverse its ruling on the sanctions motion. In the alternative, Obenstine requests the Special Master recommend the District Court authorize a Motion for Reconsideration of same.

## III.

## AT A MINIMUM, THE COURT SHOULD SUBSTANTIALLY DENY THE VAST MAJORITY OF THE ATTORNEYS' FEES AS THE FEES SOUGHT ARE GROSSLY EXCESSIVE, UNREASONABLE, AND UNSUBSTANTIATED.

### A. 181.15 Hours is Grossly Excessive for a Sanctions Motion.

The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. *See*

1

2

3

4

5

> *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.* at 434, 103 S.Ct. 1933.

6   *Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir. 2000), citing

7   *Hensley v. Eckerhard,* 461 U.S. 424, 433 (2000).

8          In calculating the lodestar, the court must determine both a reasonable number

9   of hours and a reasonable hourly rate for each attorney. *Morales v. City of San*

10  *Rafael,* 96 F.3d 359, 363 (9th Cir. 1996). In calculating a reasonable number of

11  hours, the applicant must justify the claim by submitting **detailed time records**. The

12  court may adjust these hours down if it believes the documentation to be inadequate,

13  if the hours were duplicative, or if the hours were either excessive or unnecessary.

14  *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied,*

15  *amended on other grounds,* 808 F.2d 1373 (9th Cir. 1987).

16          The submission of an attorneys' fees claim is properly made under the

17  guidelines set forth in *Kerr v. Screen Extras Guild,* 526 F.2d 67 (9th Cir. 1975) *cert*

18  *denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). See also *Kinney v. Int'l*

19  *Brotherhood of Electrical Workers,* 939 F.2d 690, 695 (9th Cir. 1991). The first

20  factor the court should consider is a "detailed listing of services and time

21  expended." *Sure Safe Industries, Inc. v. C & R Pier Mfg.*, 152 F.R.D 625, 626 (S.D.

22  Cal., 1993) (applying *Kerr* factors to sanctions awarded in opposing meritless

23  discovery motion and preparing claims for fees and costs).

24          "It is not sufficient for prevailing counsel to opine that all of the time claimed

25  was usefully spent, and the district court should not uncritically accept counsel's

26  representations concerning the time expended." *Jordan v. Multnomah Cnty.,* 815

27  F.2d 1258, 1263 n. 8 (9th Cir. 1987). In short, "[w]here the documentation of hours

28

is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933.

In the instant case, **no time records are provided**. Plaintiffs' counsel could very easily have broken down time expended according to task without disclosing information protected by the attorney-client privilege. There is no breakdown at all, leaving Obenstine, the Special Master, and the District Judge to speculate as to how much of the 181.5 hours Plaintiffs seek to have awarded related to research, needless "attorney conferences," drafting of the sanctions motion, drafting of the motion for fees, or other tasks. The motion before the Special Master was Plaintiffs' opportunity to meet their burden of proof as to the fees necessarily incurred, but no effort to meet this burden has been made. Instead, Plaintiffs merely put forth a chart identifying the four separate firms that worked on the Motion. No explanation is even provided as to why the Motion could not have been prepared by one of the eight persons, or why a national undertaking was necessary for the preparation of a straight-forward motion. Thus, because Plaintiffs have not satisfied their burden, all of the requested fees should be denied.

As established below, routinely, courts have deemed between 5 and 20 hours of attorney time reasonable regarding sanctions motions. Here, Plaintiffs have put forth no legal authority or evidence to suggest the subject motion in this case required more.[2] Given the lack of detail Plaintiffs provided, and the fact there is no

---

[2] Indeed, weeks ago, Obenstine's counsel was required to file a very similar motion in the Central District in *Bell v. Say*, USDC Case No. 15-cv-06171-DSF-PJW. Safarian decl., ¶ 4. The entire motion, including meet and confer and a telephonic appearance with the Court for oral argument, and preparation for oral argument, required **7.6 hours of time**, and the Court ordered $1,500 in sanctions. *Id.* A copy of Magistrate Judge Patrick J. Walsh's July 1, 2016 Minutes are attached to the Declaration of Harry A. Safarian as Exhibit "B." A copy of that Motion, which is about the same length and of the same level of complexity as the sanctions motion Plaintiffs filed in this case is attached to the Declaration of Harry A. Safarian as Exhibit "C."

explanation as to how the exorbitant number of hours for which Plaintiffs seek compensation was arrived at, Plaintiffs' prayer for fees should be denied, or the vast majority of fees should cut as unreasonable, unnecessary, and unsubstantiated.

Plaintiffs should not be given the benefit of the doubt and receive more than the amount courts typically award for similar motions because of Plaintiffs failure to comply with the absolute requirement they put forth detailed evidence of how the time they seek to recover was spent. As such, if the Special Master is to award any time (which Obenstine urges should not be the case because the Motion was filed based upon false representations and Plaintiffs have failed to put forth the required evidence in support of their fees motion), it should not exceed what is customary for like motions, which is typically 5 to 20 hours as explained in greater detail in the following section.

### B. The Amount of Time that Should Have Been Expended is a Small Fraction of the 181.15 Hours Plaintiffs Seek to Have Awarded.

Attached as Exhibit "D" is a chart setting forth dozens of cases in which District Courts of this State have ruled upon identical or very similar motions. In performing this research, Obenstine's counsel used search to identify motions very similar to those here, including search terms "Rule 37," "sanctions" and "attorneys' fees." The results in the chart were taken from the first 100 cases the search query yielded. (Safarian decl., ¶ 5, Ex. "D.") Every case that appears analogous has been included. In many cases, sanctions were denied, and those cases have been excluded. *Id.*

Included in the referenced chart are all seven cases published on Westlaw in which this Special Master ruled upon identical or very similar sanctions motions and awarded fees. *Id.* The highest amount awarded by this Special Master was $10,192.80. *A. Farber & Partners, Inc. v. Garber,* 237 F.R.D. 250 (C.D. Cal., 2006). It is noteworthy that, in that case, the party moving for sanctions provided specific

1    details as to how the time was spent on drafting the various motions and travel (five

2    hours) relating to the motions, which Plaintiffs have not done here. And, no travel

3    time was required here, and all discussion with the Special Master were by brief

4    telephone conferences.

5         The sanctions awarded in the dozens of cases ranged from $1,268.50 to

6    $10,192.80 for a single sanctions motion (and, in one case, *Dolorian Capital, Inc. v.*

7    *SOC, LLC,* 2013 WL 1006071 (E.D. Cal., 2013) a court determined the appropriate

8    sanctions for *three* motions was $25,125, or an average of $8,375 per motion). In the

9    majority of cases, the award of sanctions was less than $5,000. Moreover, the

10   number of hours awarded with respect to sanctions motions were routinely between

11   5 and 15 hours, far shy of the 181.15 hours sought by Plaintiffs' counsel, who has

12   failed to offer any evidence as to how any of the alleged 181.15 hours were actually

13   spent (or if billing was in increments tenths of an hour, or one-quarter of an hour,

14   which appears to be the case given the number of hours Plaintiffs seek

15   reimbursement for is 181.**15**).

16

17        **C. There is Significant Duplication Relating to the Billing, Requiring any**

18            **Award to be Reduced Substantially.**

19        While Plaintiffs have only provided declarations by three of the people that

20   worked on the sanctions motion, it is apparent there was extensive and needles

21   duplication of efforts. Mr. Fay's declaration purports to provide a "summary" of the

22   work he billed between December 17, 2015 and March 20, 2016, but that

23   "summary" consists of a single line entry indicating he spent 12.35 hours on a

24   motion with no further detail provided. *See* Fay Decl., Ex. "A." There is no

25   explanation at all as to what his contribution was. Nor is there any information

26   provided as to what contribution Nance Becker, Joanna Wasik, Pia Winston, or

27   Zach Kamin had with respect to the motion at issue. Attorneys Alkiani and Skalet

28   seek to recovery for unspecified time for "meeting and conferring with co-counsel"

and reviewing, revising, drafting, and researching. There is no explanation as to how this time was broken down, why eight people and four firms were required to prepare a simple motion, or why the motion could not have been prepared by one attorney in a single day.

Indeed, Plaintiffs' attorneys boast about their expertise and skills, and claim they are worthy of rates as high as $825 per hour. It would stand to reason that attorneys worthy of such fees would be more efficient in preparing a straight-forward motion, and could prepare a motion at least as efficiently as the attorneys in the dozens of cases set forth in referenced chart (Ex. "D"). But, here, Plaintiffs seek to recover nearly 200 hours for a motion to that could have been prepared in a day (as evidenced by Exhibit "D," and the fact Obenstine's counsel billed less than eight hours for a very similar motion in *Bell v. Say* from the initial meet and confer stage through oral argument).

Because there is no specific breakdown of what any of the attorneys or the paralegal did, and no breakdown as to how time was spent, it is impossible to determine what portions of the 181.15 hours were necessary. It is clear, however, that the overwhelming majority of time was unnecessary based upon a comparison of similar motions ruled upon in District Courts in California, including by the Special Master.

## D. The Hourly Rates Sought Are Excessive and Plaintiffs Fail to Carry Their Burden with Respect to Same.

Plaintiffs seek to have a "lodestar amount" applied to their request for fees. A "critical inquiry in determining a reasonable attorneys' fee" is the "reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 895.

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the

13

1        court in the exercise of its discretion, the burden is on the

2        fee applicant to produce satisfactory evidence—in addition

3        to the attorney's own affidavits—that the requested rates

4        are in line with those prevailing in the community for

5        similar services by lawyers of reasonably comparable skill,

6        experience and reputation. A rate determined in this way is

7        normally deemed to be reasonable, and is referred to—for

8        convenience—as the prevailing market rate.

9    *Id.* at fn. 11.

10        The "relevant legal community" in the lodestar calculation is generally the

11    forum in which the district court sits. *Jadwin v. County of Kern,* 767 F.Supp.2d 1069

12    (E.D.Cal.2011) (where a case is tried in the Eastern District of California, Fresno

13    Division, "[t]he Eastern District of California, Fresno Division, is the appropriate

14    forum to establish the lodestar hourly rate").

15        In the instant case, Plaintiffs advance *no evidence* as to the prevailing rate in

16    the Central District. For instance, Mr. Skalet seeks $796 per hour, but offers no

17    evidence he has ever been approved at this rate in the Central District, or that he has

18    ever been hired to do work at this rate. He is not admitted to practice in California,

19    nor are the other attorneys at his firm. His rate is admittedly calculated based

20    primarily upon his practice on the east coast. Likewise, the rates of Mr. Chavez and

21    Ms. Becker are admittedly based upon their work in the Northern District.

22        Additionally, Plaintiffs seek to recovery fees for seven attorneys and one

23    paralegal, but only one of those attorneys appears to be have his practice in the

24    Central District (Mr. Alikani). That attorney offers no indication a private client has

25    ever agreed to pay him the rate of $480 per hour. The Special Master will

26    undoubtedly be mindful that fees negotiated at arm's length between counsel and

27    client vary drastically from those submitted to the court for approval on a

28    contingency case such as this one where the only limit on the attorneys' rate is the

OPPOSITION TO MOTION FOR ATTORNEYS' FEES

lawyers' imagination. In other words, the rates are not "market rates," and Plaintiffs attorneys' must do more than merely offer their own very generous opinions as to what their time is worth.

Moreover, no biographical information is provided for attorneys Joanna Wasik and Pia Winston, both of whom appear to be relatively new attorneys according to the Mehri & Skalet website (www.findjustice.com), but seek substantial rates of $331 and $406. As exhibit "D" reflects, these rates are far greater than what is charged by attorneys in the Central District for similar work.

Plaintiffs seek $715-$725 for attorney Becker, but offer no indication any court (including in the Central District) has ever approved her at this rate. Indeed, the same appears to hold true for the remainder of Plaintiffs' attorneys. Nor is there any information provided as to how $180 was arrived at for paralegal Zach Kamin, or what input any of these individuals had with respect to the matters before the Special Master.

