UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ESTAKHRIAN and ABDI NAZIRI, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>MARK OBENSTINE, et al.<br><br>　　　　　　　Defendants. | Case No. CV 11-3480 FMO (CWx)<br><br>**ORDER RE: ATTORNEY'S FEES & COSTS** |

Having reviewed and considered plaintiffs' unopposed Motion for Attorneys' Fees, Costs, and Expenses (Dkt. 623, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**INTRODUCTION**

On October 27, 2015, James Estakhrian ("Estakhrian") and Abdi Naziri ("Naziri") (collectively "plaintiffs") filed the operative Second Amended Class Action Complaint ("SAC") against Mark Obenstine ("Obenstine"), Benjamin F. Easterlin IV ("Easterlin"), King & Spalding, LLP ("King & Spalding" or "K&S" and together with Easterlin, the "King & Spalding defendants"), Terry A. Coffing ("Coffing"), and Marquis & Aurbach, P.C. (now called Marquis Aurbach Coffing, P.C.) ("MAC" or "Marquis" and together with Coffing, the "MAC defendants") (collectively, "defendants")

asserting claims for: (1) professional malpractice; (2) breach of fiduciary duty; (3) breach of contract; (4) violation of the California Unfair Competition Law, ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (5) violation of the California Consumers Legal Remedies Act, ("CLRA"), Cal. Civil Code §§ 1750, et seq.; and (6) fraud. (See Dkt. 373, SAC at ¶¶ 2, 51-77).

The instant matter arises out of a class action that was litigated in Nevada state court, Daniel Watt, et al. v. Nevada Property 1, LLC, et al., Case No. A582541 ("Nevada litigation," "Watt litigation," or "Watt action"). (See Dkt. 490, Court's Order of October 24, 2016, at 2) (citing Dkt. 373, SAC at ¶ 20). On February 11, 2009, plaintiffs filed a class action complaint for breach of contract regarding the purchase of condominium units in what became the Cosmopolitan Hotel ("Cosmopolitan"), located in Las Vegas, Nevada. (See Dkt. 373, SAC at ¶ 20). Plaintiffs sought to "rescind their purchase contracts and to obtain a refund of their escrow deposits[.]" (See Dkt. 490, Court's Order of October 24, 2016 at 2) (citing Dkt. 373, SAC at ¶¶ 14-16 & 20). The Nevada litigation eventually settled in two stages in 2010. (See Dkt. 373, SAC at ¶ 32).

On April 22, 2011, Estakhrian, on behalf of himself and all others similarly situated, filed the instant action against defendants, who are all attorneys who represented the class members in the Nevada litigation. (See Dkt. 1, Complaint at ¶¶ 17-20). The court dismissed the MAC defendants for lack of personal jurisdiction. (See Dkt. 329, Court's Order of July 9, 2015). The court then approved a settlement for $4.625 million between the plaintiff class and the King & Spalding defendants and entered judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. (See Dkt. 490, Court's Order of October 24, 2016, at 21-22; Dkt. 491, Judgment Pursuant to Fed. R. Civ. P. 54(b)). As such, Obenstine is the sole remaining defendant in this action.

On February 4, 2017, the court certified the following classes with respect to the professional malpractice, breach of fiduciary duty, UCL, and CLRA claims: "All individuals who were class members in, i.e. did not opt out of, Daniel Watt, et al. v. Nevada Property 1, LLC, et al., Nevada District Court, Case No. A582541, excluding Sanjay Varma." (See Dkt. 500, Court's Order of February 4, 2017, at 32). The court also certified the following subclass with respect to Estakhrian's breach of contract claim: "[All] class members who entered into a retainer agreement

with Defendant Mark Obenstine regarding the subject matter of <u>Daniel Watt, et al. v. Nevada Property 1, LLC, et al.</u>, Nevada District Court, Case No. A582541." (<u>Id</u>.). Estakhrian and Naziri were appointed class representatives for the class, and Estakhrian was appointed class representative for the subclass. (<u>See</u> <u>id.</u> at 33). The court appointed Chavez & Gertler, the Irvine Law Group, Mehri & Skalet, and the Fay Law Group as class counsel. (<u>See</u> <u>id.</u>).