Moreover, a search of the California State Bar website confirms attorneys Wasik and Winston are not admitted to practice in California. This is important, as Plaintiffs' central legal theory of disgorgement in this case that Obenstine should be required to disgorge all of his fees in the underlying litigation because Mr. Obenstine, who associated competent Nevada counsel in the underlying litigation, was not admitted to practice in Nevada. Given this position, is it not inappropriate for Plaintiffs to seek the recovery of tens of thousands of dollars in fees for attorneys not admitted to practice in California?

The rates at which fees were awarded in the Central District according to the results in the attached chart ranged from about $150 per hour to $490 per hour and, in most cases, appeared to be somewhere in the middle. While Plaintiffs have provided evidence that *some* of the attorneys have been approved to do class action work at higher rates, the motion in question was a fairly straight-forward one, and

1  did not require significant skill or expertise. Accordingly, if any fees are to be

2  awarded, they should be reduced significantly.

3

4  **IV.**

5  **ATTORNEY SKALET'S DECLARATION THAT HIS TIME IS ACCURATE**

6  **BECAUSE HE CONTEMPORANEOUSLY ENTERED IT IS BELIED BY HIS**

7  **PRIOR STATEMENTS TO THE SPECIAL MASTER.**

8  The majority of time for the Motion for Sanctions is attributed to work

9  purportedly performed by Mr. Skalet and his firm (54.50 and 129.7 hours,

10  respectively). Mr. Skalet states in his declaration, "My firm logs the billable time of

11  its billing attorneys and paralegals in a detailed, contemporaneous, and task-specific

12  manner, on a daily basis into 'TimeSlips' billing program." However, in the

13  "Stipulation to Extend Deadline for Filing Plaintiffs' Motion for Fees and Costs,"

14  Plaintiffs' counsel acknowledged the contrary was true, stating:

15  WHEREAS Plaintiffs' counsel, Mr. Skalet, due to illness

16  and travel schedule **is unable to submit his firm's time**

17  and expense in support of Plaintiffs' Fee Motion before the

18  due date,

19  *See* May 31, 2016 Stipulation Submitted to Special Master, p. 2, lines 1-3 (emphasis

20  added).

21  The Motion at issue was filed months ago. The foregoing paragraph from the

22  stipulation appears to concede Mr. Skalet and the other lawyers at his firm that

23  worked on the Motion for Sanctions were required to recreate their billing entries,

24  rendering them unreliable. And, it is apparent from comparing the appendix of cases

25  (Safarian decl., Ex. D), that Plaintiffs' counsel's estimates are grossly excessive and

26  unreasonable. The fact Plaintiffs' counsel has provided no detailed accounting of

27  how the time was spent further confirms the time purportedly spent was excessive,

28  inaccurate, and unreasonable.

## V.

### IN THE EVENT THE SPECIAL MASTER RECOMMENDS AWARDING FEES, THE FEES AWARDED SHOULD FURTHER BE REDUCED BY THE FACT THE MOTION FOR SANCTIONS WAS DENIED IN PART.

Plaintiffs' sanctions motion sought terminated sanctions. A substantial portion of the motion was directed to that relief, which was denied. As such, any award to Plaintiffs' should be reduced to the extent Plaintiffs' motion was not granted. *See People ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 498 (court apportions sanctions based upon percent of motion actually granted).

## VI.

### IN THE EVENT THE SPECIAL MASTER IS PREPARED TO ORDER FEES, IT IS ASKED THAT THE ORDER STAYED PENDING RECONSIDERATION OF THE SANCTIONS MOTION.

There is compelling and substantial evidence the sanctions motion was made based upon false statements to the Special Master and District Judge under oath. The Special Master's recommendations relied upon these misstatements. Now that new and irrefutable evidence has come forward confirming the order was based on false statements, the Special Master should recommend reversal of the Order. In the alternative, Obenstine requests the Special Master consider this a motion for reconsideration, or allow schedule separate briefing on a motion for reconsideration, staying its ruling on this motion in the interim.

Respectfully submitted,

SAFARIAN & BAROIAN, LLP

Date: July 10, 2016          By: /S/  Harry A. Safarian

HARRY A. SAFARIAN
Attorneys for Defendant, MARK OBENSTINE

17

## **DECLARATION OF HARRY A. SAFARIAN**

I, Harry A. Safarian, declare and state as follows:

1.      I am an attorney at law duly licensed to practice before this Court and all courts of the State of California. I am a partner with the firm Safarian & Baroian, LLP, counsel of record for Mark Obenstine. If called upon to testify, I could, and would, competently testify to the facts herein.

2.      Plaintiffs previously took the position at least one email was not including in the Crestridge production, and that this somehow prejudiced them. But, the "one email" at issue was a "smoking gun email" that was conveniently omitted from the productions made by Crestridge. That email, which my firm produced to Plaintiffs' counsel years earlier, eviscerates Plaintiffs' theory Obenstine used his secretary as a "capper" to solicit Estakhrian as a client, and destroys Mr. Estakhrian's standing to advance many of his claims in this case. A true and correct copy of that email is attached hereto as Exhibit "A." The fact this "smoking gun" document, which confirms Obenstine did not use a "runner" or "capper" to solicit Mr. Estakhrian, is compelling evidence Mr. Jafary of Crestridge, who coordinated the Crestridge production with Plaintiffs' attorneys, deliberately omitted key evidence from the Crestridge production.

3.      As the Special Master is also aware, Mr. Obenstine previously offered Plaintiffs' counsel the laptop in question prior to the filing of the first sanctions Motion and invited Plaintiffs to compare the Crestridge documents with the entirety of his emails to confirm that, aside from the one "smoking gun" email, Plaintiffs were deprived of no relevant materials. Plaintiffs declined the offer. Their reasoning for declining the offer is transparent: there was nothing to be gained from the laptop because they already had all relevant materials from the Crestridge production, and accepting the offer would thwart their ability to seek to have the case dismissed on a meritless sanctions motion.

4.      Plaintiffs' attorneys' representation 181.15 was reasonably incurred in connection with the sanctions motion is grossly excessive. Weeks ago, I filed a very similar motion in the Central District in *Bell v. Say*, USDC Case No. 15-cv-06171-DSF-PJW. The entire motion, including meet and confer and a telephonic appearance with the Court for oral argument and preparation for oral argument, required **7.6 hours of time**, and the Court ordered $1,500 in sanctions. A true and correct copy of Magistrate Judge Patrick J. Walsh's July 1, 2016 Minutes concerning that Motion are attached hereto as Exhibit "B." A copy of that Motion, which is about the same length and same level of complexity as the sanctions motion Plaintiffs filed in this case is attached to the Declaration of Harry A. Safarian as Exhibit "C."

5.      Attached as Exhibit "D" is a chart I prepared. It sets forth dozens of cases in which District Courts of this State have ruled upon identical or very similar motions. In performing this research, I used search queries for cases relevant to the one here, including "Rule 37," "sanctions" and "attorneys' fees." The results in the chart were taken from the first 100 cases the search query yielded. Every case that appears applicable has been included from the first 100 search results (there were several hundred results in response to the search query). In many cases, sanctions were denied, and those cases have been excluded.

6.      Included in the referenced chart are all seven cases published on Westlaw in which this Special Master ruled upon identical or very similar sanctions motions. The highest amount awarded by this Special Master was $10,192.80. *A. Farber & Partners, Inc. v. Garber,* 237 F.R.D. 250 (C.D. Cal., 2006). It is noteworthy that, in that case, the party moving for sanctions provided specific details as to how the time was spent on drafting the various motions and travel (five hours) relating to the motions, which Plaintiffs have not done here. And, no travel time was required here.

I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct, and that this declaration was executed on July 10, 2016.

/s/   Harry A. Safarian

Harry A. Safarian

OPPOSITION TO MOTION FOR ATTORNEYS' FEES

**Exhibit "A"**

| | |
|---|---|
| **From:** | Reza Jafary |
| **To:** | Mark Obenstine |
| **Subject:** | Re: Cosmo New Client |
| **Date:** | Tuesday, March 3, 2009 12:13:18 AM |

Ok

Best Regards,

Reza Jafary
Crestridge Partners INC.
Structured Finance
Cell: (949)278-4114
Fax: (949)271-4192

The above e-mail is for intended recipient user and it may contain confidential and privileged
information. If you are not the intended recipient of this e-mail, please delete this e-mail in its
entirety.

**From:** "Mark Obenstine"
**Date:** Mon, 2 Mar 2009 16:06:03 -0800
**To:** 'Reza Jafary'<reza@crestpar.com>
**Subject:** RE: Cosmo New Client

Reza,

Feel free to forward the Cosmopolitan materials delivered to you this morning to Mr. Estakhrian.  Thank you for
your kind assistance.

Best Regards,

Mark R. Obenstine, Esq.

**From:** Reza Jafary [mailto:reza@crestpar.com]
**Sent:** Thursday, February 26, 2009 9:34 AM
**To:** Mark Obenstine
**Subject:** Cosmo New Client

Mark,

I spoke to "James Estakhrian" today and he wants to Join the Cosmo Class Action lawsuit.
Please send me an engagement letter for his name also and I believe his e-mail is
estak1@hotmail.com However, I am not so sure about that but I will verify his e-mail today
by end of the day.

H also wants the same deal as Houshang Karimi (the guy we spoke yesterday).

Best Regards,

Reza Jafary
Structured Finance/Managing Partner
HTTP://WWW.CRESTRIDGEPARTNERS.COM
C: 949.278.4114

F: 949.271.4192

=========================================================================

By providing your e-mail address, you are consenting to receive e-mail communications
promoting our products, pricing, and services as well as providing transactional information
necessary for your business. Although this e-mail and any attachment are believed to be free
of any virus or other defects that might affect any computer system into which it is received
and opened, it is the sole responsibility of the recipient to ensure that it is virus free and no
responsibility is accepted by Crestridge partners Corporation for any loss or damage arising in
any way from its use. If you do not wish to receive these e-mails communications, please e-
mail us at OPTOUT@CRESTPAR.COM with subject heading "ATTN: E-Mail OPT OUT".
Please be sure to include your email address that you wish to OPT OUT.

**Exhibit "B"**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-6171-DSF (PJWx) | Date | July 1, 2016 |
|---|---|---|---|
| Title | *Anthony Bell v. Ramin Bral, et al.* | | |

| Present: The Honorable | PATRICK J. WALSH, U.S. MAGISTRATE JUDGE |
|---|---|

| Isabel Martinez | XTR 7/1/16 |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Isabel Rose Masanque | Harry A Safarian |

**Proceedings:**     **Telephonic Conference Re: Defendant Say's Motion for Sanctions** (Doc. No. 45)

Case called and appearances made. The Court grants in part and denies in part Defendant Say's Motion for Sanctions for Plaintiff's multiple failures to provide discovery and to cooperate with Defendant's counsel in his efforts to compel discovery. Plaintiff is ordered to pay Defendant $1,500 no later than July 8, 2016, to offset Defendant's costs and attorney fees in compelling this routine discovery. Plaintiff is also ordered to pay the cost of expediting the deposition transcript for Plaintiff's deposition. (Defendant will pay the standard fee for the transcript and Plaintiff will pay the premium charged by the court reporter to expedite the transcript.) Plaintiff's deposition will proceed on July 8, 2016 at 10:00 a.m. at a location selected by defense counsel. Plaintiff must produce all responsive medical records by July 8, 2016.

The Court also extends the following deadlines:

The initial expert disclosures for the defense shall be 14 days from the date of Plaintiff's deposition. The rebuttal expert disclosure date is moved to August 5, 2016.

The settlement conference deadline is extended to August 5, 2016.