A bench trial was held on the (1) breach of fiduciary duty; (2) UCL; and (3) CLRA claims, and on March 26, 2019, the court issued its findings of fact and conclusions of law, (<u>see</u> Dkt. 621, Court's Order of March 26, 2019), finding in favor of plaintiffs on all claims, and ordering Obenstine to pay plaintiff class members the amount of $12 million.[1] (<u>See</u> <u>id.</u> at 29). Plaintiffs' counsel now seek an award of attorney's fees in the amount of $3.6 million (or 30% of the judgment) and costs in the amount of $34,170.44. (<u>See</u> Dkt. 623, Motion at 2).

**DISCUSSION**

I.  ATTORNEY'S FEES.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In diversity actions such as this one, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees. <u>See</u> <u>Mangold v. Cal. Public Util. Comm'n</u>, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."); <u>Rodriguez v. Disner</u>, 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees.").

The California Supreme Court has held that courts have discretion to choose among two different methods for calculating a reasonable attorney's fee award. <u>See</u> <u>Laffitte v. Robert Half Int'l Inc.</u>, 1 Cal.5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within

---

[1] On March 14, 2019, the court dismissed the breach of contract claim. (<u>See</u> Dkt. 620, Court's Order of March 14, 2019).

1 the discretion of the trial court, the goal under either the percentage or lodestar approach being
2 the award of a reasonable fee to compensate counsel for their efforts."); see also In re Bluetooth
3 Headset Products Liability Litig., 654 F.3d 935, 942 (9th Cir. 2011) (noting that "courts have
4 discretion to employ either the lodestar method or the percentage-of-recovery method"). "The
5 lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by
6 multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate."
7 Laffitte, 1 Cal.5th at 489 (internal quotation marks omitted). "The percentage method calculates
8 the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs'
9 recovery." Id. "Though courts have discretion to choose which calculation method they use, their
10 discretion must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942;
11 see Laffitte, 1 Cal.5th at 489; Glass v. UBS Fin. Servs., Inc., 2007 WL 221862, *14 (N.D. Cal.
12 2007), aff'd, 331 F.App. 452 (9th Cir. 2009) ("As always, when determining attorneys' fees, the
13 district court [is] guided by the fundamental principle that fee awards out of common funds be
14 reasonable under the circumstances.") (internal quotation marks and emphasis omitted).

15        "Because the benefit to the class is easily quantified in common-fund settlements," the court
16 will exercise its discretion "to award attorneys a percentage of the common fund in lieu of the often
17 more time-consuming task of calculating the lodestar." Bluetooth, 654 F.3d at 942. "Under the
18 percentage method, California has recognized that most fee awards based on either a lodestar
19 or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent."
20 Smith v. CRST Van Expedited, Inc., 2013 WL 163293, *5 (S.D. Cal. 2013); see Chavez v. Netflix,
21 Inc., 162 Cal.App.4th 43, 66 n. 11 (2008) ("Empirical studies show that, regardless whether the
22 percentage method or the lodestar method is used, fee awards in class actions average around
23 one-third of the recovery.") (internal quotation marks omitted); In re Consumer Privacy Cases, 175
24 Cal.App.4th 545, 557 n. 13 (2009) ("A fee award of 25 percent is the benchmark award that should
25 be given in common fund cases.") (internal quotation and alteration marks omitted).

26        Using the 25 percent benchmark as the starting place, the court must determine the
27 appropriate percentage by "tak[ing] into account all of the circumstances of the case." Vizcaino
28 v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002). In general, the court evaluates the

following factors in determining the percentage to be applied: (1) the results achieved for the class; (2) the complexity of the case; (3) the skill, experience and performance of counsel; (4) the risk of nonpayment; and (5) the reaction of the class. See id. at 1048-49; Bluetooth, 654 F.3d at 941-42 & n. 7; Laffitte, 1 Cal.5th at 504 (determining reasonableness of percentage fee "by obtaining additional information from class counsel on the risks and potential value of the litigation;" the "contingency, novelty and difficulty" of the case; and "the skill shown by counsel"). A.

The Result Achieved for the Class.

"The result achieved is a significant factor to be considered in making a fee award." In re Heritage Bond Litig., 2005 WL 1594403, *19 (C.D. Cal. 2005); see Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983) ("the most critical factor is the degree of success obtained"); Bluetooth, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."). Here, plaintiffs secured a near complete victory following the bench trial on the equitable claims. They sought $12 million, which was the amount they asserted Obenstine received as part of the Watt litigation, and the court awarded that amount. (See Dkt. 621, Court's Order of March 26, 2019, at 29). Under the circumstances, the court concludes that the results obtained for the class support the requested fee award.