The motion/hearing cutoff dates remain unchanged, except that the MSJ/MSA cutoff is extended to September 2, 2016.

cc: District Judge Dale Fischer

S:\PJW\Cases-X\Bell v. Bral\MO_tele conf re sanctions.wpd

|  | : | 25 |
|---|---|---|
| Initials of Preparer | im | |

**Exhibit "C"**

Harry A. Safarian (SBN 204106)
SAFARIAN & BAROIAN, LLP
1000 N. Central Avenue, Suite 210
Glendale, California 91202
Telephone:  (818) 334-8528
Facsimile:   (818) 334-8107
hs@safarianfirm.com

Attorneys for Defendant, KIMLEANG SAY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anthony Bell,<br><br>        Plaintiff,<br><br>                    v.<br><br>Ramin Bral;<br>Kimleang Say; and Does 1- 10,<br><br>        Defendants. | Case No. 15-cv-06171-DSF-PJW<br><br>**NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULES 16, 26, 37 AND THE COURT'S INHERENT POWERS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Filed Concurrently with Declaration of Harry A. Safarian]**<br><br>**Date:**   July 18, 2016<br>**Time:**   1:30 p.m.<br>**Judge:** Dale S. Fischer<br>**Courtroom No.:** 840 (Roybal) |

TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR

COUNSEL:

        PLEASE TAKE NOTICE that on July 18, 2016 at 1:30 p.m. or as soon

thereafter as the matter may be heard before the Honorable Dale S. Fischer in

Courtroom 840 of the United States District Court, Central District of California,

located at 255 E. Temple Street, Los Angeles, California 90012 Defendant

KIMLEANG SAY will, and hereby does, respectfully request that the Court:

1      1.  Dismiss the case (Fed. Rules Civ. Proc., Rule 37(b)(2)(A)(v)), or

2      2.  Render a default judgment against Plaintiff (Rule 37(b)(2)(A)(vi)).

3      In the alternative, Say respectfully requests the Court order the following

4 evidentiary sanctions:

5      1. Prohibit Plaintiff from testifying at the time of trial as to any issue,

6 including the providing of declarations or testimony in opposition to Say's

7 anticipated motion for summary judgment/summary adjudication (Rule 37

8 (b)(2)(A)(ii)); and

9      2. Preclude Plaintiff from calling any and all experts at the time of trial,

10 including any introduction of opinions or declarations by the same in opposition to

11 Say's anticipated motion for summary judgment/summary adjudication.

12      In addition, Say requests an Order that Plaintiff and his counsel pay Say's

13 reasonable expenses and attorney's fees caused by Plaintiff's failure to appear for

14 his timely noticed deposition pursuant to a separate motion for attorneys' fees after

15 the ruling on the instant Motion.

16      The Motion will be based on this Notice of Motion, the concurrently filed

17 Declaration of Harry A. Safarian, the attached Memorandum of Points and

18 Authorities served and filed herewith, the records and file herein, and on such

19 evidence as may be presented at the hearing of the Motion.

20      This Motion was made following Say's attorney's extensive meet-and-confer

21 efforts with Plaintiff's counsel in compliance with Local Rule 7-3. Plaintiff's

22 counsel has declined to stipulate to any of the relief requested in this Motion.

23                              SAFARIAN & BAROIAN, LLP

24 DATED: June 18, 2016           By: /s/ Harry A. Safarian_____

25                               HARRY A. SAFARIAN

26                               Attorneys for Defendant, KIMLEANG SAY

27

28

2

# **TABLE OF CONTENTS**

I.    Introduction/Statement of Facts………………………………………………1

II.   Argument for Terminating/Issue/Monetary Sanctions………………………..8

   A. Plaintiff Should be Sanctioned for Failing to Obtain Court Approval
      to Extend the Time to Complete Discovery, Failing to Obtain a Protective
      Order from Attending his Deposition, and Failing to Coordinate
      Discovery in Good Faith..…………………………………………………..8

      1.  The Court Has Broad Authority to Issue Terminating Sanctions
         Against Plaintiff for Failing to Comply with the Scheduling Order
         and for Failing to Appear for His Deposition……………………………10

         a.  Plaintiff's Failure to Appear for His Deposition
            Unreasonably Prolongs the Resolution of this Litigation
            and Greatly Prejudices Say……………………………………12

         b.  Plaintiff's Failure to Appear for His Deposition or Produce
            Required Documents are Egregious Circumstances
            and Lesser Sanctions are Inadequate…………………………14

      2.  The Court Has Broad Authority to Issue Evidentiary Sanctions
         Against Plaintiff for Failing to Comply with the Scheduling Order,
         Failing to Appear for His Deposition, Failing to Produce
         Medical Records, and Failing to Identify Treating Physicians…………..15

      3.  Plaintiff Does Not Have a Valid Explanation for Failing to
         Appear for his Deposition, Produce Required Medical Records,
         or Identify Healthcare Providers, or Move to Extend the
         Discovery Cutoff………………………………………………………16

III.  Conclusion…………………………………………………………………...17

i

# TABLE OF AUTHORITIES

## Federal Rules

Rule 16, et, seq…………………………………………..………4, 9, 11, 15

Rule 26, et seq……………………………………………………5, 7, 8, 11

Rule 29, et seq……………………………………………………………..5, 9

Rule 37, et seq……………………………………………..4, 7, 10, 11, 13, 15

Rule 37(d) advisory committee note (1970)……………………………......13

## Case Authorities

*Adriana Intl. Corp. v. Lewis & Co*.,
   913 F.2d 1406 (9th Cir. 1990)…………………………………………12

*Atchison, Topeka and Santa Fe Ry. Co. v. Hercules Inc.*,
   146 F.3d 1071 (9th Cir. 1998)…………………………………………11

*Bradley v. U.S.*,
   866 F.2d 120 (5th Cir. Tex. 1990)…………………………………...16

*Campbell Indus. v. M/V Gemini*,
   619 F.2d 24 (9th Cir. 1980)…………………………………………….8

*Chambers v. NASCO, Inc*.,
   111 S.Ct. 2123 (1991)………………………………………….......8

*Davis v. Duplantis*,
   448 F.2d 918 (5th Cir. 1971)………………………………………...15

*Dreith v. Nu Image, Inc*.,
   648 F.3d 779 (9th Cir. 2011)………………………………….11, 12

*Geiserman v. MacDonald*,
   893 F.2d 787, 790-791 (5th Cir. Tex. 1990)…………………………15. 16

*In re Phenylpropanolamine Products Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006)…………………………………………11

ii

*Lew v. Kona Hospital,*
   754 F.2d 1420 (9th Cir. 1985)…………………………………………...10, 11

*Malone v. United States Postal Service,*
   833 F.2d 128 (9th Cir. 1987)…………………………………………….11, 12

*Pioche Mines Consol., Inc. v. Dolman*
   333 F.2d 257 (9th Cir. 1964)…………………………………………….....11

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg.,*
   982 F.2d 363 (9th Cir. 1992)…………………………………….8, 9, 11, 15

*Yourish v. Cal Amplifier,*
   191 F.3d 983 (9th Cir. 1999)…………………………………………...12

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **MEMORANDUM OF POINTS AND AUTHORITIES**

# **I.**

# **INTRODUCTION/STATEMENT OF FACTS.**

On August 14, 2015, Plaintiff filed a Complaint against Kimleang Say for violation of the Americans with Disabilities Act ("ADA"), Unruh Civil Rights Act, and for Negligence. (Dkt. No. 1.) A First Amended Complaint ("FAC") followed on November 25, 2015. (Dkt. No. 29.) The gravamen of the FAC is that Plaintiff attempted to patronize a small store Say owns, but encountered obstructions in the aisle ways of the store, rendering it in technical violation of the Americans with Disabilities Act. (First Amended Complaint, ¶¶ 8-18.) Curiously, Plaintiff never mentioned the alleged "movable obstructions" he purports caused the premises to violate the ADA at the time he claims to have encountered them, and Say is suspicious as to whether Plaintiff ever even entered the store.

Rather than unilaterally setting the deposition of Plaintiff, on May 15, 2016, counsel for Say extended to Plaintiff the opportunity to set the deposition for a mutually convenient date, and inquired whether Plaintiff's counsel would agree to produce, without the need for a subpoena, Plaintiff's spouse in addition to Plaintiff. (Safarian decl., ¶ 2.) Plaintiff's counsel ignored the request. As such, Say's counsel noticed the deposition of Plaintiff to proceed on June 3, 2016. (Safarian decl., ¶ 2, Ex. "A.")

On the eve of the deposition, Plaintiff's counsel reported that Plaintiff would be unable to appear because he could not sit for "long periods of time" and was in pain. (Safarian decl., ¶ 3.) Plaintiff's counsel never sought to extend the discovery completion deadline of June 3, 2016. (Safarian decl., ¶ 3.) Subject to an extension of the fact discovery cutoff, in order to accommodate Plaintiff, Say's counsel wrote offered the following:

> I would be pleased to travel to [Plaintiff's] home to take
> the deposition, and to take as many breaks as he needs, or

1

1    to do it in multiple sessions if possible. I will do anything I
2    can to accommodate him, but do wish to commence with
3    the deposition tomorrow. I am not open to extending the
4    discovery cutoff for any discovery aside from your
5    client's.

6

7    Also, I have not heard back from your office in response to
8    the meet and confer letter I sent yesterday concerning the
9    deposition subpoenas your office personally served upon
10   our office yesterday. It is critical that we have resolution to
11   these issues today.[1]

12   (Safarian decl., ¶¶ 3 and 4.)

13   Plaintiff/his counsel declined the request to have the deposition proceed in or

14   near Plaintiff's home on terms that would make the proceeding manageable for

15   Plaintiff, declining the request (in spite of the fact the discovery cutoff would

16   prevent the deposition from proceeding at a future time). (Safarian decl., ¶ 5.) In

17   order to accommodate Plaintiff, Say's counsel proposed:

18   I would like to complete your client's deposition as soon
19   as possible, as it will be critical to the expert disclosures. I
20   propose the deposition taking place on June 6 or 7 at 10:00
21   a.m. at my office. Please advise.

22   (Safarian decl., ¶ 5.)

23   Plaintiff's counsel responded that Plaintiff would be available for deposition

24   on June 6, 2016, but only until noon. (Safarian, decl., ¶ 6; Ex. "A.") Although Say's

25

26   [1] The last paragraph refers to the fact Plaintiff's serve on Say's counsel notices for
     the taking of the depositions of Say, his father, and his girlfriend, to proceed <u>at the
27   same time</u> and <u>on the same day</u> as Plaintiff's deposition, confirming Plaintiff has no
     intention of appearing for his duly noticed deposition. The subpoenas provided 48
28   hours' notice for the three depositions.

2

counsel agreed to conduct the deposition at a location of Plaintiff's choosing, this would limit the deposition to two hours (less breaks and the time required to provide admonitions). (Safarian decl., ¶ 6.) Say's counsel requested Plaintiff be produced for a full day. *Id.* Say's counsel sent emails relating that the full seven hours would likely be necessary for the proceeding, and requested: "Please call me on Monday. We need to get the deposition issue resolved immediately. We cannot wait any longer." (Safarian decl., ¶ 6; Ex. "A.")

Plaintiff's counsel then offered dates long after the discovery cutoff, and without the Court having approved a change to the scheduling order or discovery cutoff: June 13, 15, 16 and 17. (Safarian decl., ¶ 7.) Say's counsel, scheduled to start trial on June 15, 2016, followed by another trial on June 20, 2016, with multiple scheduling conflicts on June 13, 2016, could not proceed (even ignoring the fact the scheduling order prohibits the deposition from taking place on the referenced dates). *Id.* Plaintiff's counsel then offered even later dates, all of which continued to conflict with Mr. Say's attorney's trial schedule, and which violate the scheduling order: June 22 (after 2 p.m.) and June 23 or 24. *Id.* Say's counsel responded:

> We do not have an order from the court extending the discovery cutoff. Our client has been prejudiced by Plaintiff's failure to appear for deposition within the discovery cutoff, in spite of the fact we began efforts to coordinate that deposition weeks prior to it. We have received your expert report and designation. I am concerned that it is impossible for my client's expert to provide a report or render opinions given what has transpired. Moreover, I will be in trial on the dates you have provided, which is why I started the process of trying to meet and confer in advance of setting the deposition.

3

1
2
3
4
5
6
7

> We believe we have no choice but to file a motion for sanctions seeking to exclude Plaintiff from testifying at trial. We would like to meet and confer with you about this further today by telephone. I spoke about the matter in some depth with Ms. Grace today, but she was clear that she was not handling the issue. Please call me at your convenience.

8  *Id.*

9  Plaintiff's counsel did not call as requested, and was unavailable when Say's
10 counsel called to discuss the issue. (Safarian decl., ¶ 7.)