B. Complexity of the Case.

"Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award." In re Heritage Bond Litig., 2005 WL 1594403, at *20. Legal malpractice and breach of fiduciary duty claims are typically fact intensive inquiries. See Hecht, Solberg, Robinson, Goldberg & Bagley LLP v. Super. Ct., 137 Cal.App.4th 579, 591 (2006) (legal malpractice claim is a fact-intensive inquiry); In re Cent. Valley Processing, Inc., 2007 WL 840500, *2 (Bankr. E.D. Cal. 2007) (breach of fiduciary duty is a fact intensive inquiry). As this court found in connection with plaintiffs' settlement with the K&S defendants, the issues in this case were complex. (See Dkt.490, Court's Order of October 24, 2016, at 15-16). In short, this factor weighs in favor of granting the requested fee.

C. Class Counsel's Skill, Experience, and Performance.

The "prosecution and management of a complex . . . class action requires unique legal

skills and abilities." In re Omnivision Techs., Inc., 559 F.Supp.2d 1036, 1047 (N.D. Cal. 2008) (internal quotation marks omitted). Class counsel have extensive experience in class action litigation and they have been very diligent in prosecuting this action for the benefit of the class over the course of several years, culminating in a bench trial and post-trial briefing. (See Dkt.490, Court's Order of October 24, 2016, at 16). Under the circumstances, the court is persuaded that class counsel litigated this case with skill and performed quality work, as reflected in the results obtained. This factor also supports class counsel's requested fee.

### D. The Risk of Nonpayment.

"Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." In re Heritage Bond Litig., 2005 WL 1594403, at *21. Here, class counsel took the risk that they would never be paid for their time or reimbursed for costs since they took this case "on a fully-contingent basis[.]" (Dkt.490, Court's Order of October 24, 2016, at 17) (internal quotation marks omitted). The contingent nature of the work performed by class counsel, and the risk they took in advancing costs, also weigh in favor of granting plaintiffs' fee request. See Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 449 (E.D. Cal. 2013) ("Like this case, where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate."); see also Graham v. DaimlerChrysler Corp., 34 Cal.4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal quotation marks omitted).

### E. Reaction of the Class.

Although plaintiffs placed the Motion on the website that was created for this case, www.cosmo2017classaction.com, no class member has objected to the fee request. (See, generally, Dkt.). The lack of objections further support plaintiffs' fee request.

### F. Conclusion.

Consideration of the foregoing factors supports the request for attorney's fees. The

requested fee award out of the common fund is fair and reasonable.[2]

II.     COSTS.

Class counsel seek an award of $34,170.44 for costs and expenses incurred since November 15, 2015. (See Dkt. 623, Motion at 2; Dkt. 623-5, Proposed Order).[3]  However, because the declarations of counsel reflect only $30,704.74 in incurred fees and expenses, (see Dkt. 623-3, Declaration of Steven A. Skalet at ¶ 7) (stating that his firm incurred $30,704.74 in expenses); (see, generally, Dkt. 623-1, Declaration of Mark Chavez; Dkt. 623-2, Declaration of S. Ron Alikani; Dkt. 623-4, Declaration of Raymond C. Fay) (failing to set forth any costs incurred)), the court will award that amount as reasonably incurred costs to be paid out of the $12 million common fund.

### CONCLUSION

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiffs' Motion for Attorneys Fees, Costs, and Expenses  **(Document No. 623)** is **granted** as set forth herein.

2.  Class counsel shall be paid $3.6 million in attorney's fees and $30,704.74 in costs from the common fund.

Dated this 8th day of July, 2019.

                                                         /s/
                                             Fernando M. Olguin
                                          United States District Judge

---

[2] "One way that a court may demonstrate that its use of a particular method or the amount awarded is reasonable is by conducting a cross-check using the other method." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 949 (9th Cir. 2015); see Laffitte, 1 Cal.5th at 504 (holding that the court has discretion to "double check the reasonableness of the percentage fee through a lodestar calculation").  Here, given the reasonable amount of the fee request and the outstanding results obtained for the class following a bench trial, the court finds that a lodestar cross-check is not necessary.

[3] The Motion sets forth two different amounts – $34,170.44, (see Dkt. 623, Motion at 2), and $34,704.44.  (See id. at 4).