11 Plaintiff's proposals to set the depositions after the discovery cutoff are
12 meaningless because the Court's November 30, 2015 order set June 3, 2016 as the
13 cutoff for fact discovery, and June 17, 2016 as the deadline for initial expert
14 disclosures. (Dkt. No. 31.) (Safarian decl., ¶ 8.) And, the Court's initial standing
15 order is clear: "**No stipulation extending the time to file any required document**
16 **or to continue any date is effective until and unless the Court approves it**, or
17 unless the Federal Rules of Civil Procedure provide for an automatic extension."
18 (*Id.* at p. 16, lines 23-25 [emphasis added].) *Id.* Thus, any offers of dates after the
19 discovery cutoff were meaningless absent a motion by Plaintiff's counsel to
20 continue the discovery cutoff, which was never filed. *Id.*

21 Federal Rules of Civil Procedure, Rule 16(f) permits terminating and
22 evidentiary sanctions for failing to comply with a scheduling order and Federal
23 Rules of Civil Procedure, rule 37(d) permits terminating and evidentiary sanctions
24 for failing to appear for a duly noticed deposition. A party must obtain court
25 approval for any extension of time for any form of discovery if it interferes with a
26 scheduling order and, in the absence of an agreement, a party must file a protective
27 order from having to appear for his deposition. Federal Rules of Civil Procedure,
28 Rules 26(c) and 29(b).

1   Regrettably:

2       1.      Plaintiff/his counsel declined to confer with Say/his counsel

3   relating to the scheduling of Plaintiff's deposition;

4       2.      Plaintiff/his counsel declined to confer with Say's counsel

5   concerning the setting of Plaintiff's spouse's deposition;

6       3.      Plaintiff failed to produce required medical records, producing

7   only one two year-old medical report out of the voluminous medical records he

8   clearly has that speak to the alleged disability issue (a central issue in the case);

9       4.      Plaintiff's initial disclosures, and supplemental disclosures, fail

10  to identify any healthcare providers, in spite of the fact Say has requested

11  identification of same, and the fact this case is based upon Plaintiff's alleged

12  disability;

13      5.      Plaintiff failed to appear for his duly noticed deposition;

14      6.      Say's counsel was not informed until the day prior to Plaintiff's

15  deposition, scheduled for June 3, 2016 (and the eve of the discovery cutoff) that

16  Plaintiff refused to appear;

17      7.      Plaintiff refused to appear in spite of the fact Say's counsel

18  offered to take the deposition at a location of his choosing, including his home;

19      8.      Plaintiff refused to appear for his deposition as scheduled in spite

20  of the fact Say's counsel agreed to allow "as many breaks as he needs," rendering

21  Plaintiff's objection that he is prevented from "sitting for long periods of time" an

22  insufficient basis to refuse to proceed;

23      9.      On June 2, 2016 (the same day Plaintiff unilaterally cancelled his

24  deposition), Say's counsel offered alternate available dates, and the only date he

25  agreed to was after the discovery cutoff, and would have the deposition to two hours

26  of testimony;

27      10.     Plaintiff's counsel never obtained an order extending the

28  discovery cutoff for purposes of the deposition, which the Court's scheduling order

5

explicitly and expressly required before any fact discovery could take place after June 2, 2016;

11.   Say's counsel informed Plaintiff's counsel sufficiently ahead of the client's unilateral cancellation of the deposition that Say would not agree to extend the discovery cutoff (as doing so would necessarily work to the serious detriment of Say where the bulk of exposure is in the form of attorneys' fees, and a continuance of the discovery cutoff or other dates would simply result in expanding the attorneys' fees in question).

(Safarian decl., ¶ 9, Ex. "A" through "E".)

Plaintiff also failed to seek an extension of any other deadlines, including the June 17, 2016 deadline for the initial expert disclosures. (Safarian decl., ¶ 10.) Plaintiff's failure to appear is particularly problematic given the passing of the discovery cutoff, and the fact the non-appearance prevented Say from identifying appropriate experts, and having an expert able to distill the testimony and render opinions for trial, permanently and irreparably prejudicing Say. *Id.*

For his part, Say has complied with all aspects of the Court's Scheduling Order and the obligations imposed by the Federal Rules. (Safarian decl., ¶ 11.) He made the disclosures required of him, responded to all discovery served upon him in a timely and complete manner, made his small store available for a lengthy inspection to Plaintiff's counsel and expert(s), attempted to coordinate depositions with Plaintiff's counsel, only to be ignored until the day before the duly-scheduled deposition (which was cancelled on less than 24 hours' notice). (Safarian decl., ¶ 11.) Nevertheless, despite "playing by the Rules," Say is now irreversibly prejudiced by Plaintiff's failure to do the same.

Plaintiff's failures are not harmless or unintentional; they are a systemic attempt to thwart Say's ability to discover the lack of any real evidence in support of Plaintiff's claims against him. Although Plaintiff has asserted a myriad of claims, he declined to coordinate the setting of his deposition, ignored Say's requests

6

concerning the scheduling of Plaintiff's deposition, or the deposition of Plaintiff's spouse, and has failed to produce required medical records.

Moreover, Say's ability to draft a motion for summary judgment/adjudication has been thwarted because Plaintiff has not allowed himself to be deposed on the allegations, which serve as the basis for the FAC, and Say is unable to procure and designate experts because he has insufficient evidence to supply his experts. (Safarian decl., ¶¶ 13-16.) As a result of Plaintiff's conduct, the sole reason for the performance of discovery by parties to litigation has been thwarted entirely, i.e. to discover the facts, witnesses, and evidence that exist and that Plaintiff intends to use at trial to support his claims.

Unlike Plaintiff, Say is left to guess what evidence Plaintiff intends to utilize at trial, and what evidence is available to him in support of his defense of the claims. Accordingly, as it presently stands, neither Say, his counsel, nor experts have any meaningful way to prepare the defenses to Plaintiff's claims, which necessarily results in a windfall to Plaintiff by breaking the Rules.

As a result of Plaintiff's conduct during the discovery phase of this litigation, Say respectfully requests the Court order, pursuant to Federal Rules of Civil Procedure, Rules 16(f), 26(g), and 37(d), the following terminating sanctions:

1, Dismiss the case (Fed. Rules Civ. Proc., Rule 37(b)(2)(A)(v)); or

2. Render a default judgment against Plaintiff (Rule 37(b)(2)(A)(vi)).

In the alternative, Say respectfully requests the Court order the following evidentiary sanctions:

1. Prohibit Plaintiff from testifying at the time of trial as to any issue, including the providing of declarations or testimony in opposition to Say's anticipated motion for summary judgment/summary adjudication (Rule 37 (b)(2)(A)(ii));

2. Preclude Plaintiff from calling any and all experts at the time of trial, including any introduction of opinions or declarations by the same in opposition to

7

1  Say's anticipated motion for summary judgment/summary adjudication; and

2         3. Order Plaintiff to pay Say's reasonable expenses and attorney's fees

3  caused by Plaintiff's failure to appear for his timely noticed deposition (Rules

4  16(f)(2), 26(g)(3), and 37(b)(2)(C)).

5

6

7                    **II.**

8  **ARGUMENT FOR TERMINATING/ISSUE/MONETARY SANCTIONS.**

9

10  **A. Plaintiff should be Sanctioned for Failing to Obtain Court Approval to**

11     **Extend the Time to Complete Discovery, Failing to Obtain a Protective**

12     **Order from Attending His Deposition, and Failing to Coordinate**

13     **Discovery in Good Faith.**

14     Say complied with every obligation imposed by this Court and the Federal

15  Rules of Civil Procedure. Plaintiff has not.

16     "Courts are invested with inherent powers that are 'governed not by rule or

17  statute but by the control necessarily vested in courts to manage their own affairs so

18  as to achieve the orderly and expeditious disposition of cases.'" *Chambers v.*

19  *NASCO, Inc*. 111 S.Ct. 2123, 2132 (1991). The United States Court of Appeals for

20  the Ninth Circuit "has recognized as part of a district court's inherent powers the

21  'broad discretion to make discovery and evidentiary rulings conducive to the

22  conduct of a fair and orderly trial....'" *Unigard Sec. Ins. Co. v. Lakewood Eng'g &*

23  *Mfg*. (9th Cir. 1992) 982 F.2d 363, 368, *quoting Campbell Indus. v. M/V Gemini*,

24  619 F2d 24, 27 (9th Cir. 1980).

25     If a party needs to extend the time "for any form of discovery," it "must have

26  court approval if it would interfere with the time set for completing discovery...."

27  Fed. Rules Civ. Proc., Rule 29(b). If a party fails to comply with the scheduling

28  order, the court has the "power ... to exclude testimony of witnesses whose use at

8

1  trial ... would unfairly prejudice an opposing party." *Unigard Sec. Ins. Co. v.*
2  *Lakewood Eng'g & Mfg., supra*, 982 F.2d at p. 368; Fed. Rules Civ. Proc, Rule
3  16(f)(1).

4      On November 30, 2015, the Court issued an order setting June 3, 2016 as the
5  cutoff for fact discovery, and June 17, 2016 as the deadline for initial expert
6  disclosures. (Dkt. No. 31.) And, the Court's initial standing order is clear: "No
7  stipulation extending the time to file any required document or to continue any date
8  is effective until and unless the Court approves it, or unless the Federal Rules of
9  Civil Procedure provide for an automatic extension." (*Id.* at p. 16, lines 23-25.) Say
10 was prepared to stipulate to continue the discovery cutoff for purposes of Plaintiff's
11 deposition, subject to the Court approval, to June 6, 2016, provided Plaintiff would
12 agree to permit his deposition to be completed that day. In spite of Say's willingness
13 to take the deposition at Plaintiff's home, or any other location Plaintiff selected,
14 and to take as many breaks as Plaintiff needed for his comfort, Plaintiff refused. *Id.*
15 Plaintiff also made no Motion to continue the discovery cutoff or be excused from
16 his failure to appear for deposition. *Id.*

17     Moreover, Plaintiff has clearly failed to produce critically relevant medical
18 documentation to support his alleged disability rendering applicable the ADA in the
19 first place. Plaintiff was asked to produce, among other things, "All documents
20 which support, refute, or relate to plaintiff's allegation that he is disabled." (Safarian
21 decl., ¶ 7, Ex. "B".) Although Plaintiff contends he was disabled at the time of his
22 visits to the subject store in 2015, and is currently under the care of doctors, he
23 produced only a single medical record—a two-year old report relating to a workers'
24 compensation claim. (Safarian decl., ¶ 7, Ex. "C".) And, his disclosure identify no
25 healthcare providers in spite of the fact the entire case centers around Plaintiff's
26 alleged disability, and the fact Plaintiff contends he is under the care of doctors.
27 (Safarian decl., ¶ 7, Ex. "D" and "E".) It is clear from the solitary two year-old
28 medical report that Plaintiff was scheduled to undergo further evaluation/treatment,

1    and two years' worth of records responsive to the referenced production demand

2    exist, but were withheld. Plaintiff has failed to produce same, rendering Say totally

3    incapable of assessing Plaintiff's alleged disability two years later. Plaintiff's failure

4    to appear for deposition seriously compounds the problems created by Plaintiff's

5    failure to comply with his discovery obligations and continuing disclosure duties.

6    Without Plaintiff's testimony, or required medical documentation, Say is left

7    completely unable to respond to Plaintiff's claims he is "disabled," and that the

8    disability statutes he sues on even apply.

9         As a result of Plaintiff's conduct, Say cannot adequately prepare a motion for

10   summary judgment/adjudication, coordinate retention and designation of experts, or

11   provide necessary information to his experts to prepare for trial. Say is also now

12   required to incur-additional fees and costs to protect against the prejudice caused by

13   Plaintiff's actions/inactions, beyond what he has already incurred in trying to get

14   Plaintiff to comply with the basic tenets of the Federal Rules of Civil Procedure.

15        This type of behavior by a party to litigation—especially by the Plaintiff,

16   responsible for initiating the Complaint in the first place, and who bears the burden

17   of proof—should not be allowed to occur without reprisal or punishment. Sanctions

18   should be imposed.

19

20        1.   The Court Has Broad Authority to Issue Terminating Sanctions Against

21             Plaintiff for Failing to Comply with the Scheduling Order and for Failing

22             to Appear for His Deposition.

23        "The district court has great latitude in imposing sanctions under Federal

24   Rules of Civil Procedure, rules 37." *Lew v. Kona Hospital*, 754 F.2d 1420, 1425-

25   1426 (9th Cir. 1985). "Federal Rules of Civil Procedure, rule 37(b) sanctions may be

26   issued if a party fails to obey an order to provide or permit discovery, including an

27   order under Federal Rules of Civil Procedure, rule 26(f)." *Dreith v. Nu Image, Inc*.,

28   648 F.3d 779, 787 (9th Cir. 2011). "Violations of a scheduling order may result in

10

sanctions, including dismissal under Rule 37(b)(2)(C)." *Atchison, Topeka and Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1073 (9th Cir. 1998), *citing* Fed. R. Civ. Proc. 16(f); *see also In re Phenylpropanolamine Products Liab. Litig.,* 460 F.3d 1217, 1227 (9th Cir. 2006). ["The goal [of Rule 16] is to get cases decided on the merits . . . Subsection (f) puts teeth into these objectives by permitting the judge to make such orders as are just for a party's failure to obey a scheduling or pretrial order, including dismissal"].

"...Rule 37(b) contains no requirement mandating a noticed motion or opportunity to be heard before sanctions—including default—may be imposed. 'If a party ... fails to obey an order ... the court may issue further just orders.' " *Dreith*, supra, 648 F.3d at 787, *quoting* Fed. R. Civ. Proc., Rule 37(b)(2)(A). "Rule 37 (d) allows for any of the sanctions available in Rule 37 (b)(2) if a party fails to attend her own deposition...." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg., supra*, 982 F.2d at p. 367. The Ninth Circuit "has upheld a sanction as severe as dismissal for failure to comply with discovery orders." *Lew v. Kona Hospital, supra*, 754 F.2d at 1425-1426, *Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964) [dismissal for willful failure to attend deposition], *cert. denied*, 380 U.S. 956 (1965).

Additionally, an attorney or party may be ordered to pay the requesting party's reasonable expenses, including attorney's fees if the responding party provides incomplete and incorrect disclosures at the time they are made. Federal Rules of Civil Procedure, rule 26(g)(1)(A) and 26(g)(3).

The Ninth Circuit has held that it would "overturn a dismissal sanction only if [it] ha[s] a 'definite and firm conviction that it was clearly outside the acceptable range of sanctions,'" *Dreith v. Nu Image, Inc., supra*, 648 F.3d at 788, *quoting Malone v. United States Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987).

The Ninth Circuit has "identified five factors a district court should consider before dismissing a case or declaring a default: '(1) the public's interest in

11

1  expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the

2  risk of prejudice to the other party; (4) the public policy favoring the disposition of

3  cases on their merits; and (5) the availability of less drastic sanctions.' " *Malone,*

4  *supra*, 833 F.2d at 130. The court's dismissal is proper "where at least four factors

5  support dismissal, or where at least three factors strongly support dismissal." *Dreith,*

6  *supra*, 648 F.3d. at 788, *quoting Yourish v. Cal Amplifier*, 191 F.3d 983, 990 (9th

7  Cir. 1999).

8     "Where a court order is violated, the first two factors support sanctions and

9  the fourth factor cuts against a default. Therefore, it is the third and fifth factors that

10 are decisive." *Adriana Intl. Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th Cir.

11 1990). In *Dreith*, the court found that "the first three factors ... 'weightily' favored

12 default" because the defendant "delayed resolution of the case, interfered with the

13 court's management of its docket in one of the busiest districts in the country, and

14 the actions of the defendant 'made it impossible for the plaintiff to adequately

15 prepare itself for trial.'" *Dreith, supra*, 648 F.3d at 788.

16    The *Dreith* court held that "under 'egregious circumstances ... it is

17 unnecessary (although still helpful) for a district court to discuss why alternatives to

18 dismissal are infeasible.' " *Id*. at 788-789, *quoting Malone, supra*, 833 F.2d at 130.

19 The factors supporting this request for the Court's dismissal of the pending action

20 exist.

21

22        a. *Plaintiff's Failure to Appear for His Deposition Unreasonably*

23           *Prolongs the Resolution of this Litigation and Greatly Prejudices*

24           *Say.*

25    For his part, Say has completely and fully complied with all aspects of the

26 Scheduling Order and the Rules of Civil Procedure. Plaintiff has not.

27    "[T]he total noncompliance with which Rule 37 (d) is concerned may impose

28 severe inconvenience or hardship on the discovering party and substantially delay

1  the discovery process." Federal Rules of Civil Procedure, rule 37 (d) advisory

2  committee's note (1970).

3        Without obtaining relief from the Court, Plaintiff: (1) failed to appear for his

4  deposition, (2) failed to comply with Say's efforts to reschedule the deposition and

5  continue the discovery cut-off, and (3) clearly failed to produce documents critically

6  relevant to the defense of Plaintiff's claims of disability. Say served discovery

7  requests on Plaintiff in December 2015, and attempted to coordinate the deposition

8  of Plaintiff for a mutually convenient date. Plaintiff ignored Say's efforts to

9  schedule the deposition, and a request that Plaintiff's counsel voluntarily produce

10  Plaintiff's spouse for deposition. Despite Say's best efforts, Plaintiff's

11  transgressions greatly prejudice Say because Say has been deprived of an ability to

12  perform additional fact discovery that, but for Plaintiff's transgressions, would be

13  based on timely discovery responses and Plaintiff's deposition testimony. Moreover,

14  Say is a small shopkeeper who took over his family business after his mother died

15  from cancer. (Safarian decl., ¶¶ 15-16.) He can barely afford to pay for basic living

16  expenses. *Id.* A continuance of the trial date would impose a severe financial

17  hardship on Say, all to Plaintiff's benefit, as Plaintiff sues under statutes that could

18  result in the award of attorneys' fees to Plaintiff. *Id.*

19        With the discovery cut-off on June 3, 2016, initial expert disclosures due on

20  June 17, 2016, and motions hearing cutoff on August 1, 2016, Plaintiff's offenses

21  deprived Say of an ability to properly prepare and designate experts, and prepare a

22  motion for summary judgment/adjudication. Even if Say were able to determine

23  what experts are required (which is not possible given he can only guess as to

24  Plaintiff's testimony and does not have the required medical records Plaintiff was

25  obligated to produce months earlier), it will be impossible for Say to adequately

26  prepare for trial, or a dispositive motion. Because Plaintiff failed to comply with his

27  discovery obligations, Say must prepare for cross-examination of Plaintiff at trial

28  without any real idea as to what Plaintiff will be testifying.

1    Even if the Plaintiff were to make a last-minute production of medical

2 records, or appear for trial, Say will be denied the opportunity to have such evidence

3 reviewed by candidates for retention as expert witnesses. Moreover, a trial

4 continuance would seriously prejudice Say because Plaintiff, if successful, will seek

5 to recover attorneys' fees over the extended time period, increasing Say's potential

6 exposure substantially, all because of Plaintiff's failure to comply with his discovery

7 obligations.

8    Plaintiff has had more than sufficient time to prepare for this litigation and

9 fulfill his discovery obligations. Instead, Plaintiff violated the Scheduling Order,

10 ignored Rules of Civil Procedure, and unnecessarily caused delay and expense to

11 Say. The applicable authorities clearly allow for terminating sanctions. At a

12 minimum, Plaintiff should not be permitted to testify at trial, and should be required

13 to pay Say's attorneys' fees relating to this motion.

14

15    b. *Plaintiff's Failure to Appear for His Deposition or Produce*

16    *Required Documents are Egregious Circumstances and Lesser*

17    *Sanctions are Inadequate.*

18    Viewed on the whole, Plaintiff's failure to obey the Scheduling Order,

19 repeated disregard for Rules of Civil Procedure, and continuing delays and

20 evasiveness, constitute "egregious circumstances." Plaintiff has continually

21 displayed complete disregard for the discovery process and indifference to the

22 financial and emotional burden it imposes on Say. Monetary sanctions are not a

23 sufficient deterrent of any future misconduct, as Say's counsel have carefully

24 ensured Say minimized unnecessary costs and fees.

25    Even if Plaintiff and/or his counsel are ordered to pay a penalty, Plaintiff's

26 blatant disregard and disrespect for this Court's Orders and the Rules of Civil

27 Procedure throughout the discovery process will continue to create discovery and

28 trial-related disputes, which will require Court's intervention. Plaintiff's conduct

14

warrants sanctions no less severe than termination, as any lesser sanctions would only encourage Plaintiff's further misconduct.

### 2. The Court Has Broad Authority to Issue Evidentiary Sanctions Against Plaintiff for Failing to Comply with the Scheduling Order, Failing to Appear for His Deposition, Failing to Produce Medical Records, and Failing to Identify Treating Physicians.

A district court "may [order] ... Rule 37 (b)(2)(A)(ii)-(vii) [sanctions], if a party or its attorney fails to obey a scheduling ... order." (Fed. Rules Civ. Proc, Rule 16(f)(1)(C).) Similarly, the court "may, on motion, order sanctions if a party... fails, after being served with proper notice, to appear for that person's deposition...." Rule 37(d)(1)(A)(i). "Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)- (vi)," including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg., supra*, 982 F.2d at 367 ["Rule 37 (b)(2)(B) authorizes, inter alia, the sanction of prohibiting a party from introducing designated matters in evidence if that party fails to comply with a court's order to provide or permit discovery"].

"[A] trial court's decision to exclude evidence as a means of enforcing a pretrial order 'must not be disturbed' absent a clear abuse of discretion." *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971); Fed. Rules Civ. Proc., Rule 16(f). A court can exclude evidence that was not properly designated based on: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman v. MacDonald*, 893 F.2d 787, 790-791 (5th Cir. Tex. 1990), *quoting Bradley v. U.S.*, 866 F.2d 120, 125 (5th Cir. Tex. 1990). In *Geiserman*, the court "note[d] that in excluding the evidence, the court was merely enforcing the deadlines plainly set out in the court order and local

1   rule for designating witnesses." *Id.*

2       For the following reasons, Say respectfully requests the Court prohibit

3   Plaintiff from testifying at the time of trial and providing any testimony from

4   healthcare provides, or any evidence his is "disabled" pursuant to the applicable

5   statutory claims he advances.

6

7      3.  <u>Plaintiff Does Not Have a Valid Explanation for Failing to Appear for his</u>

8         <u>Deposition, Produce Required Medical Records, or Identify Healthcare</u>

9         <u>Providers, or Move to Extend the Discovery Cutoff.</u>

10      Say, in spite of his meager resources, has complied with the Scheduling Order,

11   timely responded to Plaintiff's discovery, made his store available for inspection, and

12   made all disclosures required of him. Plaintiff has not articulated or expressed an

13   explanation for failing to identify healthcare providers in his disclosures, or produce

14   years' worth of medical records he admittedly has in his possession, custody, or

15   control. Plaintiff's unilateral cancellation of his deposition because he could not sit

16   for "long periods of time" is unsupported by any medical records, and is

17   unpersuasive given Say was prepared to take the deposition at Plaintiff's home or

18   near his home, and allow Plaintiff to take as many breaks as needed. Say was also

19   prepared to take the deposition after the discovery cutoff subject to the Court's

20   authorization of same, but Plaintiff's counsel did nothing to extend the cutoff,

21   preventing the deposition from proceeding.

22      In contrast, Plaintiff has taken full advantage of his rights to discovery from

23   Say, and has yet to raise a single issue with any of Say's responses to discovery.

24   Plaintiff's non-compliance has eviscerated Say's ability to assess Plaintiff's claims,

25   including his claim that he is disabled, and has prevented Say from being able to file

26   a motion for summary judgment/adjudication, effectively prepare the case for trial,

27   or designate expert witnesses.

28

16

# IV.

## CONCLUSION.

Plaintiff initiated this lawsuit more than ten months ago. Despite Say's unfettered compliance with Plaintiff's discovery requests, and repeated efforts to accommodate Plaintiff and his counsel's schedules, Plaintiff failed to produce critically relevant documents, make adequate disclosures required of him, and failed to produce medical records in a case that turns on Plaintiff's alleged disability. Plaintiff's affronts have greatly prejudiced Say in his preparation of a defense, have caused Say to incur needless expense, have prevented Say from being able to prepare a motion for summary judgment/adjudication, retain and designate experts, or adequately prepare the case for trial. Accordingly, Say respectfully requests this Court order terminating sanctions against Plaintiff, or in the alternative, evidentiary and/or monetary sanctions for costs incurred to date and attorneys' fees incurred as a result of Plaintiff's transgressions.

SAFARIAN & BAROIAN, LLP

DATED: June 18, 2016                    By: /s/ Harry A. Safarian
                                        HARRY A. SAFARIAN
                                        Attorneys for Defendant,
                                        KIMLEANG SAY

17

**Exhibit "D"**

| Case Citation | Relevant Text/Summary |
|---|---|
| *Callan v. Christian Audigier, Inc.*, 263 F.R.D.564, 566 (C.D. Cal., 2009)<br><br>**Note:** Opinion by Hon. Rosalyn Chapman | Given defendants' meritless motion, plaintiff's request for reasonable attorney's fees is granted, pursuant to Rule 37(a)(5)(B). The plaintiff's request is supported by the declaration of his attorney, Mr. Burroughs, who sets forth both a reasonable number of hours spent responding to defendants' motion, **4.3 hours**, as well as the **reasonable hourly rate of $295.00 per hour**. Burroughs Decl. ¶¶ 3–4. Thus, plaintiff is awarded attorney's fees in the sum of $1,268.50.<br><br>*Id.* at 566 (emphasis added). |
| *Paige v. Consumer Programs, Inc.* 248 F.R.D 272, 277 & 278 (C.D. Cal., 2009)<br><br>**Note:** Opinion by Hon. Rosalyn Chapman | Here, CPI has requested only monetary sanctions, in the amount of $5,585.00 against plaintiff, and such sanctions are available under both Rule 37(a)(5)(A) and Rule 37(d)(3). To support its request for sanctions, CPI has submitted Mr. Chammas's declaration, which establishes CPI prepared for plaintiff's deposition on December 21, 2007; CPI incurred court reporter's fees and videographer fees totaling $440.00; Mr. Chammas spent 2 hours preparing for the deposition; Mr. Chammas spent **8.5 hours** related to the pending motion to compel plaintiff to attend his deposition; and Mr. Chammas's hourly rate is $490.00 per hour.<br><br>*Id.* at 277<br><br>CPI's motion for sanctions IS GRANTED, and CPI is awarded reasonable expenses in the amount of $5,585.00 under Rules 30(d)(3) and 37(a)(5)(A), and plaintiff and his attorney, jointly and severally, shall pay such expenses to CPI, no later than ten (10) days from the date of this Order.<br><br>*Id.* at 278. |
| *Hill v. Eddie Bauer*, 242 FRD 556, 565 (C.D. Cal., 2007)<br><br>**Note:** Opinion by Hon. Rosalyn Chapman | Here, the Court has, for the most part, granted plaintiff's motion to compel, finding defendant's objections to Category (1) and (2) document requests are not meritorious, but finding defendant's "unduly burdensome" objection to Category (3) document requests has merit. In light of defendant's offer to provide "sample" discovery to plaintiff responsive to Category (3) document requests, and plaintiff's failure to accept that offer, the Court has determined to award plaintiff only 50% of the attorney's fees she seeks. The declaration of Gregory Yu establishes he spent 32 hours at $250.00 per hour preparing the motion to compel, and that he expects to spend an additional 6.5 hours on this matter. Yu Decl. ¶ 8. Plaintiff, thus, is entitled to reasonable attorney's fees in half the requested amount of $9,625.00, or $4,812.50. |

| Case Citation | Relevant Text/Summary |
|---|---|
| | *Id.* at 565.<br><br>Plaintiff's motion for sanctions is granted, in part, and defendant shall pay plaintiff attorney's fees in the amount of $4,812.50, no later than ten (10) days from the date of this Order.<br><br>*Id.* at 565-566. |
| *U.S. ex rel. O'Connell v. Chapman University*, 245 F.R.D. 652 (C.D. Cal., 2007)<br><br>**Note:** Opinion by Hon. Rosalyn Chapman | Hon. Rosalyn M. Chapman, in ruling on a motion for sanctions pursuant to Rule 37, found:<br><br>Finally, since the Court is of the opinion that relators would not have provided a supplemental expert report if defendant had not filed the pendant motion, the Court should grant defendant's request for attorney's fees under Rule 37(c). The declaration of Mr. Schenck establishes defendant has incurred 18 hours of attorney time at $225.00 an hour preparing its moving papers and will have incurred an additional 8 hours preparing its supplemental memorandum and attending the hearing on this matter. Schenck Decl. ¶ 14. The Court finds both these hours and hourly rate to be quite reasonable, and defendant's motion for attorney's fees in the amount of **$5,805.00** should be granted. |
| *In re Heritage Bonds*, 223 F.R.D. 527 (C.D. Cal., 2004)<br><br>**Note:** Opinion by Hon. Rosalyn Chapman | Betker plaintiffs' motion for monetary contempt sanctions under Rule 37(b)(2)(D) IS GRANTED, and Kasirer defendants are ordered to pay Betker plaintiffs **$4,835.00**, no later than August 4, 2004. *Id.* at 6. |
| *A. Farber & Partners, Inc. v. Garber*, 237 F.R.D. 250 (C.D. Cal., 2006)<br><br>**Note:** Opinion by Hon. Rosalyn Chapman | Grounds exist to grant plaintiff's motion for attorney's fees under Rule 37(a)(4)(A). Fed.R.Civ.P. 36(a). The Court, pursuant to Fed.R.Evid. 201, takes judicial notice of the declaration previously filed by Evan W. Granowitz, an associate in the law firm Shulman Hodges & Bastian, to support the Court's award of attorney's fees to plaintiff on March 15, 2006. Specifically, the Court finds that Mr. Granowitz's hourly rate in this matter was $141.00 per hour in 2005 and is $150.00 per hour in 2006. Mr. Granowitz has provided billing information that he spent **35.9 hours** preparing the pending motion (10.8 hours in 2005 and 25.1 hours in 2006), 27.7 hours preparing plaintiff's reply, and estimates spending 5 additional hours traveling to and appearing at the hearing on this matter. Granowitz Decl., ¶ 28, Exh. 23; |

| Case Citation | Relevant Text/Summary |
|---|---|
| | Supp. Granowitz Decl., ¶ 8, Exh. 32. Thus, plaintiff is awarded attorney's fees in the total amount of $10,192.80.<br><br>*Id.* at 285. |
| *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281 (C.D. Cal., 1996)<br><br>**Note:** Opinion by Hon. Rosalyn Chapman | Rule 37(a)(4) provides that if a motion compelling disclosure is granted, "the court shall, after affording an opportunity to be heard, require the party ... whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust." Here, plaintiff has shown, through the declaration of Mr. Edwards, that it has made several attempts to obtain complete responses, to the disputed interrogatories, but such attempts were to no avail. Mr. Edward's declaration further shows that he spent **nine hours**, at his regular rate of $200.00 per hour, **preparing the instant motions** [plural]. The Court, thus, find grounds to award attorney's fees in the amount of $1800.00 to plaintiff and against defendants DeFabiis and Roberts, jointly and severally.<br><br>*Id.* at 284. |
| | **OPINIONS BY JURISTS OTHER THAN JUDGE CHAPMAN** |
| *Mitchell v. Acumed, LLC,* 2012 WL761705 (N.D. Cal.) | Defendant Acumed moves for evidentiary, issue, terminating, and monetary sanctions under Federal Rule of Civil Procedure 37 after the Court granted its motion to compel discovery responses. Acumed has provided evidence that it attempted in good faith to obtain the discovery without court action as required under the local rules. The Court GRANTS the motion for sanctions and awards Acumed its reasonable attorneys' fees incurred in bringing the motion to compel and the motion for sanctions in the total amount of $10,000.00.<br><br>*Id.* at 1.<br><br>The Court finds, however, that the amount of fees requested is excessive. Acumed asks for more than $11,000 for the underlying motion to compel, representing 50.3 hours of work, approximately $6,000 for the motion to continue trial, representing 27.9 hours of work, and approximately $6,000 for |

| Case Citation | Relevant Text/Summary |
|---|---|
| | the motion for sanctions, representing 28 hours of work. Aney Decl. at 6–7, Dkt. No. 58. Acumed provides proper justification for counsels' hourly rates. *See id.* Counsel's brief statement as to the number of hours allegedly spent drafting the motions and related documents does not meet the itemization and particularity standards set forth in Local Rule 37–4. *See* Local Rule 37–4(b)(3) ("If attorney fees or other costs or expenses are requested, itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed."). <br><br> *Id.* at 4. |
| *Finley v. Hartford Ins. Co.*, 249 F.R.D. 329, 333 (N.D. Cal. 2008). | In this case the Plaintiff's attorney submitted an extensive list of attorney's fees and costs totaling $57,888.50. Plaintiff calculates these fees as costs directly related to preparing for and taking the depositions of Mr. Dempsey, Mr. Sawn, and Mr. Morgan, and having to hire the Mr. Schmolder as an expert. She asserts that the depositions would have been unnecessary, and she would not have engaged an expert, had she had access to the kitchen tape at a more timely point in the litigation. The Court does not agree. The Court rejects the assertion that none of the work done would have been done if the tape had been turned over earlier, and finds that a prudent attorney would have done much of the discovery, and hired an expert whether or not he or she had access to the tape early in the discovery process. The fact that Plaintiff used the much the information at the summary judgement stage bears this out. The Court has no doubt that some of the enumerated costs and fees would not have been necessary if she had earlier access to the kitchen video, but does not accept counsel's argument that she would not have expended any of the stated amount if the video were made available earlier. The Court must therefore use its discretion to determine a reasonable sanction. The Court therefore sanctions Hartford in the amount of $9000.00. <br><br> *Id.* at 333. |
| *Raygoza v. City of Fresno*, 297 F.R.D. 603 (E.D. Cal., 2014) | Defendants have also requested $5,080.94 in monetary sanctions as the cost of preparing for and traveling to Fresno for the scheduled depositions of Raygoza and Sanchez, the cost of the Certified Shorthand Reporter for those depositions, and the fees incurred in bringing and arguing this motion telephonically. <br><br> *Id.* at 610. |

| Case Citation | Relevant Text/Summary |
|---|---|
| | Defendants are awarded against Plaintiffs Raygoza and Sanchez and their counsel, jointly and severally, attorney fees in the amount of $2035.00 as the cost of having had to file this motion, $277.50 as reimbursement for attorney fees incurred attending the January 10, 2014, Sanchez deposition which did not take place, and $536.75 as reimbursement for the cost of having a Certified Shorthand Reporter attend the scheduled January 10, 2014, depositions.<br><br>*Id.* at 610. |
| *Dolorian Capital, Inc. v. SOC, LLC* 2013 WL 1006071 (E.D. Cal., March 13, 2013)<br><br>**Note:** This decision concerned three separate motions. | Defendants spent a total of 252.75 hours on work associated with **two motions to compel and a motion for Rule 37 sanctions**. Plaintiff's counsel opined that Defendant could be reasonably expected to spend 20 hours in work for the Rule 37 motion and 10 hours for the October 24, 2012 motion to compel. (Smith Decl. # 1 ¶ 15; Decl. of Myron F. Smith in Opp'n to Decl. of Tara Lee in Supp. of Accounting of Fees and Costs Re Sept. 11, 2012 Mot. to Compel Req. for Doc. Prod. ¶ 9.)<br><br>*Id.* at 3 (emphasis added).<br><br>The Court finds that **the hours expended by Defendant are excessive**. As discussed above, the issues raised in Defendant's motions were not difficult or complex. In connection with the August 1, 2012 motion to compel, Defendant's records indicated that they spent over 80 hours on work prior to filing the motion to compel on August 2, 2012. An additional 19 hours of work was performed after the motion was filed but before Plaintiff's opposition was filed, on tasks such as corresponding with Plaintiff, preparing the joint statement and preparing an affidavit related to Plaintiff's unauthorized filing of a joint statement. Approximately 16 hours was spent after the opposition was filed through the date Defendant's reply was filed, on tasks such as preparing the reply and preparing affidavits related to the unauthorized filing of the joint statement. Another 15 hours was spent on work after the reply was filed, on tasks such as corresponding with Plaintiff, preparing a second joint statement and preparing for the hearing.<br><br>*Id.* at 4 (emphasis added).<br><br>By the Court's reading of Defendant's record, over 65 hours was spent preparing the August 1, 2012 motion to compel. The memorandum of points and authorities for the motion to compel was 24 pages long, but much of that length was spent |

| Case Citation | Relevant Text/Summary |
|---|---|
| | summarizing each discovery request at issue (16 requests for production, 8 interrogatories, and 31 requests for admission). (*See* Def.'s Mem. in Supp. of its Mot. to Compel Disc. and Deem Req. for Admission Admitted 1–24.) The motion did not require extensive legal research. The motion cited only ten cases and one secondary authority.

*Id.*

Looking at the two other motions, the points and authorities for the Rule 37 motion was nine pages long citing five cases and the October 24, 2012 motion to compel was 4 pages long and only cited one case and one secondary authority. The Court notes these facts not to critique Defendant's work, but to point out the fact that the issues litigated were not novel or complex. Defendant's briefs were appropriate. However, the issues did not call for 250+ hours of work.

In *Prescott*, the defendant propounded sets of interrogatories and requests for documents and noticed a deposition. *Prescott,* 2012 WL 393387, at *1–3. When the plaintiff failed to respond or attend the deposition, the defendant obtained an order to compel. *Id.* When the plaintiff failed to comply with the motion to compel, the defendant filed a motion for sanctions under Rule 37. *Id.* Accordingly, the facts in *Prescott* are very similar to the facts here. In *Prescott* the defendant informed the Court that it incurred $6,930 in fees (from 39.6 hours of work) in bringing the first motion to compel and $4,795 in fees (from 27.4 hours of work) in bringing the Rule 37 motion. *Id.* at 10–11.

**The Court finds that the hours worked by Defendant were not reasonable and finds that the number of hours reasonably expended** <u>**on all three motions**</u> **should have been approximately 100 hours**, which is similar to the amount of time claimed in *Prescott* working on two motions (67 hours). Here, there were three motions. The Court further finds that, based upon the billing sheets submitted by Defendant, approximately 65% of the work was billed by associates and 35% of the work was billed by a partner.[1] Accordingly, the Court finds that 65% of the time should be billed at the reasonable "associate level" rate identified above of $225 (for work performed by Messrs. Davis, Khan and Angeli) and the remaining 35% of the time should be billed at the rate appropriate for work performed by Ms. Lee and Mr. Bloodworth, $300. Accordingly, the Court will award sanctions in the amount of $25,125.00. |

| Case Citation | Relevant Text/Summary |
|---|---|
| | *Id.* at 5 (emphasis added). |
| *Mixt Greens v. Sprout Café*, 2010 WL 2555753 (N.D. Cal., 2010) | Plaintiff's request that Defendant be held in contempt and be subjected to evidentiary sanctions is made pursuant to Federal Rule of Civil Procedure 37(b). Page 1.<br><br>Accordingly, the Court grants Plaintiff's request for attorney's fees under Rule 37. **The Court finds, however, that the amount of fees requested by Plaintiff is excessive. Plaintiff asks for more than $10,000 for the underlying motion to compel, representing approximately 28 hours of work, and another $8,000 for the motion for sanctions, representing approximately 22 hours of work. While the Court does not have reason to doubt that Plaintiff's counsel spent this amount of time on the two motions, <u>the fees are excessive</u>**. Neither the motion to compel nor the motion for sanctions was particularly complex. Indeed, between the two motions, there was at most one substantive legal issue—*i.e.,* the merits of the privacy objection raised by Defendant with respect to the financial documents—and as indicated above it was a simple one. The Court therefore awards Plaintiff $10,000 in fees. The Court notes that, at an hourly rate of $375, this compensates Plaintiff for 24 hours of work. The Court notes that it does not in this order make any specific allocation as to whether the fees should be paid by Defendant itself or by its counsel. However, the Court notes that, at the hearing, counsel admitted that he or his firm was responsible for part (although not all) of the delay in complying with applicable obligations.<br><br>*Id.* at 2. |
| *Russo v. Network Solutions,* 2008 WL 114908 (N.D. Cal., 2008). | Sanctions in the amount of $4,237.50 sought pursuant to Rule 37(c).<br><br>The Court finds $4,237.50 reasonable for fees incurred in connection with the two motions. The hourly rates for defense counsel are reasonable in light of their experience. Defendants are entitled to fees for the time defense counsel spent on the moving papers and reply brief, and in preparing for and attending the hearing. The time spent was not unreasonable.<br><br>*Id.* at 1.<br><br>Court found **<u>14 hours</u>** spent preparing motion for sanctions reasonable, and awarded $4,270 in connection with said time (court awarded additional costs and fees relating to attendance of depositions). |

| Case Citation | Relevant Text/Summary |
|---|---|
| | |
| *Frontier Contracting, Inc. v. Allen Engineering Contractor, Inc.* 2013 WL 663429 (E.D. Cal., 2013) | Currently before the Court is Defendants Allen Engineering Contractor, Inc., Safeco Insurance Company of America, and Liberty Mutual Insurance Company's (collectively referred to as "Defendants") motion to dismiss this action and impose monetary sanctions against Plaintiff Frontier Contracting, Inc.'s ("Plaintiff") pursuant to Federal Rule of Civil Procedure 37. Defendants filed their motion on January 29, 2013. (ECF No. 63.) Defendants seek dismissal and monetary sanctions due to Plaintiff's failure to respond to Defendants' discovery requests.<br><br>*Id.* at 1.<br><br>Moving party sought $10,000 in sanctions, and court awarded $2,350 in sanctions for **10 hours** worked in connection with the Rule 37 motion.<br><br>*Id.* at 8. |
| *Flanagan v. Benicia Unified School Dist.*, 2007 WL 2601413 (E.D. Cal., 2007) | Defendants seek evidence preclusion under Rule 37(c)(1) or attorneys' fees of $1,560 pursuant to Rule 37(a)(4)(A). *Id.* at 2. The Court held:<br><br>This amount is based on an expenditure of **eight hours** in drafting the motion to compel, meet and confer letters, meeting and conferring, and drafting the joint statement.<br><br>*Id.* at 2 (emphasis added).<br><br>Court awards $1,560 in sanctions. |
| *Liu v. Win Woo Trading, LLC*, 2016 WL 3280474 (N.D. Cal. 2016) | In order to assess whether the number of hours billed is reasonable, Plaintiffs must submit detailed records justifying the hours that have been expended. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986).<br><br>Here, Plaintiffs' counsel billed a total of 76.1 hours in connection to discovery disputes with Safety Trucking, including the requests for admission, which date back to July 2015. After reviewing the detailed billing records provided in Mr. Lai's Supplemental Declaration, which offer a breakdown of the work completed and the specific tasks performed, the undersigned finds that the hours billed are unreasonable. Specifically, the Court declines to award fees in connection with work performed in July 2015, as it is too far removed temporally. Notwithstanding, Defendants' failure to admit in May 2015 has been considered in relation to the instant motion.<br><br>The Court finds that 9.4 hours expended on January 14 and 21, 2016 in connection with the January 22, 2016 joint letters to be reasonable. The Court |

| Case Citation | Relevant Text/Summary |
|---|---|
| | finds that **24.5 hours spent in connection with the motion for sanctions is unreasonable, and reduces the award to 15.0 hours**. (*See* Suppl. Lai Decl., Ex. B.) The Court **similarly finds that the 27.8 hours spent on reviewing Defendants' opposition and drafting Plaintiffs' reply to the motion for sanctions to be unreasonable, and reduces the award to 10.0 hours**.<br><br>Thus, the undersigned finds that Plaintiffs' counsel reasonably billed 34.4 hours in connection with Defendants' abuse of the discovery process, and orders Defendants Safety Trucking and Tun to compensate Mr. Lai accordingly, for a total award of $8,600.00.<br><br>*Id.* at 9. |
| *Varney v. California Highway Patrol*, 2013 WL 2299544 (N.D. Cal., 2013) | Defendants seek sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2), 28 U.S.C. § 1927, and the Court's authority for Plaintiff's failure to comply with Judge Henderson's October 15, 2012 Order to produce Plaintiff's medical records. As sanctions, Defendants request that (1) Plaintiff be ordered to produce his medical records by May 24, 2013; (2) monetary sanctions of $2,805.00 be imposed for Defendants' reasonable expenses preparing the motion for sanctions; and (3) the fact discovery deadline for Defendants be extended until July 25, 2013. Page 2. Motion granted and sanctions of $2,805 awarded.<br><br>*Id.* at 4. |
| *Tourgeman v. Collins Financial Services, Inc.*, 2012 WL 28289 (S.D. Cal., 2012) | Before the Court is Plaintiff's motion for sanctions based on Defendants' failure to produce documents pursuant to court-ordered discovery. Plaintiff claims Defendants' discovery violation caused the denial of Plaintiff's motion for class certification. Plaintiff requests this Court impose a sanction finding numerosity to be an established fact and further impose $18,855 in attorney fees and costs. For the reasons outlined below, the Court DENIES IN PART AND GRANTS IN PART Plaintiff's motion for sanctions.<br><br>*Id.* at 1.<br><br>Defendants SHALL PAY fees to Plaintiff's counsel at the rate of $450 per hour for 6.8 hours of courthouse research, 7.8 hours of preparation for the Reply brief, and the hours spent on preparing the motion for sanctions to be provided by Plaintiff's counsel in a declaration as indicated below.<br><br>*Id.* at 6. |

| Case Citation | Relevant Text/Summary |
|---|---|
| | |
| *Reygoza v. City of Fresno*, 297 F.R.D. 603 (E.D. Cal., 2014) | Defendants have also requested $5,080.94 in monetary sanctions as the cost of preparing for and traveling to Fresno for the scheduled depositions of Raygoza and Sanchez, the cost of the Certified Shorthand Reporter for those depositions, and the fees incurred in bringing and arguing this motion telephonically.<br><br>*Id.* at 607.<br><br>Defendants' counsel asserts he spent ten hours preparing this motion. He estimated approximately one additional hour would be spent preparing for and attending the hearing telephonically.<br><br>*Id.* at 608.<br><br>Defendants are awarded against Plaintiffs Raygoza and Sanchez and their counsel, jointly and severally, attorney fees in the amount of $2035.00 as the cost of having had to file this motion, $277.50 as reimbursement for attorney fees incurred attending the January 10, 2014, Sanchez deposition which did not take place, and $536.75 as reimbursement for the cost of having a Certified Shorthand Reporter attend the scheduled January 10, 2014, depositions.<br><br>*Id.* at 610. |
| *Southern Cal. Stroke Rehabilitation Associates, Inc. v Nautilus*, 2010 WL 2998839 (S.D. Cal., 2010). | After the deposition in Vancouver, SCSRA contended that Nautilus failed to properly designate and/or prepare Mr. McCart and requested sanctions pursuant to Rule 37(d) (3). Having found that Nautilus failed to fulfill its obligations under Rule 30(b)(6), the Court instructed SCSRA to file a declaration detailing the fees and costs for the requested amount of $13,091 on or before July 9, 2010. [Doc. Nos. 86 and 87.] Nautilus was instructed to file objections to the fees and costs on or before July 23, 2010. [Doc. No. 89.] A telephonic hearing regarding the motion for sanctions was held on the record on July 28, 2010 at 1:30 p.m. Appearing on behalf of the SCSRA was Mr. Stephen J. Tomasulo and Ms. Whitney B. Kringel. Appearing on behalf of Nautilus was Mr. Robert W. Harrison and Mr. Patrick J. Kearns. Having fully evaluated the moving papers and the arguments made by counsel at the telephonic hearing, the court GRANTS IN PART and DENIES IN PART Plaintiff's request for sanctions pursuant to Rule 37(d)(3) as set forth below.<br><br>*Id.* at 1. |

| Case Citation | Relevant Text/Summary |
|---|---|
| | Based on the moving papers submitted by both parties and arguments presented at the telephonic hearing on July 28, 2010 at 1:30 p.m., the Court finds that the hours represented by the Plaintiff's counsel in regards to the motion to compel and the deposition are unreasonable, but finds the deposition expenses reasonable.<br><br>*Id.* at 2.<br><br>The Court finds that sanctions in the amount of $3,090 for the motion to compel, $4,407 for fees associated with the deposition of Mr. McCart, and $1,654.50 for deposition expenses are reasonable.<br>*Id.* at 3. |
| *DeShaziewr v. Williams*, 2007 WL 4570672 | Hanford Police Officer Dale Williams, et al. ("Defendants") have moved for monetary and terminating sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure. The matter was referred to the Magistrate Judge for findings of fact and recommendations of law ("F & R's"). On October 15, 2007, the Magistrate Judge issued F & R's recommending an award of monetary sanctions to Defendants pursuant to Rule 37(d) of the Federal Rules of Civil Procedure,[1] and recommending dismissal of the action pursuant to Rule 37(b)(2)(C).<br><br>*Id.* at 1.<br><br>Sanctions awarded in the amount of **$3,437**. *Id.* at 4. |
| *RPA Intern. Pty Ltd. v. Compact Intern., Inc.*, 2008 WL 281174 (S.D. Cal. 2008) | On December 14, 2007, Plaintiffs filed a Petition for Attorneys' Fees ("Petition for Fees"). The Petition for Fees seeks attorneys' fees and costs associated with the Motion to Compel, the Reply to the Motion to Compel, the Statement Regarding Defendants' Failure to Comply and the Reply in Support of Report and Recommendation, totaling $6,175.00. *Petition for Fees*, p. 2. Plaintiffs submitted an itemized list of attorney's fees, stating fees of $2,321.25 for the Motion to Compel, $1,392.50 for the Response in Support of Motion to Compel, $1,156.25 for the Statement Regarding Defendants' Failure to Comply, and $1,305.00 for the Reply in Support of Report and Recommendation. *Id.* Plaintiffs also submitted the Declaration of Amanda L. Lowerre, who attests that attorney Amanda L. Lowerre billed 23.65 hours at a rate of $200.00 per hour and |

| Case Citation | Relevant Text/Summary |
|---|---|
| | attorney Philip T. Petti billed 3.4 hours at a rate of $425.00 per hour for the preparation and filing of the above motions.<br><br>*Id.* at 2.<br><br>Court awards sanctions of **$6,175**. *Id.* at 3. |
| *Garcia v. Bana*, 2012 WL 2119157 (N.D. 2012) | Motion for sanctions filed pursuant to Rule 37.<br><br>Defendants also ask for $1,500 in attorneys' fees as a monetary sanction. This amount is the amount that they had to spend to file their motion. Savage Declaration, ECF No. 31–2 at 5, ¶ 20. Specifically, Defendants' counsel spent **six hours**, at a rate of $250 per hour, to draft the motion. *Id.*<br><br>The court believes that monetary sanctions in this amount are appropriate, given the discovery abuses, including violation of a court order, described above.[fn] **Six hours is a reasonable amount of time for the preparation of this particular motion for sanctions**, and Defendants' counsel's rate, in comparison with others within this legal community, is a reasonable one. Mr. Wang personally—as distinguished from Plaintiffs—shall pay Defendants the $1,500 in attorneys' fees that they incurred due to his unreasonable behavior during the discovery process.<br><br>*Id.* at 9. |
| *Deshazier v. Williams*, 2007 WL 3010578 (E.D. Cal., 2007) | Defendants' counsel declared that he incurred and may incur **fees** and expenses as a result of Plaintiff's repeated failure to appear at properly noticed depositions and of other discovery violations, including 1) $925.00 in **attorney's fees**, calculated at 5 hours at $185.00 per hour for 1.7 hours preparation for the depositions of August 15, 2007, and 3.3 hours for round-trip travel to Hanford and time spent waiting for Plaintiff to appear at the proceeding; and 2) Court reporter's **fees** for appearance at the deposition on August 15 and preparation of a transcript thereof, in the amount of $112.00; 3) $3450.00, consisting of 23 hours at $150.00 per hour, the rate of an associate who prepared the moving papers, for preparation of this **motion**, supporting documents, and the ex parte application to hear the **motion** on shortened time and all documents pertaining thereto; 4) $375.00 anticipated to be expended for preparing for, traveling to, and attending the hearing on the **motion**, calculated at 2.5 hours at $150.00 per hour; and 5) any filing **fees** for this **motion** or the ex parte application, although no amount was specified. The total amount sought is $4,862.00. |

| Case Citation | Relevant Text/Summary |
|---|---|
| | *Id.* at 6.<br><br>Because the hearing on the **motion** was vacated, the Court concludes that no time was actually expended for preparation, travel, and attendance relating to the hearing. The hourly rates for **attorney's fees** sought appear to be reasonable in light of the prevailing rates in the community. The **motions** (both the **motion** for **sanctions** and the ex parte application for an order shortening time) appear to have taken an excessive amount of time for what the Court deems to be reasonable for the preparation of all pleadings; sixteen (16) hours, or two full eight-hour days, seems more appropriate. It is appropriate to award reasonable **attorney's fees** for a failure to appear even in the absence of willfulness; negligence is sufficient. *Lew v. Kona Hospital,* 754 F.2d 1420, 1426 (9th Cir.1985).<br><br>Therefore, the Court shall recommend an award of additional monetary **sanctions** in the amount of $3,437.00.<br><br>*Id.* at 7. |
| *Lugo v. Sham*, 2001 WL 348984 (N.D. Cal., 2001) | Counsel for Valencia declares that he spent **15.2 hours** preparing Valencia's motion to dismiss, and that his hourly rate is $185.00. (*See* Carnagey Decl. at ¶ 8.) The Court finds the time reasonably expended on the motion is **12 hours**, that the hourly rate claimed is reasonable and, accordingly, Valencia is **awarded the sum of $2,220.00 pursuant to Rule 37(b)(2)**.<br><br>*Id.* at 5. |
| *Cruz v. Aurora Loan Services*, 2016 WL 2621795 (N.D. Cal., 2016) | The defendant, Aurora Loan Services, LLC, moved for sanctions alleging plaintiffs failed to attend depositions, respond to interrogatories, and comply with the court's order to prosecute their case. Aurora further alleged these failures were willful and in bad faith and requested the court enter terminating sanctions and award Aurora reasonable attorney's fees and expenses under Federal Rules of Civil Procedure 41(b), 37(b), and 37(d) and the Court's inherent authority. *Id.* at p. 1.<br><br>The court awards $8,185.31 in costs and fees for discovery abuses, leaving an additional $11,033.50 in requested fees for time spent drafting interrogatories and the current motion for sanctions.<br>***<br>The court grants in part and denies in part Aurora's motion for sanctions. The court awards $8,185.31 in costs and fees to Aurora, reserving for later the remaining fee balance of $11,033.50. The |

| Case Citation | Relevant Text/Summary |
|---|---|
| | court does not order terminating sanctions at this time. The court sets a hearing for May 19, 2016 at 9:30 a.m. and orders the Cruzes to attend in person and to show cause. The court also directs Mr. Sargetis to serve this order on the Cruzes and file proof of service by May 12, 2016. The Cruzes are warned that failure to appear on May 19 means that they risk imposition of additional fees of $11,033.50 and dismissal of their case for failure to prosecute it.<br><br>*Id.* at p. 6. |
| *ACF Western USA, Inc. v. Travelers Cas. Ins. Co. of America*, 2012 WL 5838865 (E.D. Cal., 2012) | Travelers moved for monetary and evidentiary sanctions against plaintiff, ACF Western. *Id.* at 1. The motion sought sanctions pursuant to Rules 30(d)(2) and 37(d)(3).<br><br>Defendant has requested a monetary sanction in the amount of $4,953.30. (Def.'s Mot. For Sanctions, 7: 16–17, Doc. 25.) As support for this request, Defendant's counsel—Mr. Jadhavji—represents he expended **17.4 hours researching and drafting Defendant's motion for sanctions** and supporting documents, 7.8 hours preparing for the Markarian deposition, 0.6 hours attending the Markarian deposition, at a billable rate of $185.00 per hour. (Jadhavji Decl., ¶¶ 13–15, Doc. 25, Attach. 1.) Defendant additionally claims entitlement to $231.30 in costs expended on the court reporter and an expedited deposition transcript.<br><br>*Id.* at 5.<br><br>The Court must determine whether the requested number of hours is greater than, less than or the same number of hours that reasonably competent counsel would have billed. *Yahoo!, Inc., v. Net Games, Inc.,* 329 F.Supp.2d 1179, 1184 (N.D.Cal.2004). If the requested number of hours is greater than the number of hours reasonably competent counsel would have billed, then the court should reduce the requested number of hours accordingly. *See Hensley,* 461 U.S. at 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (describing the court's duty to eliminate hours that are "excessive, redundant, or *otherwise unnecessary"* ) (emphasis added).<br><br>The Court finds some of Mr. Jadhavji's hours to be excessive. Defendant's motion for sanctions was relatively straightforward, and did not reasonably necessitate 17.4 hours. Accordingly, **the Court will award Defendant nine (9) hours for attorneys' fees expended on their motion for sanctions**. Similarly, the Court finds the 7.8 hours expended in preparation for the Markarian |

| Case Citation | Relevant Text/Summary |
|---|---|
| | deposition to be excessive. This is particularly true considering Defendant was treating Mr. Markarian as a percipient, rather than an expert witness. Accordingly, the Court will award Defendant four (4) hours in attorneys' fees for preparing for the Markarian deposition. The Court finds the 0.6 hours spent attending the Markarian deposition to have been reasonably expended. Accordingly, the Court awards Defendant **$2,642.30** in attorneys' fees and costs.<br><br>*Id.* at 6. |
| *Reddy v. Precyse Solutions, LLC*, 2015 WL 3407447 (E.D. Cal., 2015) | Motion to compel plaintiff's compliance with discovery orders and a motion for sanctions. *Id.* at 1.<br><br>Defendant traveled nine hours to attend the May 8, 2015 deposition and seeks payment for this time. Further, Defendant seeks one hour for counsel's time in reviewing and attending the hearing on this motion and **seven hours for co-counsel researching, drafting, and preparing this motion and the supporting documents**. The Court further finds the $4,445.00 in sanctions to be reasonable expenses incurred in traveling to the deposition and bringing this motion to compel. Accordingly, Defendant's motion for sanctions of $4,445.00 is granted.<br><br>*Id.* at 6. |
| *Myhre v. Seventh-Day Adventist Church, etc.*, 2014 WL 2965046 (S.D. Cal., 2014) | "Plaintiff Steinar Myhre's Motion for Rule 37 Sanctions Against Defendants IMS–New Jersey, IMS–Texas, IMS–Georgia, IMS–Florida, and IMS–Miami [ECF No. 79] ("Motion for Sanctions") was filed on May 16, 2014." *Id.* at 1.<br><br>The declaration submitted by Plaintiff's counsel details the time and expenses incurred. Counsel spent "approximately **6.1 hours** in reviewing Defendants' supplemental discovery responses and identifying areas of non-compliance, seeking to obtain resolution of this matter by way of belated compliance, entry into a stipulation of facts, or other resolution," and **additional 8.3 hours to draft the Motion for Sanctions**. (Pl.'s Mot. Sanctions Attach. # 2 Decl. Kramer 3–4, ECF No. 79.) Kramer has twenty years of trial experience and represents that her hourly rate of $275 is equal to, if not less than, the rate of similarly qualified attorneys in the Southern District of California. (*Id.* at 4.) Her rate and fees are reasonable in light of counsel's experience and qualifications.<br>*Id.* at 14. |